## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| | |
| RED LOBSTER MANAGEMENT LLC, [1] | Case No. 6:24-bk-02486-GER |
| | Lead Case |
| | |
| | Jointly Administered with |
| RED LOBSTER RESTAURANTS LLC, | Case No. 6:24-bk-02487-GER |
| RLSV, INC., | Case No. 6:24-bk-02488-GER |
| RED LOBSTER CANADA, INC., | Case No. 6:24-bk-02489-GER |
| RED LOBSTER HOSPITALITY LLC, | Case No. 6:24-bk-02490-GER |
| RL KANSAS LLC, | Case No. 6:24-bk-02491-GER |
| RED LOBSTER SOURCING LLC, | Case No. 6:24-bk-02492-GER |
| RED LOBSTER SUPPLY LLC, | Case No. 6:24-bk-02493-GER |
| RL COLUMBIA LLC, | Case No. 6:24-bk-02494-GER |
| RL OF FREDERICK, INC., | Case No. 6:24-bk-02495-GER |
| RED LOBSTER OF TEXAS, INC., | Case No. 6:24-bk-02496-GER |
| RL MARYLAND, INC., | Case No. 6:24-bk-02497-GER |
| RED LOBSTER OF BEL AIR, INC., | Case No. 6:24-bk-02498-GER |
| RL SALISBURY, LLC, | Case No. 6:24-bk-02499-GER |
| RED LOBSTER INTERNATIONAL HOLDINGS LLC, | Case No. 6:24-bk-02500-GER |

Debtors.

_____/

## DEBTORS' NOTICE OF FILING (A) REDLINE VERSION OF PROPOSED FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL ON A LIMITED BASIS, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF; AND (B) EXHIBIT C – RESOLUTION TERM SHEET

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are Red Lobster Management LLC (6889); Red Lobster Sourcing LLC (3075); Red Lobster Supply LLC (9187); RL Kansas LLC (2396); Red Lobster Hospitality LLC (5297); Red Lobster Restaurants LLC (4308); RL Columbia LLC (7825); RL of Frederick, Inc. (9184); RL Salisbury, LLC (7836); RL Maryland, Inc. (7185); Red Lobster of Texas, Inc. (1424); Red Lobster of Bel Air, Inc. (2240); RLSV, Inc. (6180); Red Lobster Canada, Inc. (4569); and Red Lobster International Holdings LLC (4661). The Debtors' principal offices are located at 450 S. Orange Avenue, Suite 800, Orlando, FL 32801.

Red Lobster Management LLC and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by and through their proposed undersigned counsel, hereby file the attached (a) redline version of the proposed *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral on a Limited Basis, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief*, attached hereto as **Exhibit 1**; and (b) *Exhibit C – Red Lobster – Resolution Term Sheet*, attached hereto as **Exhibit 2**.

Dated:   June 14, 2024

Respectfully submitted,

*/s/ Paul Steven Singerman*

W. Austin Jowers (admitted *pro hac vice*)
Jeffrey R. Dutson (admitted *pro hac vice*)
Sarah L. Primrose (FL Bar No. 98742)
Christopher K. Coleman (admitted *pro hac vice*)
Brooke L. Bean (admitted *pro hac vice*)
Taeyeong Kim (admitted *pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone:  (404) 572-4600
Email:  ajowers@kslaw.com
      jdutson@kslaw.com
      sprimrose@kslaw.com
      christopher.coleman@kslaw.com
      bbean@kslaw.com
      tkim@kslaw.com

– and –

Michael Fishel (admitted *pro hac vice*)
**KING & SPALDING LLP**
1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone:  (713) 751-3200
Email:  mfishel@kslaw.com

Paul Steven Singerman
Florida Bar No. 378860
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Email:  singerman@bergersingerman.com

- and –

Nicolette C. Vilmos
Florida Bar No. 469051
**BERGER SINGERMAN LLP**
111 N. Magnolia Avenue
Suite 1450
Orlando, FL 32801
Telephone: (407) 749-7900
Email:  nvilmos@bergersingerman.com

*Filer's Attestation:  Pursuant to Local Rule 1001-2(g)(3) regarding signatures, Paul Steven Singerman attests that concurrence in the filing of this paper has been obtained.*

*Proposed Counsel for Debtors and Debtors-in-Possession*

# **<u>EXHIBIT 1</u>**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| RED LOBSTER MANAGEMENT LLC, [1] | Case No. 6:24-bk-02486-GER<br>Lead Case |
| | Jointly Administered with |
| RED LOBSTER RESTAURANTS LLC, | Case No. 6:24-bk-02487-GER |
| RLSV, INC., | Case No. 6:24-bk-02488-GER |
| RED LOBSTER CANADA, INC., | Case No. 6:24-bk-02489-GER |
| RED LOBSTER HOSPITALITY LLC, | Case No. 6:24-bk-02490-GER |
| RL KANSAS LLC, | Case No. 6:24-bk-02491-GER |
| RED LOBSTER SOURCING LLC, | Case No. 6:24-bk-02492-GER |
| RED LOBSTER SUPPLY LLC, | Case No. 6:24-bk-02493-GER |
| RL COLUMBIA LLC, | Case No. 6:24-bk-02494-GER |
| RL OF FREDERICK, INC., | Case No. 6:24-bk-02495-GER |
| RED LOBSTER OF TEXAS, INC., | Case No. 6:24-bk-02496-GER |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are Red Lobster Management LLC (6889); Red Lobster Sourcing LLC (3075); Red Lobster Supply LLC (9187); RL Kansas LLC (2396); Red Lobster Hospitality LLC (5297); Red Lobster Restaurants LLC (4308); RL Columbia LLC (7825); RL of Frederick, Inc. (9184); RL Salisbury, LLC (7836); RL Maryland, Inc. (7185); Red Lobster of Texas, Inc. (1424); Red Lobster of Bel Air, Inc. (2240); RLSV, Inc. (6180); Red Lobster Canada, Inc. (4569); and Red Lobster International Holdings LLC (4661). The Debtors' principal offices are located at 450 S. Orange Avenue, Suite 800, Orlando, FL 32801.

RL MARYLAND, INC.,                                    Case No. 6:24-bk-02497-GER
RED LOBSTER OF BEL AIR, INC.,                         Case No. 6:24-bk-02498-GER
RL SALISBURY, LLC,                                    Case No. 6:24-bk-02499-GER
RED LOBSTER INTERNATIONAL HOLDINGS LLC,              Case No. 6:24-bk-02500-GER

     Debtors.

_____/

### ~~INTERIM~~FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL ON A LIMITED BASIS, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) ~~SCHEDULING A FINAL HEARING, AND (VII)~~ GRANTING RELATED RELIEF

THIS CASE came before the Court on ~~May 21~~June 14, 2024, at ~~1:30 p.m~~9:30 a.m., upon the motion, dated May 20, 2024 (the "Motion") [ECF No. 79] of Red Lobster Management LLC ("RLM") and its affiliated debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), seeking entry of an interim order (~~this~~the "Interim Order")[2] and a final order (this "Final Order ~~(as defined herein~~" and, together with this Interim Order, the "DIP Orders") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 503, 507, and 552 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2081-1(g)(1) and 2018-1(g)(2) of the Local Rules of Bankruptcy Procedure (the "Local Rules") for the United States Bankruptcy Court for the Middle District of Florida (the "Court"), *inter alia*:

     (i)     authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis (the "DIP Facility") consisting of (a) a new money multiple draw term loan

---

[2] Capitalized terms used in this ~~Interim~~Final Order but not defined herein shall have the meanings given to them in the DIP Credit Agreement (as defined below) or the Motion, as applicable.

facility in the aggregate principal amount of $100.00 million (the "<u>DIP Term Loan Commitments</u>" and the loans pursuant thereto, the "<u>DIP Term Loans</u>") consisting of (1) $40.00 million in the form of an Interim DIP Term Loan ~~to be~~<u>which was</u> made available to the Debtors in a single draw upon entry of the Interim Order (the "<u>Interim Amount</u>"), and (2) an additional $60.00 million in the form of a Final DIP Term Loan to be made available in up to two additional draws upon entry of ~~the~~<u>this</u> Final Order (the "<u>Final Amount</u>" and, together with the Interim Amount, the "<u>New Money Amount</u>"), and (b)   a roll-up of certain Prepetition Obligations (as defined below) of the Roll-Up Amount (as defined below) on a cashless dollar-for-dollar basis into DIP Term Loans under the DIP Facility, in each case, pursuant to the terms and conditions of ~~this~~<u>the</u> Interim Order, ~~the~~<u>this</u> Final Order, the Approved Budget (as defined below), and that certain *Secured Superpriority Debtor-In-Possession Financing Agreement* attached hereto as **Exhibit A** (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "<u>DIP Credit Agreement</u>"), by and among RLM, as borrower, each affiliate of RLM that is a guarantor thereunder, Fortress Credit Corp., as administrative agent and collateral agent (in such capacities, the "<u>DIP Agent</u>"), and the lenders party thereto from time to time (the "<u>DIP Lenders</u>," and together with the DIP Agent, the "<u>DIP Secured Parties</u>");

(ii)     approving the terms of and authorizing the Debtors party thereto to execute and deliver the DIP Credit Agreement and any other agreements, instruments, and documents related or in connection thereto (the "<u>DIP Documents</u>"), which shall be on terms consistent with the terms set forth in the DIP Credit Agreement and otherwise in form and substance acceptable to the Required Lenders (as that term is defined in the DIP Credit Agreement) (or as otherwise

provided in the DIP Documents) to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)    authorizing the Debtors to enter into the DIP Credit Agreement and to incur all obligations under the DIP Documents to the DIP Secured Parties, including the Roll-Up Obligations (as defined below) (collectively, the "DIP Obligations"), and granting the DIP Agent and DIP Lenders allowed superpriority administrative expense claim status in each of the Chapter 11 Cases and any Successor Cases (as defined below), subject to the Carve-Out (as defined below) and the Administration Charge as against the Canadian Collateral;

(iv)    subject to the terms of this ~~Interim~~Final Order, granting to the DIP Agent (on behalf of the DIP Secured Parties) automatically perfected security interests in and priming liens on all of the DIP Collateral (as defined below), including, without limitation, all property constituting "cash collateral" as such term is defined in section 363(a) of the Bankruptcy Code, (including, without limitation, all cash and cash equivalents and other amounts from time to time on deposit or maintained by the Debtors in any deposit or securities account or accounts as of the Petition Date) or any cash or cash equivalents received by the Debtors after the Petition Date as proceeds of the Prepetition Collateral (together, "Cash Collateral");

(v)    authorizing the Debtors to use proceeds of the DIP Facility and Cash Collateral to: (a) provide financing for working capital and other general corporate purposes, including for bankruptcy-related costs and expenses, all to the extent provided in, and in accordance with, the Approved Budget, ~~this~~the Interim Order, and the DIP Documents; (b) make permitted adequate protection payments as specified below; (c) pay the principal, interest, fees, expenses, and other amounts payable and reimbursable under the DIP Documents or ~~this~~the Interim Order as such become due, including, without limitation, origination and transaction fees and the fees and

4

disbursements of the DIP Professionals (as defined below), (d) provide Cash Collateral as set forth herein with respect to the Prepetition ABL Obligations, and (e) any other purposes agreed upon in the DIP Documents, in each case solely in accordance with the Approved Budget, ~~this~~the Interim Order, and the DIP Documents;

(vi)    authorizing the Debtors to use the Prepetition Collateral (as defined below), including the Cash Collateral on ~~an interim~~a final basis in accordance with both the Approved Budget and the DIP Documents, and providing, among other things, adequate protection to the Prepetition Secured Parties (as defined below) for any Diminution (as defined below) of their interests in the Prepetition Collateral, including the Cash Collateral;

(vii)    authorizing the Debtors to consummate the Payoff Transactions contemplated by the Payoff Letter, and perform all such other and further acts as may be required in connection with the Payoff Letter, including, without limitation, to use proceeds of the DIP Facility to cash collateralize the Wells Fargo Letters of Credit, the Bank Product Obligations (as defined in the Payoff Letter), and the other Surviving Obligations (as defined in the Payoff Letter);

(viii)    modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this ~~Interim~~Final Order;

(ix)    authorizing the DIP Agent, at the direction of the Required Lenders, upon the occurrence of an Event of Default (as defined below): to (1) terminate the funding obligations under the DIP Documents in accordance with their terms; (2) declare the DIP Obligations to be immediately due and payable in full, to the extent permitted by the terms thereof; and (3) subject to this ~~Interim~~Final Order, be granted relief from the automatic stay to foreclose on the DIP Liens and DIP Collateral;

(x)    approving of certain stipulations in paragraph G of this ~~Interim~~Final Order by the Debtors with respect to the Prepetition Loan Documents and the liens and security interests arising therefrom subject to the Challenge Period described in paragraph 46 hereof;

(xi)    authorizing payment of the DIP Fees (as defined below); and

(xii)    waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this ~~Interim~~Final Order and providing for the immediate effectiveness of this ~~Interim~~Final Order; ~~and~~

~~(xiii) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and approving the form of notice with respect to the Final Hearing.~~

The Court having considered the Motion, the exhibits attached thereto, the *Declaration of Jonathan Tibus in Support of Debtors' Chapter 11 Petitions and First-Day Pleadings* (the "First Day Declaration")*,* the *Declaration of Nicholas Haughey in Support of Motion of the Debtors and Debtors in Possession, Pursuant to Sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-2, for Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling Final Hearing and (IV) Granting Related Relief* (the "Haughey Declaration"), attached to the Motion as Exhibit E, the *Declaration of Teri Stratton in Support of Motion of the Debtors and Debtors in Possession, Pursuant to Sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-2, for Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling Final Hearing and (IV) Granting Related Relief* (the "Stratton Declaration"), attached to the Motion as Exhibit F, the

6

DIP Credit Agreement, and any other DIP Documents, and the evidence submitted and argument made at the interim hearing held on May 21, 2024 (the "Interim Hearing") and the final hearing held on June 14, 2024 (the "Final Hearing"); and notice of the ~~Interim~~Final Hearing having been provided in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the ~~Interim~~Final Hearing having been held and concluded; and all objections, ~~if any, to the interim~~including the *Objection of the Official Committee of Unsecured Creditors to Corrected Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 350] (the "Committee Objection"), the *Joint Objection to of the Texas Taxing Authorities to the Debtors' Corrected Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 308], and the *Limited Objection to Debtors' Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 90] filed by the United States Trustee for the Middle District of Florida to the final relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the ~~interim~~final relief requested in the Motion is necessary to avoid ~~immediate and irreparable~~ harm to the Debtors and their estates (the

"Estates") ~~pending the Final Hearing,~~, and otherwise is fair and reasonable and in the best interests of the Debtors, their Estates and all parties-in-interest, and is essential for the continued operation of the Debtors' business and the preservation of the value of the Debtors' assets; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

Based upon the record established at the ~~interim hearing~~Interim Hearing and the Final Hearing, the Court makes the following findings of fact and conclusions of law:[3]

A.    <u>Disposition</u>.  The relief requested in the Motion is granted on ~~an interim~~a final basis in accordance with the terms of this ~~Interim~~Final Order.  Any objections to the Motion with respect to the entry of this ~~Interim~~Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits. This ~~Interim~~Final Order shall become effective immediately upon its entry and any applicable stay (including under Bankruptcy Rule 6004) is waived to permit such effectiveness.

B.    <u>Petition Date</u>.  On May 19, 2024 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.

C.    <u>Debtors in Possession</u>.  The Debtors are operating their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee or examiner has been appointed.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the Chapter 11 Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief sought in the Motion are sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Rules.

E.    <u>Committee</u>.  ~~As of the date hereof, no statutory committee has been appointed~~<u>On May 31, 2024, the United States Trustee for the Middle District of Florida appointed an official committee of unsecured creditors</u> in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "<u>Committee</u>").

F.    <u>Notice</u>.  Upon the record presented to the Court at the ~~Interim~~<u>Final</u> Hearing, and under the exigent circumstances set forth therein, notice of the Motion and the relief requested thereby and this ~~Interim~~<u>Final</u> Order has been provided in accordance with Bankruptcy Rules 4001(b) and 4001(c)(1) to: (a) the Office of the U.S. Trustee for the Middle District of Florida (the "<u>U.S. Trustee</u>"); (b) entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Agent, (i) Proskauer Rose LLP, One International Place, Boston, MA, Attn: Charles A. Dale and Eleven Times Square, New York, NY 10036, Attn: Megan R. Volin and Dylan J. Marker, and (ii) Trenam, Kemker, Scharf, Barkin, Frye, O'Neill and Mullis, P.A., 101 E Kennedy Boulevard, Suite 2700, Tampa, FL 33602, Attn: Lara Roeske Fernandez, (d) the United States Attorney's Office for the Middle District of Florida; (e) the Internal Revenue Service; (f) the state attorneys general for states in which the

Debtors conduct business; (g) counsel to Prepetition ABL Agent, (i) Goldberg Kohn Ltd., 55 E. Monroe Street, Suite 3300, Chicago, IL 60603, Attn: Randall L. Klein, and (ii) Burr & Forman LLP, 200 South Orange Avenue, Suite 800, Orlando, FL 32801, Attn: Eric S. Golden; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"), which notice was appropriate under the circumstances and sufficient for the Motion.  No further notice of, or hearing regarding, the entry of this ~~Interim~~Final Order and the relief set forth therein is necessary or required.  The ~~interim~~final relief granted herein is necessary to avoid ~~immediate and irreparable~~ harm to the Debtors and their Estates ~~pending a Final Hearing~~.

G. **Debtors' Stipulations**.  Subject to paragraph 46 hereof: (i) each stipulation, admission, and agreement contained in this ~~Interim~~Final Order, including, without limitation, the Debtors' Stipulations, shall be binding upon the Committee, the Debtors, their Estates, and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes, and (ii) the Debtors and the Committee are deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the Petition Date.  Without prejudice to the rights of parties in interest (other than the Committee) as set forth in paragraph 46 herein, the Debtors, in requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Secured Parties to provide the DIP Facility, on their own behalf and on behalf of their Estates and all representatives of such Estates, admit, stipulate, acknowledge, and agree as follows (paragraphs G(i) through G(ix) below are referred to, collectively, as the "Debtors' Stipulations"):

(i) *Prepetition Term Loan Facility*.  Pursuant to that certain Financing Agreement, dated as of January 22, 2021 (as previously amended, restated, supplemented or otherwise modified, the "Prepetition Credit Agreement", and collectively with all other agreements, instruments and documents executed or

delivered in connection therewith or otherwise evidencing or securing any Prepetition Term Loan Obligations, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Loan Documents"), by and among (a) RLM, as the borrower, (b) the other Debtors, as guarantors, (c) the other borrowers and guarantors party thereto from time to time, (d) Fortress Credit Corp., as administrative agent and collateral agent (in such capacity, together with any successor thereto, the "Prepetition Term Loan Agent"), and (e) the lenders party thereto from time to time (the "Prepetition Term Loan Lenders," and together with the Prepetition Term Loan Agent, collectively, the "Prepetition Term Loan Parties"), the Prepetition Term Loan Lenders provided secured term loans to the Debtors (the "Prepetition Term Loan Facility").

(ii) *Prepetition Term Loan Obligations*.  As of the Petition Date, the Debtors were indebted and jointly and severally liable to the Prepetition Term Loan Parties in the aggregate principal amount outstanding under the Prepetition Term Loan Facility of $264,720,000  (together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations in connection with the Prepetition Term Loan Facility pursuant to the Prepetition Term Loan Documents, the "Prepetition Term Loan Obligations").

(iii)    *Prepetition ABL Facility*.  Pursuant to that certain Credit Agreement, dated as of January 22, 2021 (as previously amended, restated, supplemented or otherwise modified, the "Prepetition ABL Credit Agreement", and collectively with all other agreements, instruments and documents executed or delivered in connection therewith or otherwise evidencing or securing any Prepetition ABL Obligations, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Loan Documents", and together with the Prepetition Term Loan Documents, the "Prepetition Loan Documents"), by and among (a) RLM, as the borrower, (b) Red Lobster Intermediate Holdings LLC, (c) the other borrowers party thereto from time to time, (d) Wells Fargo Bank, National Association, as administrative agent for each member of the lender group and the Bank Product Providers (in such capacity, together with its successors and assigns in such capacity, the "Prepetition ABL Agent", and together with the Prepetition Term Loan Agent, the "Prepetition Agents"), and (e) the lenders party thereto from time to time (the "Prepetition ABL Lenders", and together with the Prepetition ABL Agent, the Issuing Lenders, and the Bank Product Providers (each as defined in the Prepetition ABL Credit Agreement), collectively, the "Prepetition ABL Parties" and together with the Prepetition Term Loan Parties, the "Prepetition Secured Parties"), the Prepetition ABL

Lenders provided secured revolving loans to, and issued certain letters of credit in favor of, the Debtors (the "Prepetition ABL Facility", and together with the Prepetition Term Loan Facility, the "Prepetition Facilities").

(iv) *Prepetition ABL Obligations*.  As of the Petition Date, the Debtors were indebted and jointly and severally liable to the Prepetition ABL Parties in the aggregate principal amount outstanding under the Prepetition ABL Facility of at least $29,276,399 (together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations in connection with the Prepetition ABL Facility pursuant to the Prepetition ABL Loan Documents, the "Prepetition ABL Obligations", and together with the Prepetition Term Loan Obligations, the "Prepetition Obligations"). For the avoidance of doubt, as of the Petition Date, the Revolver Commitment (as defined in the Prepetition ABL Credit Agreement) has been reduced to $0 and no revolving loans made thereunder are outstanding.  Under the Prepetition ABL Credit Agreement, Wells Fargo Bank, National Association ("Wells Fargo"), in its capacity as an Issuing Bank (the "L/C Issuer"), issued letters of credit in the face amount of $29.2 million (the "Letters of Credit"). RLM entered into that certain WellsOne Commercial Card Agreement, dated on or around August 8, 2017 (as amended, restated, or otherwise modified from time to time, the "Card Agreement") (as amended, restated, or otherwise modified from time to time, the "Card Agreement"), with Wells Fargo, National Association ("Wells Fargo"), pursuant to which Wells Fargo issued to RLM credit cards (including commercial cards (including so-called "purchase cards", "procurement cards" or "p-cards")) and provided other treasury management services.  The obligations under the Card Agreement, which has a total credit limit of $1.0 million, are "Bank Product Obligations" under the Prepetition ABL Credit Agreement.  The Letters of Credit and Bank Product Obligations are secured by funds on deposit in one or more cash collateral accounts held in the name of RLM at Wells Fargo into which such cash collateral may be transferred and held by Wells Fargo.

(v) *Prepetition Liens and Prepetition Collateral*.  As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, to secure the Prepetition Obligations, the Debtors granted:  (a) to the Prepetition Term Loan Agent for the benefit of  the Prepetition Term Loan Parties and as security for the Prepetition Term Loan Obligations (the "Prepetition Term Loan Liens") security interests in and continuing liens as follows:  (1) a first priority security interest in and continuing lien  on the Term Loan Priority Collateral (as defined in the Intercreditor Agreement), and (2) a second priority security interest in and continuing lien on the ABL Priority Collateral (as defined in the Intercreditor Agreement); and (b) to the Prepetition ABL Agent  for the

benefit of the Prepetition ABL Lenders and as security for the Prepetition ABL Obligations (the "Prepetition ABL Liens" and, together with the Prepetition Term Loan Liens, the "Prepetition Liens"), security interests in and continuing liens as follows: (1) a first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in the Intercreditor Agreement), and (2) a second priority security interest in and continuing lien on the Term Loan Priority Collateral (as defined in the Intercreditor Agreement), in each case subject to the Intercreditor Agreement.

(vi) *Validity, Extent, Perfection and Priority of Prepetition Liens and Prepetition Obligations.* As of the Petition Date: (a) the Prepetition Liens on all of the Debtors' right, title and interest in substantially all of their assets (the "Prepetition Collateral") were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens senior by operation of law and otherwise permitted by the Prepetition Loan Documents (solely to the extent any such permitted liens (1) were in existence on the Petition Date, (2) are valid, unavoidable and properly perfected as the Petition Date or perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, (3) are senior in priority to the Prepetition Obligations, (4) are permitted to be incurred under the Prepetition Loan Documents, and (5) are expressly identified on a schedule to the DIP Documents, the "Prepetition Permitted Liens"); (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Secured Parties enforceable in accordance with the terms of the applicable Prepetition Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature, whether arising at law or in equity, to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their Estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, consultants, directors, and employees arising out of, based upon or related to the Prepetition Facilities; (f) the Debtors and the Committee have waived, discharged, and released any right to, and are forever barred from bringing any, Challenge (as defined below) to any of the Prepetition Obligations, the priority of the Prepetition Secured Parties' obligations thereunder, and the legality, validity, extent, and priority of the Prepetition Liens; (g) the Prepetition Obligations constitute allowed, secured claims

within the meaning of sections 502 and 506 of the Bankruptcy Code; and (h) all or substantially all of the Debtors' cash and cash equivalents, including cash on deposit in any account or accounts as of the Petition Date, cash obtained at any time thereafter (including proceeds of the DIP Facility), securities or other property, wherever located, whether subject to control agreements or otherwise, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Prepetition Secured Parties.

(vii)    *Intercreditor Agreement.*    The Prepetition Term Loan Agent and Prepetition ABL Agent entered into that *Intercreditor Agreement*, dated as of January 22, 2021 (as amended, restated, supplemented, or otherwise modified in accordance with its terms, the "Intercreditor Agreement") to govern certain rights, interests, obligations, priority, and positions of the Prepetition Term Loan Parties and the Prepetition ABL Parties with respect to the assets and properties of the Prepetition Collateral and the Prepetition Liens.

(viii)    *No Control*.    None of the DIP Secured Parties or Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted, or is a control person or insider (as defined in the Bankruptcy Code) of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this ~~Interim~~Final Order, the DIP Facility, the DIP Liens, the DIP Obligations, the DIP Documents, Prepetition Facilities, Prepetition Liens, Prepetition Obligations, Prepetition Loan Documents, or the transactions contemplated hereunder or thereunder.

H. <u>Releases</u>. Subject to paragraph 46 hereof <u>with respect to parties-in-interest other than the Committee</u>, the Debtors, on behalf of themselves and their respective Estates (including any successor trustee or other estate representative in the Chapter 11 Cases and any Successor Cases (as defined herein), and any party acting by, through or under the Debtors or their Estates), hereby stipulate and agree that they absolutely and unconditionally release and forever and irrevocably discharge and acquit each of the DIP Secured Parties, the Prepetition Secured Parties and their respective affiliates and each of their respective former or current officers, partners, directors, managers, owners, members, principals, employees, agents, related funds, investors, financing sources, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof (collectively, the "<u>Released Parties</u>") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, disputes, liabilities, allegations, suits, controversies, proceedings, actions and causes of action arising prior to the Petition Date (collectively, the "<u>Released Claims</u>") of any kind, nature or description, whether known or unknown, foreseen or unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or regulation or otherwise, arising out of or related to (as applicable) the DIP Documents, the Prepetition Loan Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions contemplated thereby and the obligations and financial obligations made thereunder or otherwise related to the Debtors, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this

~~Interim~~Final Order.  The Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition Obligations that the Debtors may now have or may claim to have against the Released Parties, arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to this Court entering this ~~Interim~~Final Order relating to the Debtors' secured lending relationship with the Prepetition Secured Parties.

## I.     Findings Regarding Postpetition Financing

(i)     *Request for Postpetition Financing*.  The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein to administer their Chapter 11 Cases and fund their operations in accordance with the Approved Budget (as defined below), DIP Credit Agreement, and DIP Documents.  ~~At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order" and, together with this Interim Order, the "DIP Orders"), which shall be in form and substance acceptable to the DIP Agent.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.~~

(ii)    *Priming of the Prepetition Liens*.  The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Documents and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses to the benefit of their Estates and creditors, and the Debtors would not be able to obtain debtor-in-possession financing in a sufficient amount without granting such priming liens.  Consistent with the requirements of section 364(d) of the Bankruptcy Code, the Prepetition Secured Parties shall receive adequate protection as set

forth in this ~~Interim~~Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, against any post-petition diminution in value of the Prepetition Secured Parties' respective liens and interests in the Prepetition Collateral (including Cash Collateral) resulting from, among other things, (i) the use, sale, or lease by the Debtors of such collateral, (ii) the market value decline of such collateral, (iii) the use of Cash Collateral by each of the Debtors, (iv) the imposition of the automatic stay, (v) the subordination of the Prepetition Liens and Prepetition Secured Obligations to the Carve-Out, the Canadian Priority Charges, the DIP Liens, and the DIP Obligations, in each case, as set forth in this ~~Interim~~Final Order and the Canadian DIP Recognition Order, and (vi) any other act or omission which causes diminution in the value of their respective liens or interests in the Prepetition Collateral (including Cash Collateral) (collectively, the "Diminution").

(iii)    *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors have ~~an immediate and~~a critical need to obtain the financing pursuant to the DIP Facility and to continue to use the Prepetition Collateral (including Cash Collateral) in order to, among other things, (i) pay the fees, costs and expenses incurred in connection with the Chapter 11 Cases, (ii) fund any obligations benefitting from the Carve-Out and the Canadian Priority Charge, (iii) permit the orderly continuation of the operation of their businesses, (iv) maintain business relationships with customers, vendors and suppliers, (v) make payroll, (vi) cash collateralize the Wells Fargo Letters of Credit and p-cards, and related interest, fees, expenses, costs and other charges in accordance with the terms of the Payoff Letter, and (vii) satisfy other working capital and operational needs.  The incurrence of new debt under the DIP Documents and use of Cash Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtors.  ~~Immediate and irreparable harm~~Harm will be caused to the Debtors and their

Estates if ~~immediate~~ financing is not obtained and permission to use Cash Collateral is not granted. The terms of the proposed financing are fair and reasonable, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The adequate protection provided in this ~~Interim~~Final Order and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.

      (iv) *No Credit Available on More Favorable Terms*. The DIP Facility is the best source of debtor-in-possession financing available to the Debtors. Given their current financial condition, financing arrangements, capital structure, and the circumstances of these Chapter 11 Cases, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. Further, the Prepetition Secured Parties are adequately protected and/or have consented to the Debtors incurring debtor-in-possession financing, the priming of the Prepetition Liens, and the use of their Cash Collateral, only on the terms and subject to the conditions set forth in the DIP Documents and this ~~Interim~~Final Order. The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their Estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their Estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Secured Parties: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein; (2) superpriority claims and priming liens to the extent set forth in this

~~Interim~~Final Order, the DIP Credit Agreement, and the DIP Documents; and (3) the other protections set forth in this ~~Interim~~Final Order.

(v)    *Use of Cash Collateral and Proceeds of the DIP Facility*.  As a condition to the Debtors' entry into the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Prepetition Collateral, including Cash Collateral, the Debtors have agreed that Cash Collateral and the proceeds of the DIP Facility shall be used solely in accordance with the terms and conditions of this ~~Interim~~Final Order and the DIP Documents and in accordance with the Approved Budget (as defined below), subject to Permitted Variances (as defined below).

(vi)    *Application of Proceeds of Collateral*.  As a condition to entry into the DIP Documents, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors have agreed that, as of and commencing on the date of entry of this ~~Interim~~Final Order, the Debtors shall apply the proceeds of DIP Collateral in accordance with this ~~Interim~~Final Order, the Approved Budget, and the DIP Documents.

(vii)    *Roll-Up of Prepetition Term Loan Obligations Into DIP Obligations*. Prepetition Term Loan Obligations held by the DIP Lenders (or their affiliates) shall be "rolled up" and converted on a cashless dollar-for-dollar basis into principal obligations constituting DIP Obligations, on a *pro rata* basis according to the DIP Lenders' term loan holdings under the DIP Facility (a) upon and following entry of ~~this~~the Interim Order, in a ratio of 1.75:1 of the DIP Term Loans advanced during the interim period upon each draw under the DIP Facility (the "Interim Roll-Up Amount"), and (b) upon entry of ~~the~~this Final Order, in a ratio of 1.75:1 of the DIP Term Loans advanced upon each draw under the DIP Facility (the "Final Roll-Up Amount" and together with the Interim Roll-Up Amount, the "Roll-Up Amount"). The Roll-Up Amount

shall be converted on a cashless dollar-for-dollar basis into principal obligations constituting DIP Obligations, without any further action by the Debtors or any other party (the "Roll-Up Obligations"). The conversion (or "roll-up") shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition Term Loan Lenders as DIP Lenders to fund amounts, and provide other consideration to the Debtors under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Term Loan Obligations. Notwithstanding any other provision of this ~~Interim Order, the~~ Final Order, or the DIP Documents, all rights of the Prepetition Secured Parties shall be fully preserved. The Roll-Up Obligations are an inextricable component of the DIP Facility, and the Prepetition Secured Parties would not otherwise consent to the use of their Cash Collateral or the subordination of the Prepetition Liens to the DIP Liens, and the DIP Agent and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtors thereunder without the inclusion of the Roll-Up Obligations in the DIP Obligations. The Roll-Up Obligations will enable the Debtors to obtain urgently needed financing to administer these Chapter 11 Cases and fund their operations.

J.   Adequate Protection.   In exchange for their consent to (i) the priming of the Prepetition Liens by the DIP Liens and (ii) the use of Cash Collateral to the extent set forth in this ~~Interim~~Final Order, the Prepetition Secured Parties shall receive adequate protection to the extent of any Diminution of their interests in the Prepetition Collateral, as more fully set forth in this ~~Interim~~Final Order.

K.   Good Faith of the DIP Secured Parties.

(i)   *Willingness to Provide Financing*.   The DIP Secured Parties have committed to provide financing to the Debtors subject to: (a) entry of ~~this~~the Interim Order and

~~the~~this Final Order; (b) approval of the terms and conditions of the DIP Facility and those set forth in the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this ~~Interim~~Final Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii) *Business Judgment and Good Faith Pursuant to Section 364(e).* Based on the Motion, the *Declaration of Jonathan Tibus in Support of Debtors' Chapter 11 Petitions and First Day Relief*, the *Declaration of Teri Stratton in Support of Debtors' Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, and the record presented to the Court at the Interim Hearing and the Final Hearing, (i) the terms of the financing embodied in the DIP Facility, including the Roll-Up Obligations, fees, expenses, and other charges paid and to be paid thereunder or in connection therewith, (ii) the adequate protection authorized by the ~~Interim~~Final Order and DIP Documents and (iii) the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral), in each case pursuant to this ~~Interim~~Final Order and the DIP Documents, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and represent the best financing (and terms) available under the circumstances.

(iii)    *Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties with the assistance and counsel of their respective advisors.  Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Secured Parties and the Prepetition Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

(iv)    *Consent to DIP Facility and Use of Cash Collateral.* The Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral and the other Prepetition Collateral, and the Debtors' entry into the DIP Documents solely in accordance with and subject to the terms and conditions in this ~~Interim~~Final Order and the DIP Documents.

L.    <u>Good Cause</u>.  Good cause has been shown for immediate entry of this ~~Interim~~Final Order, and the entry of this ~~Interim~~Final Order is in the best interests of the Debtors, the Estates and their stakeholders.  Among other things, the relief granted herein will minimize disruption of the Debtors' business and permit the Debtors to fund payroll obligations, to pay amounts owed to vendors, suppliers, landlords and to satisfy other critical expenses, including the payment of premiums on insurance policies, each as necessary to maximize the value of the Estates.  The terms of the Debtors' DIP Facility, use of Cash Collateral and proposed adequate protection arrangements, as set forth in this ~~Interim~~Final Order, are fair and reasonable under the circumstances, and reflect the Debtors' exercise of prudent business judgment.

~~M. Immediate Entry.   Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Rules.~~

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. <u>DIP Financing Approved</u>.   On ~~an interim~~<u>a final</u> basis, entry into the DIP Credit Agreement and other DIP Documents is authorized and approved, and the use of Cash Collateral is authorized, in each case, subject to the terms and conditions set forth in this ~~Interim~~<u>Final</u> Order.  All objections to this ~~Interim~~<u>Final</u> Order to the extent not withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This ~~Interim~~<u>Final</u> Order shall become effective immediately upon its entry.

<u>DIP Facility Authorization</u>

2. <u>Authorization of the DIP Financing</u>.  The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this ~~Interim~~<u>Final</u> Order and the DIP Documents, and to execute, deliver, and perform under all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Documents and the creation and perfection of the DIP Liens described in and provided for by this ~~Interim~~<u>Final</u> Order and the DIP Documents. The Debtors are hereby authorized and directed to pay, in accordance with this ~~Interim~~<u>Final</u> Order, any principal, interest, fees, expenses, and other amounts described in the DIP Documents and this ~~Interim~~<u>Final</u> Order, as such amounts become due and owing, without need to obtain further

23

Court approval (except as otherwise provided herein or in the DIP Documents) subject to and in accordance with the terms hereof and thereof, including, without limitation, any closing fees and commitment fees, as well as any reasonable and documented fees and disbursements of Proskauer Rose LLP, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill and Mullis, P.A., and Deloitte Transactions & Business Analytics LLP, as DIP Professionals (as defined below), as set forth herein and in the DIP Documents, whether or not such professional fees and disbursements arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this ~~Interim~~Final Order and the DIP Documents. Upon execution and delivery, the DIP Documents shall represent legal, valid, and binding obligations of the Debtors, enforceable against each of the Debtors and their Estates in accordance with their terms. Each officer of a Debtor acting individually is hereby authorized to execute and deliver each of the DIP Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Debtors.

3.      Authorization to Borrow.    To prevent ~~immediate and irreparable~~ harm to the Debtors' Estates, and to enable the Debtors to continue to operate their business and preserve and maximize the value of their Estates, subject to the terms and conditions set forth in the DIP Documents and this ~~Interim~~Final Order, the Debtors ~~are hereby~~were, pursuant to the Interim Order, authorized to borrow the Interim Amount and the Interim Roll-Up Amount, and are hereby authorized to borrow the Final Amount and the Final Roll-Up Amount, each subject to any limitations on, or conditions to, borrowing under the DIP Documents, which borrowings shall be used solely for purposes permitted under the DIP Documents, including, without limitation, to provide working capital for the Debtors and to pay interest, fees, costs, charges and

expenses, in each case, in accordance with ~~this~~the Interim Order, this Final Order, the DIP Documents, and the Approved Budget.

4.    <u>DIP Obligations</u>.  The DIP Documents and this ~~Interim~~Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations.   All DIP Obligations shall be enforceable against the Debtors, their Estates, and any successors thereto, including without limitation, any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>").  Upon entry of ~~this~~the Interim Order, the DIP Obligations ~~will~~included, and upon entry of this Final Order, shall continue to include all loans, guarantees, reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Secured Parties, including, without limitation, all principal, accrued interest, costs, charges, fees, expenses and other amounts under the DIP Documents.  The Debtors shall be jointly and severally liable for the DIP Obligations.  The DIP Obligations shall become due and payable, without notice or demand, on the Termination Date (as defined below).  No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens) to the DIP Secured Parties, shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or be subject to any disgorgement, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), claim,

counterclaim, charge, assessment, cross-claim, defense, or any other liability or challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for any reason.

5.    <u>DIP Collateral</u>.  To secure the DIP Obligations, effective immediately upon entry of ~~this~~the Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent (for the benefit of the DIP Lenders), ~~is hereby~~was granted~~,~~ continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "<u>DIP Liens</u>") the DIP Collateral, and all cash and non-cash proceeds of DIP Collateral.[4]

6.    <u>DIP Liens</u>.  The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority to the Prepetition Liens on the Prepetition Collateral and are superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral (whether currently existing or hereafter created), except that the DIP Liens shall be

---

[4] "<u>DIP Collateral</u>" means: all property of the estate under section 541 of the Bankruptcy Code, including all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors, including: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, real estate (including, for the avoidance of doubt, that certain real property owned by Red Lobster Canada, Inc. located at 67 King George Road, Brantford, Ontario, N3R 5K2), furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds (provided that the liens and rights granted herein shall not interfere with any rights held by a landlord to insurance proceeds for damage to a landlord's property); (b) all proceeds of leased real property; (c) ~~subject to entry of a Final Order providing for such relief,~~ the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents; (d) proceeds from the Debtors' exercise of rights under section 506(c) and 550 of the Bankruptcy Code; (e) all Prepetition Collateral, (f) all property of the Debtors that was not otherwise subject to valid, perfected, enforceable and unavoidable liens on the Petition Date, and (g) all proceeds from the sale, assignment, or other disposition of (i) any commercial real estate leases and (ii) the Debtors' right to select, identify, and designate which commercial leases may be assumed and assigned under section 365 of the Bankruptcy Code. Notwithstanding the foregoing, DIP Collateral shall not include the Debtors' real property leases (but shall include all proceeds of such leases) solely to the extent that the grant of a DIP Lien is prohibited or restricted by the terms of such real property lease or applicable nonbankruptcy law to attach to any such real property lease.

subject only to (i) the Carve-Out, (ii) the Administration Charge as against the Canadian Collateral, and (iii) the Prepetition Permitted Liens. Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. The DIP Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any Estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.      <u>DIP Superpriority Claims</u>.   Subject to the Carve-Out and the Administration Charge against the Canadian Collateral, upon entry of ~~this~~<u>the</u> Interim Order, the DIP Secured Parties ~~are hereby~~<u>were</u> granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claims</u>") for all DIP Obligations: (a) except as set forth herein (including with respect to the Carve-Out), with priority over any and all administrative expense claims and unsecured claims against the Debtors or their Estates in any of the Chapter 11 Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all

times be senior to the rights of the Debtors and their Estates, and any successor trustee or other estate representative to the extent permitted by law.

8.     <u>DIP Roll-Up Obligations</u>.  Upon entry of the Interim Order, and upon each draw on the DIP Facility prior to entry of ~~the~~<u>this</u> Final Order, Prepetition Term Loan Obligations in an aggregate amount equal to the Interim Roll-Up Amount ~~shall be~~<u>were</u> converted on a cashless dollar-for-dollar basis into principal obligations constituting DIP Obligations without any further action by the Debtors or any other party.  Upon entry of ~~the~~<u>this</u> Final Order, Prepetition Term Loan Obligations in an aggregate amount equal to the Final Roll-Up Amount shall be converted on a cashless dollar-for-dollar basis into principal obligations constituting DIP Obligations without any further action by the Debtors or any other party.

9.     <u>No Obligation to Extend Credit</u>.  The DIP Secured Parties shall have no obligation to make any loan or advance under the DIP Documents unless all of the conditions precedent under the DIP Documents and this ~~Interim~~<u>Final</u> Order have been satisfied in full or waived by the Required Lenders in accordance with the terms of the DIP Documents.

10.     <u>Use of Proceeds of DIP Facility</u>.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this ~~Interim~~<u>Final</u> Order and the DIP Documents, and only in compliance with the Approved Budget (subject to the Permitted Variances) and the terms and conditions in this ~~Interim~~<u>Final</u> Order and the DIP Documents (a) to repay the obligations under that certain the Prepetition ABL Credit Agreement in full (including cash collateralization of Wells Fargo Letters of Credit, p-cards and Surviving Obligations (as defined in the Payoff Letter)) pursuant to the terms of the Payoff Letter, (b) to pay transaction costs, fees and expenses that are incurred in connection with the DIP Facility, (c) to pay professional fees of the Debtors and their Estates and the Committee,

(d) for working capital and other general corporate purposes permitted by the DIP Documents, (e) to pay Statutory Fees (as defined herein at paragraph 38(i)), (f) if necessary, to fund the Excluded Cash (as that term is defined in the Stalking Horse Acquisition Agreement) subject to ~~this~~the Interim Order or ~~the~~this Final Order, as applicable.  The deemed proceeds of the Roll-Up Obligations shall be used to refinance an equal amount of the Prepetition Term Loan Obligations held by the DIP Lenders (or their affiliates) reducing the amount of the "Obligations" (as defined in the Prepetition Credit Agreement) by such amount.

11.     <u>No Monitoring Obligation</u>.  The DIP Secured Parties shall have no obligation or responsibility to monitor the Debtors' use of the DIP Facility, and the DIP Secured Parties may rely upon the Debtors' representation that the use of the DIP Facility at any time is in accordance with the requirements of this ~~Interim~~<u>Final</u> Order and the DIP Documents.

<u>Authorization to Use Cash Collateral</u>

12.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this ~~Interim~~<u>Final</u> Order and the DIP Documents, and in accordance with the Approved Budget (subject to the Permitted Variances), the Debtors are authorized to use Cash Collateral until the expiration of the Remedies Notice Period (as defined below) following the Termination Date. Nothing in this ~~Interim~~<u>Final</u> Order shall authorize the disposition of any assets of the Debtors outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted by this ~~Interim~~<u>Final</u> Order and the DIP Documents, and in accordance with the Approved Budget (subject to the Permitted Variances), as applicable.

13.     <u>Consent of Prepetition Secured Parties</u>.  The Prepetition Secured Parties hereby consent to (a) the provisions of this ~~Interim~~<u>Final</u> Order including the Debtors' entry into the DIP

Facility on ~~an interim~~a final basis, (b) the granting of the DIP Liens and DIP Superpriority Claims on the terms and subject to the conditions set forth herein (including the Carve-Out and the Administration Charge as against the Canadian Collateral), and (c) the Approved Budget.

14.    <u>Adequate Protection for Prepetition Term Loan Parties</u>.  As adequate protection for any Diminution of the Prepetition Term Loan Parties' interest in the Prepetition Collateral resulting from the subordination of the Prepetition Liens to the DIP Liens, the Canadian Priority Charges as against the Canadian Collateral, and the Carve-Out, the Prepetition Term Loan Agent shall receive, for the benefit of the Prepetition Term Loan Parties,

(a) continuing valid, binding, enforceable, and perfected postpetition liens and replacement liens pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code on the DIP Collateral, which shall be subject only to the Carve-Out, the DIP Liens, and Prepetition Permitted Liens (the "<u>Replacement Liens</u>") and which (x) shall otherwise be senior to all other security interests in, liens on, or claims against the DIP Collateral, and (y) shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any Successor Cases, and shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code;

(b) administrative superpriority expense claims in each of the Chapter 11 Cases (the "<u>Adequate Protection Superpriority Claims</u>"), subject only to the Carve-Out and the DIP Obligations (including the DIP Superpriority Claims), pursuant to section 507(b) with priority over any and all other administrative

expenses, administrative expense claims and unsecured claims against the Debtors or their Estates, now existing or hereafter arising, of any kind or nature whatsoever as to and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code;

(c) (i) subject to the procedures set forth in paragraph 41 of this ~~Interim~~Final Order, monthly payments of the Prepetition Term Loan Parties' reasonable and documented out-of-pocket fees and expenses including the professional fees of Proskauer Rose LLP, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill and Mullis, P.A., Deloitte Transactions & Business Analytics LLP, and any other Prepetition Professionals (as defined below) (in each case, without the need for the filing of formal fee applications, including as to any amounts arising before or after the Petition Date) and (ii) monthly payment in kind of interest to the Prepetition Term Loan Lenders under the Prepetition Credit Agreement, calculated at the "Default Rate" as defined in the Prepetition Credit Agreement to the extent allowed under  section 506(b) of the Bankruptcy Code; and

(d) the right to credit bid the Prepetition Term Loan Obligations in connection with any sale of Prepetition Collateral, including, without limitation, as set forth in paragraph 43 hereof.

15.    <u>Satisfaction of Prepetition ABL Obligations</u>.  The Debtors are authorized to perform the obligations set forth in the Payoff Letter, and in furtherance thereof, the Prepetition ABL Agent shall receive <u>or has received</u>, for the benefit of the Prepetition ABL Parties,

(a) From the Interim Amount drawn under the DIP Facility, the Debtors ~~shall deposit~~<u>deposited</u> with the Prepetition ABL Agent, (i) $14,133,599.18 to cash collateralize Letters of Credit Obligations at 103% of their face amount as cash collateral to be held by Prepetition ABL Agent for the benefit of the Prepetition ABL Lenders (together with the 16,021,091.79 held by the Prepetition ABL Agent to cash collateralize the Letters of Credit), (ii) $1,100,000 as cash collateral to be held by Prepetition ABL Agent for the benefit of the Bank Product Providers (as defined in the Payoff Letter) with respect to Bank Products, (iii) $250,000 in respect of the Expense Reserve (as defined in the Payoff Letter) (such cash collateral, together with cash collateral held by the Prepetition ABL Agent as of the Petition Date, the "<u>Segregated Cash Collateral</u>"), and (iv) pay the Prepetition ABL Agent an amount equal to $102,688.70 in respect of accrued unpaid interest and LC and unused line fees for the month of April;

(b) subject to the procedures set forth in paragraph 41 of this ~~Interim~~<u>Final</u> Order, monthly payments of the Prepetition ABL Agent's reasonable and documented out-of-pocket fees and expenses including the professional fees of Goldberg Kohn Ltd. and Burr & Forman LLP, without the need for the filing of formal fee applications, including as to any amounts arising before or after the Petition Date); and

(c) In accordance with the Payoff Letter, upon satisfaction of the Payoff Conditions (as defined therein), the liens and security interests of the Prepetition ABL Agent in any and all of the Prepetition Collateral (but not the

Segregated Cash Collateral) shall automatically, irrevocably and immediately be deemed to be released and terminated.

16.     <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution of their respective interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected, and this ~~Interim~~<u>Final</u> Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

17.     <u>Application of Segregated Cash Collateral</u>.

(i)     Notwithstanding anything to the contrary herein, Wells Fargo (as L/C Issuer) shall be authorized and entitled to (a) pursuant to the terms of the Prepetition ABL Loan Documents (i) without notice or demand, and at any time or from time to time, charge, set off and otherwise apply all or any part of the Surviving Obligations, Letter of Credit Obligations, and Bank Product Obligations (each as defined in the Payoff Letter) against the Segregated Cash Collateral or any part thereof and (ii) exercise all other rights and remedies available to it thereunder in respect of the Letters of Credit and the Bank Products and (b) give written notice of non-extension of the Wells Fargo Letters of Credit to the beneficiaries thereof pursuant to the terms of the Wells Fargo Letters of Credit and, in each case, the automatic stay is hereby deemed lifted as necessary to permit such action without the need for any additional notice. The Segregated Cash Collateral secures all Surviving Obligations, Letter of Credit Obligations, and

Bank Product Obligations (each as defined in the Payoff Letter), including Lender Group Expenses (as defined under the Prepetition ABL Credit Agreement) incurred in connection therewith. The Segregated Cash Collateral is not subject to turnover under section 543 of the Bankruptcy Code. For all purposes under this ~~Interim~~Final Order and notwithstanding anything to the contrary contained herein, the Segregated Cash Collateral may only be used for purposes of satisfying the Surviving Obligations, Letter of Credit Obligations, and Bank Product Obligations (each as defined in the Payoff Letter) as set forth above, and for no other purpose, until such Surviving Obligations, Letter of Credit Obligations, and Bank Product Obligations (each as defined in the Payoff Letter) have been paid in full in cash.

(ii)    The Debtors may, and do, authorize Wells Fargo in its capacity as cash management service provider (including with respect to any purchasing card, procurement card or other credit or debit cards), and Wells Fargo may, without the need for further order of this Court, hold or otherwise set aside an amount of funds reasonably necessary to cover outstanding items and potential reversals, returns, refunds, or chargebacks of checks, deposited items, and other debits credited to Debtor's account and any fees and costs in connection therewith or accruing with respect thereto, and Wells Fargo shall have valid and perfected, non-avoidable first-priority lien on the Segregated Cash Collateral.  Wells Fargo may debit or setoff against such funds for any outstanding cash management liabilities owing to it in accordance with the existing deposit agreements and other cash management agreements between Debtors and Wells Fargo. All payments to Wells Fargo authorized pursuant to this paragraph 17(ii) and all interest, fees, costs and other charges related thereto or accruing with respect thereto shall be accorded superpriority administrative expense status pursuant to section 503(b) of the Bankruptcy Code

and shall be satisfied first from the Segregated Cash Collateral to the extent not paid by the Debtors.

(iii)    For the avoidance of doubt, the Segregated Cash Collateral is subject to the exclusive control and dominion of the Prepetition ABL Agent, and any interest of the DIP Secured Parties in the Segregated Cash Collateral is limited to the Debtors' residual interest in the Segregated Cash Collateral after all of the Surviving Obligations, Bank Product Obligations, and Letter of Credit Obligations (each as defined in the Payoff Letter) secured thereby pursuant to the Payoff Letter and this ~~Interim~~Final Order are otherwise paid in full in cash.

<u>Provisions Common to DIP Financing and Use of Cash Collateral</u>

18.    <u>Amendment of the DIP Documents</u>.  The Debtors and the DIP Agent and Required Lenders (or as otherwise provided in the DIP Documents) may enter into one or more amendments, waivers, consents, or other modifications to and under the DIP Documents, in each case in accordance with the terms of the applicable DIP Documents and in such form as the Debtors, the DIP Agent, and the Required Lenders (or as otherwise provided in the DIP Documents) agree, in such applicable DIP Lenders' sole discretion, and no further approval of this Court shall be required for any amendment, waiver, consent, or other modification to and under the DIP Documents (and any fees paid in connection therewith) that does not materially and adversely affect the Debtors or which does not (i) shorten the maturity of the DIP Facility, (ii) increase the principal amount of or the rate of interest on the DIP Facility, or (iii) change any event of default, add any covenants, or amend the covenants to be materially more restrictive; *provided*, *however*, any such material amendment, waiver, consent, or other modification shall be subject to further Court approval.  Copies of all amendments and modifications to and under the DIP Documents, regardless of materiality, shall be provided to the U.S. Trustee and the

Committee.  No consent to any such amendment, waiver, consent, or modification shall be implied by any action, inaction, or acquiescence of the DIP Secured Parties.

19.    <u>Approved Budget</u>.

(i)    Attached to this ~~Interim~~<u>Final</u> Order as **<u>Exhibit B</u>** is a 13-week budget approved by the DIP Agent, which sets forth, among other things, projected cash receipts and cash disbursements (the "<u>Approved Budget</u>").  After the Effective Date, on the first Friday of each fiscal month, commencing with the first Friday of the first full fiscal month ending after the Effective Date (each such date, an "<u>Updated Budget Delivery Date</u>"), the Debtors shall deliver to the DIP Agent a 13-week cash flow forecast beginning with the week immediately preceding such Updated Budget Delivery Date (each, an "<u>Updated Budget</u>"), in form substantially consistent with the Approved Budget annexed hereto at Exhibit B and in form and substance acceptable to the Required Lenders.  If such Updated Budget is in form and substance satisfactory to the DIP Agent (acting at the direction of the Required Lenders), and upon the approval in writing of any such updated budget by the DIP Agent (acting at the direction of the Required Lenders), it shall become the "Approved Budget" for purposes of the DIP Documents and the DIP Orders.  Any amendments, supplements, or modifications to the Approved Budget or an Approved Variance Report (as defined below) shall be subject to the prior written approval of the DIP Agent (acting at the direction of the Required Lenders) prior to the implementation thereof.  Until any such updated budget, amendment, supplement, or modification has been approved by the DIP Agent (acting at the direction of the Required Lenders), the Debtors shall be subject to and be governed by the terms of the Approved Budget then in effect.

(ii)    The Approved Budget is approved on ~~an interim~~<u>a final</u> basis.  The proceeds of the DIP Facility and Cash Collateral under this ~~Interim~~<u>Final</u> Order shall be used by

36

the Debtors solely in accordance with the Approved Budget (subject to Permitted Variances), this ~~Interim~~Final Order, and the DIP Documents.

(iii)    Other than with respect to the Carve-Out and the funding of the Post-Trigger Reserve Account (defined below), and except as provided in paragraphs 33 and 35, none of the DIP Secured Parties' and the Prepetition Term Loan Parties' consent to, or acknowledgement of, the Approved Budget shall be construed as consent to use the proceeds of the DIP Facility or Cash Collateral beyond the Maturity Date or the occurrence of the Termination Date, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(iv)    Notwithstanding anything to the contrary herein, the Debtors shall pay the fees, costs and expenses of the DIP Professionals (as defined below) in accordance with the DIP Documents and this ~~Interim~~Final Order without reference to the Approved Budget.

20.    <u>Budget Reporting</u>.  The Debtors shall at all times comply with the Approved Budget, subject to the Permitted Variances (as defined below).  By not later than 5:00 p.m. (Eastern Time) on Friday of the third full calendar week following the Petition Date (the "<u>First Report Date</u>"), and no later than 12:00 p.m. (Eastern Time) on each Friday thereafter (together with the First Report Date, each a "<u>Weekly Budget Variance Report Date</u>"), the Debtors shall deliver to the DIP Agent <u>and the Committee's professionals</u> a Weekly Budget Variance Report comparing for such Weekly Budget Variance Report Period (as defined below) the actual results against anticipated results under the Approved Budget, on an aggregate basis and in the same level of detail set forth in the applicable Approved Budget (an "<u>Approved Variance Report</u>") showing comparisons of (a) aggregate actual cumulative cash receipts for such Budget Variance Test Period compared to the aggregate projected cumulative cash receipts of the Debtors for such

Budget Variance Test Period as set forth in the Approved Budget (any such difference, a "Receipts Variance") and (b) actual cumulative cash disbursements on a line by line basis of the Debtors for such Budget Variance Test Period compared to the projected cumulative cash disbursements on a line by line basis for such Budget Variance Test Period as set forth in the Approved Budget (any such difference, a "Disbursements Variance").   The term "Weekly Budget Variance Report Period" means the fiscal month to date period ending on each Friday of the weeks preceding the applicable Budget Variance Test Date (with initial partial periods as appropriate).

21.    Budget Testing.  After the Effective Date, the Budget Testing provided in this paragraph 21 shall be tested for each Budget Variance Test Period.  Within five (5) business days of the Budget Variance Test Date, the Debtors shall deliver to the DIP Agent and the Committee's professionals a Fiscal Month Budget Variance Report.  On each Budget Variance Test Date while any DIP Term Loans remain outstanding, the Borrower shall not permit: (a) cumulative actual disbursements for such Budget Variance Test Period (excluding (i) estate professional fees and U.S. Trustee fees and (ii) fees and expenses payable to the DIP Agent's professionals under the DIP Documents) to be greater than (1) for the first two Budget Variance Test Periods, 115% of the forecasted total disbursements for such Budget Variance Test Period in the applicable Approved Budget and (2) for each Budget Variance Test Period thereafter, 110% of the forecasted total disbursements for such Budget Variance Test Period in the applicable Approved Budget; and (b) cumulative actual receipts for such Budget Variance Test Period to be less than (1) for the first two Budget Variance Test Periods, 85% of the forecasted total receipts for such Budget Variance Test Period in the applicable Approved Budget and

(2) for each Budget Variance Test Period thereafter, 90% of the forecasted total receipts for such Budget Variance Test Period in the applicable Approved Budget.

22.    <u>Additional Reporting</u>.  The Debtors shall deliver to the DIP Agent each of the reports and other information set forth in Section 7.01(a) of the DIP Credit Agreement within the timeframe set forth therein, in form and detail acceptable to the DIP Agent.  The Debtors shall also make the Debtors' professionals available upon reasonable notice, for in-person, telephonic, or virtual meetings to update the DIP Agent and the DIP Professionals on all matters affecting the Debtors and the Chapter 11 Cases, including with respect to the efforts to market and sell the DIP Collateral.

23.    <u>Modification of Automatic Stay</u>.   The automatic stay of section 362 of the Bankruptcy Code is hereby modified and vacated to the extent necessary to permit the Debtors, the DIP Secured Parties and the Prepetition Secured Parties to accomplish the transactions contemplated by this ~~Interim~~<u>Final</u> Order.

24.    <u>Perfection of DIP Liens and Replacement Liens</u>.  ~~This~~<u>The</u> Interim <u>Order and this Final</u> Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted ~~herein,~~<u>in the Interim Order and this Final Order,</u> including the DIP Liens and the Replacement Liens, without the necessity of filing or recording any financing statement, mortgage, deed of trust, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Replacement Liens or to entitle the DIP Secured Parties and the Prepetition Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent and the Prepetition

Agents (for the benefit of the DIP Secured Parties and the Prepetition Secured Parties, respectively) are authorized, but not required, to file, as each deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Replacement Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Replacement Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent and the Prepetition Agents all such financing statements, mortgages, notices and other documents as each may reasonably request.  The DIP Agent and the Prepetition Agents may each, in its discretion, file a photocopy of this ~~Interim~~Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to or in lieu of such financing statements, notices of lien or similar instruments.  To the extent that either Prepetition Agent is, with respect to the DIP Collateral, the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition Loan Documents or is listed as loss payee, lenders' loss payee or additional insured under any of the Debtors' insurance policies, the DIP Agent (for the benefit of the DIP Secured Parties) shall also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable.  The Prepetition Agents shall act as agent for the DIP Secured Parties solely for purposes of perfecting the DIP Secured Parties' liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this

~~Interim~~Final Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party (including any deposit account control agreement), and all of the Prepetition Agents' respective rights in such DIP Collateral shall inure to the benefit of and be exercisable exclusively by the DIP Agent until the DIP Obligations have been indefeasibly repaid in full in cash; *provided*, that the DIP Agent may, in its sole discretion, require the Debtors and the Prepetition Agents to (and the Debtors and the Prepetition Agents shall) use commercially reasonable efforts to provide the DIP Agent with such possession or control as is necessary to perfect the DIP Obligations and DIP Priority Liens.  Notwithstanding the foregoing, in the event any of the Chapter 11 Cases or Successor Cases are dismissed prior to the indefeasible payment in full of the DIP Obligations, such order dismissing any Chapter 11 Cases or Successor Cases shall not be effective for five (5) business days to permit the DIP Agent and the Prepetition Agents to enter into any agreements or file any documents (including credit agreements, financing statements, mortgages, or other notices or documents) evidencing the DIP Obligations and the perfection and priority of the DIP Liens and Replacement Liens, and during such period, the Debtors shall comply with all reasonable requests of the DIP Agent and the Prepetition Agents to ensure the perfection of the DIP Liens and the Replacement Liens, as applicable.

25.    <u>Access to Books and Records</u>.  The Debtors will (i) maintain books, records, and accounts to the extent and as required by the DIP Documents, (ii) cooperate with, consult with, and, subject to attorney-client privilege, work product doctrine, and any similar applicable protections, provide to the DIP Agent and the DIP Lenders all such information and documents that any or all of the Debtors are obligated to provide under the DIP Documents or the provisions of this ~~Interim~~Final Order or as otherwise reasonably requested by the DIP Agent and the DIP

Lenders, (iii) during normal business hours, upon reasonable advance notice, permit consultants, advisors and other representatives (including third party representatives) of the DIP Agent and the DIP Lenders to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective senior management independent public accountants to the extent required by the DIP Documents or the Prepetition Loan Documents, and (iv) permit the DIP Secured Parties, and the Prepetition Secured Parties, and their respective consultants, advisors and other representatives, to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, as provided for in the DIP Documents.

26.     <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) or in violation of the DIP Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' Estates, and such facilities are secured by any DIP Collateral, then all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent (for the benefit of the DIP Secured Parties) to be distributed in accordance with this ~~Interim~~Final Order and the DIP Documents. For the avoidance of doubt, if the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in the Chapter 11 Cases, or any Successor Cases,

shall obtain credit or incur debt (other than the DIP Facility) pursuant to Bankruptcy Code section 364(d) at any time prior to the indefeasible repayment in full of the Prepetition Obligations, the Prepetition Secured Parties' rights to object to the Debtors' use of Cash Collateral and assert a lack of adequate protection shall be fully preserved.

27.    <u>Cash Management</u>.  The Debtors shall maintain their cash management system consistent with the terms and conditions of any interim and/or final order, which shall be reasonably acceptable to the DIP Agent, the Prepetition Term Loan Agent, and the Prepetition ABL Agent, granting the Debtors authorization to continue their cash management systems and certain related relief (as amended, supplemented, or otherwise modified, the "<u>Cash Management Order</u>"), the DIP Documents, and this ~~Interim~~<u>Final</u> Order.

28.    <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full in cash of all DIP Obligations, all Prepetition Obligations, and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Documents or the Prepetition Loan Documents, as applicable; and (b) maintain the cash management system consistent with the terms and conditions of the Cash Management Order and the DIP Documents.

29.    <u>Disposition of DIP Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or Prepetition Collateral, other than in the ordinary course of business or as otherwise permitted by the DIP Documents, without the prior consent of the Required Lenders, or pursuant to a sale of all or substantially all of the Debtors' assets in accordance with the 363 Sale Motion and 363 Sale Transaction (each as defined in the DIP Credit Agreement).  Except as may be provided in the DIP Documents, the Debtors are authorized and directed, upon the closing of a sale of any of the DIP Collateral, to

immediately pay all proceeds of any such sale to the DIP Agent, for the benefit of the DIP Secured Parties and the Prepetition Agents, for the benefit of the Prepetition Secured Parties, first to satisfy the DIP Obligations and then to satisfy the Prepetition Obligations in accordance with this ~~Interim~~Final Order and the DIP Documents, and any order approving the sale of such DIP Collateral shall provide that the sale is conditioned upon the payment of the DIP Obligations and Prepetition Obligations (except to the extent otherwise agreed in writing by the DIP Agent or Prepetition Agents in respect of the applicable obligations owed to them), *provided*, that any such sale of DIP Collateral shall exclude Segregated Cash Collateral until the Surviving Obligations, Bank Product Obligations, and Letter of Credit Obligations secured thereby pursuant to the terms of the Payoff Letter ~~or this~~, the Interim Order, or this Final Order are paid in full.

30.    <u>Termination Date</u>.  On the Termination Date (defined below), all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate other than as permitted by the Carve-Out.

31.    <u>Events of Default</u>.  Until the DIP Obligations are indefeasibly paid in full in cash and all commitments thereunder are terminated in accordance with the DIP Documents, the occurrence of any of the following events, unless waived by the Required Lenders (or as otherwise provided in the DIP Documents) in writing (which may be by electronic mail) and in accordance with the terms of the DIP Documents, shall constitute an event of default (collectively, the "<u>Events of Default</u>"): (a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under ~~this~~the Interim Order or this Final Order, including, without limitation, failure to make any payment under ~~this~~the Interim Order or this Final Order when due or comply with any Milestones (as defined

below) (except as waived by the Required Lenders); and (b) the occurrence and continuation of any Event of Default under, and as defined in, the DIP Credit Agreement or any other DIP Documents (subject to any notice and cure periods set forth therein).

32.    _Milestones_. As a condition to the DIP Facility and the use of Cash Collateral, the Debtors have agreed to the Milestones (as defined in the DIP Credit Agreement).  For the avoidance of doubt, unless waived in writing by the DIP Agent in its sole discretion, the failure of the Debtors to meet the Milestones by the applicable specified deadlines set forth therefor shall constitute an Event of Default under the DIP Documents and this ~~Interim~~Final Order.

33.    _Rights and Remedies Upon Event of Default_.  Upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of Bankruptcy Code section 362, without any application, motion or notice to, hearing before, or order from the Court, other than, subject to the terms of this ~~Interim~~Final Order: (a) the DIP Agent (at the direction of the applicable Required Lenders, or as otherwise provided in the DIP Documents) may send a written notice to the Debtors, counsel to the Committee, the Prepetition ABL Agent, and the U.S. Trustee (any such declaration shall be referred to herein as a "Termination Declaration"), which shall be filed on the docket of the Chapter 11 Cases, declaring (1) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (2) the commitment of each DIP Lender to make DIP Term Loans to be terminated, whereupon such commitments and obligation shall be terminated to the extent any such commitment remains under the DIP Facilities, (3) the termination of the DIP Facilities and the DIP Documents as to any future liability or obligation of the DIP Lenders or DIP Agent, but without affecting any of the DIP Liens or the DIP Obligations, and (4) the application of the Carve-Out has occurred following the delivery of the Carve Out Trigger Notice (as defined below) to the Borrower; (b) interest, including, where

applicable, default interest, shall accrue and be paid as set forth in the DIP Documents; and (c) upon delivery of the Termination Declaration, the DIP Agent (at the direction of the Required Lenders) shall be deemed to have declared a termination, reduction, or restriction on the ability of the Debtors to use Cash Collateral, other than to pay expenses set forth in the Approved Budget that are necessary to avoid immediate and irreparable harm to the Debtors' estates. The earliest date on which a Termination Declaration is delivered by the DIP Agent (at the direction of the Required Lenders) and filed on the Docket shall be referred to herein as the "Termination Date." Following a Termination Date, neither the DIP Lenders or DIP Agent nor the Prepetition Secured Parties shall be required to consent to the use of any Cash Collateral or provide any loans or other financial accommodations under the DIP Facility, absent further order of the Court. The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee.

34.     No Waiver by Failure to Seek Relief. The rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties are cumulative and not exclusive of any rights or remedies that the DIP Secured Parties or the Prepetition Secured Parties may have under the DIP Documents, the Prepetition Loan Documents, applicable law, or otherwise. The failure or delay on the part of any of the DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this ~~Interim~~Final Order, the DIP Documents, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights or be deemed as an admission that no Event of Default has occurred. No delay on the part of any party in the exercise of any right or remedy under this ~~Interim~~Final Order, the DIP Documents, or the Prepetition Loan Documents shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.

Except as expressly set forth herein, none of the rights or remedies of any party under this ~~Interim~~Final Order, the DIP Documents, and the Prepetition Loan Documents shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the requisite parties under the DIP Documents and the requisite parties under the Prepetition Loan Documents, as applicable.  No consents required hereunder by any of the DIP Secured Parties or the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the DIP Secured Parties or the Prepetition Secured Parties (as applicable).

35.    <u>Emergency Hearing</u>.    Upon the delivery of a Termination Declaration, the Debtors, the Committee, ~~if any,~~ the DIP Lenders, the DIP Agent, and the Prepetition Secured Parties consent to a hearing on an expedited basis solely to consider whether an Event of Default has occurred and is continuing.   During the five (5) calendar days following the date a Termination Declaration is delivered (such five (5) calendar day period, the "<u>Remedies Notice Period</u>"), the Debtors shall continue to have the right to use Cash Collateral in accordance with the terms of ~~the Interim~~<u>this Final</u> Order, solely to pay necessary expenses set forth in the Approved Budget to avoid immediate and irreparable harm to the Estates.  At the end of the Remedies Notice Period, unless the Court has entered an order to the contrary, the Debtors' right to use Cash Collateral shall immediately cease, unless otherwise provided herein and the DIP Agent and DIP Lenders shall have the rights set forth immediately below.

36.    <u>Certain Rights and Remedies Following Termination Date</u>.    Following a Termination Date and upon either the expiration of the Remedies Notice Period or pursuant to an order of the Court (which may authorize the remedies set forth in this paragraph or any other appropriate remedy as then determined by the Court) upon an emergency motion by the DIP

Agent (at the direction of the Required Lenders) to be heard on no less than five (5) calendar days' notice (and the Debtors shall not object to such shortened notice) (the "Termination Enforcement Order"), the DIP Agent shall be entitled to exercise all rights and remedies in accordance with the DIP Documents, the DIP Orders, and applicable law and shall be permitted to satisfy the relevant DIP Obligations and DIP Liens based on the priorities set forth in the DIP Documents, subject to the Carve-Out, the Administration Charge as against the Canadian Collateral and any Prepetition Permitted Liens.  Following entry of the Termination Enforcement Order, except as otherwise ordered by the Court (including in any Termination Enforcement Order): (a) the Debtors are hereby authorized and directed to, with the exclusion of the Carve-Out, remit to the DIP Agent (for the benefit of the DIP Lenders) one-hundred percent (100%) of all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Documents; (b) the DIP Agent (at the direction of the Required Lenders or as otherwise provided in the DIP Documents) may compel the Debtors to seek authority to, (i) sell or otherwise dispose of all or any portion of the DIP Collateral (or any other property of the Debtors to the extent a lien is not permitted by law to attach to such property, the proceeds of which are DIP Collateral) pursuant to Bankruptcy Code section 363 (or any other applicable provision) on terms and conditions pursuant to Bankruptcy Code sections 363, 365, and other applicable provisions of the Bankruptcy Code, and (ii) assume and assign any lease or executory contract included in the DIP Collateral to the DIP Agent's designees in accordance with and subject to Bankruptcy Code section 365, (c) the DIP Agent (at the direction of the Required Lenders) may direct the Debtors to (and the Debtors shall comply with such direction to) dispose of or liquidate the DIP Collateral (or any other property of the Debtors to the extent a lien is not permitted by law to attach to such property, the proceeds which are DIP Collateral) via one or more sales of

such DIP Collateral or property and/or the monetization of other DIP Collateral or property, (d) the DIP Agent may (at the direction of the Required Lenders), or may direct the Debtors to (and the Debtors shall comply with such direction to), collect accounts receivable, (e) the DIP Agent (for the benefit of the DIP Lenders) shall be authorized to succeed to any of the Debtors' rights and interests under any licenses for the use of any intellectual property in order to complete the production and sale of any inventory with respect to the DIP Collateral, and (f) the Debtors shall take all action that is reasonably necessary to cooperate with the DIP Lenders in the exercise of their rights and remedies and to facilitate the realization of the DIP Collateral by the DIP Lenders in a manner consistent with the priorities set forth in the DIP Documents.

37. <u>Access to DIP Collateral</u>.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Secured Parties under ~~the Interim~~<u>this Final</u> Order, the DIP Documents and applicable law, after the occurrence of a Termination Date and the entry of a Termination Enforcement Order, and subject to paragraph 35, for the purpose of exercising any remedy with respect to any of the DIP Collateral, the DIP Agent (or any of its employees, agents, consultants, contractors, or other professionals) (collectively, the "<u>Enforcement Agents</u>") shall have the right (to be exercised at the direction of the Required Lenders), to: (i) enter upon, occupy, and use any real or personal property, fixtures, equipment, leasehold interests, or warehouse arrangements owned or leased by the Debtors; (ii) enter into the premises of any Debtor in connection with the orderly sale or disposition of the DIP Collateral (including, without limitation, to complete any work in process); (iii) exercise any rights of the Debtors to access any DIP Collateral (including inventory) held by any third party; *provided*, *however*, the Enforcement Agents may only be permitted to do so in accordance with (a) existing rights under applicable non-bankruptcy law, including, without limitation, applicable

leases, (b) any prepetition (and, if applicable, post-petition) landlord waivers or consents, or (c) further order of this Court on motion and notice appropriate under the circumstances; and (iv) use any and all trademarks, tradenames, copyrights, licenses, patents, equipment or any other similar assets of the Debtors, or assets which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses; *provided*, *however*, the Enforcement Agents may use such assets to the extent permitted by applicable non-bankruptcy law. The Enforcement Agents will be responsible for the payment of any applicable fees, rentals, royalties, or other amounts owing to such lessor, licensor or owner of such property (other than the Debtors) on a *per diem* basis and solely for the period of time that the Enforcement Agents actually occupy any real property or use the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals, or other amounts owing for any period prior to the date that the Enforcement Agents actually occupy or use such assets or properties). Nothing contained herein shall require the Enforcement Agents to assume any lease as a condition to the rights afforded in this paragraph.

38. <u>Carve-Out</u>. Each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Replacement Liens, and the Adequate Protection Superpriority Claims shall be subject to payment of the Carve-Out (excluding the Segregated Cash Collateral).

(i) "<u>Carve-Out</u>" means, collectively, the following fees and expenses: (i) all statutory fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) *plus* interest at the statutory rate, if any, pursuant to 31 U.S.C § 3717 (without regard to the Carve-Out Trigger Notice (as defined below)); (ii) reasonable fees and expenses incurred by a Trustee, if any, under section 726(b) of the Bankruptcy Code in an amount not exceeding $50,000 (without regard to the Carve-Out Trigger

Notice) (the amounts in these clauses (i) and (ii), "Statutory Fees"); (iii) to the extent allowed at any time, all unpaid fees and expenses of the professionals retained by the Debtors and, subject to amounts set forth in the Approved Budget, any the Committee appointed in the Chapter 11 Cases, that (a) are incurred on or prior to the third business day succeeding the date of delivery of the Carve-Out Trigger Notice, or (b) are incurred after the third business day succeeding the date of delivery of a Carve-Out Trigger Notice, subject to an aggregate cap of $750,000 for the Debtors' professionals and a separate aggregate cap of $150,000 for the Committee's professionals, (each excluding any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors of the Debtors unless approved by the DIP Lenders) (the "Professional Fees") allowed by the Court or another court of competent jurisdiction at any time, and incurred by persons or firms retained by the Debtors or the Committee pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code (the "Professional Persons"), the amounts set forth in this clause (iii)(b) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by the DIP Agent to the Debtors' lead counsel, the U.S. Trustee, and lead counsel to the Committee, which notice may only be delivered following the occurrence and during the continuation of an Event of Default, stating that the Post-Carve Out Trigger Notice Cap has been invoked. No portion of the Carve-Out, any Cash Collateral, any other DIP Collateral, or any proceeds of the DIP Facility, including any disbursements set forth in the Approved Budget or obligations benefitting from the Carve-Out, shall be used for the payment of Professional Fees incurred by any person, including, without limitation, anythe Committee, in connection with challenging the DIP Secured Parties' or the Prepetition Secured Parties' liens or claims, preventing, hindering or delaying any of the DIP Secured Parties' or the Prepetition Secured Parties' enforcement or realization upon

any of the DIP Collateral, or initiating or prosecuting any claim or action against any DIP Secured Party or Prepetition Secured Party; *provided* that, notwithstanding the foregoing, proceeds from the DIP Facility and/or Cash Collateral not to exceed $50,000 in the aggregate (the "Investigation Budget") may be used on account of Professional Fees incurred by Professional Persons of the Committee (if any) in connection with the investigation of avoidance actions or any other claims or causes of action (but not the prosecution of such actions) on account of the Prepetition Obligations and Prepetition Secured Parties (but not the DIP Facility and DIP Secured Parties).

(ii)    Carve-Out Reserve.  Contemporaneously with the initial funding of the DIP Term Loans, the Debtors will transfer cash proceeds from the DIP Facility in an amount equal to the total budgeted weekly fees and expenses incurred by the Debtors' retained Professional Persons for the first two weekly periods set forth in the Approved Budget, and thereafter on a weekly basis the Debtors will transfer cash proceeds from draws from the DIP Facility and/or cash on hand equal to the total budgeted weekly fees and expenses incurred by the Debtors' and Committee's (if appointed and as applicable) retained Professional Persons until receipt of a Carve-Out Trigger Notice, in each case, excluding any success or other transaction fees of any investment banker or financial advisor of the Debtors or Committee, into segregated trust account(s) at Debtors' counsel's law firm, Berger Singerman, LLP for the benefit of the Professional Persons (the "Professional Fee Reserve").   Upon the delivery of a Carve-Out Trigger Notice, the Carve-Out Trigger Notice shall (i) be deemed a request by the Debtors for, and the DIP Lenders shall fund DIP Loans under the DIP Facility, in an amount equal to (i) the aggregate amount of budgeted accrued and unpaid Professional Fees incurred before or on the first business day following delivery of a Carve-Out Trigger Notice (to the extent not previously

funded to the Professional Fee Reserve) and (ii) the Post-Carve Out Trigger Notice Cap (less any amounts already funded into the Professional Fee Reserve in respect of such amounts) (any such amounts actually advanced shall constitute DIP Loans); and (ii) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to amounts set forth in clauses (i) and (ii) (less any amounts already funded into the Professional Fee Reserve in respect of such amounts).  For the avoidance of doubt, the DIP Lenders shall have no obligation to fund aggregate fees and expenses in excess of DIP Commitments.  Amounts funded into the Professional Fee Reserve shall be considered used by the Debtors at such time as they are deposited into the Professional Fee Reserve for distribution to Professional Persons in accordance with orders of the Bankruptcy Court.  Any amounts remaining in the Professional Fee Reserve after payment of allowed fees and expenses shall be DIP Collateral. The Professional Fee Reserve shall not constitute a cap on the professional fees included in the Carve-Out.

(iii)    The Debtors shall use funds held in the Professional Fee Reserve exclusively to pay Professional Fees within the Carve-Out as set forth in clause (ii) of this paragraph 38 as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim or final orders of the Court; *provided* that when all Professional Fees and the other obligations that are a part of the Carve-Out have been paid in full (regardless of when such Professional Fees are allowed by the Court), any funds remaining in the Professional Fee Reserve shall revert to the DIP Agent for the benefit of the DIP Lenders.  Funds transferred to the Professional Fee Reserve shall be subject to the DIP Liens, DIP Superpriority Claims, Replacement Liens, and Adequate Protection Superpriority Claims granted hereunder to the extent of such reversionary interest; *provided*, that, for the avoidance of

doubt, such liens and claims shall be subject in all respects to the Carve-Out and the Administration Charge as against the Canadian Collateral.

    (iv)    Notwithstanding anything to the contrary in the DIP Documents, this ~~Interim~~Final Order, or any other Court order, the Professional Fee Reserve and the amounts on deposit in the Professional Fee Reserve shall be available and used only to satisfy Professional Fees accruing prior to the Termination Date benefitting from the Carve-Out, and the other obligations that are a part of the Carve-Out. The failure of the Professional Fee Reserve to satisfy Professional Fees in full shall not affect the priority of the Carve-Out; *provided*, that, to the extent that the Professional Fee Reserve is actually funded, the Carve-Out shall be reduced by such funded amount dollar-for-dollar. In no way shall the Carve-Out, Professional Fee Reserve, or the Approved Budget or any of the foregoing be construed as a cap or limitation on the amount of the allowed Debtor Professional Fees or Statutory Fees due and payable by the Debtors or that may be allowed by the Court at any time (whether by interim order, final order, or otherwise).

    (v)    <u>No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees</u>. None of the DIP Secured Parties or Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Professional Persons incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this ~~Interim~~Final Order or otherwise shall be construed to obligate any of the DIP Secured Parties or Prepetition Secured Parties in any way to compensate, or to reimburse expenses of, any of the Professional Persons, or to guarantee that the Debtors or their Estates have sufficient funds to pay such compensation or reimbursement. Nothing herein shall be construed as consent to the allowance of any professional fees or

expenses of any of the Debtors, ~~any~~the Committee, any other official or unofficial committee in these Chapter 11 Cases or any Successor Cases, or of any other person or entity, or shall affect the right of any party to object to the allowance and payment of any such fees and expenses.

39.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this ~~Interim~~Final Order.  The DIP Secured Parties and the Prepetition Secured Parties have acted in good faith in connection with this ~~Interim~~Final Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.  Based on the findings set forth in this ~~Interim~~Final Order and the record made during the ~~Interim~~Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this ~~Interim~~Final Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Secured Parties and Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment, or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim, or priority authorized or created hereby.

40.     Approval of DIP Fees.  In consideration for the DIP Financing and the consent to the use of Cash Collateral in accordance with the terms of this ~~Interim~~Final Order, the DIP Secured Parties shall be paid all fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, the DIP Agent Fee and the DIP Upfront Fee, and all reasonable and documented out-of-pocket costs and expenses, including legal fees of the DIP Agent and the DIP Lenders, financial advisor fees, and other similar fees, costs and expenses incurred in connection with the DIP Facility and the Chapter 11 Cases, including, without limitation, the reasonable and documented fees and expenses of (a) counsel to

the DIP Secured Parties, (b) specialty or local counsel to the DIP Secured Parties in each relevant jurisdiction and (c) in the case of an actual or perceived conflict of interest with respect to any of the foregoing counsel, one additional counsel to each group of affected DIP Lenders similarly situated and taken as a whole (all such fees, together, the "DIP Fees").  The DIP Fees shall be fully earned and payable in accordance with the terms of the DIP Documents, without the need for any further order of this Court.  The DIP Fees shall be part of the DIP Obligations.  Any and all DIP Fees paid prior to the Petition Date by any of the Debtors to the DIP Secured Parties in connection with or with respect to the DIP Facility in each case is hereby approved in full.

41.     Lender Professionals' Fees.  Professionals for the DIP Secured Parties (the "DIP Professionals") and professionals for the Prepetition Term Loan Parties (the "Prepetition Professionals," and together with the DIP Professionals, the "Lender Professionals") shall not be required to comply with the U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, this Court for compensation and reimbursement of fees and expenses.  The Lender Professionals shall submit copies of summary invoices to the Debtors, the U.S. Trustee, and counsel for ~~any~~the Committee.  The summary invoices shall provide only the total aggregate number of hours billed and a summary description of services provided and the expenses incurred by the applicable party and/or professionals, and shall be subject to all applicable privilege and work product doctrines.  If the Debtors, U.S. Trustee, or ~~any~~the Committee object to the reasonableness of the fees and expenses of any Lender Professional and cannot resolve such objection within ten (10) days after receipt of such invoices, then the Debtors, U.S. Trustee, or the Committee, as the case may be, shall file with this Court and serve on such Lender Professional an objection (the "Fee Objection"), and any failure by any such party to file a Fee Objection within such ten (10) day period shall constitute a waiver of any right of such party to

object to the applicable invoice.  Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of the Lender Professionals shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection.  The Debtors shall timely pay in accordance with the terms and conditions of this ~~Interim~~Final Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed and (b) all fees, costs, and expenses on any invoice to which no Fee Objection has been timely filed.

42. <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP Secured Parties, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees past, present, and future, and their respective heirs, predecessors, successors and assigns in accordance with, and subject to, the terms and conditions of the DIP Documents except to the extent of such party's  actual fraud or willful misconduct as determined in a final order by a court of competent jurisdiction.

43. <u>Right to Credit Bid</u>. In connection with any sale or other disposition of the DIP Collateral or Prepetition Collateral including any sales occurring under or pursuant to section 363 of the Bankruptcy Code, any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or a sale or disposition by a chapter 7 trustee for any of the Debtors (any of the foregoing sales or dispositions, a "<u>Sale</u>"), the DIP Agent (at the direction of the Required Lenders) and the Prepetition Term Loan Agent (at the direction of the Required Lenders (as defined in the Prepetition Credit Agreement)) shall be authorized subject to section 363(k) of the

Bankruptcy Code to credit bid on a dollar-for-dollar basis any or all of the full amount of the respective outstanding DIP Obligations and Prepetition Obligations up to the full amount of the DIP Obligations and Prepetition Obligations, respectively, including any accrued interest, expenses, and fees, in a Sale (including any deposit in connection with such sale) of any DIP Collateral or Prepetition Collateral, whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee, or otherwise, without the need for further court authorization.  The DIP Agent (at the direction of the Required Lenders) and the Prepetition Term Loan Agent (at the direction of the Required Lenders (as defined in the Prepetition Credit Agreement)) shall each have the absolute right to assign, transfer, sell, or otherwise dispose of their respective rights to credit bid to any acquisition vehicle formed in connection with such bid or other designee.

44.     <u>Proofs of Claim</u>.  Neither the DIP Secured Parties nor the Prepetition Secured Parties will be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim arising under the DIP Documents or the Prepetition Loan Documents. The Debtors' stipulations, admissions, and acknowledgments and the provisions of this ~~Interim~~<u>Final</u> Order shall be deemed to constitute timely filed proofs of claim for the DIP Secured Parties and the Prepetition Secured Parties with regard to all claims arising under the DIP Documents and the Prepetition Loan Documents, and, as a result, the Prepetition Obligations shall be deemed allowed for all purposes in accordance with section 502(a) of the Bankruptcy Code.

45.     <u>Limitations on Use of DIP Proceeds, Cash Collateral and Carve-Out</u>.  Except as otherwise permitted in this ~~Interim~~<u>Final</u> Order and the Approved Budget (including with respect to the Investigation Budget), or the DIP Credit Agreement, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may not be used in connection with:

(a) preventing, hindering, or delaying the DIP Secured Parties or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral outside the ordinary course of business without the prior written consent of the Required Lenders; (c) outside the ordinary course of business, using or seeking to use any insurance proceeds constituting DIP Collateral without the prior written consent of the Required Lenders; (d) incurring any indebtedness without the prior written consent of the Required Lenders; (e) seeking to amend or modify any of the rights granted to the DIP Secured Parties or the Prepetition Secured Parties under this ~~Interim~~Final Order, the DIP Documents, or the Prepetition Loan Documents; (f) objecting to or challenging in any way the DIP Liens, the DIP Obligations, the Prepetition Liens, the Prepetition Obligations, the DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Secured Parties or the Prepetition Secured Parties, respectively; (g) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, applicable state law equivalents, any so-called "lender liability" claims and causes of action or other actions to recover or disgorge payments against the DIP Secured Parties, the Prepetition Secured Parties, or any of their respective affiliates, successors and assigns and the partners, shareholders, controlling persons, directors, officers, employees, agents, attorneys, advisors, and professionals); (h) litigating, objecting to, challenging, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, the Prepetition Obligations, or any other rights or interests of the

DIP Secured Parties or the Prepetition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow, or avoid the DIP Obligations or the Prepetition Obligations.

46. <u>Effect of Stipulations on Third Parties</u>. The Debtors' Stipulations contained in paragraph G and releases in paragraph H hereof shall be binding in all circumstances upon the Debtors and the Committee upon entry of this ~~Interim~~Final Order, and upon ~~their~~the Debtors' Estates and any successor thereto in all circumstances for all purposes immediately upon entry of ~~the~~this Final Order. The Debtors' Stipulations shall be binding upon ~~each other party-in-interest, including the Committee, except to the extent such party in interest~~the Debtors and the Committee immediately upon entry of this Final Order. The Committee shall be forever barred from asserting a Challenge (as defined below) and expressly waives, to the fullest extent under applicable law, all rights to assert a Challenge (as defined below). Except to the extent that a party-in-interest other than the Debtors and the Committee *first* obtains standing (including any chapter 11 trustee or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case), by no later than the earlier of (x) sixty (60) calendar days after the Petition Date and (y) the date established by the Court for the submission of Qualified Bids (as defined in the 363 Sale Motion) to purchase the Debtors' assets (such time period established by the earlier of clauses (x) and (y) shall be referred to as the "Challenge Period") and *second*, obtains a final, non-appealable order in favor of such party-in-interest sustaining any such Challenge (as defined below) in any such timely-filed contested matter or adversary proceeding (any such Challenge (as defined below) timely brought for which such a final and non-appealable order is so obtained, a "Successful Challenge"). For the purposes of this ~~Interim~~Final Order, "Challenge" shall mean a timely and properly filed contested matter or adversary proceeding challenging or otherwise

objecting to the admissions, stipulations, findings, or releases set forth in this ~~Interim~~Final Order, including stipulation contained in the Debtors' Stipulations, including but not limited to, those in relation to (a) the amount, validity, extent, priority, or perfection of the mortgages, security interests, and liens of the Prepetition Agents with respect to prepetition collateral; (b) the validity, allowability and priority of the Prepetition Obligations; and (c) any releases set forth or agreed to pursuant to the DIP Documents.  The Challenge Period shall terminate on the date that is the next calendar day after the expiration of the Challenge Period in the event that either (i) no Challenge is raised during the Challenge Period or (ii) with respect only to those parties who file a Challenge, such Challenge is fully and finally adjudicated (collectively, the "Challenge Period Termination Date"). The filing of a motion seeking standing to file a Challenge before expiration of the Challenge Period, which attaches a proposed Challenge, shall extend the Challenge Period with respect to solely that party until two (2) business days after the Court approves the standing motion, or such other time period ordered by the Court in approving the standing motion.  Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any Successor Cases (and after the dismissal of these Chapter 11 Cases or any Successor Cases), and without further notice, motion, or application to, order of, or hearing before this Court, (i) any and all payments made to or for the benefit of the Prepetition Secured Parties or otherwise authorized by this ~~Interim~~Final Order (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery, or avoidance by any party in interest, (ii) any and all such Challenges by any party-in-interest shall be deemed to be forever released, waived, and barred, (iii) all of the Prepetition Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code,

and (iv) the Debtors' Stipulations shall be binding on all parties in interest in these Chapter 11 Cases or any Successor Cases, including ~~any~~the Committee or chapter 11 or chapter 7 trustee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on ~~any~~the Committee and on any other party-in-interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge.  Notwithstanding any provision to the contrary herein, nothing in this ~~Interim~~Final Order shall be construed to grant standing on any party in interest, including ~~any~~the Committee, to bring any Challenge on behalf of the Debtors' Estates.  The failure of any party-in-interest, including ~~any~~the Committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this paragraph 46 or to require or permit an extension of the Challenge Period Termination Date.  To the extent any such Challenge is timely and properly commenced, the Prepetition Agents and any other Prepetition Secured Party shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred in defending themselves and the other Prepetition Secured Parties in any such proceeding as adequate protection, except if a Challenge results in a determination that any part of the pre-petition secured liens or encumbrances are invalid.  Notwithstanding anything to the contrary herein, Challenges may be brought against the Roll-Up Obligations prior to the

Challenge Period Termination Date, and the Court may order appropriate relief in the event of any Successful Challenge to the Roll-Up Obligations.

47. <u>No Third-Party Rights</u>.  Except as explicitly provided for herein or in any of the DIP Documents, this ~~Interim~~Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect, or incidental beneficiary.

48. <u>No Lender Liability</u>.  In determining to make any loan (whether under the DIP Documents or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this ~~Interim~~Final Order or the DIP Documents or taking any other act permitted under this ~~Interim~~Final Order and the DIP Documents, none of the DIP Secured Parties shall (i) be considered or deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the *United States Comprehensive Environmental Response, Compensation and Liability Act*, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal, state or local statute or regulation), (ii) shall be considered or deemed to be a joint employer with any of the Debtors, or (iii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.  Furthermore, nothing in this ~~Interim~~Final Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

49. <u>Section 506(c) Claims</u>.  Subject to ~~entry of a Final Order and~~ the provisions of the Carve-Out and as a further condition of the DIP Facility and any obligation of the DIP Lenders to make credit extensions pursuant to the DIP Documents (and the prior written consent of the DIP

Secured Parties to the payment of the Carve-Out to the extent provided herein and the prior written consent of the Prepetition Secured Parties of the priming of the Prepetition Liens by the DIP Facility and the use of Cash Collateral) (a) no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases shall be charged against or recovered from or against any or all of the DIP Secured Parties or the Prepetition Secured Parties with respect to the DIP Collateral or the Prepetition Collateral, in each case pursuant to section 105 or section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Secured Parties or the Prepetition Secured Parties, as applicable and (b) no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Secured Parties or the Prepetition Secured Parties.

50.    <u>No Marshaling</u>.    ~~Subject to entry of the Final Order, the~~<u>The</u> DIP Secured Parties and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

51.    <u>Section 552(b)</u>.    ~~Subject to entry of the Final Order, the~~<u>The</u> DIP Secured Parties and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Prepetition Secured Parties, as applicable with respect to proceeds, product, offspring or profits of any of the DIP Collateral or Prepetition Collateral, as applicable.

52.    <u>Release of DIP Secured Parties</u>.  Upon entry of ~~this~~<u>the</u> Interim Order, the Debtors, on their own behalf and their Estates, <u>did</u> forever and irrevocably: (i) release, discharge, and acquit each of the DIP Secured Parties and each of their former or current officers, employees,

directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors-in-interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every type, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, solely with respect to or relating to the negotiation and entry into the DIP Documents; and (ii) waive, discharge and release any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and avoidability of the DIP Liens and the DIP Obligations.

53.    <u>Limitation on Liability</u>.  Nothing in this ~~Interim~~<u>Final</u> Order or the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or Prepetition Secured Parties any liability for any claims arising from the prepetition or postpetition activities of the Debtors, including with respect to the operation of their businesses, in connection with their restructuring efforts or administration of these Chapter 11 Cases.

54.    <u>Insurance Proceeds and Policies</u>.  Upon entry of this ~~Interim~~<u>Final</u> Order and to the fullest extent provided by applicable law, the DIP Agent (for the benefit of the DIP Lenders), shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral; <u>provided</u> <u>that</u> the liens and rights granted herein shall not interfere with any rights held by a landlord to insurance proceeds for damage to a landlord's property.

55.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Secured Parties or Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under

this ~~Interim~~Final Order, the DIP Documents, the Prepetition Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

56.     <u>Binding Effect of ~~Interim~~Final Order</u>.    Immediately upon entry of this ~~Interim~~Final Order by this Court, the terms and provisions of this ~~Interim~~Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, all other creditors of any of the Debtors, ~~any~~the Committee (or any other court appointed committee) appointed in the Chapter 11 Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case.

57.     <u>Discharge</u>.  Except as otherwise agreed in writing by the DIP Agent (acting at the direction of the Required Lenders) and the Prepetition Term Loan Agent (acting at the direction of the Required Lenders, as that term is defined in the Prepetition Credit Agreement), the DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (and, in the case of DIP Obligations, "payment in full" as provided by the DIP Documents), on or before the effective date of such confirmed plan of reorganization.  If any of the Debtors propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment (including by credit bid) of the DIP Obligations, and the payment of the Debtors'

obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "Non-Consensual Plan or Sale") without the written consent of the DIP Agent (acting at the direction of the Required Lenders) and the Prepetition Term Loan Agent (acting at the direction of the Required Lenders, as defined in the Prepetition Credit Agreement), the Debtors' proposal or support of a Non-Consensual Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

58.    <u>Zurich Reservation of Rights.</u> For the avoidance of doubt, and notwithstanding anything to the contrary set forth in this ~~Interim~~Final Order or the DIP Documents, (i) the Debtors shall not grant to any other party any liens and/or security interests in any property (or the proceeds thereof) held by Zurich American Insurance Company and/or any of its affiliates (collectively, and together with each of their successors, "<u>Zurich</u>") as collateral to secure obligations under any insurance policies and/or related agreements issued and/or entered into by Zurich (the "<u>Zurich Collateral</u>"); (ii) this ~~Interim~~Final Order does not grant the Debtors any right to use any of the Zurich Collateral; (iii) without altering or limiting any of the foregoing, none of the insurance policies issued by Zurich to or providing coverage to any of the Debtors and any rights and claims thereunder shall be nor shall constitute DIP Collateral nor shall be subject to any liens granted pursuant to this ~~Interim~~Final Order, and further~~,~~ the proceeds of any insurance policy issued by Zurich shall only constitute DIP Collateral to the extent such proceeds are actually paid to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy; and (iv) nothing, including the DIP Documents and/or this

InterimFinal Order, alters or modifies the terms and conditions of any insurance policies issued by Zurich and/or any agreements related thereto.

59.   Broward County.  Notwithstanding any other language in this InterimFinal Order, nothing in this InterimFinal Order shall prime or otherwise alter any statutory tax lien held by Broward County, Florida.

60.   Texas Taxing Authorities.  Notwithstanding any other provisions in this Final Order or any final orders pertaining to post-petition financing or the use of cash collateral in these Chapter 11 Cases, any statutory liens on account of ad valorem taxes held by the Texas Taxing Authorities[5] (the "Tax Liens") shall neither be primed by nor made subordinate to any liens granted to any party hereby to the extent the Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities are fully preserved.

61.   Committee Resolution.  To resolve the issues raised in the Committee Objection, the Debtors, the Committee, the Prepetition Secured Parties, and the DIP Secured Parties have agreed to the material terms of a global resolution as set forth in Exhibit C hereto

---

[5]  For purposes of this Final Order, the term Texas Taxing Authorities shall refer to:  Bexar County, Cameron County, Cypress-Fairbanks Independent School District, Dallas County, Ector CAD, City of El Paso, Fort Bend County, City of Frisco, Grayson County, Greenville Independent School District, Gregg County, Harris County Emergency Service District #11, Harris County Emergency Service District #28, Hidalgo County, City of Houston (where represented by Linebarger Goggan Blair & Sampson), Houston Community College System, City of Humble, Irving Independent School District, Lewisville Independent School District, Lone Star College System, City of McAllen, McLennan County, Montgomery County, Nueces County, City of Pasadena, San Marcos CISD, Smith County, Tarrant County, Victoria County, City of Webster, Potter County Tax Office, Lubbock Central Appraisal District, Brazoria County, et al, City of Katy - Fort Bend and Waller Counties, Katy Management District # 1, Humble Independent School District, Alief Independent School District, City of Houston (where represented by Perdue Brandon), Spring Independent School District, Clear Creek Independent School District, Pasadena Independent School District, Brownsville Independent School District, Plano Independent School District, Frisco Independent School District, City of Burleson, Burleson Independent School District, Richardson Independent School District, Crowley Independent School District, Tyler Independent School District, Hunt County, et al., Wichita County Tax Office, Bell County Tax Appraisal District, Bowie Central Appraisal District, Denton County, Hays County, Taylor County Central Appraisal District, City of Waco and Waco Independent School District and Williamson County.

(the "Committee Resolution").  The Committee Resolution shall be binding upon the Debtors, the Committee, the Prepetition Secured Parties, and DIP Secured Parties upon entry of this Final Order.

62.    60. Joint and Several.  The Debtors are jointly and severally liable for the DIP Obligations and all other obligations hereunder.

63.    61. Survival.  The provisions of this ~~Interim~~Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of this ~~Interim~~Final Order, including the claims, liens, security interests and other protections granted to the DIP Secured Parties and the Prepetition Secured Parties pursuant to this ~~Interim~~Final Order and the DIP Documents, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this ~~Interim~~Final Order until: (i) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this ~~Interim~~Final Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated; and (ii) in respect of the Prepetition Facilities, all of the Prepetition Obligations pursuant to the Prepetition Loan Documents and this ~~Interim~~Final Order, have been indefeasibly paid in full in cash.  The terms and provisions concerning the indemnification of the DIP Secured Parties shall continue in the Chapter 11 Cases, in any Successor Cases, following

dismissal of the Chapter 11 Cases or any Successor Cases, and following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations.  In addition, the terms and provisions of this ~~Interim~~<u>Final</u> Order shall continue in full force and effect for the benefit of the Prepetition Secured Parties notwithstanding the repayment in full or termination of the DIP Obligations until such time as the Prepetition Obligations have been indefeasibly paid in full.

~~62.~~ ~~Final Hearing.~~  **~~The Final Hearing on the Motion shall be held on June 14, 2024,~~** **~~at 9:30 a.m. (Eastern Time) at the United States Bankruptcy Court, George C. Young~~** **~~Federal Courthouse, 400 W. Washington Street, Courtroom 6D, 6th Floor, Orlando, FL~~** **~~32801~~**; *~~provided~~* ~~that the Final Hearing may be adjourned or otherwise postponed upon the~~ ~~Debtors filing a notice of such adjournment with the consent of the DIP Agent (acting at the~~ ~~direction of the Required Lenders).  The Debtors shall promptly serve copies of this Interim~~ ~~Order (which shall constitute adequate notice of the Final Hearing) to the parties having been~~ ~~given notice of the Interim Hearing, and to any other party that has filed a request for notices~~ ~~with this Court.~~  **~~Any objections or responses to entry of the Final Order shall be filed on or~~** **~~before 4:00 p.m. (Eastern Time), on June 7, 2024.~~**

<u>64.</u>    ~~63.~~ <u>Necessary Action</u>.  The Debtors are authorized to take any and all such actions and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this ~~Interim~~<u>Final</u> Order and the transactions contemplated hereby.

<u>65.</u>    ~~64.~~ <u>Enforceability</u>.  This ~~Interim~~<u>Final</u> Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon entry thereof.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, any applicable Local Rules, or Rule 62(a) of the

Federal Rules of Civil Procedure, this ~~Interim~~Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this ~~Interim~~Final Order.

66.    ~~65.~~ Headings.   The headings in this ~~Interim~~Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this ~~Interim~~Final Order.

67.    ~~66.~~ Retention of Jurisdiction.   This Court has and will retain jurisdiction to enforce this ~~Interim~~Final Order according to its terms.

# # #

*(Attorney Paul Steven Singerman is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of the order.)*

# **EXHIBIT A**

DIP Credit Agreement

## **EXHIBIT B**

Approved Budget

**EXHIBIT C**

Committee Settlement

| Summary report: Litera Compare for Word 11.6.0.100 Document comparison done on 6/14/2024 7:12:21 AM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Proposed Interim DIP Order.docx | |
| **Modified DMS:** iw://filesitex.proskauer.com/CURRENT/145316130/11 | |
| **Changes:** | |
| Add | 230 |
| Delete | 219 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 451 |

# **EXHIBIT 2**

**Exhibit C**

**Red Lobster – Resolution Term Sheet**

| No. | Terms of Resolution |
|---|---|
| 1. | $250,000 shall be set aside either from Excluded Cash,[1] DIP Proceeds, or, in the event a party other than the Stalking Horse is named as Successful Bidder,[2] cash proceeds from the Sale. The $250,000 shall be used for payment of any allowed priority WARN claims (not GUC claims). To the extent that there are no such claims, these dollars will be usable for plan funding purposes. |
| 2. | APA shall be modified to add language that Purchaser will waive purchased preferential transfer actions against non-insider creditors under section 547 of the Bankruptcy Code. For the avoidance of doubt, such waived claims will not include claims or causes of action against current or former equity owners of the Debtors or their affiliates. |
| 3. | GUC/plan trustee selected by UCC that is reasonably acceptable to Lenders/Debtors. |
| 4. | The plan will be funded by $2,500,000 (inclusive of the WARN reserve capped at $250,000) taken from Excluded Cash, DIP Proceeds, or, in the event a party other than the Stalking Horse is named as Successful Bidder, cash proceeds from the Sale. The plan funding will be used *first* to pay all priority claims that must be paid under section 1129 and ***thereafter*** to administer the plan/GUC trust and to litigate the Equityholder Actions; provided, however, the plan funding amount ($2,500,000) will be increased dollar for dollar for (i) any savings from the UCC professional fee budget and (ii) any savings from the Debtors' professional fee budget up to a maximum of $250,000. |
| 5. | Equityholder Actions (and no other Purchased Assets) shall be contributed to plan/GUC trust, subject to a 60/40 split in favor of the DIP Lenders; ***provided*** that DIP Agent shall have a consent right over the selection of counsel to prosecute any Equityholder Actions. The DIP Secured Parties and Prepetition Secured Parties (as applicable) will not share in, and waive their right to receive a distribution from, the plan funding and the 40% GUC trust share of the Equityholder Actions. |
| 6. | Willing to conduct 1 on 1 meetings with certain UCC members. |
| 7. | Parties work cooperatively to draft a combined Plan/DS |

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Final DIP Order to which this term sheet is annexed, or the Stalking Horse Acquisition Agreement, as applicable.

[2] As defined in the proposed Bidding Procedures Order submitted to the Court.

| 8. | UCC agrees to withdraw the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Standing and Authorizing the Prosecution of Certain Challenge Claims on Behalf of the Bankruptcy Estates* [ECF No. 358]. |