UNITED STATES BANKRUPTCY COURT
                     MIDDLE DISTRICT OF FLORIDA
                          ORLANDO DIVISION

                                   CASE NO.:6:24-bk-02486-GER
                                   Lead Case
IN RE:

RED LOBSTER MANAGEMENT LLC,
                                   Jointly Administered with
RED LOBSTER RESTAURANTS LLC,       CASE NO.:6:24-bk-02487-GER
RLSV, INC.,                        CASE NO.:6:24-bk-02488-GER
RED LOBSTER CANADA, INC.,          CASE NO.:6:24-bk-02489-GER
RED LOBSTER HOSPITALITY LLC,       CASE NO.:6:24-bk-02490-GER
RL KANSAS LLC,                     CASE NO.:6:24-bk-02491-GER
RED LOBSTER SOURCING LLC,          CASE NO.:6:24-bk-02492-GER
RED LOBSTER SUPPLY LLC,            CASE NO.:6:24-bk-02493-GER
RL COLUMBIA LLC,                   CASE NO.:6:24-bk-02494-GER
RL OF FREDERICK, INC.,             CASE NO.:6:24-bk-02495-GER
RED LOBSTER OF TEXAS, INC.,        CASE NO.:6:24-bk-02496-GER
RL MARYLAND, INC.,                 CASE NO.:6:24-bk-02497-GER
RED LOBSTER OF BEL AIR, INC.,      CASE NO.:6:24-bk-02498-GER
RL SALISBURY, LLC,                 CASE NO.:6:24-bk-02499-GER
RED LOBSTER INTERNATIONAL          CASE NO.:6:24-bk-02500-GER
HOLDINGS LLC,

                    Debtors.
_____



                         JULY 26, 2024

                    TRANSCRIPT OF PROCEEDINGS

               BEFORE THE HONORABLE GRACE E. ROBSON
                  UNITED STATES BANKRUPTCY JUDGE

                    GEORGE C. YOUNG COURTHOUSE
                    400 WEST WASHINGTON STREET
                         ORLANDO, FLORIDA




          Proceedings recorded by electronic sound recording
           Transcript provided by ACCREDITED COURT REPORTERS
                    acreporters@embarqmail.com
                         (407) 443-9289

A P P E A R A N C E S:

PAUL STEVEN SINGERMAN, ESQUIRE - Zoom
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, Florida
      Appearing on behalf of Red Lobster
      Management LLC, et al

JEFFREY R. DUTSON, ESQUIRE - Zoom
King & Spalding LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, Georgia
      Appearing on behalf of Red Lobster
      Management LLC, et al

ROBERT J. FEINSTEIN, ESQUIRE - Zoom
BRADFORD J. SANDLER, ESQUIRE - Zoom
Pachulski, Stang, Ziehl & Jones LLP
780 Third Avenue
34th Floor
New York, New York
      Appearing on behalf of Official Committee of
      Unsecured Creditors

JOSEPH A. PACK, ESQUIRE - Zoom
JESSEY J. KREHL, ESQUIRE - Zoom
Pack Law, P.A.
51 Northeast 24th Street
Suite 108
Miami, Florida
      Appearing as Local Counsel on behalf of
      Official Committee of Unsecured Creditors

WILLIAM J. SIMONITSCH, TRIAL ATTORNEY
SCOTT BOMKAMP, TRIAL ATTORNEY
Office of the United States Trustee
400 West Washington Street
Orlando, Florida
      Appearing on behalf of United States Trustee

KELSEY BURGESS, ESQUIRE
Burr & Forman LLP
200 South Orange Avenue
Suite 800 Orlando, Florida
      Appearing on behalf of Wells Fargo Bank N.A.

```
1   APPEARANCES CONTINUED:
2
3   LARA ROESKE FERNANDEZ, ESQUIRE
4   Trenam, Kemker, Scharf, Barkin, Frye,
5   O'Neill & Mullis, P.A.
6   101 East Kennedy Boulevard
7   Suite 2700
8   Tampa, Florida
9        Appearing on behalf of Fortress Credit Corp.
10
11  ANDREW SORKIN, ESQUIRE - Zoom
12  Latham & Watkins LLP
13  555 Eleventh Street Northwest
14  Washington, D.C.
15       Appearing on behalf of Thai Union Group
16       Public Company Limited
17
18  PAUL J. BATTISTA, ESQUIRE - Zoom
19  Venable LLP
20  100 S.E. 2nd Street
21  Miami, Florida
22       Appearing on behalf of Thai Union Group
23       Public Company Limited as Local Counsel
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
```

4

1              I N D E X
2
3    PROCEEDINGS BEFORE JUDGE ROBSON:                    5
4
5    1) Debtor'S Expedited Motion for Approval -
6       Conditionally Approving Disclosure Statement
7       for the Proposed Joint Chapter 11 Plan;
8       Approving the Solicitation and Voting
9       Procedures with Respect to Confirmation of
10      Proposed Joint Chapter 11 Plan; Granting
11      Related Relief
12
13   2) Debtors' Expedited Motion for Entry of an Order -
14      Approving Claims Objection Procedures; Authorizing
15      Additional Claim Objection Categories for Omnibus
16      Claims Objections
17
18
19   CERTIFICATE OF REPORTER:                            45
20
21   WORD INDEX:                                         46
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48

5

1          ORLANDO, FLORIDA, JULY 26, 2024, 10:00 A.M.

2                    P R O C E E D I N G S

3          THE CLERK: All rise.

4          The United States Bankruptcy Court for the

5     Middle District of Florida is now in session.

6          The Honorable Grace E. Robson presiding.  God

7     save the United States and this Honorable Court.

8          THE COURT: Okay.  Good morning.  Please be

9     seated.

10         All right.  For those on Zoom, please keep your

11    videos turned off and your microphones muted unless you

12    are called to speak.

13         We're here on the Red Lobster Management LLC

14    and related cases, Case Number 24-2486.  I guess I'll

15    take appearances in the courtroom.  So who wants to

16    start?  Ms. Burgess, Ms. Fernandez?

17         MS. BURGESS: Good morning, Your Honor.  Kelsey

18    Burgess on behalf of Wells Fargo.

19         THE COURT: Good morning.  Ms. Fernandez.

20         MS. FERNANDEZ: Good morning, Your Honor.  Lara

21    Fernandez on behalf of Fortress Investment Group.

22         THE COURT: Thank you.  And, Mr. Simonitsch.

23         MR. SIMONITACH: Good morning, Your Honor.

24    William Simonitsch for the United States Trustee.

25         THE COURT: Okay.  Good morning.

6

1          All right.  So we're here on a number of

2 matters.  I just want to announce before we start that,

3 I do have an emergency hearing that's been set for 10:30.

4 Because there's a foreclosure sale scheduled for 11:00,

5 so we may have to take a pause during the hearing this

6 morning, and then we'll have to come back to it so.

7          Okay.  So, that being said, we're here on the

8 Debtors' motion to approve, conditionally approve the

9 disclosure statement and to approve procedures related

10 thereto, as well as the Debtors' motion regarding

11 approving some claim objection procedures and additional

12 categories for omnibus claim objections.

13          So, I see Mr. Dutson there.  Good morning.

14          MR. DUTSON: Good morning, Your Honor.

15          THE COURT: Good morning.  I do note, I believe

16 the U.S. Trustee did file an objection to the approval of

17 the disclosure statement and some of the procedures

18 related thereto.

19          MR. SIMONITSCH: Yes, Your Honor.

20          THE COURT: Okay.  But, let me ask Mr. Dutson

21 first, I don't know if you've had a chance to negotiate

22 anything with the U.S. Trustee's Office.

23          MR. DUTSON: Thank you, Your Honor.  For the

24 record, Jeff Dutson with King & Spalding on behalf of the

25 Debtors.

1      We've engaged with discussions with U.S.

2  Trustee's Office.  I don't know that we have a resolution

3  of the objection.  I think from the Debtors' view, first

4  and foremost, we review these issues as issues that

5  should be resolved in connection with confirmation, but

6  I'll let Mr. Simonitsch speak to their view.

7      THE COURT: Okay.  So you're saying the Debtors'

8  willing to take the risk that an opt-out is deemed

9  consent and then only find out at the confirmation

10  hearing that it's not?

11      MR. DUTSON: Yes, Your Honor.  I'm happy to get

12  into the substance of our view.

13      THE COURT: Yes.

14      MR. DUTSON: But we view that it -- it's our

15  view that we'll prevail at confirmation.  We think that

16  the release is narrowly tailored and appropriate given

17  the circumstances, and we think the opt-out provision is

18  complete in line with provisions and procedures used in

19  this state and throughout the country.

20      We also don't give (sic) it as impacted in any

21  way by the recent Purdue decision.  So we're comfortable

22  proceeding on that basis, understanding that the U.S.

23  Trustee's Office has reserved its right with respect to

24  those issues.

25      THE COURT: Okay.  So, all right.  So then, do

1    you -- well, okay.  Should we do the claim objection

2    procedures first because that might be the easier, less

3    controversial request?

4          MR. DUTSON: That sounds good to me, Your Honor.

5    I'll yield the screen to Mr. Singerman.

6          THE COURT: Oh, okay.

7          MR. DUTSON: If that's okay with the Court.

8          THE COURT: All right.  Very good.

9          Mr. Singerman.  Good morning.  Oh, you're on

10   mute, I think.  Is it working?  Oh, it may be your

11   computer audio.

12         MR. SINGERMAN: Can you hear me now, Your Honor?

13         THE COURT: Yes.  Okay.  There you go.

14         MR. SINGERMAN: I apologize for the delay, Your

15   Honor.  Good morning, Judge Robson.

16         THE COURT: Good morning.

17         MR. SINGERMAN: I'm Paul Singerman from Berger

18   Singerman.  Our firm is co-counsel along with our

19   colleagues at King & Spalding to the Debtors.

20         THE COURT: Okay.

21         MR. SINGERMAN: Before the Court this morning,

22   Your Honor, is the Debtors' Expedited Motion for Entry of

23   an Order Approving Claims Objection Procedures and

24   Authorizing Additional Claim Objection Categories for

25   Omnibus Claims Objections.  That motion, Your Honor, is

9

1    at Docket Entry 652.  The notice of hearing for this

2    hearing is in the record at Docket Entry 655.  The

3    certificate of service of the motion is in the record at

4    ECF 676, and the notice of this hearing is in the record

5    at Docket Entry 677.

6            Your Honor, let me start by reporting to the

7    Court that we have provided to both the Official

8    Committee of Unsecured Creditors and to the Office of the

9    United States Trustee a draft of the subject motion prior

10   to its filing.  We worked through a couple of issues with

11   the Office of the United States Trustee has, and as of

12   this moment, the Debtors believe that the committee

13   supports the relief requested by the motion and that the

14   Office of the United States Trustee has no objection to

15   that.

16           As Your Honor indicated in your very brief

17   introduction of the motion, the motion does seek to add

18   categories of objections, the bases for objections that

19   are not explicitly covered by Section 3, by Rule 3007(d),

20   that is expressly permitted, Your Honor, by Rule 3007(c).

21   The categories that the Debtors wish to add are set forth

22   in Paragraph 15 of the motion before the Court on Page 5,

23   Subparagraphs A through P.  If you would like for the

24   record, I can enumerate them.  If you don't wish me to

25   take the time to do so, Your Honor, I will not.

1      I will tell Your Honor as well that we start

2  this motion by pleading that we will comply with all of

3  the procedural safeguards provided for parties filing

4  claims or asserting claims against the Debtors' estates

5  in 3007(e).  The proposed exhibits to the motion before

6  the Court are comprehensive.  We believe that they more

7  than adequately protect the due process rights of

8  claimants and go beyond what's required by the rules in

9  providing notice to claimants whose claim's subject of a

10  debtor or responsible person with authority under the

11  plan to object to claims with advice regarding the basis

12  for the objection in order to educate a claimant whose

13  claim's been objected to in respect of the issue or

14  issues giving rise to the objection and to respond

15  accordingly.

16      I want to point out, Your Honor, that under the

17  local rules of your Court, in the negative notice

18  procedures at Rule 2002-4(e), there's a general provision

19  of negative notice responses for 21 days, but as to

20  claims objections, Your Honor, the local rule requires

21  absent leave of Court that there be 30 days for parties

22  whose claims have been -- whose claim has been objected

23  to to respond.

24      We are seeking relief from that local rule and

25  requiring claimants whose claim has been objected to to

1   respond within 21 days.  There's authority for the relief

2   sought by the Debtors in this regard from Judge Funk's

3   case in Stein Mart; and in addition, Your Honor, we are

4   doing so in order to provide the Debtors ample time to

5   reply to a response to an objection in time to conduct a

6   hearing if a hearing will be required within the 30 days

7   that are provided for under the general -- under the

8   relief sought by the Debtors in this motion.

9           So, Your Honor, I'm happy to walk you through

10  any of the exhibits.  We believe that they're thoughtful

11  and thorough and comprehensive and will make the claims

12  reconciliation process in these cases most efficient.

13          Last, Your Honor, I will tell you that as of

14  yesterday morning there were 2,144 claims filed against

15  the Debtors' estates, and we're advised by Epiq and

16  informed by our own experiences that a disproportionate

17  amount of claims come in late in the process in

18  anticipation of the claims bar date, which in the cases

19  before the Court today is Sunday, July 28th.  Happy to

20  answer any questions that Your Honor has.

21          THE COURT: Okay.  All right.

22          I guess I had -- one of the questions I did

23  have was, you know, what is it about the 21 days versus

24  the 30 days.  I think you gave an adequate explanation of

25  the rationale for that.

1          I guess, let me see if -- Mr. Simonitsch, did

2    the U.S. Trustee's Office have any issues with the

3    proposed procedures?

4          MR. SIMONITSCH: No, Your Honor.  Our issues

5    were resolved.

6          THE COURT: Okay.  All right.  Very good.

7          Okay.  So then, any other party have any

8    objections or concerns that they want to bring up to the

9    procedures?  No.  Okay.

10         So the only other thing that I wanted to just,

11   I guess, nitpick on the form of the notice of the omnibus

12   claim objection.  The second page where it says, Response

13   and Service, If you disagree, it says you have to file it

14   with the Court but it doesn't have the Court address.  So

15   if you could just put that in.  You could say, you know,

16   the Clerk's office address if they don't have ECF filing

17   privileges.

18         MR. SINGERMAN: Thank you, Your Honor.  That's

19   actually a very good and helpful suggestion.  We will

20   certainly revise the procedures to include the address of

21   the Clerk's office for those without ECF privileges.

22         THE COURT: Okay.  And then the other question,

23   I guess, was just more substantive is on Page 22, I

24   guess, of the proposed order, 22 of Document 652, which

25   is the procedures.  Okay.

1       So the response has to have a declaration by

2   the respondent party.  I mean, I feel like that's

3   somewhat over burdensome, but tell me why we want or feel

4   like that's necessary.

5       MR. SINGERMAN: Thank you, Your Honor.

6       I'm assuming Your Honor's referring to

7   Paragraph 10 d. on Page 6, or as you said, Page 22 of 36

8   at Docket Entry 652.  Is that correct, Your Honor?

9       THE COURT: Yes.  Yes.  Thank you.

10      MR. SINGERMAN: Judge, thank you.

11      I would ask Your Honor, if I may, to take a

12  quick look at Sub d., because it's in a disjunctive, a

13  declaration or other statement.  We were mindful that it

14  made -- that claimants unrepresented by counsel might not

15  know what a declaration is or have prepared one that's

16  compliant with the applicable statute.

17      THE COURT: Okay.

18      MR. SINGERMAN: So we hoped to avoid any

19  inconvenience and certainly any prejudice to a claimant

20  by the adding the words, "or other statement --

21      THE COURT: Okay.

22      MR. SINGERMAN: -- of a person."  If Your Honor

23  believes that that's inadequate in explaining the issue

24  or providing an alternative to a sworn declaration, we're

25  happy to accommodate the Court's concerns.  We did think

1    that what we provided for was sufficient.

2              THE COURT: Okay.  All right.  No, with that,

3    that's fine.  It's -- I guess, maybe I missed that part

4    of the "or other statement."  I just saw declaration and

5    then I guess I must have blanked out on the rest.

6              So, okay.  So with that, then I will go ahead

7    and grant the motion, and then your office can upload the

8    proposed order on that.  Thank you.

9              MR. SINGERMAN: Thank you very much, Judge

10   Robson.

11             THE COURT: Okay.  Thank you.

12             Okay.  So then back to Mr. Dutson on the

13   balloting or the disclosure statement.  So maybe what we

14   should do is walk through Mr. Simonitsch's objection, and

15   then tackle maybe one issue at a time before we get to my

16   10:30 hearing.

17             So let's -- because did -- I guess, Mr. Dutson,

18   did any other party give you either informal responses or

19   objections besides the U.S. Trustee?

20             MR. DUTSON: Yes, Your Honor, we did receive a

21   few informal responses.  From Wells Fargo, they reached

22   out about certain provisions regarding their cash

23   collateral.  And I should note that the Debtors filed

24   this morning I think around 8:45 revised forms of the

25   disclosure statement, the plan, and the proposed order

1    conditionally approving the disclosure statement, and

2    with one exception, all of these informal objections are

3    addressed in that form of order.

4          So we received comments from Zurich, from Wells

5    Fargo, from certain landlords regarding the cure

6    procedures, which I'm happy to speak about, and others.

7    And those, again those are reflected in the proposed form

8    of order.  I'm happy to walk through those.

9          The one thing that I would like to note is that

10   we inadvertently left out one change that we had agreed

11   to with certain counsel for the landlords regarding what

12   would be heard at the August 8th hearing.

13         THE COURT: Okay.

14         MR. DUTSON: The Debtors through their bidding

15   procedures had a cure notice and a cure objection and a

16   cure hearing, and we certainly want to preserve the

17   benefit of that procedure and those deadlines so the

18   parties don't have to refile objections and so that, you

19   know, the process can move forward efficiently.

20         We would agree with the landlords' counsel that

21   that August 8th hearing would not cover adequate

22   assurance of future performance but would just be with

23   respect to cure cost.  And we will -- we've had a number

24   of cure cost objections.  We've been obviously working

25   very hard on the plan and getting ready for this hearing

1    today, but also in the background the team at Alvarez &

2    Marsal has been analyzing the cure objections and our

3    hope is that we'll be able to confer with all of those

4    parties and hopefully resolve them.  But to the extent we

5    can't, probably heard on August 8th.  But that is one --

6    one change that did not make it into this morning's

7    uploaded order.

8             THE COURT: Okay.  But that's something that the

9    Debtors agree to include and incorporate later.  Okay.

10             MR. DUTSON: Yes.  So we've had communication

11   with the relevant landlords' counsel before this hearing.

12   I suspect that they're on, but I believe their concern is

13   resolved by the statement just made.

14             THE COURT: Okay.  All right.  So then why don't

15   we -- I'll let Mr. Simonitsch give kind of the overview

16   of the different bases for objecting to the proposed

17   procedures and what the U.S. Trustee is asking for

18   purposes of approval of the disclosure statement and the

19   ballot, the form of the ballots and solicitation.

20             MR. SIMONITSCH: Yes, Your Honor.

21             THE COURT: Okay.

22             MR. SIMONITSCH: We're really -- William

23   Simonitsch for the United States Trustee.

24             We're really focused, as the Court indicated,

25   solely on the issue of consent to third-party releases,

1   which in our view includes the exculpation provisions,

2   and since exculpation is simply a third-party release, a

3   version of a third-party release for post petition rather

4   than prepetition, so the same standard applies.

5          There was some discussion earlier in the

6   hearing as to the time for this matter to be heard and

7   whether it's appropriate now or it should be later, and I

8   think Your Honor was sort of picking up on what our

9   concern is, is that if this issue wasn't raised until

10   confirmation and not determined until confirmation,

11   essentially the horse is already out of the barn, right,

12   and the Debtor would be contending with the issue of re-

13   balloting or amending the plan.

14          So to establish the baseline is comes from --

15   does come from Purdue Pharma, although we're not relying

16   on Purdue Pharma.  So Purdue held that the bankruptcy

17   court -- bankruptcy code does not authorize a release or

18   injunction, that as part of a reorganization of a Chapter

19   11 effectively seeks the discharge claims against a non-

20   debtor without the consent of affected claimants.

21          Now Purdue did not however state a view of what

22   qualifies as consensual, which is what we're dealing with

23   here today.  Is the opt-out provision consensual?  The

24   UST's position is that the disclosure statement and

25   voting procedures communicates to creditors inaccurate

1    information enacts -- and enacts an improper procedure

2    for obtaining third party releases.  Opt out and deemed

3    consent, deemed consent being that's implied here with

4    those who vote for the plan and then don't have the

5    opportunity to opt out of the release.  Deemed consent is

6    insufficient to obtain consent and the creditors should

7    instead be given the opportunity to opt in.

8         As described by the court in Chassix Holding,

9    533 B.R. 64, of the Southern District of New York, 2015,

10   an opt out requirement is little more than a Court-

11   endorsed trap for the careless or inattentive creditor.

12   Opt out just helps the debtor compile a broader set of

13   third-party releases that might be obtained if an

14   affirmative consent method were used instead.  So this

15   plan contains injunctions arising from these third-party

16   releases and exculpations.

17        We've got different categories of creditors

18   affected here, but the main issue sort of overlaps

19   everyone.  So you've got the category of those who vote,

20   no, but don't check the opt-out box.  As stated by the

21   court in Chassix Holding, deeming creditors who rejected

22   a plan to have consented to releases would defy common

23   sense.  But, what we're really talking about here,

24   whether we're talking about not checking a box or not

25   returning a ballot or abstaining, which was defined in

1    the plan as returning a ballot but not actually marking

2    anything on it, is silence.  The plan is governed by New

3    York law and under New York law silence is not

4    contractual acceptance.

5         We discussed at length in our objection to

6    bankruptcy opinions in Chassix Holding, 533 B.R. 64,

7    Bankruptcy Southern District, 2015; Emerge Energy

8    Services out of Delaware; and Sun Edison, 576 B.R. 453,

9    also out of the Southern District of New York, 2017, that

10   all discuss how accepting silence whether that be by

11   failing to check an opt-out box or abstaining from voting

12   or being ineligible to vote would stretch the meaning of

13   consent to the breaking point.

14        The court in Chassix also had an insightful

15   comment as to unimpaired and ineligible voting classes.

16   Stating that if a creditor must release a claim against a

17   third party under a plan (as a condition to whatever

18   payment or other treatment the plan provides for the

19   creditor's claim against the debtor), it is difficult to

20   understand how such a creditor could possibly be

21   considered unimpaired by the plan in the first place.

22        As to those who vote yes on the plan, who do

23   not then have the opportunity to opt out of the releases,

24   the Court should follow cases like In re: Congoleum Corp,

25   362 B.R. 167, out of the District of New Jersey, 2007,

1    and Arrowmill Development Corp, 211 B.R. 497, also out of

2    New Jersey, 1997, which found courts should not treat

3    votes in favor of the economic treatment in a plan as

4    votes in favor of third-party releases because, quote, a

5    court must ascertain whether the creditor unambiguously

6    manifested assent to the release of the nondebtor from

7    liability on its debt.

8            Therefore, we ask Your Honor is that the

9    disclosure statement and solicitation procedures should

10   be rejected, consent should be demonstrated through an

11   unequivocal opt-in procedure under which no party would

12   be deemed to have granted a third-party release, whether

13   it be as a release of the filing of the plan or

14   exculpation as defined in the plan, unless the party

15   affirmatively opted to do so in a way that was separate

16   from the party's vote with respect to the plan.

17           THE COURT: Thank you.  So, Mr. Dutson.

18           MR. DUTSON: Thank you, Your Honor.  Jeff Dutson

19   with King & Spalding on behalf of the Debtors.

20           I think once again the point we would make,

21   Your Honor, is that this really is a confirmation hearing

22   issue and something that should be addressed at that

23   time.  The Debtors are comfortable moving forward, and I

24   believe the other parties in interest including the

25   committee and our term lenders are in support of the plan

1   are supportive of moving forward on this basis and

2   addressing this issue at confirmation.

3           Our colleagues at the U.S. Trustee's Office

4   referred to Purdue.  Purdue was very careful, the supreme

5   court was very careful in that decision to say what it

6   was not deciding and that decision does not have an

7   impact on what constitutes consent; and courts again in

8   this state and throughout the country before and after

9   the Purdue ruling have found that an opt-out form that's

10  clear, that alerts creditors and anyone voting on the

11  plan what the consequences of not opting out is

12  constitutes consent for purposes of a third-party

13  release.  We are very much in line with the standard

14  practice on the point.

15          With respect to our exculpation, the case cited

16  by the U.S. Trustee's Office with respect to exculpation,

17  Stein Mart, although it referred to exculpation, that was

18  a different provision than the provision we have here.

19  Our provision does not -- that case included a release

20  within that exculpation provision.

21          Here, we're being very clear that the only

22  parties entitled to exculpation, entitled to a

23  declaration from this Court that no wrongdoing has been

24  done during this case, the only parties are the estate

25  fiduciaries, the Debtors, the Debtors' professionals, the

1    D's and O's, the committee members, the committee, and

2    other estate professionals, and that we're not seeking an

3    exculpation clause that goes prior to the petition date.

4    It's very clear that we're talking about activity that

5    was -- that was on the petition date and afterwards,

6    actually that's been done under this Court's supervision

7    by again fiduciaries acting to maximize the value of this

8    estate, and in the context of this plan we believe

9    exculpation is appropriate.

10            Certainly happy to provide further briefing on

11   this topic in advance to confirmation and to address any

12   other issues raised by the U.S. Trustee's Office.  We

13   know that they've only had I think seven days to review

14   this.  So happy to continue that discussion.  Also, happy

15   to brief the issue for the Court.  But we do think that

16   that both of these provisions are firmly in line with

17   standard Chapter 11 practice and also unimpaired and

18   unimpacted by the recent decision in Purdue.

19            THE COURT: Okay.  So, all right.  So then let's

20   talk briefly about the exculpation first which is -- so,

21   in your view, is it -- is it a release or is it a

22   parameters under which processionals would be held

23   liable?  I mean, it's I think in -- you know, because a

24   lot of times I want to look at more of the substance over

25   a label, right.  So if --

1          MR. DUTSON: Yes.

2          THE COURT: -- if the U.S. Trustee's argument is

3    akin in this form to a third-party release and there are

4    cases that have approved it -- obviously, not the Stein

5    Mart case because that was just the -- the only exclusion

6    was for actual fraud.  But here, I think the exculpation

7    says, you know, willful, willful misconduct, gross

8    negligence, those things are not included in what's being

9    exculpated, and to me it seems like it is limited in

10   time.  The only issue I had with that was more of the

11   scope of it because the definition also includes related

12   person.  And then related person, which I don't know if

13   it's intended to be related party, related person is the

14   same definition.  But, I guess, I'm asking the question

15   presuming it's the same, because then that seems to

16   incorporate a broader scope of parties or people.  So can

17   you discuss that a little bit?

18          MR. DUTSON: Yes, Your Honor.  So that is a

19   typo.  The related party should be related persons, and

20   the order that we uploaded this morning is -- addresses

21   that and fixes that typo.

22          To the extent that the Court believes that that

23   definition goes beyond the estate fiduciaries, I don't

24   think the Debtors would have any objection of taking a

25   look back at that particular definition.  Again, then 10

24

1    of this provision is with respect to the -- again, the

2    estate fiduciaries have been working post petition to

3    maximize value of these estates, working under the

4    supervision of this Court.  And as the Court pointed out,

5    as is completely consistent with, you know, our standard

6    Chapter 11 practice, we have excluded willful misconduct,

7    gross negligence, and fraud.  So to the extent someone

8    was hiding something or anything like that, that's not --

9    that's not impacted by this exculpation clause.

10              THE COURT: Okay.  So you're saying the Debtors

11   would be willing to delete from the definition of

12   exculpated parties related persons?

13              MR. DUTSON: Your Honor, I think that would work

14   for the Debtors.

15              This obviously impacts the committee as well.

16   So happy to hear them on a different view.  We have not

17   had a chance to confer on this exact point.

18              THE COURT: Okay.  All right.  I mean, I guess

19   related person could stay in there, for purposes of, you

20   know, the other definition like for a released party, but

21   for purposes of the exculpated party, if that's carved

22   out, then -- then the way I view the exculpation

23   provision in the plan is more of a standard of care

24   versus a release.  So I would be, you know, I don't have

25   any problem with that.

1          So, okay.  Then the -- so the real issue to me

2     is the, you know, the opt-out, opt-in issue, you know,

3     issue.  And I know I have the emergency hearing in a

4     couple of minute, but I reviewed all of the -- or as many

5     cases as I could between when the motion was filed and

6     today's hearing, including cases that were cited by the

7     U.S. Trustee in its objection, as well as the cases that

8     go the other way.  I'm not -- I know that there were some

9     cases that were pending on this issue post Purdue.  So,

10    Mr. Dutson, I think you mentioned that there were some

11    cases that approved the procedures post Purdue.  Can you

12    tell me what those are?

13         MR. DUTSON: Yes, Your Honor.

14         THE COURT: Okay.

15         MR. DUTSON: The one that comes to mind is the

16    Invitae decision that was post Purdue in New Jersey, I

17    believe it was just within the past few weeks, that that

18    addressed this exact issue, whether an opt-out provision

19    amounted (sic) to consent.

20         And again, the point made by the court and made

21    by the Debtors here today is the supreme court decision

22    was very careful in not to disrupt the status quo with

23    established practice on these issues.  The ruling, the

24    ruling was about whether nonconsensual releases were

25    permitted.  It didn't go to what constitutes consent.

1   They went out of their way to say they're just not going

2   to address that.  And so our view is the supreme court

3   deliberately did not disturb the status quo and is

4   preserving that the -- the existing practice, which is

5   consistent also with class action law and other areas of

6   the law, where this isn't about silence, this isn't the

7   Debtor saying, hey, we have a plan and we're going to put

8   a notice of it in The Wall Street Journal, we're not

9   going to tell anyone what's in it and you have to come

10  find out.  We are going out and serving these creditors

11  and these parties in interest with very clear notices,

12  that very conspicuously state what is going on and give

13  them the ability to opt out of these releases.

14          THE COURT: Okay.  Well, I mean, I know they're

15  saying it preserves the status quo and I acknowledge the

16  supreme court explicitly left open the issue of what is a

17  consensual release.  But, you know, pre-Purdue there was

18  still a split of authority.  You know, maybe, maybe a

19  majority of courts did approve it, but there were

20  certainly not an insignificant number of courts that did

21  not approve it.

22          To me, it seems here, you know, you're seeking

23  approval of third-party releases post Purdue that prior

24  to Purdue the courts could have at least in certain

25  jurisdictions were authorized to issue third-party

1    releases over, you know, without a party's consent.  Now

2    the law is clear that, you know, bankruptcy courts cannot

3    do that.  So to me, it is a little bit different to

4    include in a provision in a plan and then try to bind

5    parties by lack of response.

6            So, all right.  So with that, I'll continue in

7    a minute, but let me take my emergency 10:30 and then

8    we'll go back -- come back to this.  So just give me a

9    moment.

10            So, all right.  So we're going to take a pause

11   from the Red Lobster case.

12            (Thereupon, a brief pause in the proceedings,

13   after which the following was had.)

14            THE COURT: Okay.  Let's go back to Red Lobster,

15   Case Number 24-2486.

16            Okay.  So, you know, so like I said, I have

17   reviewed the cases.  I reviewed the Purdue Pharma case.

18   And, as I said earlier, that case did -- the supreme

19   court did leave open the question of what is consensual

20   release and, you know, like I said, there is a split of

21   authority that existed, you know, prior to Purdue and on

22   as whether consent must be expressed by an affirmative

23   act versus can be implied by silence.

24            The U.S. Trustee does point out that the

25   Debtors' plan provides that New York law is what is to

1   apply and, you know, under that, under New York law there

2   is silence is not consent unless there are -- there are

3   three exceptions.  You know, the ongoing course of

4   conduct, whether there are benefits that are accepted by

5   the offeree, in this case which would be claimants or

6   creditors, and despite an opportunity to reject the

7   offeror is expect -- knowing that the offeror expects

8   compensation.  And then the third exception is whether

9   the offeror has given the offeree, the Debtor has given

10   here the creditors the reason to understand that the

11   silence will constitute acceptance and that, you know,

12   being silent is basically an intent to accept the offer,

13   and that exception really requires some element of

14   deception or misleading.

15        You know, here, I can't find that a failure to

16   return a ballot or an opt-out form, you know, could be

17   attributed to an actual consent to a release.  I mean, it

18   could be carelessness, inattentiveness, mistake, or just,

19   like I said, lack of interest.

20        Here, the disclosure statement shows that

21   creditors are receiving an unknown and possibly de

22   minimis distribution.  So I also have concerns if there's

23   lack of consideration, especially for a third-party claim

24   where, you know, it's one thing for the rights and

25   obligations bind between the parties, meaning the Debtors

1  and creditors, but to third parties, especially in light

2  of Purdue, people may think, well, there's no condition

3  under which or circumstances under which a bankruptcy

4  court's going to approve a third-party release.

5         Here, the case has also been moving quickly.

6  You know, it's a big case.  It's moving fast.  Time

7  frames have been shortened.  The claims bar date has not

8  yet even run.  So, you know, I think that the third-party

9  release is a fundamentally different type of provision

10  than other types of provisions, and because bankruptcy

11  courts can only adjust the relationship between a

12  creditor or an equity holder and the debtor, not third

13  parties, I'm not going to impose a duty to opt out.  So

14  we might as well change it now and not risk later if you

15  know that I'm not going to be approving it down the road.

16         And, like I said, I see exculpation, that I'm

17  okay with because it seems to me it's limited with the

18  removal of the related persons from the definition.  It's

19  limited to estate professionals, those involved with the

20  plan, and limited in time.  So to me, it seems more like

21  a standard of care and it does except out the actual

22  fraud, gross negligence, and willful misconduct.

23         So that being said, there are other issues I

24  think that the U.S. Trustee pointed out.  Meaning, the

25  disclosure statement doesn't contain adequate information

1    as to why the releases are in there in the first place.

2    I mean, it recites the provisions and says this is what's

3    going to happen but it doesn't necessarily discuss like

4    why -- why is that there, and why giving a vote is giving

5    a release.

6         That being said, I'm okay with the idea that an

7    acceptance of the plan is consenting to the release.  But

8    as to parties that either don't vote or, you know, turn

9    in a blank ballot and are deemed to accept, you know,

10   they need to specifically opt in.  So that's my view of

11   it.

12        So, and I also think that maybe Article II of

13   the disclosure statement should include -- maybe you

14   would want to include reasons why a party would want to

15   opt in.

16        I also did not see any discussion of the carve-

17   out that was negotiated for unsecured creditors, which,

18   you know, may be something that the Debtors want to

19   include in the disclosure statement.

20        Also, there are on Pages 83 and 84, there's

21   references to -- hold on, let me pull it up -- being able

22   to satisfy voting requirements.  Under the RSA, as to

23   Class 3 and 4, I think that's a typo.  Let me -- yeah.

24   So if you look at Document 633, Page 83, at the bottom,

25   Subparagraph F, in Section 722 it referenced --

1          MR. DUTSON: That's -- that's correct, Your

2     Honor.  Thank you for noting that.

3          THE COURT: Okay.  All right.  Yeah.  So I don't

4     know if you already caught that in the redline, which I

5     didn't get a chance to look at, but that was something

6     there.  And then, okay.

7          So then I guess you're going to have to make

8     edits to incorporate my ruling on, you know, that

9     requiring opt in versus allowing opt out.

10          MR. SIMONITSCH: Your Honor, if I could ask for

11     clarification.

12          THE COURT: Yes.

13          MR. SIMONITSCH: So you had mentioned people who

14     don't vote.  You mentioned people who submit a blank

15     ballot, right, the abstaining category.  I'm assuming

16     don't vote includes either who are eligible but fail to

17     vote as well as those who are ineligible to vote, such as

18     they were considered unimpaired; and therefore, under the

19     existing procedure it would -- even if they're ineligible

20     to vote, they get sent the opt-out form.

21          THE COURT: Right.  So they should be getting an

22     opt-in form.

23          MR. SIMONITSCH: Correct.  And then the one

24     category not mentioned or I didn't hear you mention, Your

25     Honor, was rejecting creditors.  In other words, they

32

1    voted no, are they -- my understanding based on the

2    totality of your ruling is if you vote no to the plan,

3    you would still have to opt in.

4         THE COURT: Correct.  So a reject, I'm not

5    deeming a rejection a consent.  I'm deeming a reject --

6    just like an acceptance will be a consent to the release,

7    a rejection is going to be a rejection of the release

8    unless they opt in.

9         MR. SIMONITSCH: Thank you, Your Honor.

10        THE COURT: So, yeah.  So just to, I guess,

11   recap.  An acceptance will be deemed consent to the

12   release, otherwise the parties who are unimpaired, which

13   I also agree with the judges that said that, you know, if

14   you are imposing a requirement to opt out or you're going

15   to be bound to release claims, that's not really

16   unimpaired.  So this, my ruling basically gave -- keeps

17   them unimpaired, they should get an opt-in form.  Those

18   are who are impaired and deemed to reject also should get

19   the opt-in form because they're not going to be -- I'm

20   not deeming them to consent to the release.  And then

21   rejection, same thing.  They're not consenting unless

22   they opt in.

23        You may want to also add to the ballot the

24   definition of a related party, to the extent it's

25   included, because that is included, it is part of the

1  definition of released party even if it's removed from

2  the definition of exculpated party.

3            And, oh, okay.  So then another thing is the

4  Exhibit 2 which is the confirmation notice.  I think --

5  so the title of the notice, I think you should add

6  references to, you know, the releases and injunctions.

7  And then on generally all of the exhibits, just update or

8  correct the court's website, if you haven't done so

9  already.

10           Okay.  I think -- I think that covers the scope

11  of the -- I didn't have any other issues with any of the

12  other dates or procedures.

13           Mr. Simonitsch, did you have any other

14  concerns?

15           MR. SIMONITSCH: Nothing else, Your Honor.

16           THE COURT: Okay.  All right.

17           So, Mr. Dutson, any questions or concerns from,

18  or clarifications needed, because I guess we did go over

19  a lot, not necessarily in a perfect order so.

20           MR. DUTSON: I don't think I have any questions

21  about the suggestions you had with respect to the ballots

22  and the disclosure statement.  We will revise those

23  accordingly and coordinate with the U.S. Trustee's Office

24  on that as well.

25           With respect to the exculpation clause, it does

1  occur to me that related parties included employees which

2  might matter, or partners or people like that.  Certainly

3  not trying to include affiliates and as broad as that

4  goes, but wouldn't want, for example, an employee of the

5  Debtors' investment banker getting sued and then that

6  entity having an indemnification claim back against the

7  Debtor as an administrative expense.

8         THE COURT: Understood.  So you don't think that

9  that's covered by the definition.  Hold on.

10         MR. DUTSON: I certainly think there's an

11  argument that that's what Debtors' professionals means,

12  it would include all partners and employees and people

13  that are part of that company or firm.  But, you know, I

14  think it would be helpful to clarify that if we're going

15  to strike related parties.

16         THE COURT: Okay.  So where would you want to

17  include that?  In the definition of exculpated party or?

18         MR. DUTSON: We could include it in that

19  definition or we could -- it may be less drafting to just

20  pare down the definition of related -- well, I guess we

21  would need to keep that related party definition broader

22  for the release.  So I think we would address it --

23  you're right, Your Honor, we would address it in the

24  definition.  I see Mr. Sandler coming on the screen.  He

25  may want to correct me.

35

1        THE COURT: Okay.  Mr. Sandler.

2        MR. SANDLER: No, no, no.  Your Honor, Brad

3    Sandler with Pachulski, Stand, Ziehl & Jones for the

4    committee.

5        This is, what Mr. Dutson raises, is an issue

6    also for the committee.  Don't forget, even aside from

7    the committee professionals and certainly as Mr. Dutson

8    said, it should apply to, you know, partners and

9    employees, etc., but with committee members themselves,

10   don't forget, these are folks who are essentially

11   volunteers and while the committee is subject to

12   exculpation, you know, I think they also want to make

13   sure that their employee and, you know, their folks are

14   not subject to some type of claim down the road for their

15   service in these cases post petition pre-effective date.

16       THE COURT: Well, okay.  So the exculpated

17   parties includes the committee and those individual

18   members who do not -- well, I guess it says opt out so.

19       MR. SANDLER: Which I guess now that would read

20   based on your ruling, Your Honor, I guess who do not opt

21   in I guess that would --

22       THE COURT: Right.  So, and then all

23   professionals and agents retained by the committee.  So

24   you're saying that if we don't delineate that the

25   professionals include all of the employees of the

1    professionals that's --

2            MR. SANDLER: It's not just the professionals,

3    Your Honor.  I'm actually thinking, if you think of some

4    of our committee members, for example, we have PepsiCo,

5    right, large, large company.  We don't want any of the

6    claims coming in against one of their employees.  So we

7    think the definition could be a little bit broader, and

8    we agree with Mr. Dutson that the definition just could,

9    you know, be reasonably broad so that the committee and

10   certainly the committee members are protected.

11           THE COURT: Well, if the -- do you agree with

12   the scope of the exculpation though, that it relates to

13   anything related to the case?  It's a post petition --

14           MR. SANDLER: Yes.  Correct.

15           THE COURT: -- pre-effective date or by the

16   effective date or, you know, relating to the cases.  So

17   you're saying to the extent any of the committee members'

18   employees did something, touched the case, they're

19   concerned about or want to make sure that they're not

20   going to be liable other than within this limited scope.

21           MR. SANDLER: That's right, Your Honor.

22           THE COURT: Or, you know, fraud, you know, gross

23   negligence, willful misconduct.

24           Okay.  So if you can find a way to work that

25   in, I don't have a problem with it.  Mr. Simonitsch,

1  anything?

2          MR. SIMONITSCH: We'll work with them, Your

3  Honor.

4          THE COURT: Okay.  All right.  So wherever you

5  believe it can fit in that, you know, keeps in line with

6  the idea that if, you know, case related post petition

7  and related to fiduciaries or fiduciary adjacent in the

8  case, then I'll let the parties work on that.  Okay.  To

9  include that.

10          MR. SANDLER: Thank you, Your Honor.

11          THE COURT: Okay.  Okay.  So, all right.  What

12  else should we discuss this morning?

13          MR. DUTSON: So the release provisions we'll

14  revise to -- with opt-in component as discussed.

15  Exculpation will not have any opt-in or opt-out but we'll

16  address the definition that we discussed just now to

17  address that issue.  We'll revise based on the Court's

18  other points.

19          I'm happy to provide an overview of the plan,

20  if that would be helpful, but I get the sense that the

21  Court has read it closely but happy to go through that.

22  We were prepared to do that, and the relevant deadlines

23  and things like that, but I think those are all -- those

24  are all pretty clear on their -- on their face.

25          THE COURT: Okay.  Well, I mean, if you want to,

1    that's fine, because maybe -- maybe I was focusing more

2    on a particular issue than some of those other things and

3    points.

4             MR. DUTSON: Sure, if I --

5             THE COURT: Okay.  So go ahead and tell me what

6    you want to tell me.

7             MR. DUTSON: Sure.  So we do appreciate the

8    Court's willingness to have this hearing via Zoom today

9    and hear us on short notice.

10            As we mentioned at the status conference, our

11   goal was to not have any short notice with respect to

12   voting and objection to approve the plan and

13   confirmation, and the procedure that we've laid out we

14   believe hits the mark on that.  But we do appreciate the

15   Court's willingness to consider conditional approval of

16   the disclosure statement.

17            And, I think at the last hearing before the

18   Court on July 18th, Your Honor asked if we're going to

19   file a plan and at that point in time it was still not

20   absolutely certain that we had all the issues pinned down

21   but we're obviously here today because of the hard work

22   of the committee and its professionals and our term

23   lenders and purchaser and their professionals, as well as

24   the Debtors and their advisors, to reach agreement on the

25   terms of a plan and that's what was filed before the

1   Court.  Something that's supported by the committee and

2   by the term lenders who are very happy about that and

3   very grateful for all the hard work that went into it.

4   And again, we appreciate the Court's willingness to

5   review it in short notice for purposes of conditional

6   approval of the disclosure statement.

7          It is a toggle plan, and that the Debtors

8   essentially are reserving the right to still pursue the

9   363 sale, that's not our intention.  The purchaser, as we

10  understand it, wants to accomplish this transaction

11  through the Plan of Reorganization feature, but we did

12  bake into the plan a toggle if needed.  So we'll proceed

13  on that basis.  And because of that, the parties did file

14  a joint motion to continue the sale hearing that was set

15  for Monday.  We appreciate the Court continuing that

16  hearing to September 5th.

17         The plan itself, in addition to toggle, the

18  classification is fairly simple.  There's two voting

19  classes; the term lenders and the unsecured creditors.

20  And as the Court alluded to, the plan reflects the

21  allocation of value that was described in connection with

22  the resolution of our DIP financing motion.  So it's

23  definitely consistent with that.  It establishes a GUC

24  Trust, a general unsecured creditors trust, to prosecute

25  those claims.  That trustee has not been selected at this

1    point in time but will be by the time we file the plan

2    supplement.  There's also a plan administrator.

3           Even in the event that we do the reorganization

4    option, there's still two Debtors that will be wind-down

5    Debtors.  Those Debtors would not be reorganized but

6    their assets will be sold in connection with the

7    transaction.  And so we'll have a plan administrator who

8    has a wind-down budget that that administrator can use

9    for those entities, and that budget is a little bit

10   bigger if we're in a plan of liquidation scenario, which

11   again we don't expect.  We expect to consummate this

12   pursuant to reorganization at this point in time.

13          THE COURT: And so do you contemplate that there

14   will be two different people, the trustee and the plan

15   administrator?

16          MR. DUTSON: We've talked about this with the

17   committee and the term lenders.  I think everyone thinks

18   it's worth considering whether it should be the same

19   person, and so we did include a line in the plan stating

20   that the GUC Trustee and the plan administrator could be

21   the same individual.

22          THE COURT: Okay.

23          MR. DUTSON: So if that makes things more

24   efficient and if that's agreeable to the parties that

25   have consent rights over that issue, we may very well do

41

1    that.

2              THE COURT: Okay.

3              MR. DUTSON: We've discussed the releases and

4    exculpation provision already.

5              THE COURT: Um-hum.

6              MR. DUTSON:  There is a provision in the plan

7    that gives the purchaser the election -- this was part of

8    the negotiated resolution of the plan terms, the

9    purchaser can elect to essentially jettison an entity,

10   RLSV, Inc., so that it's no longer part of the plan.

11   That would happen before the confirmation hearing.  We're

12   still diligencing that issue and thinking through the

13   best way to handle it.

14             I think from the purchaser's perspective, that

15   entity does not have any assets of any value and so they

16   don't want it to be part of the transaction.  Again,

17   we're continuing to evaluate that, and so that may be

18   something that's on the horizon.

19             If that Debtor is excluded from the plan, we,

20   of course, would consider the best way to resolve that

21   case.  It may be that we end up filing a motion to

22   dismiss, but that's not something that's before the Court

23   today obviously, but did want to flag that as something

24   that may be coming down the pike.

25             THE COURT: Okay.

1        MR. DUTSON: The plan does contemplate provides

2   a purchase agreement which will be with the plan

3   supplement and it's assume liabilities and the treatment

4   of -- really importantly the treatment of post petition

5   trade payables should be the same as it would have been

6   under the 363 sale.

7        Those were the points about the plan that I

8   thought it might be worthwhile to highlight for the

9   Court.

10        THE COURT: Okay.

11        MR. DUTSON: And happy to answer any other

12   questions, and we certainly do appreciate the Court's

13   time today.

14        THE COURT: Okay.  No, I didn't have any other

15   questions.

16        Did Mr. Sandler want to have any other points

17   raised in addition to what Mr. Dutson represented?

18        MR. SANDLER: No, Your Honor.  And, as you can

19   imagine, we worked very closely with the Debtors and with

20   Fortress to come up with a disclosure statement that we

21   think is fulsome and would be a value maximizing the

22   transaction and, you know, we certainly support

23   conditional approval of the disclosure statement today.

24        THE COURT: Okay.  All right.  So with the

25   modifications on the record, does anybody else want to be

43

1  heard in connection with approval of the disclosure

2  statement, at least conditionally?  No?  Okay.

3        All right.  So then I will approve it with the

4  modifications discussed on the record, and I guess I'll

5  look to Mr. Dutson for the revised form of order and the

6  forms, and please run that by all the parties that it

7  needs to be run by including Mr. Simonitsch.  And then, I

8  presume I'll get it sometime today?  I don't know.  What

9  do you think, Mr. Dutson?  Monday?

10        MR. DUTSON: Your Honor, my expectation is that

11  we'd be able to get it uploaded today.  That may be

12  ambitious and I've sort of incorrectly judged timing once

13  before in this case but we will certainly try as best we

14  can.

15        THE COURT: Okay.  Well, it's only 11:01 now.

16  So Mr. Simonitsch looks like he wants to be here all day.

17  So I'm sure he's going to anxiously awaiting the proposed

18  revisions.

19        MR. SIMONITSCH: I'm eager to be here all day,

20  Your Honor, except for the 6:00 o'clock Deadpool &

21  Wolverine movie that I'm seeing with my son.  So other

22  than that, I can be available after that.

23        THE COURT: You can just print it and bring it

24  with you.  I'm sure that will be lovely.

25        So, all right.  Well, all right, thank you for

44

1   all of your good work on the issue and the, you know,

2   arguments, and I will look forward to receiving the

3   revisions and hopefully it will be before 5:00 o'clock

4   today.  So, otherwise, just let my chambers know when to

5   expect it if it's going to be a little bit later.  Okay.

6            MR. DUTSON: Absolutely.  Thank you, Your Honor.

7            THE COURT: Okay.  All right.  Thank you.  We'll

8   see you back here --

9            MR. SINGERMAN: Thank you, Judge.

10           THE COURT: -- I guess August 8th.  Okay.  All

11  right.  Court is adjourned.  Thank you.

12           THE CLERK: All rise.

13           (Thereupon, the taking of the proceedings was

14  concluded.)

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings in

the above-styled matter.


*Cynthia D. Vachon*          July 28, 2024

Cynthia D. Vachon

Notary Public-State of Florida

Commission Expires: 07/24/2026

Commission Number: HH291609

**A**

**A.M** 5:1
**ability** 26:13
**able** 16:3 30:21 43:11
**above-styled** 45:4
**absent** 10:21
**absolutely** 38:20 44:6
**abstaining** 18:25
  19:11 31:15
**accept** 28:12 30:9
**acceptance** 19:4
  28:11 30:7 32:6,11
**accepted** 28:4
**accepting** 19:10
**accommodate** 13:25
**accomplish** 39:10
**ACCREDITED** 1:48
**acknowledge** 26:15
**acreporters@emba...**
  1:49
**act** 27:23
**acting** 22:7
**action** 26:5
**activity** 22:4
**actual** 23:6 28:17
  29:21
**add** 9:17,21 32:23
  33:5
**adding** 13:20
**addition** 11:3 39:17
  42:17
**additional** 4:15 6:11
  8:24
**address** 12:14,16,20
  22:11 26:2 34:22,23
  37:16,17
**addressed** 15:3 20:22
  25:18
**addresses** 23:20
**addressing** 21:2
**adequate** 11:24 15:21
  29:25
**adequately** 10:7
**adjacent** 37:7
**adjourned** 44:11
**adjust** 29:11
**Administered** 1:10

**administrative** 34:7
**administrator** 40:2,7
  40:8,15,20
**advance** 22:11
**advice** 10:11
**advised** 11:15
**advisors** 38:24
**affiliates** 34:3
**affirmative** 18:14
  27:22
**affirmatively** 20:15
**agents** 35:23
**agree** 15:20 16:9
  32:13 36:8,11
**agreeable** 40:24
**agreed** 15:10
**agreement** 38:24
  42:2
**ahead** 14:6 38:5
**AIR** 1:22
**akin** 23:3
**al** 2:9,17
**alerts** 21:10
**allocation** 39:21
**allowing** 31:9
**alluded** 39:20
**alternative** 13:24
**Alvarez** 16:1
**ambitious** 43:12
**amending** 17:13
**amount** 11:17
**amounted** 25:19
**ample** 11:4
**analyzing** 16:2
**ANDREW** 3:11
**announce** 6:2
**answer** 11:20 42:11
**anticipation** 11:18
**anxiously** 43:17
**anybody** 42:25
**apologize** 8:14
**appearances** 3:1 5:15
**Appearing** 2:8,16,25
  2:34,42,48 3:9,15
  3:22
**applicable** 13:16
**applies** 17:4

**apply** 28:1 35:8
**appreciate** 38:7,14
  39:4,15 42:12
**appropriate** 7:16
  17:7 22:9
**approval** 4:5 6:16
  16:18 26:23 38:15
  39:6 42:23 43:11
**approve** 6:8,8,9
  26:19,21 29:4 38:12
  43:3
**approved** 23:4 25:11
**approving** 4:6,8,14
  6:11 8:23 15:1
  29:15
**areas** 26:5
**argument** 23:2 34:11
**arguments** 44:2
**arising** 18:15
**Arrowmill** 20:1
**Article** 30:12
**ascertain** 20:5
**aside** 35:6
**asked** 38:18
**asking** 16:17 23:14
**assent** 20:6
**asserting** 10:4
**assets** 40:6 41:15
**assume** 42:3
**assuming** 13:6 31:15
**assurance** 15:22
**Atlanta** 2:15
**ATTORNEY** 2:37,38
**attributed** 28:17
**audio** 8:11
**August** 15:12,21 16:5
  44:10
**authority** 10:10 11:1
  26:18 27:21
**authorize** 17:17
**authorized** 26:25
**Authorizing** 4:14
  8:24
**available** 43:22
**Avenue** 2:5,22,46
**avoid** 13:18
**awaiting** 43:17

**B**

**B.R** 18:9 19:6,8,25
  20:1
**back** 6:6 14:12 23:25
  27:8,8,14 34:6 44:8
**background** 16:1
**bake** 39:12
**ballot** 16:19 18:25
  19:1 28:16 30:9
  31:15 32:23
**balloting** 14:13 17:13
**ballots** 16:19 33:21
**Bank** 2:48
**banker** 34:5
**bankruptcy** 1:1,37
  5:4 17:16,17 19:6,7
  27:2 29:3,10
**bar** 11:18 29:7
**Barkin** 3:4
**barn** 17:11
**based** 32:1 35:20
  37:17
**baseline** 17:14
**bases** 9:18 16:16
**basically** 28:12 32:16
**basis** 7:22 10:11 21:1
  39:13
**BATTISTA** 3:18
**behalf** 2:8,16,25,34
  2:42,48 3:9,15,22
  5:18,21 6:24 20:19
**BEL** 1:22
**believe** 6:15 9:12
  10:6 11:10 16:12
  20:24 22:8 25:17
  37:5 38:14
**believes** 13:23 23:22
**benefit** 15:17
**benefits** 28:4
**Berger** 2:4 8:17
**best** 41:13,20 43:13
**beyond** 10:8 23:23
**bidding** 15:14
**big** 29:6
**bigger** 40:10
**bind** 27:4 28:25
**bit** 23:17 27:3 36:7

40:9 44:5
**blank** 30:9 31:14
**blanked** 14:5
**BOMKAMP** 2:38
**bottom** 30:24
**Boulevard** 3:6
**bound** 32:15
**box** 18:20,24 19:11
**Brad** 35:2
**BRADFORD** 2:20
**breaking** 19:13
**Brickell** 2:5
**brief** 9:16 22:15
  27:12
**briefing** 22:10
**briefly** 22:20
**bring** 12:8 43:23
**broad** 34:3 36:9
**broader** 18:12 23:16
  34:21 36:7
**budget** 40:8,9
**burdensome** 13:3
**Burgess** 2:44 5:16,17
  5:18
**Burr** 2:45

**C**

**C** 1:39 2:1 5:2 45:1,1
**called** 5:12
**can't** 16:5 28:15
**CANADA** 1:13
**care** 24:23 29:21
**careful** 21:4,5 25:22
**careless** 18:11
**carelessness** 28:18
**carve-** 30:16
**carved** 24:21
**case** 1:5,6,11,12,13
  1:14,15,16,17,18,19
  1:20,21,22,23,24
  5:14 11:3 21:15,19
  21:24 23:5 27:11,15
  27:17,18 28:5 29:5
  29:6 36:13,18 37:6
  37:8 41:21 43:13
**cases** 5:14 11:12,18
  19:24 23:4 25:5,6,7

25:9,11 27:17 35:15
  36:16
**cash** 14:22
**categories** 4:15 6:12
  8:24 9:18,21 18:17
**category** 18:19 31:15
  31:24
**caught** 31:4
**certain** 14:22 15:5,11
  26:24 38:20
**certainly** 12:20 13:19
  15:16 22:10 26:20
  34:2,10 35:7 36:10
  42:12,22 43:13
**certificate** 4:19 9:3
**certify** 45:2
**chambers** 44:4
**chance** 6:21 24:17
  31:5
**change** 15:10 16:6
  29:14
**Chapter** 4:7,10 17:18
  22:17 24:6
**Chassix** 18:8,21 19:6
  19:14
**check** 18:20 19:11
**checking** 18:24
**circumstances** 7:17
  29:3
**cited** 21:15 25:6
**claim** 4:15 6:11,12
  8:1,24 10:22,25
  12:12 19:16,19
  28:23 34:6 35:14
**claim's** 10:9,13
**claimant** 10:12 13:19
**claimants** 10:8,9,25
  13:14 17:20 28:5
**claims** 4:14,16 8:23
  8:25 10:4,4,11,20
  10:22 11:11,14,17
  11:18 17:19 29:7
  32:15 36:6 39:25
**clarification** 31:11
**clarifications** 33:18
**clarify** 34:14
**class** 26:5 30:23

**classes** 19:15 39:19
**classification** 39:18
**clause** 22:3 24:9
  33:25
**clear** 21:10,21 22:4
  26:11 27:2 37:24
**CLERK** 5:3 44:12
**Clerk's** 12:16,21
**closely** 37:21 42:19
**co-counsel** 8:18
**code** 17:17
**collateral** 14:23
**colleagues** 8:19 21:3
**COLUMBIA** 1:18
**come** 6:6 11:17 17:15
  26:9 27:8 42:20
**comes** 17:14 25:15
**comfortable** 7:21
  20:23
**coming** 34:24 36:6
  41:24
**comment** 19:15
**comments** 15:4
**Commission** 45:9,10
**committee** 2:25,35
  9:8,12 20:25 22:1,1
  24:15 35:4,6,7,9,11
  35:17,23 36:4,9,10
  36:17 38:22 39:1
  40:17
**common** 18:22
**communicates** 17:25
**communication**
  16:10
**company** 3:16,23
  34:13 36:5
**compensation** 28:8
**compile** 18:12
**complete** 7:18
**completely** 24:5
**compliant** 13:16
**comply** 10:2
**component** 37:14
**comprehensive** 10:6
  11:11
**computer** 8:11
**concern** 16:12 17:9

**concerned** 36:19
**concerns** 12:8 13:25
  28:22 33:14,17
**concluded** 44:14
**condition** 19:17 29:2
**conditional** 38:15
  39:5 42:23
**conditionally** 4:6 6:8
  15:1 43:2
**conduct** 11:5 28:4
**confer** 16:3 24:17
**conference** 38:10
**confirmation** 4:9 7:5
  7:9,15 17:10,10
  20:21 21:2 22:11
  33:4 38:13 41:11
**Congoleum** 19:24
**connection** 7:5 39:21
  40:6 43:1
**consensual** 17:22,23
  26:17 27:19
**consent** 7:9 16:25
  17:20 18:3,3,5,6,14
  19:13 20:10 21:7,12
  25:19,25 27:1,22
  28:2,17 32:5,6,11
  32:20 40:25
**consented** 18:22
**consenting** 30:7
  32:21
**consequences** 21:11
**consider** 38:15 41:20
**consideration** 28:23
**considered** 19:21
  31:18
**considering** 40:18
**consistent** 24:5 26:5
  39:23
**conspicuously** 26:12
**constitute** 28:11
**constitutes** 21:7,12
  25:25
**consummate** 40:11
**contain** 29:25
**contains** 18:15
**contemplate** 40:13
  42:1

contending 17:12
context 22:8
continue 22:14 27:6
  39:14
CONTINUED 3:1
continuing 39:15
  41:17
contractual 19:4
controversial 8:3
coordinate 33:23
Corp 3:9 19:24 20:1
correct 13:8 31:1,23
  32:4 33:8 34:25
  36:14 45:2
cost 15:23,24
counsel 2:34 3:23
  13:14 15:11,20
  16:11
country 7:19 21:8
couple 9:10 25:4
course 28:3 41:20
court 1:1,48 5:4,7,8
  5:19,22,25 6:15,20
  7:7,13,25 8:6,7,8,13
  8:16,20,21 9:7,22
  10:6,17,21 11:19,21
  12:6,14,14,22 13:9
  13:17,21 14:2,11
  15:13 16:8,14,21,24
  17:17 18:8,21 19:14
  19:24 20:5,17 21:5
  21:23 22:15,19 23:2
  23:22 24:4,4,10,18
  25:14,20,21 26:2,14
  26:16 27:14,19 31:3
  31:12,21 32:4,10
  33:16 34:8,16 35:1
  35:16,22 36:11,15
  36:22 37:4,11,21,25
  38:5,18 39:1,15,20
  40:13,22 41:2,5,22
  41:25 42:9,10,14,24
  43:15,23 44:7,10,11
Court- 18:10
court's 13:25 22:6
  29:4 33:8 37:17
  38:8,15 39:4 42:12

COURTHOUSE
  1:39
courtroom 5:15
courts 20:2 21:7
  26:19,20,24 27:2
  29:11
cover 15:21
covered 9:19 34:9
covers 33:10
Credit 3:9
creditor 18:11 19:16
  19:20 20:5 29:12
creditor's 19:19
creditors 2:26,35 9:8
  17:25 18:6,17,21
  21:10 26:10 28:6,10
  28:21 29:1 30:17
  31:25 39:19,24
cure 15:5,15,15,16,23
  15:24 16:2
Cynthia 45:7

_____

**D**

d 4:1 5:2 13:7,12 45:7
D.C 3:14
D's 22:1
date 11:18 22:3,5
  29:7 35:15 36:15,16
dates 33:12
day 43:16,19
days 10:19,21 11:1,6
  11:23,24 22:13
de 28:21
deadlines 15:17
  37:22
Deadpool 43:20
dealing 17:22
debt 20:7
debtor 10:10 17:12
  17:20 18:12 19:19
  26:7 28:9 29:12
  34:7 41:19
Debtor'S 4:5
Debtors 1:27 4:13 6:8
  6:10,25 7:3,7 8:19
  8:22 9:12,21 10:4
  11:2,4,8,15 14:23

15:14 16:9 20:19,23
  21:25,25 23:24
  24:10,14 25:21
  27:25 28:25 30:18
  34:5,11 38:24 39:7
  40:4,5,5 42:19
deception 28:14
deciding 21:6
decision 7:21 21:5,6
  22:18 25:16,21
declaration 13:1,13
  13:15,24 14:4 21:23
deemed 7:8 18:2,3,5
  20:12 30:9 32:11,18
deeming 18:21 32:5,5
  32:20
defined 18:25 20:14
definitely 39:23
definition 23:11,14
  23:23,25 24:11,20
  29:18 32:24 33:1,2
  34:9,17,19,20,21,24
  36:7,8 37:16
defy 18:22
Delaware 19:8
delay 8:14
delete 24:11
deliberately 26:3
delineate 35:24
demonstrated 20:10
described 18:8 39:21
despite 28:6
determined 17:10
Development 20:1
didn't 25:25 31:5,24
  33:11 42:14
different 16:16 18:17
  21:18 24:16 27:3
  29:9 40:14
difficult 19:19
diligencing 41:12
DIP 39:22
disagree 12:13
discharge 17:19
disclosure 4:6 6:9,17
  14:13,25 15:1 16:18
  17:24 20:9 28:20

29:25 30:13,19
  33:22 38:16 39:6
  42:20,23 43:1
discuss 19:10 23:17
  30:3 37:12
discussed 19:5 37:14
  37:16 41:3 43:4
discussion 17:5 22:14
  30:16
discussions 7:1
disjunctive 13:12
dismiss 41:22
disproportionate
  11:16
disrupt 25:22
distribution 28:22
District 1:2 5:5 18:9
  19:7,9,25
disturb 26:3
DIVISION 1:3
Docket 9:1,2,5 13:8
Document 12:24
  30:24
doesn't 12:14 29:25
  30:3
doing 11:4
don't 6:21 7:2,20
  9:24 12:16 15:18
  16:14 18:4,20 23:12
  23:23 24:24 30:8
  31:3,14,16 33:20
  34:8 35:6,10,24
  36:5,25 40:11 41:16
  43:8
draft 9:9
drafting 34:19
due 10:7
Dutson 2:11 6:13,14
  6:20,23,24 7:11,14
  8:4,7 14:12,17,20
  15:14 16:10 20:17
  20:18,18 23:1,18
  24:13 25:10,13,15
  31:1 33:17,20 34:10
  34:18 35:5,7 36:8
  37:13 38:4,7 40:16
  40:23 41:3,6 42:1

42:11,17 43:5,9,10
44:6
**duty** 29:13

---

### E

**E** 1:36 2:1,1 4:1 5:2,2
5:6 45:1,1
**eager** 43:19
**earlier** 17:5 27:18
**easier** 8:2
**East** 3:6
**ECF** 9:4 12:16,21
**economic** 20:3
**Edison** 19:8
**edits** 31:8
**educate** 10:12
**effective** 36:16
**effectively** 17:19
**efficient** 11:12 40:24
**efficiently** 15:19
**either** 14:18 30:8
31:16
**elect** 41:9
**election** 41:7
**electronic** 1:47 45:3
**element** 28:13
**Eleventh** 3:13
**eligible** 31:16
**Emerge** 19:7
**emergency** 6:3 25:3
27:7
**employee** 34:4 35:13
**employees** 34:1,12
35:9,25 36:6,18
**enacts** 18:1,1
**endorsed** 18:11
**Energy** 19:7
**engaged** 7:1
**entities** 40:9
**entitled** 21:22,22
**entity** 34:6 41:9,15
**Entry** 4:13 8:22 9:1,2
9:5 13:8
**enumerate** 9:24
**Epiq** 11:15
**equity** 29:12
**especially** 28:23 29:1

**ESQUIRE** 2:3,11,19
2:20,28,29,44 3:3
3:11,18
**essentially** 17:11
35:10 39:8 41:9
**establish** 17:14
**established** 25:23
**establishes** 39:23
**estate** 21:24 22:2,8
23:23 24:2 29:19
**estates** 10:4 11:15
24:3
**et** 2:9,17
**evaluate** 41:17
**event** 40:3
**exact** 24:17 25:18
**example** 34:4 36:4
**exception** 15:2 28:8
28:13
**exceptions** 28:3
**excluded** 24:6 41:19
**exclusion** 23:5
**exculpated** 23:9
24:12,21 33:2 34:17
35:16
**exculpation** 17:1,2
20:14 21:15,16,17
21:20,22 22:3,9,20
23:6 24:9,22 29:16
33:25 35:12 36:12
37:15 41:4
**exculpations** 18:16
**Exhibit** 33:4
**exhibits** 10:5 11:10
33:7
**existed** 27:21
**existing** 26:4 31:19
**expect** 28:7 40:11,11
44:5
**expectation** 43:10
**expects** 28:7
**Expedited** 4:5,13
8:22
**expense** 34:7
**experiences** 11:16
**Expires** 45:9
**explaining** 13:23

**explanation** 11:24
**explicitly** 9:19 26:16
**expressed** 27:22
**expressly** 9:20
**extent** 16:4 23:22
24:7 32:24 36:17

---

### F

**F** 30:25 45:1
**face** 37:24
**fail** 31:16
**failing** 19:11
**failure** 28:15
**fairly** 39:18
**Fargo** 2:48 5:18
14:21 15:5
**fast** 29:6
**favor** 20:3,4
**feature** 39:11
**feel** 13:2,3
**FEINSTEIN** 2:19
**Fernandez** 3:3 5:16
5:19,20,21
**fiduciaries** 21:25
22:7 23:23 24:2
37:7
**fiduciary** 37:7
**file** 6:16 12:13 38:19
39:13 40:1
**filed** 11:14 14:23 25:5
38:25
**filing** 9:10 10:3 12:16
20:13 41:21
**financing** 39:22
**find** 7:9 26:10 28:15
36:24
**fine** 14:3 38:1
**firm** 8:18 34:13
**firmly** 22:16
**first** 6:21 7:3 8:2
19:21 22:20 30:1
**fit** 37:5
**fixes** 23:21
**flag** 41:23
**Floor** 2:23
**Florida** 1:2,41 2:7,33
2:41,47 3:8,21 5:1,5

45:8
**focused** 16:24
**focusing** 38:1
**folks** 35:10,13
**follow** 19:24
**following** 27:13
**foreclosure** 6:4
**foregoing** 45:2
**foremost** 7:4
**forget** 35:6,10
**form** 12:11 15:3,7
16:19 21:9 23:3
28:16 31:20,22
32:17,19 43:5
**Forman** 2:45
**forms** 14:24 43:6
**forth** 9:21
**Fortress** 3:9 5:21
42:20
**forward** 15:19 20:23
21:1 44:2
**found** 20:2 21:9
**frames** 29:7
**fraud** 23:6 24:7 29:22
36:22
**FREDERICK** 1:19
**Frye** 3:4
**fulsome** 42:21
**fundamentally** 29:9
**Funk's** 11:2
**further** 22:10
**future** 15:22

---

### G

**G** 5:2
**general** 10:18 11:7
39:24
**generally** 33:7
**GEORGE** 1:39
**Georgia** 2:15
**getting** 15:25 31:21
34:5
**give** 7:20 14:18 16:15
26:12 27:8
**given** 7:16 18:7 28:9
28:9
**gives** 41:7

giving 10:14 30:4,4
go 8:13 10:8 14:6
  25:8,25 27:8,14
  33:18 37:21 38:5
goal 38:11
God 5:6
goes 22:3 23:23 34:4
going 26:1,7,9,10,12
  27:10 29:4,13,15
  30:3 31:7 32:7,14
  32:19 34:14 36:20
  38:18 43:17 44:5
good 5:8,17,19,20,23
  5:25 6:13,14,15 8:4
  8:8,9,15,16 12:6,19
  44:1
governed 19:2
Grace 1:36 5:6
grant 14:7
granted 20:12
Granting 4:10
grateful 39:3
gross 23:7 24:7 29:22
  36:22
Group 3:15,22 5:21
GUC 39:23 40:20
guess 5:14 11:22 12:1
  12:11,23,24 14:3,5
  14:17 23:14 24:18
  31:7 32:10 33:18
  34:20 35:18,19,20
  35:21 43:4 44:10

_____

H

handle 41:13
happen 30:3 41:11
happy 7:11 11:9,19
  13:25 15:6,8 22:10
  22:14,14 24:16
  37:19,21 39:2 42:11
hard 15:25 38:21
  39:3
haven't 33:8
he's 43:17
hear 8:12 24:16
  31:24 38:9
heard 15:12 16:5

17:6 43:1
hearing 6:3,5 7:10
  9:1,2,4,1 11:6,6 14:16
  15:12,16,21,25
  16:11 17:6 20:21
  25:3,6 38:8,17
  39:14,16 41:11
held 17:16 22:22
helpful 12:19 34:14
  37:20
helps 18:12
hey 26:7
HH291609 45:10
hiding 24:8
highlight 42:8
hits 38:14
hold 30:21 34:9
holder 29:12
Holding 18:8,21 19:6
HOLDINGS 1:25
Honor 5:17,20,23
  6:14,19,23 7:11 8:4
  8:12,15,22,25 9:6
  9:16,20,25 10:1,16
  10:20 11:3,9,13,20
  12:4,18 13:5,8,11
  13:22 14:20 16:20
  17:8 20:8,18,21
  23:18 24:13 25:13
  31:2,10,25 32:9
  33:15 34:23 35:2,20
  36:3,21 37:3,10
  38:18 42:18 43:10
  43:20 44:6
Honor's 13:6
Honorable 1:36 5:6,7
hope 16:3
hoped 13:18
hopefully 16:4 44:3
horizon 41:18
horse 17:11
HOSPITALITY 1:14

_____

I

I'll 5:14 7:6 8:5 16:15
  27:6 37:8 43:4,8
I'm 7:11 8:17 11:9

13:6 15:6,8 23:14
  25:8 29:13,15,16
  30:6 31:15 32:4,5
  32:19 36:3 37:19
  43:17,19,21,24
I've 43:12
idea 30:6 37:6
II 30:12
imagine 42:19
impact 21:7
impacted 7:20 24:9
impacts 24:15
impaired 32:18
implied 18:3 27:23
importantly 42:4
impose 29:13
imposing 32:14
improper 18:1
inaccurate 17:25
inadequate 13:23
inadvertently 15:10
inattentive 18:11
inattentiveness 28:18
include 12:20 16:9
  27:4 30:13,14,19
  34:3,12,17,18 35:25
  37:9 40:19
included 21:19 23:8
  32:25,25 34:1
includes 17:1 23:11
  31:16 35:17
including 20:24 25:6
  43:7
inconvenience 13:19
incorporate 16:9
  23:16 31:8
incorrectly 43:12
indemnification 34:6
INDEX 4:21
indicated 9:16 16:24
individual 35:17
  40:21
ineligible 19:12,15
  31:17,19
informal 14:18,21
  15:2
information 18:1

29:25
informed 11:16
injunction 17:18
injunctions 18:15
  33:6
insightful 19:14
insignificant 26:20
insufficient 18:6
intended 23:13
intent 28:12
intention 39:9
interest 20:24 26:11
  28:19
INTERNATIONAL
  1:24
introduction 9:17
investment 5:21 34:5
Invitae 25:16
involved 29:19
isn't 26:6,6
issue 10:13 13:23
  14:15 16:25 17:9,12
  18:18 20:22 21:2
  22:15 23:10 25:1,2
  25:3,9,18 26:16,25
  35:5 37:17 38:2
  40:25 41:12 44:1
issues 7:4,4,24 9:10
  10:14 12:2,4 22:12
  25:23 29:23 33:11
  38:20
it's 7:10,14 13:12
  14:3 17:7 22:4,23
  23:13,15 28:24 29:6
  29:6,17,18 32:24
  33:1 36:2,13 39:22
  40:18 41:10 42:3
  43:15 44:5

_____

J

J 2:19,20,29,37 3:18
Jeff 6:24 20:18
JEFFREY 2:11
Jersey 19:25 20:2
  25:16
JESSEY 2:29
jettison 41:9

joint 4:7,10 39:14
Jointly 1:10
Jones 2:21 35:3
JOSEPH 2:28
Journal 26:8
Judge 1:37 4:3 8:15 11:2 13:10 14:9 44:9
judged 43:12
judges 32:13
July 1:32 5:1 11:19 38:18 45:6
jurisdictions 26:25

**K**

KANSAS 1:15
keep 5:10 34:21
keeps 32:16 37:5
Kelsey 2:44 5:17
Kemker 3:4
Kennedy 3:6
kind 16:15
King 2:12 6:24 8:19 20:19
know 6:21 7:2 11:23 12:15 13:15 15:19 22:13,23 23:7,12 24:5,20,24 25:2,2,3 25:8 26:14,17,18,22 27:1,2,16,20,21 28:1,3,11,15,16,24 29:6,8,15 30:8,9,18 31:4,8 32:13 33:6 34:13 35:8,12,13 36:9,16,22,22 37:5 37:6 42:22 43:8 44:1,4
knowing 28:7
KREHL 2:29

**L**

label 22:25
lack 27:5 28:19,23
laid 38:13
landlords 15:5,11,20 16:11
Lara 3:3 5:20

large 36:5,5
late 11:17
Latham 3:12
law 2:30 19:3,3 26:5 26:6 27:2,25 28:1
Lead 1:6
leave 10:21 27:19
left 15:10 26:16
lenders 20:25 38:23 39:2,19 40:17
length 19:5
let's 14:17 22:19 27:14
liabilities 42:3
liability 20:7
liable 22:23 36:20
light 29:1
limited 3:16,23 23:9 29:17,19,20 36:20
line 7:18 21:13 22:16 37:5 40:19
liquidation 40:10
little 18:10 23:17 27:3 36:7 40:9 44:5
LLC 1:9,11,14,15,16 1:17,18,23,25 2:9 2:17 5:13
LLP 2:4,12,21,45 3:12,19
Lobster 1:9,11,13,14 1:16,17,20,22,24 2:8,16 5:13 27:11 27:14
local 2:34 3:23 10:17 10:20,24
longer 41:10
look 13:12 22:24 23:25 30:24 31:5 43:5 44:2
looks 43:16
lot 22:24 33:19
lovely 43:24

**M**

main 18:18
majority 26:19
Management 1:9 2:9

2:17 5:13
manifested 20:6
mark 38:14
marking 19:1
Marsal 16:2
Mart 11:3 21:17 23:5
MARYLAND 1:21
matter 17:6 34:2 45:4
matters 6:2
maximize 22:7 24:3
maximizing 42:21
mean 13:2 22:23 24:18 26:14 28:17 30:2 37:25
meaning 19:12 28:25 29:24
means 34:11
members 22:1 35:9 35:18 36:4,10,17
mention 31:24
mentioned 25:10 31:13,14,24 38:10
method 18:14
Miami 2:7,33 3:21
microphones 5:11
Middle 1:2 5:5
mind 25:15
mindful 13:13
minimis 28:22
minute 25:4 27:7
misconduct 23:7 24:6 29:22 36:23
misleading 28:14
missed 14:3
mistake 28:18
modifications 42:25 43:4
moment 9:12 27:9
Monday 39:15 43:9
morning 5:8,17,19,20 5:23,25 6:6,13,14 6:15 8:9,15,16,21 11:14 14:24 23:20 37:12
morning's 16:6
motion 4:5,13 6:8,10 8:22,25 9:3,9,13,17

9:17,22 10:2,5 11:8 14:7 25:5 39:14,22 41:21
move 15:19
movie 43:21
moving 20:23 21:1 29:5,6
Mullis 3:5
mute 8:10
muted 5:11

**N**

N 2:1 4:1 5:2
N.A 2:48
narrowly 7:16
NE 2:13
necessarily 30:3 33:19
necessary 13:4
need 30:10 34:21
needed 33:18 39:12
needs 43:7
negative 10:17,19
negligence 23:8 24:7 29:22 36:23
negotiate 6:21
negotiated 30:17 41:8
New 2:24,24 18:9 19:2,3,9,25 20:2 25:16 27:25 28:1
nitpick 12:11
non- 17:19
nonconsensual 25:24
nondebtor 20:6
Northeast 2:31
Northwest 3:13
Notary 45:8
note 6:15 14:23 15:9
notice 9:1,4 10:9,17 10:19 12:11 15:15 26:8 33:4,5 38:9,11 39:5
notices 26:11
noting 31:2
number 5:14 6:1 15:23 26:20 27:15

45:10

**O**

**O** 5:2
**o'clock** 43:20 44:3
**O'Neill** 3:5
**O's** 22:1
**object** 10:11
**objected** 10:13,22,25
**objecting** 16:16
**objection** 4:14,15
  6:11,16 7:3 8:1,23
  8:24 9:14 10:12,14
  11:5 12:12 14:14
  15:15 19:5 23:24
  25:7 38:12
**objections** 4:16 6:12
  8:25 9:18,18 10:20
  12:8 14:19 15:2,18
  15:24 16:2
**obligations** 28:25
**obtain** 18:6
**obtained** 18:13
**obtaining** 18:2
**obviously** 15:24 23:4
  24:15 38:21 41:23
**occur** 34:1
**offer** 28:12
**offeree** 28:5,9
**offeror** 28:7,7,9
**office** 2:39 6:22 7:2
  7:23 9:8,11,14 12:2
  12:16,21 14:7 21:3
  21:16 22:12 33:23
**Official** 2:25,35 9:7
**oh** 8:6,9,10 33:3
**okay** 5:8,25 6:7,20
  7:7,25 8:1,6,7,13,20
  11:21 12:6,7,9,22
  12:25 13:17,21 14:2
  14:6,11,12 15:13
  16:8,9,14,21 22:19
  24:10,18 25:1,14
  26:14 27:14,16
  29:17 30:6 31:3,6
  33:3,10,16 34:16
  35:1,16 36:24 37:4

37:8,11,11,25 38:5
  40:22 41:2,25 42:10
  42:14,24 43:2,15
  44:5,7,10
**omnibus** 4:15 6:12
  8:25 12:11
**once** 20:20 43:12
**ongoing** 28:3
**open** 26:16 27:19
**opinions** 19:6
**opportunity** 18:5,7
  19:23 28:6
**opt** 18:2,5,7,10,12
  19:23 26:13 29:13
  30:10,15 31:9,9
  32:3,8,14,22 35:18
  35:20
**opt-in** 20:11 25:2
  31:22 32:17,19
  37:14,15
**opt-out** 7:8,17 17:23
  18:20 19:11 21:9
  25:2,18 28:16 31:20
  37:15
**opted** 20:15
**opting** 21:11
**option** 40:4
**Orange** 2:46
**order** 4:13 8:23 10:12
  11:4 12:24 14:8,25
  15:3,8 16:7 23:20
  33:19 43:5
**Orlando** 1:3,41 2:41
  2:47 5:1
**overlaps** 18:18
**overview** 16:15 37:19

**P**

**P** 2:1,1 5:2 9:23
**P.A** 2:30 3:5
**Pachulski** 2:21 35:3
**Pack** 2:28,30
**page** 9:22 12:12,23
  13:7,7 30:24
**Pages** 30:20
**Paragraph** 9:22 13:7
**parameters** 22:22

**pare** 34:20
**part** 14:3 17:18 32:25
  34:13 41:7,10,16
**particular** 23:25 38:2
**parties** 10:3,21 15:18
  16:4 20:24 21:22,24
  23:16 24:12 26:11
  27:5 28:25 29:1,13
  30:8 32:12 34:1,15
  35:17 37:8 39:13
  40:24 43:6
**partners** 34:2,12 35:8
**party** 12:7 13:2 14:18
  18:2 19:17 20:11,14
  23:13,19 24:20,21
  30:14 32:24 33:1,2
  34:17,21
**party's** 20:16 27:1
**Paul** 2:3 3:18 8:17
**pause** 6:5 27:10,12
**payables** 42:5
**payment** 19:18
**Peachtree** 2:13
**pending** 25:9
**people** 23:16 29:2
  31:13,14 34:2,12
  40:14
**PepsiCo** 36:4
**perfect** 33:19
**performance** 15:22
**permitted** 9:20 25:25
**person** 10:10 13:22
  23:12,12,13 24:19
  40:19
**persons** 23:19 24:12
  29:18
**perspective** 41:14
**petition** 17:3 22:3,5
  24:2 35:15 36:13
  37:6 42:4
**Pharma** 17:15,16
  27:17
**picking** 17:8
**pike** 41:24
**pinned** 38:20
**place** 19:21 30:1
**plan** 4:7,10 10:11

14:25 15:25 17:13
  18:4,15,22 19:1,2
  19:17,18,21,22 20:3
  20:13,14,16,25
  21:11 22:8 24:23
  26:7 27:4,25 29:20
  30:7 32:2 37:19
  38:12,19,25 39:7,11
  39:12,17,20 40:1,2
  40:7,10,14,19,20
  41:6,8,10,19 42:1,2
  42:7
**pleading** 10:2
**please** 5:8,10 43:6
**point** 10:16 19:13
  20:20 21:14 24:17
  25:20 27:24 38:19
  40:1,12
**pointed** 24:4 29:24
**points** 37:18 38:3
  42:7,16
**position** 17:24
**possibly** 19:20 28:21
**post** 17:3 24:2 25:9
  25:11,16 26:23
  35:15 36:13 37:6
  42:4
**practice** 21:14 22:17
  24:6 25:23 26:4
**pre-effective** 35:15
  36:15
**pre-Purdue** 26:17
**prejudice** 13:19
**prepared** 13:15 37:22
**prepetition** 17:4
**preserve** 15:16
**preserves** 26:15
**preserving** 26:4
**presiding** 5:6
**presume** 43:8
**presuming** 23:15
**pretty** 37:24
**prevail** 7:15
**print** 43:23
**prior** 9:9 22:3 26:23
  27:21
**privileges** 12:17,21

probably 16:5
problem 24:25 36:25
procedural 10:3
procedure 15:17 18:1
  20:11 31:19 38:13
procedures 4:9,14
  6:9,11,17 7:18 8:2
  8:23 10:18 12:3,9
  12:20,25 15:6,15
  16:17 17:25 20:9
  25:11 33:12
proceed 39:12
proceeding 7:22
proceedings 1:34,47
  4:3 27:12 44:13
  45:3
process 10:7 11:12,17
  15:19
processionals 22:22
professionals 21:25
  22:2 29:19 34:11
  35:7,23,25 36:1,2
  38:22,23
proposed 4:7,10 10:5
  12:3,24 14:8,25
  15:7 16:16 43:17
prosecute 39:24
protect 10:7
protected 36:10
provide 11:4 22:10
  37:19
provided 1:48 9:7
  10:3 11:7 14:1
provides 19:18 27:25
  42:1
providing 10:9 13:24
provision 7:17 10:18
  17:23 21:18,18,19
  21:20 24:1,23 25:18
  27:4 29:9 41:4,6
provisions 7:18 14:22
  17:1 22:16 29:10
  30:2 37:13
Public 3:16,23
Public-State 45:8
pull 30:21
purchase 42:2

purchaser 38:23 39:9
  41:7,9
purchaser's 41:14
Purdue 7:21 17:15,16
  17:16,21 21:4,4,9
  22:18 25:9,11,16
  26:23,24 27:17,21
  29:2
purposes 16:18 21:12
  24:19,21 39:5
pursuant 40:12
pursue 39:8
put 12:15 26:7

## Q

qualifies 17:22
question 12:22 23:14
  27:19
questions 11:20,22
  33:17,20 42:12,15
quick 13:12
quickly 29:5
quo 25:22 26:3,15
quote 20:4

## R

R 2:1,11 5:2 45:1
raised 17:9 22:12
  42:17
raises 35:5
rationale 11:25
re- 17:12
reach 38:24
reached 14:21
read 35:19 37:21
ready 15:25
real 25:1
really 16:22,24 18:23
  20:21 28:13 32:15
  42:4
reason 28:10
reasonably 36:9
reasons 30:14
recap 32:11
receive 14:20
received 15:4
receiving 28:21 44:2

recites 30:2
reconciliation 11:12
record 6:24 9:2,3,4
  9:24 42:25 43:4
recorded 1:47
recording 1:47 45:3
Red 1:9,11,13,14,16
  1:17,20,22,24 2:8
  2:16 5:13 27:11,14
redline 31:4
referenced 30:25
references 30:21 33:6
referred 21:4,17
referring 13:6
refile 15:18
reflected 15:7
reflects 39:20
regard 11:2
regarding 6:10 10:11
  14:22 15:5,11
reject 28:6 32:4,5,18
rejected 18:21 20:10
rejecting 31:25
rejection 32:5,7,7,21
related 4:11 5:14 6:9
  6:18 23:11,12,13,13
  23:19,19 24:12,19
  29:18 32:24 34:1,15
  34:20,21 36:13 37:6
  37:7
relates 36:12
relating 36:16
relationship 29:11
release 7:16 17:2,3,17
  18:5 19:16 20:6,12
  20:13 21:13,19
  22:21 23:3 24:24
  26:17 27:20 28:17
  29:4,9 30:5,7 32:6,7
  32:12,15,20 34:22
  37:13
released 24:20 33:1
releases 16:25 18:2
  18:13,16,22 19:23
  20:4 25:24 26:13,23
  27:1 30:1 33:6 41:3
relevant 16:11 37:22

relief 4:11 9:13 10:24
  11:1,8
relying 17:15
removal 29:18
removed 33:1
reorganization 17:18
  39:11 40:3,12
reorganized 40:5
reply 11:5
REPORTER 4:19
REPORTERS 1:48
reporting 9:6
represented 42:17
request 8:3
requested 9:13
required 10:8 11:6
requirement 18:10
  32:14
requirements 30:22
requires 10:20 28:13
requiring 10:25 31:9
reserved 7:23
reserving 39:8
resolution 7:2 39:22
  41:8
resolve 16:4 41:20
resolved 7:5 12:5
  16:13
respect 4:9 7:23
  10:13 15:23 20:16
  21:15,16 24:1 33:21
  33:25 38:11
respond 10:14,23
  11:1
respondent 13:2
response 11:5 12:12
  13:1 27:5
responses 10:19
  14:18,21
responsible 10:10
rest 14:5
RESTAURANTS
  1:11
retained 35:23
return 28:16
returning 18:25 19:1
review 7:4 22:13 39:5

reviewed 25:4 27:17
  27:17
revise 12:20 33:22
  37:14,17
revised 14:24 43:5
revisions 43:18 44:3
right 5:10 6:1 7:23,25
  8:8 11:21 12:6 14:2
  16:14 17:11 22:19
  22:25 24:18 27:6,10
  31:3,15,21 33:16
  34:23 35:22 36:5,21
  37:4,11 39:8 42:24
  43:3,25,25 44:7,11
rights 10:7 28:24
  40:25
rise 5:3 10:14 44:12
risk 7:8 29:14
RL 1:15,18,19,21,23
RLSV 1:12 41:10
road 29:15 35:14
ROBERT 2:19
Robson 1:36 4:3 5:6
  8:15 14:10
ROESKE 3:3
RSA 30:22
rule 9:19,20 10:18,20
  10:24
rules 10:8,17
ruling 21:9 25:23,24
  31:8 32:2,16 35:20
run 29:8 43:6,7

_____ S _____
S 2:1 5:2
S.E 3:20
safeguards 10:3
sale 6:4 39:9,14 42:6
SALISBURY 1:23
Sandler 2:20 34:24
  35:1,2,3,19 36:2,14
  36:21 37:10 42:16
  42:18
satisfy 30:22
save 5:7
saw 14:4
saying 7:7 24:10 26:7

26:15 35:24 36:17
says 12:12,13 23:7
  30:2 35:18
scenario 40:10
Scharf 3:4
scheduled 6:4
scope 23:11,16 33:10
  36:12,20
SCOTT 2:38
screen 8:5 34:24
seated 5:9
second 12:12
Section 9:19 30:25
see 6:13 12:1 29:16
  30:16 34:24 44:8
seeing 43:21
seek 9:17
seeking 10:24 22:2
  26:22
seeks 17:19
selected 39:25
sense 18:23 37:20
sent 31:20
separate 20:15
September 39:16
service 9:3 12:13
  35:15
Services 19:8
serving 26:10
session 5:5
set 6:3 9:21 18:12
  39:14
seven 22:13
short 38:9,11 39:5
shortened 29:7
shows 28:20
sic 7:20 25:19
silence 19:2,3,10 26:6
  27:23 28:2,11
silent 28:12
SIMONITACH 5:23
Simonitsch 2:37 5:22
  5:24 6:19 7:6 12:1,4
  16:15,20,22,23
  31:10,13,23 32:9
  33:13,15 36:25 37:2
  43:7,16,19

Simonitsch's 14:14
simple 39:18
simply 17:2
Singerman 2:3,4 8:5
  8:9,12,14,17,17,18
  8:21 12:18 13:5,10
  13:18,22 14:9 44:9
sold 40:6
solely 16:25
solicitation 4:8 16:19
  20:9
somewhat 13:3
son 43:21
SORKIN 3:11
sort 17:8 18:18 43:12
sought 11:2,8
sound 1:47 45:3
sounds 8:4
SOURCING 1:16
South 2:46
Southern 18:9 19:7,9
Spalding 2:12 6:24
  8:19 20:19
speak 5:12 7:6 15:6
specifically 30:10
split 26:18 27:20
Stand 35:3
standard 17:4 21:13
  22:17 24:5,23 29:21
Stang 2:21
start 5:16 6:2 9:6
  10:1
state 7:19 17:21 21:8
  26:12
stated 18:20
statement 4:6 6:9,17
  13:13,20 14:4,13,25
  15:1 16:13,18 17:24
  20:9 28:20 29:25
  30:13,19 33:22
  38:16 39:6 42:20,23
  43:2
States 1:1,37 2:39,42
  5:4,7,24 9:9,11,14
  16:23
stating 19:16 40:19
status 25:22 26:3,15

38:10
statute 13:16
stay 24:19
Stein 11:3 21:17 23:4
STEVEN 2:3
Street 1:40 2:13,31
  2:40 3:13,20 26:8
stretch 19:12
strike 34:15
Sub 13:12
subject 9:9 10:9
  35:11,14
submit 31:14
Subparagraph 30:25
Subparagraphs 9:23
substance 7:12 22:24
substantive 12:23
sued 34:5
sufficient 14:1
suggestion 12:19
suggestions 33:21
Suite 2:6,14,32,47
  3:7
Sun 19:8
Sunday 11:19
supervision 22:6 24:4
supplement 40:2 42:3
SUPPLY 1:17
support 20:25 42:22
supported 39:1
supportive 21:1
supports 9:13
supreme 21:4 25:21
  26:2,16 27:18
sure 35:13 36:19 38:4
  38:7 43:17,24
suspect 16:12
sworn 13:24

_____ T _____
T 45:1,1
tackle 14:15
tailored 7:16
take 5:15 6:5 7:8 9:25
  13:11 27:7,10
talk 22:20
talked 40:16

talking 18:23,24 22:4
Tampa 3:8
team 16:1
tell 10:1 11:13 13:3
  25:12 26:9 38:5,6
term 20:25 38:22
  39:2,19 40:17
terms 38:25 41:8
TEXAS 1:20
Thai 3:15,22
thank 5:22 6:23
  12:18 13:5,9,10
  14:8,9,11 20:17,18
  31:2 32:9 37:10
  43:25 44:6,7,9,11
that's 6:3 8:7 12:18
  13:2,4,15,23 14:3
  16:8 18:3 21:9 22:6
  24:8,9,21 30:10,23
  31:1,1 32:15 34:9
  34:11 36:1,21 38:1
  38:25 39:1,9 40:24
  41:18,22,22
there's 6:4 10:18
  11:1 28:22 29:2
  30:20 34:10 39:18
  40:2,4
thereto 6:10,18
they're 11:10 16:12
  26:1,14 31:19 32:19
  32:21 36:18,19
they've 22:13
thing 12:10 15:9
  28:24 32:21 33:3
things 23:8 37:23
  38:2 40:23
think 7:3,15,17 8:10
  11:24 13:25 14:24
  17:8 20:20 22:13,15
  22:23 23:6,24 24:13
  25:10 29:2,8,24
  30:12,23 33:4,5,10
  33:10,20 34:8,10,14
  34:22 35:12 36:3,7
  37:23 38:17 40:17
  41:14 42:21 43:9
thinking 36:3 41:12

thinks 40:17
third 2:22 18:2 19:17
  28:8 29:1,12
third-party 16:25
  17:2,3 18:13,15
  20:4,12 21:12 23:3
  26:23,25 28:23 29:4
  29:8
thorough 11:11
thought 42:8
thoughtful 11:10
three 28:3
time 9:25 11:4,5
  14:15 17:6 20:23
  23:10 29:6,20 38:19
  40:1,1,12 42:13
times 22:24
timing 43:12
title 33:5
today 11:19 16:1
  17:23 25:21 38:8,21
  41:23 42:13,23 43:8
  43:11 44:4
today's 25:6
toggle 39:7,12,17
topic 22:11
totality 32:2
touched 36:18
trade 42:5
transaction 39:10
  40:7 41:16 42:22
transcript 1:34,48
  45:2
trap 18:11
treat 20:2
treatment 19:18 20:3
  42:3,4
Trenam 3:4
TRIAL 2:37,38
trust 39:24,24
trustee 2:39,42 5:24
  6:16 9:9,11,14
  14:19 16:17,23 25:7
  27:24 29:24 39:25
  40:14,20
Trustee's 6:22 7:2,23
  12:2 21:3,16 22:12

23:2 33:23
try 27:4 43:13
trying 34:3
turn 30:8
turned 5:11
two 39:18 40:4,14
type 29:9 35:14
types 29:10
typo 23:19,21 30:23

### U

U.S 6:16,22 7:1,22
  12:2 14:19 16:17
  21:3,16 22:12 23:2
  25:7 27:24 29:24
  33:23
Um-hum 41:5
unambiguously 20:5
understand 19:20
  28:10 39:10
understanding 7:22
  32:1
Understood 34:8
unequivocal 20:11
unimpacted 22:18
unimpaired 19:15,21
  22:17 31:18 32:12
  32:16,17
Union 3:15,22
United 1:1,37 2:39,42
  5:4,7,24 9:9,11,14
  16:23
unknown 28:21
unrepresented 13:14
unsecured 2:26,35
  9:8 30:17 39:19,24
update 33:7
upload 14:7
uploaded 16:7 23:20
  43:11
use 40:8
UST's 17:24

### V

Vachon 45:7
value 22:7 24:3 39:21
  41:15 42:21

Venable 3:19
version 17:3
versus 11:23 24:24
  27:23 31:9
videos 5:11
view 7:3,6,12,14,15
  17:1,21 22:21 24:16
  24:22 26:2 30:10
volunteers 35:11
vote 18:4,19 19:12,22
  20:16 30:4,8 31:14
  31:16,17,17,20 32:2
voted 32:1
votes 20:3,4
voting 4:8 17:25
  19:11,15 21:10
  30:22 38:12 39:18

### W

walk 11:9 14:14 15:8
Wall 26:8
want 6:2 10:16 12:8
  13:3 15:16 22:24
  30:14,14,18 32:23
  34:4,16,25 35:12
  36:5,19 37:25 38:6
  41:16,23 42:16,25
wanted 12:10
wants 5:15 39:10
  43:16
Washington 1:40
  2:40 3:14
wasn't 17:9
Watkins 3:12
way 7:21 20:15 24:22
  25:8 26:1 36:24
  41:13,20
we'd 43:11
we'll 6:6 7:15 16:3
  27:8 37:2,13,15,17
  39:12 40:7 44:7
we're 5:13 6:1,7 7:21
  11:15 13:24 16:22
  16:24 17:15,22
  18:23,24 21:21 22:2
  22:4 26:7,8 27:10
  34:14 38:18,21

40:10 41:11,17
**we've** 7:1 15:23,24
    16:10 18:17 38:13
    40:16 41:3
**website** 33:8
**weeks** 25:17
**Wells** 2:48 5:18 14:21
    15:4
**went** 26:1 39:3
**West** 1:40 2:40
**what's** 10:8 23:8 26:9
    30:2
**willful** 23:7,7 24:6
    29:22 36:23
**William** 2:37 5:24
    16:22
**willing** 7:8 24:11
**willingness** 38:8,15
    39:4
**wind-down** 40:4,8
**wish** 9:21,24
**Wolverine** 43:21
**WORD** 4:21
**words** 13:20 31:25
**work** 24:13 36:24
    37:2,8 38:21 39:3
    44:1
**worked** 9:10 42:19
**working** 8:10 15:24
    24:2,3
**worth** 40:18
**worthwhile** 42:8
**wouldn't** 34:4
**wrongdoing** 21:23

---

**X**

**X** 4:1

---

**Y**

**yeah** 30:23 31:3
    32:10
**yesterday** 11:14
**yield** 8:5
**York** 2:24,24 18:9
    19:3,3,9 27:25 28:1
**you're** 7:7 8:9 24:10
    26:22 31:7 32:14

34:23 35:24 36:17
**you've** 6:21 18:19
**YOUNG** 1:39

---

**Z**

**Ziehl** 2:21 35:3
**Zoom** 2:3,11,19,20
    2:28,29 3:11,18
    5:10 38:8
**Zurich** 15:4

---

**0**

**07/24/2026** 45:9

---

**1**

**1** 4:5
**10** 13:7 23:25
**10:00** 5:1
**10:30** 6:3 14:16 27:7
**100** 3:20
**101** 3:6
**108** 2:32
**11** 4:7,10 17:19 22:17
    24:6
**11:00** 6:4
**11:01** 43:15
**1180** 2:13
**1450** 2:5
**15** 9:22
**1600** 2:14
**167** 19:25
**18th** 38:18
**1900** 2:6
**1997** 20:2

---

**2**

**2** 4:13 33:4
**2,144** 11:14
**200** 2:46
**2002-4(e)** 10:18
**2007** 19:25
**2015** 18:9 19:7
**2017** 19:9
**2024** 1:32 5:1 45:6
**21** 10:19 11:1,23
**211** 20:1
**22** 12:23,24 13:7
**24-2486** 5:14 27:15

**24th** 2:31
**26** 1:32 5:1
**2700** 3:7
**28** 45:6
**28th** 11:19
**2nd** 3:20

---

**3**

**3** 9:19 30:23
**30** 10:21 11:6,24
**3007(c)** 9:20
**3007(d)** 9:19
**3007(e)** 10:5
**34th** 2:23
**36** 13:7
**362** 19:25
**363** 39:9 42:6

---

**4**

**4** 30:23
**400** 1:40 2:40
**407** 1:50
**443-9289** 1:50
**45** 4:19
**453** 19:8
**46** 4:21
**497** 20:1

---

**5**

**5** 4:3 9:22
**5:00** 44:3
**51** 2:31
**533** 18:9 19:6
**555** 3:13
**576** 19:8
**5th** 39:16

---

**6**

**6** 13:7
**6:00** 43:20
**6:24-bk-02486-GER**
    1:5
**6:24-bk-02487-GER**
    1:11
**6:24-bk-02488-GER**
    1:12
**6:24-bk-02489-GER**
    1:13

**6:24-bk-02490-GER**
    1:14
**6:24-bk-02491-GER**
    1:15
**6:24-bk-02492-GER**
    1:16
**6:24-bk-02493-GER**
    1:17
**6:24-bk-02494-GER**
    1:18
**6:24-bk-02495-GER**
    1:19
**6:24-bk-02496-GER**
    1:20
**6:24-bk-02497-GER**
    1:21
**6:24-bk-02498-GER**
    1:22
**6:24-bk-02499-GER**
    1:23
**6:24-bk-02500-GER**
    1:24
**633** 30:24
**64** 18:9 19:6
**652** 9:1 12:24 13:8
**655** 9:2
**676** 9:4
**677** 9:5

---

**7**

**722** 30:25
**780** 2:22

---

**8**

**8:45** 14:24
**800** 2:47
**83** 30:20,24
**84** 30:20
**8th** 15:12,21 16:5
    44:10