**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| Red Lobster Management, LLC, | Case No. 6:24-bk-02486-GER *(Lead)* |
| | *Jointly Administered with* |
| Red Lobster Restaurants, LLC, | Case No. 6:24-bk-02487-GER |
| RLSV, Inc., | Case No. 6:24-bk-02488-GER |
| Red Lobster Canada, Inc., | Case No. 6:24-bk-02489-GER |
| Red Lobster Hospitality, LLC, | Case No. 6:24-bk-02490-GER |
| RL Kansas, LLC, | Case No. 6:24-bk-02491-GER |
| Red Lobster Sourcing, LLC, | Case No. 6:24-bk-02492-GER |
| Red Lobster Supply, LLC, | Case No. 6:24-bk-02493-GER |
| RL Columbia, LLC, | Case No. 6:24-bk-02494-GER |
| RL of Frederick, Inc., | Case No. 6:24-bk-02495-GER |
| Red Lobster of Texas, Inc., | Case No. 6:24-bk-02496-GER |
| RL Maryland, Inc., | Case No. 6:24-bk-02497-GER |
| Red Lobster of Bel Air, Inc., | Case No. 6:24-bk-02498-GER |
| RL Salisbury, LLC, | Case No. 6:24-bk-02499-GER |
| Red Lobster International Holdings LLC, | Case No. 6:24-bk-02500-GER |

Debtors.

_____/

**UNITED STATES TRUSTEE'S OBJECTION TO**
**CONFIRMATION OF JOINT CHAPTER 11 PLAN FOR RED**
**LOBSTER MANAGEMENT LLC AND ITS DEBTOR AFFILIATES**

Mary Ida Townson, the United States Trustee for Region 21 ("United States Trustee"),

through the undersigned counsel, files this objection ("Objection") to confirmation of the (i) Joint

Chapter 11 Plan for Red Lobster Management LLC and Its Debtor Affiliates ("Amended Plan")

(Doc. No. 733); as amended, supplemented, restated or modified together with the (ii) Plan

Supplement and related exhibits ("Plan Supplement") (Doc. No. 941); and final approval of the

(iii) Disclosure Statement for the Joint Chapter 11 Plan of Red Lobster Management LLC and its

Debtor Affiliates ("Disclosure Statement") (Doc. No. 734), as filed by Red Lobster Management

LLC and related entities ("Debtors").

## SUMMARY OF ARGUMENT

The Amended Plan together with the Plan Supplement cannot be confirmed in its current form because it proposes that post-confirmation entities be exempt from payment of United States Trustee fees in violation of 28 U.S.C. § 1930(a)(6). As proposed, the Amended Plan as supplemented exempts impermissibly the GUC Trust and the GUC Trustee, and perhaps the Reorganized Debtors, from payment of United States Trustee quarterly fees in violation of the statute. These plan provisions are contrary to the language and purpose of section 1930(a)(6), Eleventh Circuit precedent, and the rulings of several bankruptcy courts that have considered the issue. For these reasons, confirmation of the Amended Plan as supplemented should be denied unless the Amended Plan is modified to provide that every post-confirmation entity will pay United States Trustee fees and file appropriate reports until the Debtors' cases are closed by final decree.

The United States Trustee further objects to the Amended Plan as supplemented because the lengthy Plan Supplement, incorporated by reference into the Amended Plan, is an impermissible plan modification without resolicitation. The Plan Supplement generally broadens the exculpations in the Amended Plan in a manner that is contrary to the Court's prior ruling regarding what the Court considers to be an acceptable exculpation. This expansion of exculpatory language makes the Amended Plan unconfirmable in the first instance and would trigger resolicitation because it would result in claim holders being worse off. Instead of being incorporated into the Amended Plan, the Plan Supplement should be deemed as giving interested parties notice of certain post-effective events and documents expected to be adopted by the Debtors' new management. This approach is most feasible particularly since no party in interest can realistically digest all 704 pages of the Plan Supplement in the time permitted. At the very

least, the exculpations in the Plan Supplement should be harmonized with the language in the confirmed plan.

The United States Trustee also raises the following objections: (1) the Plan Administrator and GUC Trustee should be bonded; (2) the Court should implement protections to provide greater transparency regarding the activities of post-petition professionals and provide other protections; (3) all the Releasing Parties to the third party release must show affirmative consent; and (4) the discharge provisions of the Amended Plan should be limited to those Debtors who are, in fact, reorganizing.

## FACTUAL BACKGROUND

1.      On May 19, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

2.      On May 19, 2024, the Debtors filed the *Declaration of Jonathan Tibus in Support of Debtors' Chapter 11 Petitions and First Day Relief* ("Tibus Declaration"; Doc. No. 6).

3.      On May 20, 2024, the Court entered an Order directing that these cases be jointly administered. (Doc. No. 62).

4.      The Debtors continue to operate as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

5.      On May 31, 2024, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").  (Doc. No. 250).

6.      On July 19, 2024, the Debtors filed the Joint Chapter 11 Plan for Red Lobster Management LLC and Its Debtor Affiliates and related Disclosure Statement (Doc. Nos. 631 and 633). The Debtors also filed an Expedited Motion for Approval (I) Conditionally Approving Disclosure Statement for the Proposed Joint Chapter 11 Plan of Red Lobster Management LLC and Its Debtor Affiliates, (II) Approving the Solicitation and Voting Procedures with Respect to

Confirmation of the Proposed Joint Chapter 11 Plan of Red Lobster Management LLC and Its Debtor Affiliates, and (III) Granting Related Relief ("Procedures Motion"; Doc. No. 634).

7.      The United States Trustee objected to the Procedures Motion and to conditional approval of the Disclosure Statement ("Objection"; Doc. No. 681). At a hearing on July 26, 2024, the Court sustained the Objection with respect to the inclusion of an "opt-out" third party release in the Debtors' plan. (Doc. No. 688). However, the Court disagreed with the United States Trustee's argument that an affirmative vote for the plan should not be considered consent to the third party release. The Court also limited the exculpation clause in the Debtors' plan by narrowing the expansive interpretation of "Related Party" as that term was defined in the original plan. The Court narrowly construed the extensive list in the plan as originally filed to avoid rendering the exculpation clause a third party release.

8.      On July 29, 2024, the Court granted the Procedures Motion. On the same date, the Debtors filed the Amended Plan and related Disclosure Statement to remove the "opt-out" release and narrow the exculpation clause. (Doc. Nos. 733-735). With respect to the third party release, the Debtor's definition of "Releasing Parties" has been narrowed to include parties with active participation in the bankruptcy case and creditors who have voted to accept the Amended Plan. (Doc. No 733 at 13).

9.      On August 22, 2024, the Debtors filed the 704-page Plan Supplement and Proposed Findings of Facts and Conclusions of Law ("Proposed Findings"; Doc. No. 939) in connection with confirmation of the Amended Plan.

10.     The Amended Plan generally provides for a "debt-to-equity swap" wherein the secured claims of the DIP lender will be exchanged for the equity interests in the Debtors. (Doc. No. 733).

11.     The Amended Plan provides that post-confirmation entities will consist of "Reorganized Debtors" and "Wind-Down Debtors." (Doc. No. 733). Generally, Reorganized Debtors will continue to operate under new equity in some form and the Wind Down Debtors will be liquidated by the Plan Administrator. Exhibit H to the Plan Supplement clarifies that the Wind Down debtors will consist of Red Lobster International Holdings LLC and RLSV, Inc., and that the remainder of the Debtors will be Reorganized Debtors (Doc. No. 941, Exhibit H, 13). However, despite its designation as a "Reorganized Debtor," Red Lobster Management LLC appears to be selling its assets and engaging in primarily wind-down activities. Id.

12.     The Amended Plan grants a discharge to the "Reorganized Debtors" as that term is defined in the Amended Plan. As clarified in the Plan Supplement, this includes Red Lobster Management LLC (Doc No. 733, at 33).

13.     The Amended Plan provides for the creation of a "GUC Trust" to be established on the Effective Date to hold "GUC Trust Assets" and for a "GUC Trustee" to administer general unsecured claims pursuant to a "GUC Trust Agreement." The term "GUC Trust Assets" is defined as "the GUC Fund, the Equityholder Litigation Claims, and the resulting GUC Litigation Proceeds, if any." A "GUC Trustee" is selected to administer the GUC Trust. (Id. at 13-14, 38-46, 61).

14.     In addition to the GUC Trustee, the Amended Plan appoints a Plan Administrator to conduct the wind-down affairs of the Debtors. (Id. at 15).

15.     Neither the GUC Trustee nor Plan Administrator are required to be bonded under the Amended Plan. (Id. at 40).

16.     Neither the GUC Trustee nor the Plan Administrator are required to seek approval of the Court to hire or pay professionals, and generally are permitted to reach settlements without Court approval.

17.     The GUC Fund is money that will be used to fund the litigation expenses of the trust. The amount of the GUC Fund is determined according to a formula provided in the definitions section of the Amended Plan. (Id. at 13).

18.     Article III.B.4(b) provides that the Debtors' unsecured creditors will receive in full satisfaction of its claim a "Pro Rata Share of the beneficial interests in the GUC Trust and the right to receive its respective Pro Rata Share of any available GUC Litigation Proceeds or other GUC Trust Assets." (Id. at 29). The Amended Plan provides for no distribution to unsecured creditors other than whatever distribution they may receive from the GUC Trust.

19.     The Amended Plan provides that the GUC Trust is exempt from paying United States Truste quarterly fees. Paragraph XII(C) of the Amended Plan states, "For the avoidance of doubt, neither the GUC Trust nor GUC Trustee is responsible for the payment of any Quarterly Fees." (Id. at 65).

20.     The Proposed Findings appear to further exempt other post-confirmation entities from liability for United States Trustee fees. Paragraph 47 of the Proposed Findings states "From and after the Plan Effective Date, neither the Purchaser (or its designees) nor the Reorganized Debtors shall be liable for or obligated to pay any statutory fees or other amounts to the United States Trustee." (Doc. No. 939 at 61-62). [1]

21.     The lengthy Plan Supplement contains several exculpatory provisions. In general, these provisions do not closely mirror the exculpation clause in the Amended Plan and are broader both in terms of the scope of the exculpation and the covered parties. For example, the Amended

---

[1] This language conflicts with paragraph DD of the Proposed Findings which states that "After the Plan Effective Date, the Debtors and the Reorganized Debtors, as applicable, shall pay the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6), when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the final Chapter 11 Cases are converted, dismissed, or closed." (Doc. No. 939 at 20-21).

and Restated Limited Liability Company Agreement provided as Exhibit B at section 15 contains extensive exculpatory provisions that extend to every "Covered Person," which are defined as persons including "Members, the Managing Member or any of their respective Affiliates, officers, directors, liquidators, partners, stockholders, managing members, members and employees." (Doc. No. 941 at 212). Likewise, Section 4.6 of the Plan Administrator Agreement at Exhibit E contains exculpations of the Plan Administrator along with its employees and professionals. (Id. at 346). Article VI of the GUC Trust Agreement and Declaration of GUC Trust, which is included as Exhibit F, contains exculpation and liability provisions for the benefit of the trustee and "any of its respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, or disbursing agents, or agents, and any of such Person's successors and assigns." (Id. at 380). Section 6.2 makes clear that these provisions are over and above the protections provided in the Amended Plan. (Id)

22.     The Proposed Findings make clear that the Plan Supplement is incorporated by reference into the Amended Plan. The Plan Supplement states, "the documents contained in the Plan Supplement are integral to, and considered part of, the Plan" and "[a]ll exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan, as applicable, as if set forth in full in the Plan." (Doc. No. 941 at 2, 471).

## LEGAL BACKGROUND

### A.  Legal Background Regarding United States Trustee Fees

23.     The fees assessed under section 1930(a)(6) apply to "disbursements."  Because "disbursements" are not defined in the Bankruptcy Code, this term must be given its ordinary, contemporary, common meaning. The Eleventh Circuit has concluded that "disbursement" means to "pay out or expend money."  *In re Cash Cow Servs. of Fla. LLC*, 296 F.3d 1261, 1263 (11th Cir. 2002). Other circuits have reached a similar conclusion. *See, e.g., In re Buffets, L.L.C.*, 979

F.3d 366, 373 (5th Cir. 2020) (citing Merriam-Webster Dictionary (2016)); *Cranberry Growers*

*Coop. v. Layng (In re Cranberry Growers Coop*.), 930 F.3d 844, 850 (7th Cir. 2019) (citing The

American Heritage Dictionary of the English Language (5th ed. 2018)).

24.    Congress originally passed 28 U.S.C. § 1930(a)(6) in 1986 to create the United

States Trustee System Fund into which quarterly fees collected under section 1930(a)(6) are

deposited.  *See* Bankruptcy Judges, United States Trustees, and Family Farmers Act of 1986, Pub.

L. 99-554, §§ 115 & 117; *see also* 28 U.S.C. §§ 589a & 1930(a)(6).  The purpose for these statutory

provisions was for the United States Trustee Program to be funded "by the users of the bankruptcy

system—not the taxpayer."  H.R. Rep. No. 99-764, 99th Cong. 2d Sess. 22 (1986), reprinted in

1986 U.S.C.C.A.N. 5227, 5234; *see also Siegel v. Fitzgerald,* 596 U.S. 464, 469 (2022) ("Congress

requires that the Trustee Program be funded by user fees paid to the United States Trustee System

Fund").  "Congress's goal of keeping the U. S. Trustee Program self-funded" and avoiding

"transform[ing] a program Congress designed to be self-funding into an enormous bill for

taxpayers." *Off. of United States Tr. v. John Q. Hammons Fall 2006, LLC*, 144 S. Ct. 1588, 1596,

219 L. Ed. 2d 210 (2024).

25.    Consistent with its purposes, section 1930(a)(6) is worded quite broadly.  It requires

a "fee" to be "paid to the United States trustee" every quarter "in each open and reopened case

under chapter 11" based on "disbursements" "until the case is closed, converted, or dismissed" *See*

28 U.S.C. § 1930(a)(6)(B).  Congress did not specify the entity that must make the disbursements,

the recipients to which the disbursements must be made, the purpose for which disbursements must

be made, or the source from which the disbursements must originate.  Although Congress could

have placed such limitations on the section 1930(a)(6) disbursements as "by the debtor," "to

creditors," "in payment of the debtor's expenses," or "from estate funds," it made the policy

determination not to do so.

26.     Considering this broad statutory language and purpose, the Eleventh Circuit in *In re Jamko, Inc*, 240 F.3d 1312 (11th Cir. 2001) held that the ordinary business expenses of reorganized debtors, as well as payments under the plan, are subject to United States Trustee fees. In so holding, the Court opined that "[t]here is ample support, however, in the legislative history and case law . . . to conclude that Congress intended the UST fee to apply to *all disbursements made during the entire process*, including ordinary operating expenses, before or after confirmation, as a type of user tax on those who benefit the most from the program." *Id.* at 1316 (emphasis added). The Eleventh Circuit also took a broad approach in *Cash Cow,* 296 F.3d at 1263, finding that money lent to customers constituted a "disbursement" for United States Trustee purposes. *See also In re Marlon Dunn Contracting, Inc.*, 203 B.R. 783, 784 (Bankr. M.D. Fla. 1996) (finding that money that was received by the debtor-contractor and "passed through" to a subcontractor constituted a disbursement). *Cf. John Q. Hammons*, LLC, 144 S. Ct. 1588 (holding that no refund of United State Trustee fees was warranted because of the importance of agency self-funding).

27.     Several bankruptcy courts having considered the question of whether Congress intended the United States Trustee fees to apply to all disbursements made during the reorganization process, have found that the liquidation proceeds of GUC trusts are disbursements for United States Trustee fee purposes. For example, in *U.S. Trustee v. Hudson Oil Co. (In re Hudson Oil Co.)*, 210 B.R. 380 (D. Kan. 1997), the district court "reject[ed] the argument that . . . the liquidating trust established under the confirmed plan has no responsibility for the fees imposed" under section 1930(a)(6). *Id*. at 383.  Although it reversed for other reasons, the district court noted that the bankruptcy court had also rejected the liquidating trust's argument because, among other reasons, "the trust [was] a liquidating and disbursing agent for the debtors" and was "subject to continuing bankruptcy court supervision."  *Id*. at 384, n.3.

28.     Similarly, in *In re Atna Resources, Inc.*, 576 B.R. 214 (Bankr. D. Colo. 2017), the bankruptcy court was presented with "a liquidating trustee, whose sole existence flow[ed] from the debtors and their assets, liabilities, and confirmation of their Chapter 11 bankruptcy cases, [who sought] to avoid payment of post-confirmation [quarterly] fees[.]" *Id*. at 216.  The court held that the liquidating trust was liable for payment of post-confirmation quarterly fees on the proceeds of the resolution of causes of action transferred to the trust through the plan, "even without an express [plan] provision requiring the Trust to pay the statutory fee."  *Id*. at 218-20.

29.     Likewise, in *In re CSC Industries, Inc.*, 226 B.R. 402 (Bankr. N.D. Ohio 1998), the bankruptcy court held that "the Liquidation Trustee [was] responsible to pay post-confirmation quarterly fees out of the Liquidation Trust" because "Congress intend[ed] such fees be paid by Chapter 11 debtors prior to conversion or dismissal," and "the Liquidation Trust ha[d] essentially stepped into the shoes of the original debtor and [was] therefore liable for any such fees which may be imposed" post-confirmation.  *Id*. at 404.

30.     In *In re Home Centers, Inc.*, 232 B.R. 680 (Bankr. N.D. Ohio 1997), the debtor "turned over all of its tangible and intangible assets" to a liquidating trust that was created to make distributions required by the plan.  *Id*. at 683.  The bankruptcy court held that, since the liquidating trust "was created solely to collect and liquidate the assets of the Debtor in order to disburse the funds to the creditors," the court "c[ould] find no other meaningful interpretation" of section 1930(a)(6) other than to hold that the liquidating trust was responsible for paying post-confirmation quarterly fees.  *Id*. at 683-84.

31.     More recently, in *In re JNL Funding Corp.*, 620 B.R. 25 (Bankr. E.D.N.Y. 2020), the bankruptcy court ordered the trustee of a "distribution trust" created under a confirmed plan to disgorge an amount equal to the quarterly fees he had failed to pay while the case was in chapter 11.  *Id*. at 29-30.  The district court affirmed, finding that "the Distribution Trust was required by

statute to pay Post-Confirmation Quarterly Fees[.]" *Weigel v. Barnard*, No. CV 20-3570 (GRB), 2021 WL 3793794, at *1 (E.D.N.Y. Aug. 26, 2021).

32.     Even a bankruptcy court in a pre-*Jamko* case from within the Eleventh Circuit, which held that post-confirmation "disbursements" do not include the payment of a debtor's general operating expenses (a position since superseded, *see Jamko*, 240 F.3d at 1316), stated in *dicta* as follows: "In a liquidating plan it is not unusual for some assets to be liquidated post-confirmation to provide additional payments to creditors.  In such a case, payments from assets liquidated pre-confirmation would clearly be disbursements subject to the UST quarterly fee.  It makes no sense to hold that the post-confirmation payments made from the liquidation of the remaining assets are not disbursements just because the remaining assets were vested in a reorganized debtor or liquidating trust at confirmation."  *See In re Betwell Oil & Gas Co.*, 204 B.R. 817, 819 (Bankr. S.D. Fla. 1997).[2]

33.     Although the issue appeared settled, in 2021 Judge Sontchi of the United States Bankruptcy Court for the District of Delaware held in *In re Paragon Offshore, PLC*, 629 B.R. 227 (Bankr. D. Del. 2021), that distributions made by a liquidation trust formed under the confirmed plan in that case did not have to be included in calculating the quarterly fee mandated by section 1930(a)(6).  *Id.* at 232.  *Paragon* has no binding effect on this Court and is not even persuasive authority.  *Paragon* is contrary to the majority view regarding the treatment of liquidating trusts' distributions as disbursements for purposes of section 1930(a)(6) and was based on the mistaken concern that the United States Trustee was "double-dipping." The *Paragon* court believed that the United States Trustee received a quarterly fee when litigation causes of action were transferred

---

[2] Similarly, the bankruptcy court in *In re A.H. Robins Co., Inc.*, 219 B.R. 145 (Bankr. E.D. Va. 1998), noted in *dicta* that "ample authority exists" to hold "the various trusts established during the course of A.H. Robins Co., Inc.'s bankruptcy proceeding liable for such fees," citing several of the cases cited in this Objection. *Id.* at 153.

into the liquidation trust. *Id*. at 231-32 & n.31.  As set forth below, there is no such concern here because no quarterly fee will be - or possibly could be - paid on the non-cash assets to be transferred to the GUC Trust.  Rather, the United States Trustee seeks only to ensure that the fee mandated by Congress are properly paid on all disbursements made in the Debtors' chapter 11 cases.  *See* 28 U.S.C. § 586(a)(3)(D) (requiring the United States Trustee to "tak[e] such action as [he] deems appropriate to ensure that all . . . fees required to be [paid] under" titles 11 and 28 are paid).  Quarterly fees will only be incurred once, when the proceeds of non-cash assets are ultimately paid out by the GUC Trust, not when the non-cash assets are transferred to the GUC Trust.  In any event, to the extent *Paragon* suggested that non-cash transfers can be included as "disbursements" for purposes of section 1930(a)(6) (*Id.* at 231-32), it was simply wrong; only payments of money are included in calculating the statutorily mandated quarterly fee.

34.     In a more recent case, Judge Huennekens of the Bankruptcy Court for the Eastern District of Virginia distinguished *Paragon* as not only "not binding" but "also factually distinguishable" because "[t]he decision in *Paragon* was based on a concern that the United States Trustee was 'double-dipping.'"  *See In re Health Diagnostic Laboratory, Inc*., No. 15-32919-KRH, 2023 WL 105586, at *4 (Bankr. E.D. Va. Jan. 4, 2023).  In that case, the liquidating trustee argued that "distributions of moneys he holds in trust to the beneficiaries of the trust are not disbursements because the beneficiaries are the equitable owners of the trust's assets."  *Id*. at *3.  Judge Huennekins rejected that argument because, "as the U.S. Trustee observe[d], quarterly fees could be virtually eliminated by the simple expedient of transferring assets from the bankruptcy estate to a post-confirmation entity for subsequent payment."  *Id*. at *4.  Citing "[t]he majority of courts that have considered this issue," Judge Huennekens "conclude[d] that the Liquidating Trustee is required to pay quarterly fees on the distributions he makes to the trust beneficiaries."

*Id*. The United States Trustee is not aware of any published or electronically available decisions that have adopted *Paragon*'s reasoning.

35.    Finally, United States Trustee fees may not be waived by the Court. Section 1930(f) of title 28 provides for the waiver of certain bankruptcy fees. Subsection (1) gives courts discretion to waive filing fees for chapter 7 debtors, while subsection (2) gives courts discretion to waive fees for debtors prescribed by the Judicial Conference under section 1930(b) (miscellaneous fees set by the Judicial Conference) or (c) (fees for notice of appeal). Subsection (3) provides that "[t]his subsection does not restrict the district court or the bankruptcy court from waiving, in accordance with Judicial Conference policy, fees prescribed under this section for other debtors and creditors." Subsection 1930(f)(3) "is not a grant to waive fees, but rather a statement that the subsection does not restrict the waiving of fees under other sections that do grant authority to waive fees." *In re Atna Res., Inc.*, 576 B.R. 214, 223 (Bankr. D. Colo. 2017); *see also In re Collins*, Case No. 17-0049, Adv. Pro. No. 17-1015, 2017 WL 979021, at * 2-4 (Bankr. S.D.N.Y. March 10, 2017) (holding section 1930(f)(3) allows court to consider in forma pauperis waiver of fees under 28 U.S.C. § 1915).

36.    Even if section 1930(f)(3) were an independent source of authority to waive fees, the Judicial Conference policy does not authorize waiver of quarterly fees. *See* Guide to Judicial Policy, Vol. 4, Ch. 8, § 820.40.[3] The Administrative Office of the United States Courts' website acknowledges the guide as expressing "Judicial Conference-approved policies." [4] The guide refers only to the possibility of a waiver to fees "under 28 U.S.C. §§ 1930(b) and (c)," and not to quarterly fees under section 1930(a)(6). Indeed, the most recent Circuit Court to address this issue determined that "there is no basis for a waiver of quarterly fees under § 1930(f)(3)." *See Cranberry*

---

[3] Guide to Judicial Policy is available at https://www.uscourts.gov/sites/default/files/vol04_ch08.pdf
[4] See https://www.uscourts.gov/rulespolicies/judiciary-policies/bankruptcy-case-policies.

*Growers Cooperative v. Layng*, 930 F.3d 844, 853 (7th Cir. 2019). Because any waiver under

section 1930(f)(3) must be done "in accordance with Judicial Conference policy," this subsection

cannot provide authority to waive quarterly fees.

### B. Legal Background Regarding Plan Modifications

37.     Under section 1127(a), a debtor's plan can be modified at any time before

confirmation. However, this right to modify is not without constraints. First, the modification must

comply with the code's substantive requirements for any reorganization plan. Second, the debtor

must prepare a new disclosure statement and implement a second round of voting if the plan, as

modified, materially and adversely changes the way that claim or interest holder is treated.

*In re Am.-CV Station Grp., Inc.*, 56 F.4th 1302, 1309 (11th Cir. 2023). Thus, if the Plan Supplement

is to be incorporated into the Amended Plan without a resolicitation, it must not contain anything

that would make the Amended Plan unconfirmable, nor materially or adversely change the way

any claim or interest holder is treated.

## ARGUMENT

### A. Transfers of Money to and from the GUC Trust Constitutes Disbursements During the Quarter in which the Transfer Occurs

38.     Considering the foregoing, the Effective Date transfer of the GUC Fund to the GUC

Trust, presumably paid in cash, will be a disbursement for purposes of section 1930(a)(6). That

transfer amount will be included in calculating the United States Trustee fee for that quarter but

will not be included in calculating the fee for any subsequent quarter in which they are distributed

to unsecured creditors by the GUC Trust. The non-cash assets transferred to the GUC Trust will

not be included as disbursements for purposes of section 1930(a)(6) in the quarter in which they

are received because those transfers do not constitute transfers of money.

39.    However, if those non-cash assets are ultimately reduced to cash, and that cash is used by the GUC Trust to fund its operations or to fund distributions to unsecured creditors, those monetary payments will constitute disbursements in the Debtors' cases for purposes of section 1930(a)(6) in the quarter in which the payments are made. This is consistent with the Eleventh Circuit's admonition in *Jamko* that "all disbursements made during the entire process" be included as disbursements for quarterly fee purposes. *Jamko*, 240 F.3d at 1316. This is also consistent with the treatment of most courts on this issue.

40.    There is no risk of "double counting" here because the causes of action are not subject to United States Trustee fees when they are transferred into the trust. Accordingly, the Amended Plan should not be confirmed unless it clarifies that the GUC Trust will be subject to United States Trustee fees and required to file appropriate reports.

**B.    Payments by the Reorganized Debtors Are Subject to United States Trustee Fees Until the Case is Closed by Final Decree**

41.    The expenses, including the ordinary business expenses, of the Reorganized Debtors are subject to United States Trustee fees. In the Proposed Findings, the Debtors ask the Court to find that the Reorganized Debtors' liability for United States Trustee fees ends as of the Effective Date. This is contrary to the clear holding of the Eleventh Circuit in *Jamko*, where the Court squarely held that all disbursements of post-confirmation, reorganized debtors are subject to United States Trustee fees. *Jamko, Inc.*, 240 F.3d at 1316. Section 1930(a)(6) specifies that this obligation continues until the case is "closed, converted, or dismissed," thus, it continues until the final decree, not the effective date of the plan. The requirement of the Reorganized Debtors to report fees will, likewise, continue. Accordingly, the Court should not confirm the Amended Plan unless it clarifies that the Reorganized Debtors will be required to pay United States Trustee fees and file appropriate reports.

**C.  The Disbursements of All Post-Confirmation Entities Are Subject to United States Trustee Fees and Reporting**

42.     For the avoidance of doubt, regardless of whether a post-confirmation entity created under a confirmed plan is an operating entity, a wind-down entity, a GUC Trust, or some other type of entity, all moneys distributed by that entity must be included in calculating the disbursements made in the Debtors' case for purposes of calculating the mandatory section 1930(a)(6) quarterly fees until the Debtors' cases are closed by final decree, dismissed or converted. This position is consistent with the broad language and purpose of section 1930(a)(6), and with the Eleventh Circuit's admonition in *Jamko*. To the extent that the Amended Plan relies upon a wind-down budget to pay the fees of the Reorganized Debtors, that budget must be adequately funded. Until the Amended Plan clarifies that it does not seek to exempt any post-petition entities from payment of the United States Trustee fees and associated reporting, it cannot be confirmed.

**D.  The Plan Supplement is an Impermissible Modification**

43.     The Plan Supplement is an impermissible plan modification for at least two reasons. First, the Amended Plan, as modified by the Plan Supplement, is not confirmable under sections 1127(a) and 1123. The Court has already expressed what it views as the outer limits of a permissible exculpation clause and required the Debtors to narrow its exculpation provisions in the Amended Plan. Now those expanded exculpations have multiplied and re-entered through the back door in the form of the Plan Supplement. There can be no doubt that these exculpations are broader than what was permitted by the Court as the parties covered by these exculpations include "affiliates," a term which the Court took particular issue with. Additionally, Section 6.2 of the GUC Trust Agreement specifically provides that the exculpations are over and above those in the Amended Plan. The Amended Plan as modified by the Plan Supplement is not confirmable for this

16

reason. Second, the Plan Supplement is an impermissible plan modification because it would require the Amended Plan to be resolicited. The expansion of exculpatory provisions materially and adversely changes the way that claim, or interest, holders are treated because it cuts off a possible source of recovery for that claimant.

44.    For these reasons, the Amended Plan should not adopt and fully integrate the Plan Supplement by reference. Instead, the Plan Supplement should be regarded as providing interested parties notice of certain events post-effective date and documents expected to be adopted by the Debtors' new management. This approach will avoid the inadvertent elevation of what is intended to be a private agreement between parties into a Court Order. One such example occurs at Section 8.1 of the Amended and Restated Purchase Agreement, Exhibit A of the Plan Supplement, which presumably intends to allocate tax liability between the parties to the agreement but could be mistakenly interpreted as a release if incorporated globally in a Court Order. (Doc. No. 941 at 74). Furthermore, the exculpation provisions in the Plan Supplement should no more than replicate the exculpation clause in the Amended Plan. Until these issues are addressed, the Amended Plan should not be confirmed.

**E.  The GUC Trustee and Plan Administrator Should be Bonded**

45.    The Amended Plan does not include a bonding requirement for the GUC Trustee or the Plan Administrator. These entities should be bonded to mitigate risk of loss to creditors of the bankruptcy estate.

**F.  The Amended Plan Should Require Applications for Retention and Payment of Professionals and Implement Other Creditor Protections**

46.    In its current form, the Amended Plan does not require that the GUC Trustee, the Plan Administrator or their post-petition professionals file retention applications, fee applications, or otherwise report their compensation. The GUC Trustee and Plan Administrator are also

authorized to settle controversies without filing a settlement motion under Rule 9019 with the bankruptcy court and professionals are not required to be disinterested. The United States Trustee believes that the post-confirmation affairs of the Debtors should be subject to greater oversight and transparency so that the Court and creditors can be assured that the efforts of the Plan Administrator and GUC Trustee will accrue to the benefit of creditors. This can be accomplished by requiring retention applications, fee applications, and settlement motions under Rule 9019 or by otherwise implementing procedures to assure post-confirmation transparency.

47.     As further creditor protection, the Amended Plan should specify that undelivered payments should be kept by the Clerk of Court instead of returned to the Reorganized Debtors and should provide that creditors are given notice without specifically requesting notice post-confirmation,

## G. The Third Party Release Requires the Affirmative Consent of All Releasing Parties

48.     The definition of "Releasing Parties" in connection with the Amended Plan's third party release is limited to parties that are involved in the formulation or execution of the Amended Plan and creditors that have voted to accept the Amended Plan. The Court previously overruled the United States Trustee's objection to the inclusion of accepting creditors in the definition of Releasing Parties. Regarding the remaining parties, each of these parties must give affirmative consent to the third party release at or before the confirmation hearing despite their involvement in Amended Plan.

## H. The Discharge Provision of the Plan Should be Limited to Debtors that are Actually Reorganizing

49.     A discharge under chapter 11 is limited to debtors who are reorganizing but not for debtors who are liquidating. 11 U.S.C. § 1141(d)(3) (providing that a discharge is not available for liquidating debtors). Whether a debtor is reorganizing versus liquidating is not determined by how

the debtor is labeled in their plan for reorganization but rather by the treatment of their ownership interests, assets, and business operations. Here, although the Amended Plan, as supplemented, labels Red Lobster Management LLC as a "Reorganized Debtor" this entity appears to be engaged in liquidation activities. The Amended Plan should not be confirmed until the Debtors clarify that only Debtors that are, in fact, reorganizing are entitled to a discharge.

WHEREFORE, the United States Trustee requests that this Court enter an order (i) denying confirmation of the Amended Plan, as supplemented; (ii) reject approval of the Disclosure Statement; and (iii) grant such other relief that the Court deems just and proper.

### RESERVATION OF RIGHTS

The United States Trustee reserves any and all rights, remedies, and obligations to, among other things, complement, supplement, augment, alter or modify this objection, assert any further objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further discovery.

Dated:    August 28, 2024

Respectfully submitted,

Mary Ida Townson,
United States Trustee for Region 21

*/s/ Scott Bomkamp*
Scott Bomkamp, Trial Attorney
Indiana Bar No.: 28475-49
Office of the U.S. Trustee
U.S. Department of Justice
400 W. Washington St., Suite 1100
Orlando, FL 32801
Telephone No.:  (407) 648-6301
Facsimile No.:(407) 648-6323
Email: scott.e.bomkamp@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| | |
| Red Lobster Management, LLC, | Case No. 6:24-bk-02486-GER *(Lead)* |
| | |
| | *Jointly Administered with* |
| Red Lobster Restaurants, LLC, | Case No. 6:24-bk-02487-GER |
| RLSV, Inc., | Case No. 6:24-bk-02488-GER |
| Red Lobster Canada, Inc., | Case No. 6:24-bk-02489-GER |
| Red Lobster Hospitality, LLC, | Case No. 6:24-bk-02490-GER |
| RL Kansas, LLC, | Case No. 6:24-bk-02491-GER |
| Red Lobster Sourcing, LLC, | Case No. 6:24-bk-02492-GER |
| Red Lobster Supply, LLC, | Case No. 6:24-bk-02493-GER |
| RL Columbia, LLC, | Case No. 6:24-bk-02494-GER |
| RL of Frederick, Inc., | Case No. 6:24-bk-02495-GER |
| Red Lobster of Texas, Inc., | Case No. 6:24-bk-02496-GER |
| RL Maryland, Inc., | Case No. 6:24-bk-02497-GER |
| Red Lobster of Bel Air, Inc., | Case No. 6:24-bk-02498-GER |
| RL Salisbury, LLC, | Case No. 6:24-bk-02499-GER |
| Red Lobster International Holdings LLC, | Case No. 6:24-bk-02500-GER |
| | |
| Debtors. | Reference Doc. Nos.: 733, 734, 939, 941 |
| _____/ | |

## CERTIFICATE OF SERVICE

I, Ileraine Salloum, hereby certify that:

1. I am employed as a Paralegal Specialist with the Orlando Division of the United States
   Trustee Program, whose principal office is located at 400 W. Washington, Street, Suite
   1100, Orlando, Florida 32801.

2. I am over the age of eighteen years and am not a party to the above-captioned action.

3. On August 28, 2024, a true and correct copy of the UNITED STATES TRUSTEE'S
   OBJECTION TO CONFIRMATION OF JOINT CHAPTER 11 PLAN FOR RED
   LOBSTER MANAGEMENT LLC AND ITS DEBTOR AFFILIATES has been served
   electronically through CM/ECF to all parties having appeared electronically.

4.  On August 28, 2024, I caused a true and correct copy of the UNITED STATES
    TRUSTEE'S OBJECTION TO CONFIRMATION OF JOINT CHAPTER 11 PLAN
    FOR RED LOBSTER MANAGEMENT LLC AND ITS DEBTOR AFFILIATES to be
    served via first class United States mail, postage fully pre-paid, and addressed to the
    recipients on the attached service list consisting of the Debtors' counsel and the
    Creditors' Committee.

5.  I further certify that I caused a true and correct copy of the UNITED STATES
    TRUSTEE'S OBJECTION TO CONFIRMATION OF JOINT CHAPTER 11 PLAN
    FOR RED LOBSTER MANAGEMENT LLC AND ITS DEBTOR AFFILIATES was
    delivered via electronic mail to the following:

| | |
|---|---|
| Paul Steven Singerman<br>Berger Singerman, LLP | singerman@bergersingerman.com |
| Robin J. Rubens<br>Berger Singerman LLP | RRubens@bergersingerman.com |
| Jeffrey R Dutson<br>KING & SPALDING LLP | jdutson@kslaw.com;<br>bankruptcy@kerncounty.com |
| W. Austin Jowers<br>KING & SPALDING LLP | ajowers@kslaw.com |
| Christopher K. Coleman<br>KING & SPALDING LLP | christopher.coleman@kslaw.com |
| Brooke L. Bean<br>KING & SPALDING LLP | bbean@kslaw.com |
| Michael Fishel<br>KING & SPALDING LLP | mfishel@kslaw.com |
| Sarah L Primrose<br>KING & SPALDING LLP | sprimrose@kslaw.com |
| Tiffany Strelow Cobb<br>Warner Bros. Discovery, Inc. | tscobb@vorys.com |

6.  Under penalty of perjury, I declare that the foregoing is true and correct.

Dated:        August 28, 2024

*Ileraine Salloum*
Ileraine Salloum

2

Label Matrix for local noticing
113A-6
Case 6:24-bk-02486-GER
Middle District of Florida
Orlando
Wed Aug 28 15:03:46 EDT 2024

Brooke L. Bean
KING & SPALDING LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-7525

Christopher K. Coleman
KING & SPALDING LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-7525

Jeffrey R Dutson
KING & SPALDING LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-7525

Michael Fishel
KING & SPALDING LLP
1100 Louisiana, Suite 4100
Houston, TX 77002-5295

Taeyeong Kim
KING & SPALDING LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-7525

W. Austin Jowers
KING & SPALDING LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-7525

Warner Bros. Discovery, Inc.
on behalf of itself and its subsidiaries
c/o Tiffany Strelow Cobb
52 East Gay Street
Columbus, OH 43215-3108

Paul Steven Singerman +
Berger Singerman, LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Robin J. Rubens +
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Sarah L Primrose +
King & Spalding
1180 Peachtree Street, N.E.
Suite 1700
Atlanta, GA 30309-7525

Katherine Haire +
Reminger Co. LPA - Indianapolis
College Park Plaza
8909 Purdue Road
Suite 200
Indianapolis, IN 46268-3159

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

End of Label Matrix
Mailable recipients    12
Bypassed recipients     0
Total                  12