## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| | Lead Case |
| | |
| RED LOBSTER MANAGEMENT LLC,[1] | Case No. 6:24-bk-02486-GER |
| | Jointly Administered with |
| | |
| RED LOBSTER RESTAURANTS LLC, | Case No. 6:24-bk-02487-GER |
| RLSV, INC., | Case No. 6:24-bk-02488-GER |
| RED LOBSTER CANADA, INC., | Case No. 6:24-bk-02489-GER |
| RED LOBSTER HOSPITALITY LLC, | Case No. 6:24-bk-02490-GER |
| RL KANSAS LLC, | Case No. 6:24-bk-02491-GER |
| RED LOBSTER SOURCING LLC, | Case No. 6:24-bk-02492-GER |
| RED LOBSTER SUPPLY LLC, | Case No. 6:24-bk-02493-GER |
| RL COLUMBIA LLC, | Case No. 6:24-bk-02494-GER |
| RL OF FREDERICK, INC., | Case No. 6:24-bk-02495-GER |
| RED LOBSTER OF TEXAS, INC., | Case No. 6:24-bk-02496-GER |
| RL MARYLAND, INC., | Case No. 6:24-bk-02497-GER |
| RED LOBSTER OF BEL AIR, INC., | Case No. 6:24-bk-02498-GER |
| RL SALISBURY, LLC, | Case No. 6:24-bk-02499-GER |
| RED LOBSTER INTERNATIONAL HOLDINGS LLC, | Case No. 6:24-bk-02500-GER |

            Debtors.
_____/

## MEMORANDUM OF LAW IN REPLY TO OBJECTIONS TO
## CONFIRMATION OF DEBTORS' AMENDED JOINT CHAPTER 11 PLAN

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are Red Lobster Management LLC (6889); Red Lobster Sourcing LLC (3075); Red Lobster Supply LLC (9187); RL Kansas LLC (2396); Red Lobster Hospitality LLC (5297); Red Lobster Restaurants LLC (4308); RL Columbia LLC (7825); RL of Frederick, Inc. (9184); RL Salisbury, LLC (7836); RL Maryland, Inc. (7185); Red Lobster of Texas, Inc. (1424); Red Lobster of Bel Air, Inc. (2240); RLSV, Inc. (6180); Red Lobster Canada, Inc. (4569); and Red Lobster International Holdings LLC (4661). The Debtors' principal offices are located at 450 S. Orange Avenue, Suite 800, Orlando, FL 32801.

W. Austin Jowers (*pro hac vice* admitted)
Jeffrey R. Dutson (*pro hac vice* admitted)
Sarah L. Primrose (FL Bar No. 98742)
Christopher K. Coleman (*pro hac vice* admitted)
Brooke L. Bean (*pro hac vice* admitted)
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone:  (404) 572-4600
Email:  ajowers@kslaw.com
        jdutson@kslaw.com
        sprimrose@kslaw.com
        christopher.coleman@kslaw.com
        bbean@kslaw.com

– and –

Michael Fishel (*pro hac vice* admitted)
**KING & SPALDING LLP**
1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone:  (713) 751-3200
Email:  mfishel@kslaw.com

Paul Steven Singerman
Florida Bar No. 378860
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  singerman@bergersingerman.com

-  and –

Nicolette C. Vilmos
Florida Bar No. 469051
**BERGER SINGERMAN LLP**
111 North Magnolia Avenue
Suite 1450 Orlando, FL 32801
Telephone: (407) 743-7900
Email: nvilmos@bergersingerman.com

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION...............................................................................................................1

II.     PRELIMINARY STATEMENT .................................................................................... 2

      A.      Background ................................................................................................... 2

      B.      Plan Solicitation and Voting Results...................................................... 2

III.    UNSECURED CREDITOR CRAM-DOWN ................................................................. 5

IV.     OVERVIEW OF PENDING OBJECTIONS .................................................................. 8

V.      DEBTORS' RESPONSE TO UNRESOLVED CONFIRMATION OBJECTIONS ... 9

      A.      The Transfer of Assets From the GUC Trust Do No Constitute Disbursements for Purposes of Bankruptcy Code § 1930(a)(6)...................................................... 9

      B.      The Plan Supplement is Not an Improper Plan Modification............................. 10

VI.     CONCLUSION ............................................................................................................ 16

## I.      <u>INTRODUCTION</u>

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") submit this memorandum of law (the "<u>Memorandum</u>") in reply to objections to (i) final approval of the *Disclosure Statement for the Joint Chapter 11 Plan of Red Lobster Management LLC and its Debtor Affiliates* [Docket No. 734] (as further modified, revised, supplemented and amended, the "<u>Disclosure Statement</u>") pursuant to section 1125 of title 11 of the United States Code (as modified or amended, the "<u>Bankruptcy Code</u>") and (ii) confirmation of the *Amended Joint Chapter 11 Plan for Red Lobster Management LLC and Its Debtor Affiliates* [Docket No. 941, Exhibit H] (as further modified, revised, supplemented and amended, the "<u>Plan</u>") pursuant to Bankruptcy Code §§ 1123 and 1129.[2]

Although several objections have been filed with respect to the Plan, the Debtors and their advisors have worked in good faith to consensually resolve many of the objections. Due to these efforts, the Debtors believe that, except for the limited issues discussed below, the objections have largely been resolved (or will be resolved prior to the Confirmation Hearing). A chart summarizing all formal objections, the status of such objections, and the Debtors' responses thereto is attached hereto as **Exhibit A**.

On August 29, 2024, the Debtors filed that certain *Memorandum of Law in Support of Confirmation of Debtors' Amended Joint Chapter 11 Plan* [ECF No. 1041] ("<u>Confirmation Brief</u>").

This Memorandum, approval of the Disclosure Statement and confirmation of the Plan, and entry of the Proposed Confirmation Order (as defined in the Confirmation Brief) are supported

---

[2] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to such terms in the Plan.

by, *inter alia*, the Confirmation Brief and the documents referenced therein and the following documents:

(i)    *Debtors' Notice of Intent to Proceed with Reorganized Equity Sale* [ECF No. 1055] ("Notice of Reorganized Equity Sale"); and

(ii)   *Affidavit of Emily Young of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on Joint Chapter 11 Plan of Red Lobster Management LLC and Its Debtor Affiliates*, filed September 3, 2024 [ECF No. 1101] (the "Tabulation Affidavit").

## II.    PRELIMINARY STATEMENT

### A.    Background

1.    On July 19, 2024, the Debtors filed their proposed *Joint Chapter 11 Plan for Red Lobster Management LLC and its Debtor Affiliates* [ECF No. 631]. Subsequently, on July 29, 2024 and August 22, 2024, respectively, the Debtors filed further revised versions of their proposed Plan.

2.    The Plan is the culmination of the Debtors' substantial efforts over the past several months to bring these Chapter 11 Cases to a value maximizing close through either (i) a successful sale of substantially all of the Debtors' assets or (ii) a successful reorganization of the Debtors' estates. The Plan is supported by the Debtors' key stakeholders, including the Prepetition Term Loan Parties, the DIP Secured Parties and the Committee and represents a consensual, comprehensive resolution of all disputes and issues relating to the Debtors and a responsible final closure for all interested constituents.

### B.    Plan Solicitation and Voting Results

3.    In accordance with the Solicitation Procedures, Epiq Corporate Restructuring, LLC, the Debtors' claims agent ("Epiq"), caused to be served the (i) Confirmation Hearing Notice on the parties listed in the creditor matrix; (ii) Solicitation Packages (as defined in the Solicitation Procedures Order) on holders of Claims in Class 3 and Class 4; and (iii) Impaired or Unimpaired

Notice of Non-Voting Status, in lieu of Solicitation Packages, on holders of Claims and Interest in Class 1, Class 2, Class 5 and Class 6. Tabulation Affidavit, ¶ 6.

4.      The creditors entitled to vote on the Plan (Class 3 and Class 4) have demonstrated broad and substantial support for the Plan. As set forth in the Tabulation Affidavit, of those creditors entitled to vote on the Plan, 903 creditors voted to accept the Plan and only 108 creditors voted to reject the Plan. Tabulation Affidavit, Ex. A. Approximately $114,494,000 in asserted claims voted to accept the Plan, while only approximately $8,500,000 (excluding the Thai Union Claims (as defined below)) in asserted claims voted to reject the Plan. Tabulation Affidavit, Exs. A and B.

5.      Although the holders of Claims in Class 4, which consists of General Unsecured Claims, overwhelming voted in support of the Plan by numerosity, less than two-thirds of the holders of Class 4 Claims by amount voted to accept the Plan. Therefore, Class 4 has not accepted the Plan. Tabulation Affidavit, Ex. A.

6.      However, this result is misleading without additional context. The tabulation for Class 4 Claims includes votes cast by affiliates of the Debtors' primary equity holder, Thai Union Investments North America LLC, Thai Union Group Public Company Limited and Thai Union Public Company Limited (collectively, "Thai Union"). Thai Union voted claims against each of the fifteen (15) Debtors. Thai Union has filed proofs of claim asserting the following unsecured claims against the Debtors: (a) approximately $5,800,000 on account of management fees that allegedly accrued for the period from October 1, 2021 as of the Petition Date [Claim Nos. 1300, 1301 and 1331]; (b) $500,000 on account of fees owed pursuant to a guaranty agreement [Claim Nos. 1302–15]; and (c) approximately $3,700,000 allegedly arising under certain supply agreements [Claim Nos. 1316–30] (collectively, the "Thai Union Claims").

7.      As shown in the chart below, if the votes cast by Thai Union are removed from the tabulation, Class 4 (in the aggregate across all Debtors) overwhelming voted in support of the Plan in both amount and numerosity.  In the aggregate, votes to accept the Plan in Class 4 represented over 90% in number and over 70% in amount if the votes of Thai Union are excluded.

**Class 4 Voting Tabulation <u>Without</u> Thai Union**

| Class | Debtor | Voters Accepting | Voters Rejecting | Percent Votes Accepting | Percent Votes Rejecting | Amount Accepting | Amount Rejecting | Percent Amount Accepting | Percent Amount Rejecting |
|---|---|---|---|---|---|---|---|---|---|
| 4 | Red Lobster Management LLC | 183 | 20 | 90.15% | 9.85% | $8,789,663.79 | $1,551,506.47 | 85.00% | 15.00% |
| 4 | Red Lobster Restaurants LLC | 387 | 27 | 93.48% | 6.52% | $4,446,105.54 | $677,975.52 | 86.77% | 13.23% |
| 4 | RLSV, Inc. | 3 | 0 | 100.00% | 0.00% | $69,443.68 | $0.00 | 100.00% | 0.00% |
| 4 | Red Lobster Canada, Inc. | 31 | 0 | 100.00% | 0.00% | $4,481,379.17 | $0.00 | 100.00% | 0.00% |
| 4 | Red Lobster Hospitality LLC | 248 | 27 | 90.18% | 9.82% | $5,947,032.74 | $6,268,115.46 | 48.69% | 51.31% |
| 4 | RL Kansas LLC | 6 | 2 | 75.00% | 25.00% | $82,204.94 | $18,961.73 | 81.26% | 18.74% |
| 4 | Red Lobster Sourcing LLC | 6 | 0 | 100.00% | 0.00% | $248,201.10 | $0.00 | 100.00% | 0.00% |
| 4 | Red Lobster Supply LLC | 2 | 0 | 100.00% | 0.00% | $69,442.68 | $0.00 | 100.00% | 0.00% |
| 4 | RL Columbia LLC | 5 | 0 | 100.00% | 0.00% | $72,356.32 | $0.00 | 100.00% | 0.00% |
| 4 | RL of Frederick, Inc. | 3 | 0 | 100.00% | 0.00% | $69,443.68 | $0.00 | 100.00% | 0.00% |
| 4 | Red Lobster of Texas, Inc. | 13 | 0 | 100.00% | 0.00% | $150,605.04 | $0.00 | 100.00% | 0.00% |
| 4 | RL Maryland, Inc. | 4 | 0 | 100.00% | 0.00% | $70,641.62 | $0.00 | 100.00% | 0.00% |
| 4 | Red Lobster of Bel Air, Inc. | 3 | 0 | 100.00% | 0.00% | $69,443.68 | $0.00 | 100.00% | 0.00% |
| 4 | RL Salisbury, LLC | 4 | 0 | 100.00% | 0.00% | $72,513.68 | $0.00 | 100.00% | 0.00% |
| 4 | Red Lobster International Holdings LLC | 4 | 0 | 100.00% | 0.00% | $155,223.98 | $0.00 | 100.00% | 0.00% |

8.      Although the Debtors believe that there are multiple defenses to the Thai Union Claims, the Debtors are not objecting to those claims at this time because: (a) the objections would likely involve costly, fact-intensive litigation; and (b) as shown below, the Debtors easily satisfy the "cram-down" requirements of Bankruptcy Code § 1129(b).

### III.    UNSECURED CREDITOR CRAM-DOWN

9.    The Plan should be confirmed notwithstanding the rejection of the Plan by holders of Claims in Class 4 because the Debtors satisfy the unsecured creditor cram-down requirements in Bankruptcy Code § 1129(b). Section 1129(b) of the Bankruptcy Code provides a mechanism for confirmation of a plan in circumstances where not all impaired classes of claims and interests accept a plan, as required by §1129(a)(8):

> [I]f all of the applicable requirements of [section 1129(a) of the Bankruptcy Code] other than [the requirement contained in section 1129(a)(8) that a plan must be accepted by all impaired classes] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. §1129(b)(1).

10.    Thus, under Bankruptcy Code §1129(b), a bankruptcy court may "cram-down" a plan over the rejection (or deemed rejection) of a plan by an impaired class of claims or interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such class. *See Johns-Manville Corp.*, 843 F.2d at 650 (2d Cir. 1988); *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 n.5 (3d Cir. 1993); *Zenith*, 241 B.R. at (explaining that "[w]here a Class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it does not discriminate unfairly and is fair and equitable").

11.    Congress drafted Bankruptcy Code § 1129(b) to, among other reasons, avoid one class or, in this case, one creditor, from precluding the confirmation of a plan that (i) is fair and equitable to such class and (ii) otherwise satisfies the requirements of the Bankruptcy Code. *See In re DN Associates*, 14 B.R. 195, 203 (Bankr. D. Maine 1992) ("Because cram down under

§ 1129(b) is an option Congress provided for Chapter 11 debtors, creditor opposition should not be considered in assessing a proposed plan's compliance with § 1129(a) for purposes of determining whether prosecuting the plan provides a benefit to the estate"); *In re Mortgage Inv. Co. of El Paso, Tex.*, 111 B.R. 604, 614 (Bankr. W.D. Tex. 1990) ("Congress made the cram down available to debtors; use of it to carry out a reorganization cannot be bad faith").

12.     The "unfair discrimination" standard of §1129(b)(1) of the Bankruptcy Code requires that a dissenting class receive "treatment which allocates value to the [dissenting] class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor," so that "a dissenting class will receive relative value equal to the value given to all other similarly situated classes." 11 U.S.C. §1129(b)(1). Generally speaking, §1129(b)(1) of the Bankruptcy Code is intended to prevent a plan proponent from "segregat[ing] two similar claims or groups of claims into separate classes and provide disparate treatment for those classes." *Id.*; *see also In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990) ("some courts hold that for discriminatory treatment of claims to be fair, four tests must be satisfied: (i) there is a reasonable basis for discriminating, (ii) the debtor cannot consummate the plan without discrimination, (iii) the discrimination is proposed in good faith, and (iv) the degree of discrimination is in direct proportion to its rationale"); *Zenith*, 241 B.R. 92, 105 (Bankr. D. Del. 1999) (explaining that '[w]here a class of creditors or shareholders has not accepted a plan. . . , the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable'"); *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 157 (Bankr. D.N.J. 2010) (citing *Armstrong World Indus.*, 348 B.R. at 121).

13.     Under the foregoing standards, the Plan does not "discriminate unfairly" against any holder of a Claim or Interest in a Class that is deemed or has voted to reject the Plan (the

"Rejecting Classes"). The treatment of holders of Claims and Interests in the Rejecting Classes is proper because all similarly situated holders of Claims and Interests will receive the same treatment under the Plan unless such holder consented to less favorable treatment.

14.     Sections 1129(b)(2)(B) and 1129(b)(2)(C) set forth the requirements of the "fair and equitable" test with respect to unsecured creditors and equity holders, with each subsection specifying an alternative requirement. A chapter 11 plan must satisfy the applicable requirement to be found to be fair and equitable with respect to a dissenting class of unsecured creditors or equity interests. *See In re P.J. Keating Co.*, 168 B.R. 464, 468 (Bankr. D. Mass. 1994) (noting that the "test under Section 1129(b)(2)(C) is an alternative one").

15.     The Bankruptcy Code states that a plan is "fair and equitable" with respect to a class of unsecured claims if "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property. . . ." 11 U.S.C. §1129(b)(2)(B)(ii). Further, a plan is fair and equitable with respect to a class of interests if the plan provides that "the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property." *Id.,* § 1129(b)(2)(C)(ii).

16.     As described above, less than two-thirds of the holders of Class 4 Claims by amount voted to accept the Plan. Notwithstanding the foregoing, the Court can properly confirm the Plan, in respect of the proposed treatment of Class 4 Claims, as authorized by Bankruptcy Code §1129(b) because the Plan does not unfairly discriminate and is fair and equitable with respect to Class 4. Specifically, the Plan does not unfairly discriminate because all holders of General Unsecured Claims are treated the same unless such holders consented to less favorable treatment, and the Plan is fair and equitable because no Class junior to Class 4 will receive a distribution under the Plan.

*See* 11 U.S.C. §1129(b)(2)(B)(ii) ("[T]he condition that a plan be fair and equitable with respect to a class includes the following requirements: . . . [w]ith respect to a class of unsecured claims– the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.").

17.    Additionally, the Claims and Interests in Class 5 and Class 6 are all subordinate to the priority of the Claims in Classes 1 through 4. The Plan provides for the same treatment by the Debtors of all holders of Claims and Interests within each of Class 5 and Class 6. Thus, the Plan does not discriminate unfairly with respect to holders of Claims or Interests in Class 5 (Intercompany Claims) and Class 6 (Interests). Accordingly, the Plan does not unfairly discriminate and is "fair and equitable" with respect to the Rejecting Class and, thus, satisfies Bankruptcy Code §1129(b).

**IV.    OVERVIEW OF PENDING OBJECTIONS**

18.    In accordance with the Solicitation Procedures Order, the deadline for parties in interest to file objections to the confirmation of the Plan was August 28, 2024 at 4:00 p.m. (prevailing Eastern time).[3] The Debtors received six (6) formal objections and other informal comments to the Plan from certain parties in interest and worked to address and resolve as many objections and comments as possible. A chart summarizing all formal objections, the status of such objections and the Debtors' responses thereto is attached hereto as **Exhibit A**. The Debtors have resolved all informal objections received. The Debtors will continue to work to resolve outstanding objections, where possible, in advance of the Confirmation Hearing. To the extent not consensually resolved, the Debtors submit that these objections should be overruled at the Confirmation Hearing and that (i) the Disclosure Statement should be approved and (ii) the Plan should be confirmed.

---

[3] The Debtors extended the objection deadline for certain parties by e-mail agreement.

## V.      **DEBTORS' RESPONSE TO UNRESOLVED CONFIRMATION OBJECTIONS**[4]

19.     The Debtors have worked tirelessly in these Chapter 11 Cases to formulate a Plan with consensus and support from the Debtors' stakeholders, including, without limitation, the Committee and various constituencies of creditors. At this time, the Debtors believe that the only objections that will not be resolved by the Confirmation Hearing are certain of the issues raised in the objection of the Office of the United States Trustee for Region 21 (the "U.S. Trustee") filed at ECF No. 1011 (the "U.S. Trustee Objection").

20.     The Debtors and the U.S. Trustee have endeavored in good faith to resolve as many of the U.S. Trustee's concerns as possible. And, as set forth in **Exhibit A**, several of the issues raised by the U.S. Trustee's Objection have been resolved. However, certain of the U.S. Trustee's objections remain unresolved. For the reasons set forth herein, the Debtors respectfully request that the Court overrule the U.S. Trustee Objection to the extent not otherwise resolved.

### A.      **The Transfer of Assets From the GUC Trust Do No Constitute Disbursements for Purposes of Bankruptcy Code § 1930(a)(6)**

21.     The U.S. Trustee asserts that the Plan does not adequately provide for payment of U.S. Trustee fees as required by Bankruptcy Code § 1930(a)(6) with respect to disbursements made from the GUC Trust. U.S. Trustee Objection, ¶¶ 38-40. The U.S. Trustee fails to cite any relevant authority for the proposition that distributions from the GUC Trust constitute disbursements for purposes of calculated fees payable by Bankruptcy Code § 1930(a)(6).[5] Accordingly, the Debtors respectfully request that the Court overrule the U.S. Trustee Objection on this issue.[6]

---

[4] To the extent any filings not addressed herein may constitute Disclosure Statement and Plan objections, the Debtors submit that such objections should be overruled on the merits.

[5] As noted in the U.S. Trustee Objection, certain causes of action will be transferred to the GUC Trust on the Plan Effective Date.

[6] The Reply Brief filed by the Committee [ECF No. 1098] (the "Committee Reply") addresses this objection in greater detail.

B.    **The Plan Supplement is Not an Improper Plan Modification.**

22.    The U.S. Trustee argues that it is improper for the Proposed Confirmation Order to incorporate the Plan Supplement—a pleading expressly contemplated by the Plan—as part of the amended Plan without a re-solicitation. U.S. Trustee Objection, ¶¶ 43-44. The U.S. Trustee bases its argument on the premise that the agreements attached to the Plan Supplement impermissibly modify the amended Plan by providing for broader exculpation provisions than provided in the amended Plan.  It is the U.S. Trustee's contention that the Plan Supplement should simply serve as a notice to interested parties of post-effective date events and documents that will be adopted by the Debtors' new management. U.S. Trustee Objection, ¶ 2. For the reasons set forth below, the Court should overrule the U.S. Trustee Objection to the form of the proposed Confirmation Order.

23.    Bankruptcy Code § 1127(a) authorizes the proponent of a plan to modify a plan at any time before confirmation, and provides that such modification "becomes the plan," as long as the modification satisfies the requirements of 11 U.S.C. sections 1122 and 1123. Additionally, Bankruptcy Rule 3019(a) provides, in pertinent part:

> "In a…chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan."

24.    A plan proponent's ability to modify a Chapter 11 plan prior to confirmation is, "relatively easy…by design" in order to "facilitate negotiation between the debtor and its creditors, equity holders, and other interested parties." *In re: America-CV Station Group, Inc., et al. v. America-CV Station Group, Inc. et al.*, 56 F.4th 1302, 1308 (11th Cir. 2023) (citing to 7 Collier on Bankruptcy ¶1127.03[1] (16th ed. 2022) ("Easy modification allows negotiated outcomes to

10

quickly become part of the plan"). *In America-CV*, the Eleventh Circuit further articulated the

substantive and procedural requirements for modifying a plan:

> The modified plan must still comply with the Code's substantive requirements for any reorganization plan. 11 U.S.C. §1127(a). This means that the modification must comply with §1122's restrictions on the classification of claims and interests and §1123's requirements for the contents of a reorganization plan. *Id*…..There are also procedural constraints. A modification must comply with §1125's requirement that claim and interest holders be given "adequate information" about the contents of a plan. *Id.* §1127(c). Before a modification is filed, this is accomplished by a disclosure statement, which must be approved by the bankruptcy court as containing adequate information. *Id.* §1125(b); Fed. R. Bankr. P. 3016(b)….Under certain circumstances, when a modification is made after votes are cast based on an old disclosure statement, the debtor must provide a new disclosure statement and call for another round of voting. *In re: New Power Co.*, 438 F.3d 1113, 1117-18 (11th Cir. 2006). ***But not all modifications trigger this requirement. A claim or interest holder is entitled to this procedural protection only if, after a hearing, the bankruptcy court finds that the modification "materially and adversely changes the way that claim or interest holder is treated."*** *Id.*

*American-CV,* 56 F.4th at 1308-1309 (emphasis added).

25.     As stated above, pursuant to Bankruptcy Rule 3019, courts consistently have held

that a proposed modification to a previously accepted plan will be deemed accepted where the

proposed modification is not material or does not adversely affect the way creditors and

stakeholders are treated. Fed. R. Bankr. P. 3019; *see, e.g., In re America-CV Station Group Inc.,*

56 F.4th at 1308-09 ("A claim or interest holder is entitled to [re-solicitation] only if, after a

hearing, the bankruptcy court finds that the modification 'materially and adversely changes the

way that claim or interest holder is treated.'"); *Enron Corp. v. The New Power Co. (In re The New

Power Co.),* 438 F.3d 1113, 1117-18 (11th Cir. 2006) (holding that "Because we find that

the modifications made were ***not material and adverse***, and therefore that the bankruptcy court

could properly deem Enron's vote in favor of a prior plan to be a vote in favor of the modified plan,

and because we find that the interim distribution provision does not violate the equal treatment provision of the Bankruptcy Code, we AFFIRM." *Id.* at 1123) (emphasis added); *In re Royal Palm, LLC,* No. 18-19441-EPK, 2020 WL4785543, at *4-5 (Bankr. S.D. Fla. Jan. 14, 2020) ("A modification is material if a creditor or interest holder who accepted the plan, if it knew of the modification, would be likely to reconsider its acceptance in light of the modification. *In re Am. Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988). In order to trigger further disclosure and solicitation, ***the modification must be both material and adverse to creditors***.") (emphasis added).

26.     Here, as demonstrated below, the Plan Supplement complies with all procedural and substantive requirements and does not materially or adversely change the treatment provided by the Plan to holders of claims or equity interests.

27.     From a procedural standpoint, there can be no question that all creditors, equity security holders and interested parties were duly notified that the Plan would be modified by the Plan Supplement, which attaches documents that are integral to implementing the Plan, as further discussed below.  The Debtors reserved the right to modify the Plan—not arbitrarily on their own— but, rather, only with the prior written consent of the Prepetition Term Loan Agent and the Committee, which the Debtors' obtained. *See* Joint Plan at ECF No. 733, Article X, §A. *See also* Article X, §C ("Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation of votes thereon are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation"). The Disclosure Statement that the Court conditionally approved on July 29, 2024, mirrors the language of the Plan at Article 5.7(a) (requiring prior written consent of the Prepetition Term Loan Agent and the Committee with respect to Plan modifications) and Article 5.7(b) (providing that entry of the

Confirmation Order shall include all modifications to the Plan without the need for re-solicitation). *See also* ECF No. 1003, which confirms that Epiq timely served the Plan Supplement upon creditors and interested parties. Indeed, the Solicitation Procedures Order not only conditionally approved the Debtors' Disclosure Statement as having adequate information, but also specifically contemplated the filing of a Plan Supplement by August 22, 2024, which the Debtors timely accomplished, prior to the last day for voting on August 28, 2024. *See* Solicitation Procedures Order at Section II (Approval of the Confirmation Schedule). As reflected in certificates of service at ECF Nos. 765, 815 and 913, Epiq served the Solicitation Procedures Order upon creditors and interested parties.

28.     There can also be no question that, from a substantive standpoint, the Plan Supplement satisfies the requirements of the Bankruptcy Code and Bankruptcy Rules, as it consists of exhibits that are both complimentary and integral to the implementation of the Plan and, accordingly, must be incorporated as part of the confirmed Plan in an Order approving the Plan. Namely, those exhibits provide the necessary detail to facilitate the Plan's requirements and were specifically referenced in the Plan as required for implementation of the Plan. *See* Plan, Article IV (Means For Implementation of the Plan). Specifically, Article IV(A)(2) (Restructuring Transactions) lists all of the documents required to implement the centerpiece of the Plan:  the sale of substantially all of the Debtors' assets, either through pursuit of an asset sale transaction or a combination asset sale and sale of Reorganized Debtor equity, at the election of the Purchaser, which enables the funding necessary to achieve distributions to creditors in these cases. In that regard, Exhibit A (Amended and Restated Purchase Agreement), Exhibit B (New Organization Documents), Exhibit E (Form of Plan Administrator Agreement), Exhibit F (Form of GUC Trust Agreement), Exhibit I (Identifies of the Members of the Board) and Exhibit J (Takeback Loan

Documentation) to the Plan Supplement are integral to facilitating the Plan, without which the Plan fails. Another means for implementing the Plan is codified at Article IV(A)(7) (Preservation of Causes of Action) and, accordingly, Exhibit C to the Plan Supplement (Schedule of Retained Causes of Action) is essential to disclosing the claims and causes of action preserved for purposes of generating recoveries to creditors under the Plan.  Additionally, Exhibit D (Amended Assumed Executory Contracts and Unexpired Leases Lists) and Exhibit G (Schedule of Updated Cure Amounts) to the Plan Supplement comprise the required data to effectuate Article V of the Plan (Treatment of Executory Contracts and Unexpired Leases), without which the sale transaction is crippled and, hence, the Plan fails. Finally, Exhibit H (Amended Joint Plan of Reorganization) to the Plan Supplement must also be incorporated in the Confirmation Order, as it provides changes to the Plan as reflected in the redline version attached thereto. None of the foregoing materially or adversely changes the treatment provided by the Plan to holders of claims or equity interests.

29.     Courts have consistently recognized the appropriateness of incorporating plan supplements into confirmation orders where such supplements are material to the understanding and implementation of the Plan. Some examples of confirmed Chapter 11 plans that have included plan supplements are:  *In re Maremont Corp.*, 601 B.R. 1 (Bankr. D. Del. 2019); *In re Rubicon U.S. REIT, Inc.*, 434 B.R. 168, 176 (Bankr. D. Del. 2010; *In re DBSD N. Am., Inc.*, No. 09-13061 (REG), 2012 WL 13345802 (Bankr. S.D.N.Y. June 15, 2012); *In re Vital Pharmaceuticals, et al.*, No. 22-17842-PDR (Bankr. S.D. Fla.), ECF No. 609 (Order Confirming the Debtors' Amended Joint Plan of Liquidation, Dated March 29, 2023, As Amended); and *In re Enron*, Corp. No. 01-16034 (Bank. S.D. NY.). By incorporating the Plan Supplement into the Confirmation Order, the Court will ensure that all material terms of the Plan are given effect, consistent with the intent of the parties and the expectations of creditors.

30.     Further, incorporating the Plan Supplement into the Confirmation Order is in the best interests of creditors and other stakeholders. It ensures that the Plan, as supplemented, will be implemented in accordance with the terms that have been fully disclosed and agreed upon by the parties. In that regard, in evaluating the weight to be given to the U.S. Trustee Objection, the Court should be mindful that the U.S. Trustee appointed the Committee in order to take ownership and accountability for the rights of unsecured creditors. The Committee has ably done so. The heavily negotiated and collaborative efforts in these Chapter 11 cases as between counsel for the Prepetition Term Loan Agent, the DIP Lender Agent, the Committee and the Debtors has been nothing short of remarkable and has saved these estates substantial administrative expenses that would otherwise have been incurred, eclipsing the hope of any distribution to unsecured creditors. Importantly, the Committee, as the statutorily appointed fiduciary for all unsecured creditors, has not taken the position that the Plan Supplement adversely and materially impacts the treatment of its constituents' claims and, rather, supports the Plan Supplement being incorporated as part of the Plan in the Confirmation Order

31.     Based on the foregoing law and facts, the Court should overrule the U.S. Trustee Objection on this issue and authorize the incorporation of the Plan Supplement in the Confirmation Order.

*[Remainder of Page Intentionally Left Blank]*

## VI.    <u>CONCLUSION</u>

**WHEREFORE**, for the reasons set forth in this Memorandum, the Debtors respectfully request that the Bankruptcy Court approve the Disclosure Statement and confirm the Plan as satisfying the applicable requirements of the Bankruptcy Code by entering the Proposed Confirmation Order, overruling any remaining objections, and granting such other and further relief as may be appropriate under the circumstances.

Dated: September 3, 2024

Respectfully submitted,

*/s/ Paul Steven Singerman*
Paul Steven Singerman
Florida Bar No. 378860
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  singerman@bergersingerman.com

-  and –

Nicolette C. Vilmos
Florida Bar No. 469051
**BERGER SINGERMAN LLP**
111 N. Magnolia Avenue
Suite 1450
Orlando, FL 32801
Telephone: (407) 743-7900
Email: nvilmos@bergersingerman.com

*Filer's Attestation: Pursuant to Local Rule 1001-2(g)(3) regarding signatures, Paul Steven Singerman attests that concurrence in the filing of this paper has been obtained.*

W. Austin Jowers (admitted *pro hac vice*)
Jeffrey R. Dutson (admitted *pro hac vice*)
Sarah Primrose (Bar No. 98742)
Christopher K. Coleman (admitted *pro hac vice*)
Brooke L. Bean (admitted *pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone:  (404) 572-4600
Email:  ajowers@kslaw.com
        jdutson@kslaw.com
        sprimrose@kslaw.com
        christopher.coleman@kslaw.com
        bbean@kslaw.com

– and –

Michael Fishel (admitted *pro hac vice*)
**KING & SPALDING LLP**
1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone:  (713) 751-3200
Email:  mfishel@kslaw.com

*Counsel for Debtors and Debtors-in-Possession*

**Exhibit A**

**Summary of Plan Objections**

| Objecting Party | Docket No. | Objection | Status / Response |
|---|---|---|---|
| Melissa Randazzo and David Ontiveros (collectively, the "Randazzo Parties") | 1001 | The Randazzo Parties object to the Plan to the extent that the Plan precludes the Randazzo Parties from pursing direct action claims against Zurich on account of the settlement that was entered into prior to the Petition Date. The Randazzo Parties requested certain language be included in the Confirmation Order. | Status: **Resolved**<br><br>Response: The Debtors agreed to include language in the Confirmation Order resolving the Randazzo Parties' concerns. |
| Taylor & Monroe LLC ("T&M") | 1004 | T&M object to the Plan to the extent the Plan enjoins T&M from enforcing its rights against Red Lobster Intermediate Holdings, LLC, in its capacity as guarantor, in connection with a certain real property lease. | Status: **Unresolved**<br><br>Response: The Debtors are working with T&M to consenually resolve this objection. |
| Peter Moon and Seungha Hong, as Trustees of the 2015 Hong Family Trust U/D/T Dated March 25, 2015 ("Hong Family Trust") | 1005 | The Hong Family Trust objects to the Plan to the extent the Plan enjoins the Hong Family Trust from enforcing their rights against Red Lobster Intermediate Holdings, LLC, in its capacity as guarantor, in connection with a certain real property lease. | Status: **Unresolved**<br><br>Response: The Debtors are working with the Hong Family Trust to consenually resolve this objection. |
| Zurich American Insurance Company, American Zurich Insurance Company, and American | 1008 | Zurich objects to the Plan on the account that (i) the Plan is inconsistent with the terms of the Zurich Insurance Program and the *Order (I) Authorizing the Debtors to Enter into the New Insurance Program, (II) Authorizing Assumption of the* | Status: **Unresolved**<br><br>Response: Although this Objection has not yet been resolved, the Debtors anticipate consenually resolving Zurich's objections |

| Objecting Party | Docket No. | Objection | Status / Response |
|---|---|---|---|
| Guarantee and Liability Insurance Company (collectively "Zurich") | | *Existing Insurance Program, and (III) Granting Related Relief* entered by the Bankruptcy Court on May 22, 2024 [ECF No. 154] and (ii) the Plan fails to adequately address that, in order for any of the Debtors to assume the Zurich Insurance Program, all successors must remain liable for the obligations thereunder. | through modifications to the Confirmation Order and agreement on a form of Assumption and Assignment Agreement. |
| Optium Fund 4, LLC ("Optium") | 1023 | Optium objects to the Plan to the extent the Plan attempts to transfer proceeds of Claims arising prior to July 29, 2014 in connection with the Visa Antitrust Litigation (as defined in the Optium Objection). | **Resolved**<br><br>The Debtors have agreed to include language in the Confirmation Order resolving Optium's concerns. |
| U.S. Trustee | 1011 | The U.S. Trustee asserted the following objections to the Plan:<br><br>1. Transfers of cash to and from the GUC Trust constitute "disbursements" for purposes of Bankruptcy Code § 1930(a)(6). Additionally, the U.S. Trustee contends that if non-cash assets are reduced to cash and such cash is used by the GUC Trust to fund its distributions, then such monetary payments constitute "disbursements" for purposes of calculating the U.S. Trustee fees for that quarter. | Status: **Unresolved**<br><br>Response: The U.S. Trustee's objection should be overruled for the reasons set forth in the Memorandum. *See* ¶ 21 of the Memorandum. |

| Objecting Party | Docket No. | Objection | Status / Response |
|---|---|---|---|
| | | 2. The expenses, including the ordinary business expenses, of the Reorganized Debtors and any other post-confirmation entity are subject to U.S. Trustee fees. | <u>Status</u>**: Resolved (subject to the U.S. Trustee's review of the revised Confirmation Order)**<br><br><u>Response</u>: The Debtors will include language in the Confirmation Order that resolve the U.S. Trustee's objection. |
| | | 3. The Plan Supplement is an impermissible plan modification that requires re-solicitation and causes the Plan to be non-confirmable under Bankruptcy Code §§ 1123 and 1127(a). The U.S. Trustee argues that the Plan Supplement is incorporated as a part of the Plan and thereby expands the exculpation provisions in the Plan beyond what is permitted by the Bankruptcy Code. | <u>Status</u>**: Unresolved**<br><br><u>Response</u>: The U.S. Trustee's objection should be overruled for the reasons set forth in the Memorandum. *See* ¶¶ 22 through 31 of the Memorandum. |
| | | 4. The GUC Trustee and Plan Administrator should be bonded. | <u>Status</u>**: Resolved**<br><br><u>Response</u>: The U.S. Trustee has agreed to withdraw this objection. |
| | | 5. The Plan should require the GUC Trustee and Plan Administrator or their post-confirmation professionals to file retention applications and fee applications. | <u>Status</u>**: Resolved.**<br><br><u>Response</u>: The U.S. Trustee has agreed to withdraw this objection. |

| Objecting Party | Docket No. | Objection | Status / Response |
|---|---|---|---|
| | | 6. The Plan includes certain parties in the definition of "Releasing Parties" that have not provided affirmative consent to the third-party releases set forth in the Plan. | <u>Status</u>**: Resolved**<br><br><u>Response</u>: The Debtors are obtaining the written consent to the third-party releases via e-mail from (i) the DIP Lenders and the DIP Agent, (ii) the Prepetition Term Loan Parties, (iii) the Purchaser, (iv) the Committee, (v) the Plan Administrator and (vi) the GUC Trustee. |
| | | 7. The Discharge provision in Article VIII.A.1 of the Plan should not apply to RL Management because RL Management is not reorganizing. | <u>Status</u>**: Resolved**<br><br><u>Response</u>: The U.S. Trustee has agreed to withdraw this objection. |
| | | 8. The Plan should specify that undelivered payments should be remitted to the Clerk of Court instead of returned to the Reorganized Debtors and should provide that creditors are given notice without specifically requesting notice post confirmation. | <u>Status</u>**: Resolved**<br><br><u>Response</u>: The U.S. Trustee has agreed to withdraw this objection. |