## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| RED LOBSTER MANAGEMENT LLC, [1] | Case No. 6:24-bk-02486-GER<br>Lead Case |
| | Jointly Administered with |
| RED LOBSTER RESTAURANTS LLC, | Case No. 6:24-bk-02487-GER |
| RLSV, INC., | Case No. 6:24-bk-02488-GER |
| RED LOBSTER CANADA, INC., | Case No. 6:24-bk-02489-GER |
| RED LOBSTER HOSPITALITY LLC, | Case No. 6:24-bk-02490-GER |
| RL KANSAS LLC, | Case No. 6:24-bk-02491-GER |
| RED LOBSTER SOURCING LLC, | Case No. 6:24-bk-02492-GER |
| RED LOBSTER SUPPLY LLC, | Case No. 6:24-bk-02493-GER |
| RL COLUMBIA LLC, | Case No. 6:24-bk-02494-GER |
| RL OF FREDERICK, INC., | Case No. 6:24-bk-02495-GER |
| RED LOBSTER OF TEXAS, INC., | Case No. 6:24-bk-02496-GER |
| RL MARYLAND, INC., | Case No. 6:24-bk-02497-GER |
| RED LOBSTER OF BEL AIR, INC., | Case No. 6:24-bk-02498-GER |
| RL SALISBURY, LLC, | Case No. 6:24-bk-02499-GER |
| RED LOBSTER INTERNATIONAL HOLDINGS LLC, | Case No. 6:24-bk-02500-GER |
| Debtors. | |

_____/

## NOTICE OF FILING REDLINE AND CLEAN VERSIONS OF SECOND AMENDED JOINT CHAPTER 11 PLAN FOR RED LOBSTER MANAGEMENT LLC AND ITS DEBTOR AFFILIATES

Red Lobster Management LLC and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby file the attached (i) redline version of the *Second Amended Joint*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are Red Lobster Management LLC (6889); Red Lobster Sourcing LLC (3075); Red Lobster Supply LLC (9187); RL Kansas LLC (2396); Red Lobster Hospitality LLC (5297); Red Lobster Restaurants LLC (4308); RL Columbia LLC (7825); RL of Frederick, Inc. (9184); RL Salisbury, LLC (7836); RL Maryland, Inc. (7185); Red Lobster of Texas, Inc. (1424); Red Lobster of Bel Air, Inc. (2240); RLSV, Inc. (6180); Red Lobster Canada, Inc. (4569); and Red Lobster International Holdings LLC (4661). The Debtors' principal offices are located at 450 S. Orange Avenue, Suite 800, Orlando, FL 32801.

*Chapter 11 Plan for Red Lobster Management LLC and Its Debtor Affiliates*, attached as **Exhibit 1**, which reflects revisions as against the *Amended Joint Chapter 11 Plan for Red Lobster Management LLC and Its Debtor Affiliates* attached as Exhibit H to the *Notice of Filing Plan Supplement* [ECF No. 941]; and (ii) clean version of the *Second Amended Joint Plan for Red Lobster Management LLC and Its Debtor Affiliates*, attached as **Exhibit 2**.

Dated:    September 4, 2024.

Respectfully submitted,

*/s/ Paul Steven Singerman*
Paul Steven Singerman
Florida Bar No. 378860
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  singerman@bergersingerman.com

- and –

Nicolette C. Vilmos
Florida Bar No. 469051
**BERGER SINGERMAN LLP**
111 N. Magnolia Avenue
Suite 1450
Orlando, FL 32801
Telephone: (407) 743-7900
Email:  nvilmos@bergersingerman.com

*Filer's Attestation:  Pursuant to Local Rule 1001-2(g)(3) regarding signatures, Paul Steven Singerman attests that concurrence in the filing of this paper has been obtained.*

W. Austin Jowers (admitted *pro hac vice*)
Jeffrey R. Dutson (admitted *pro hac vice*)
Sarah L. Primrose (FL Bar No. 98742)
Christopher K. Coleman (admitted *pro hac vice*)
Brooke L. Bean (admitted *pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone:  (404) 572-4600
Email:  ajowers@kslaw.com
          jdutson@kslaw.com
          sprimrose@kslaw.com
          christopher.coleman@kslaw.com
          bbean@kslaw.com

– and –

Michael Fishel (admitted *pro hac vice*)
**KING & SPALDING LLP**
1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone:  (713) 751-3200
Email:  mfishel@kslaw.com

***Counsel for Debtors and Debtors-in-Possession***

## EXHIBIT 1

**(Redline Version of Second Amended Joint Chapter 11 Plan for Red Lobster Management LLC and Its Debtor Affiliates)**

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| RED LOBSTER MANAGEMENT LLC,[1] | Case No. 6:24-bk-02486-GER |
| | Jointly Administered with |
| RED LOBSTER RESTAURANTS LLC, | Case No. 6:24-bk-02487-GER |
| RLSV, INC. | Case No. 6:24-bk-02488-GER |
| RED LOBSTER CANADA, INC., | Case No. 6:24-bk-02489-GER |
| RED LOBSTER HOSPITALITY LLC, | Case No. 6:24-bk-02490-GER |
| RL KANSAS LLC, | Case No. 6:24-bk-02491-GER |
| RED LOBSTER SOURCING LLC, | Case No. 6:24-bk-02492-GER |
| RED LOBSTER SUPPLY LLC, | Case No. 6:24-bk-02493-GER |
| RL COLUMBIA LLC, | Case No. 6:24-bk-02494-GER |
| RL OF FREDERICK, INC., | Case No. 6:24-bk-02495-GER |
| RED LOBSTER OF TEXAS, INC., | Case No. 6:24-bk-02496-GER |
| RL MARYLAND, INC., | Case No. 6:24-bk-02497-GER |
| RED LOBSTER OF BEL AIR, INC., | Case No. 6:24-bk-02498-GER |
| RL SALISBURY, LLC, | Case No. 6:24-bk-02499-GER |
| RED LOBSTER INTERNATIONAL HOLDINGS LLC, | Case No. 6:24-bk-02500-GER |

Debtors.

_____/

## SECOND AMENDED JOINT CHAPTER 11 PLAN FOR
## RED LOBSTER MANAGEMENT LLC AND ITS DEBTOR AFFILIATES

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are Red Lobster Management LLC (6889); Red Lobster Sourcing LLC (3075); Red Lobster Supply LLC (9187); RL Kansas LLC (2396); Red Lobster Hospitality LLC (5297); Red Lobster Restaurants LLC (4308); RL Columbia LLC (7825); RL of Frederick, Inc. (9184); RL Salisbury, LLC (7836); RL Maryland, Inc. (7185); Red Lobster of Texas, Inc. (1424); Red Lobster of Bel Air, Inc. (2240); RLSV, Inc. (6180); Red Lobster Canada, Inc. (4569); and Red Lobster International Holdings LLC (4661). The Debtors' principal offices are located at 450 S. Orange Avenue, Suite 800, Orlando, FL 32801.

Dated:    ~~August 22~~**September 4**, 2024

Respectfully submitted,

_/s/ Paul Steven Singerman_
Paul Steven Singerman
Florida Bar No. 378860
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:   (305) 755-9500
Email:   singerman@bergersingerman.com

W. Austin Jowers (*pro hac vice* admitted)
Jeffrey R. Dutson (*pro hac vice* admitted)
Sarah L. Primrose (FL Bar No. 98742)
Christopher K. Coleman (*pro hac vice* admitted)
Brooke L. Bean (*pro hac vice* admitted)
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone:   (404) 572-4600
Email:   ajowers@kslaw.com
          jdutson@kslaw.com
          sprimrose@kslaw.com
          christopher.coleman@kslaw.com
          bbean@kslaw.com

– and –
Michael Fishel (*pro hac vice* admitted)
**KING & SPALDING LLP**
1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone:   (713) 751-3200
Email:   mfishel@kslaw.com

- and –

Nicolette C. Vilmos
Florida Bar No. 469051
**BERGER SINGERMAN LLP**
111 North Magnolia Avenue
Suite 1450 Orlando, FL 32801
Telephone: (407) 749-7900
Email: nvilmos@bergersingerman.com

*Filer's Attestation: Pursuant to Local Rule 1001-2(g)(3) regarding signatures, Paul Steven Singerman attests that concurrence in the filing of this paper has been obtained.*

*[Counsel for Debtors and Debtors-in-Possession]*

## TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

I.     DEFINED TERMS AND RULES OF INTERPRETATION .................................... 1
       A.     Defined Terms ............................................................................................ 1
       B.     Rules of Interpretation ............................................................................. 16
       C.     Computation of Time ............................................................................... 17
       D.     Governing Law ......................................................................................... 17
       E.     Reference to Monetary Figures ................................................................ 17
       F.     Controlling Document .............................................................................. 18
       G.     Consent Rights of the Consenting Lenders ............................................. 18

II.    UNCLASSIFIED CLAIMS .................................................................................... 18
       A.     Administrative Expense Claims ............................................................... 18
       B.     Professional Fee Claims .......................................................................... 19
              1.     Final Fee Applications and Payment of Professional Fee Claims ... 19
              2.     Professional Fee Escrow Accounts .......................................... 19
              3.     Post-Confirmation/Pre-Effective Date ...................................... 20
              4.     Post-Effective Date Fees and Expenses .................................... 20
       C.     DIP Claims ............................................................................................... 20
       D.     Priority Tax Claims .................................................................................. 21

III.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ......... 21
       A.     Classification of Claims and Interests ..................................................... 21
              1.     Class Identification ................................................................... 22
       B.     Treatment of Claims and Interests ........................................................... 22
              1.     Class 1 – Miscellaneous Secured Claims .................................. 22
              2.     Class 2 – Other Priority Claims ................................................ 23
              3.     Class 3 – Prepetition Term Loan Claims .................................. 23
              4.     Class 4 – General Unsecured Claims ........................................ 24
              5.     Class 5 – Intercompany Claims ................................................ 24
              6.     Class 6 – Interests in Debtors ................................................... 25
       C.     Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ................... 25
       D.     Subordinated Claims ................................................................................ 25
       E.     Elimination of Vacant Classes ................................................................ 25

IV.    MEANS FOR IMPLEMENTATION OF THE PLAN ............................................ 26
       A.     General ...................................................................................................... 26
              1.     General Settlement of Claims and Interests .............................. 26
              2.     Restructuring Transactions ....................................................... 26
              3.     Insurance Policies ..................................................................... 26
              4.     Section 1146 Exemption ........................................................... 28
              5.     Cancellation of Securities and Agreements ............................... 29
              6.     Effectuating Documents; Further Transactions ......................... 29
              7.     Preservation of Causes of Action ............................................. 29
       B.     Restructuring of the Debtors Effectuated Through a Sale Transaction .... 30

|   |   | 1. | Closing of any Sale Transaction or Restructuring Transaction | 31 |
|   | C. | | Reorganized Equity Sale Provisions | 31 |
|   |   | 1. | Issuance of Reorganized Debtor Equity; Section 1145 Exemption | 31 |
|   |   | 2. | Corporate Existence | 32 |
|   |   | 3. | New Organizational Documents | 33 |
|   |   | 4. | Discharge | 33 |
|   |   | 5. | Vesting of Assets in the Reorganized Debtors and the GUC Trust | 33 |
|   |   | 6. | Directors, Managers, and Officers | 34 |
|   |   | 7. | Wind-Down and Dissolution of the Debtors | 34 |
|   |   | 8. | The Plan Administrator | 35 |
|   |   | 9. | Vesting of Wind-Down Assets in the Wind-Down Debtor(s) or Purchaser(s) | 37 |
|   |   | 10. | Cash Collateral Held by the Prepetition ABL Agent | 38 |
|   |   | 11. | GUC Trust. | 38 |
|   |   | 12. | Sources of Consideration for Plan Distributions. | 42 |

| V. | | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 42 |
|   | A. | | Assumption and Rejection of Executory Contracts and Unexpired Leases | 42 |
|   |   | 1. | 363 Asset Sale | 42 |
|   |   | 2. | Reorganized Equity Sale | 42 |
|   | B. | | Approval of Assumption, Assignment and Rejection | 43 |
|   | C. | | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 43 |
|   | D. | | Cure of Defaults for Executory Contracts and Unexpired Leases Assumed | 44 |
|   | E. | | Preexisting Obligations under Executory Contracts and Unexpired Leases. | 44 |
|   | F. | | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 44 |
|   | G. | | Reservation of Rights | 45 |
|   | H. | | Nonoccurrence of the Plan Effective Date | 45 |

| VI. | | | PROVISIONS GOVERNING DISTRIBUTIONS | 45 |
|   | A. | | Timing and Calculation of Amounts to Be Distributed | 45 |
|   | B. | | Delivery of Distributions | 45 |
|   |   | 1. | Persons Responsible | 45 |
|   |   | 2. | Record Date for Distribution | 46 |
|   |   | 3. | Minimum Distributions | 46 |
|   | C. | | Distributions and Undeliverable or Unclaimed Distributions | 46 |
|   | D. | | Surrender of Cancelled Instruments or Securities | 46 |
|   | E. | | Compliance with Tax Requirements | 47 |
|   | F. | | Allocations | 47 |
|   | G. | | No Postpetition Interest on Claims | 47 |
|   | H. | | Foreign Currency Exchange Rate | 47 |
|   | I. | | Setoffs and Recoupment | 48 |
|   | J. | | Claims Paid or Payable by Third Parties | 48 |
|   |   | 1. | Claims Paid by Third Parties | 48 |
|   |   | 2. | Claims Payable by Third Parties | 48 |

| VII. | | | PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND | |

DISPUTED CLAIMS................................................................................49
    A.    Allowance of Claims...............................................................49
    B.    No Distributions Pending Allowance.....................................49
    C.    Claims Administration Responsibilities.................................49
    D.    Estimation of Claims..............................................................49
    E.    Time to File Objections to Claims..........................................50
    F.    Disallowance of Claims..........................................................50
    G.    Distributions After Allowance................................................50

VIII.    RELEASES, INJUNCTION AND RELATED PROVISIONS...............50
    A.    Plan Releases, Injunction and Related Provisions.................50
        1.    Discharge of Claims and Termination of Interests in the Debtors...........50
        2.    Releases by the Debtors...........................................51
        3.    Releases by Holders of Claims Against the Debtors..........52
        4.    Exculpation from Claims Relating to the Plan................53
        5.    Injunction..................................................................54
    B.    Protections Against Discriminatory Treatment.......................54
    C.    Document Retention................................................................54
    D.    Term of Injunctions or Stays...................................................55
    E.    Unknown Claims....................................................................55

IX.    CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN......55
    A.    Conditions Precedent to the Effective Date for the Plan.......55
    B.    Waiver of Conditions.............................................................57
    C.    Substantial Consummation.....................................................57
    D.    Effect of Failure of Conditions..............................................57

X.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN......57
    A.    Modification and Amendments................................................57
    B.    Effect of Confirmation on Modifications................................57
    C.    Revocation or Withdrawal of Plan.........................................58

XI.    RETENTION OF JURISDICTION..................................................58

XII.    MISCELLANEOUS PROVISIONS..............................................60
    A.    Immediate Binding Effect......................................................60
    B.    Additional Documents............................................................60
    C.    Payment of Statutory Fees......................................................60
    D.    Reservation of Rights.............................................................60
    E.    Successors and Assigns..........................................................61
    F.    Notices...................................................................................61
    G.    Entire Agreement...................................................................63
    H.    Exhibits..................................................................................63
    I.    Non-Severability of Plan Provisions......................................63
    J.    Closing of Chapter 11 Cases..................................................63
    K.    Conflicts.................................................................................63
    L.    Rates......................................................................................63

### INTRODUCTION

Red Lobster Management LLC and the other debtors and debtors in possession in the above captioned cases (collectively, the "Debtors"), propose this joint Plan for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in Article I.A of the Plan.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, and projections, as well as a summary and description of the Plan and certain related matters. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Debtors shall pursue Confirmation of the Plan and a Sale Transaction that will be structured as either, at the election of the Purchaser, (i) a sale of all or substantially all of the assets of the Debtors or (ii) a sale of (a) all or substantially all of the assets of RL Management, RL International, and RLSV and (b) all or substantially all of the equity interests in the Reorganized Debtors (excluding RL Management), pursuant to section 1129 of the Bankruptcy Code and one or more Purchase Agreements.

**All holders of Claims entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entireties before voting to accept or reject the Plan.**

## I.    DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms

As used in the Plan, capitalized terms have the meanings set forth below.

"363 Asset Sale" means the sale to Purchaser of all or substantially all of the assets of the Debtors pursuant to section 363 of the Bankruptcy Code and the Purchase Agreement.

"510(b) Claim" means any Claim against the applicable Debtor that is subordinated pursuant to section 510(b) of the Bankruptcy Code.

"Administrative Expense Claim" means a Claim entitled to priority for costs and expenses of administration of the Debtors' Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the applicable Estate and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the applicable Chapter 11 Cases; and (c) all fees and charges assessed against the Debtors' Estates under chapter 11 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

"Administrative Expense Claims Bar Date" means the deadline for Filing requests for payment of Administrative Expense Claims (other than DIP Claims and the Professional Fee Claims, which shall be paid in accordance with the DIP Orders and the Plan, as applicable),

1

which shall be thirty (30) days after the Plan Effective Date, except as specifically set forth to the contrary in the Plan or a Final Order.

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"Allowed" means with respect to a Claim, except as otherwise provided herein: (a) a Claim in a liquidated amount as to which no objection has been Filed prior to or on the applicable objection deadline and that is either evidenced by a timely Filed Proof of Claim or that is not required to be evidenced by a Proof of Claim under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim that is scheduled by the Debtors on their Schedules as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been Filed in an unliquidated or different amount; or (c) a Claim that is deemed "Allowed" (i) pursuant to the Plan, (ii) in any stipulation approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or (iv) by Final Order (including any Claim to which the Debtors had objected or which the Bankruptcy Court had allowed prior to such Final Order); provided, that with respect to a Claim described in clauses (a) through (c) above, such Claim shall be considered Allowed only if and to the extent no objection to the allowance of such Claim has been Filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection had been Filed, it was overruled and such Claim was Allowed by a Final Order; provided, further, that no Claim of any Person subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Person pays in full the amount that it owes to the applicable Debtor, Reorganized Debtor, or Wind-Down Debtor, as applicable.

"Assumed Executory Contracts and Unexpired Leases List" means the list compiled by the Debtors, with the consent of the Purchaser, of Executory Contracts and Unexpired Leases that will (i) in the event of a Reorganized Equity Sale, be assumed by the Debtors (and, in some cases, assigned to the Purchaser) pursuant to the Plan or (ii) in the event of a 363 Asset Sale, be assumed by the Debtors and assigned to the Purchaser, in each case which list may be amended from time to time with the consent of the Purchaser.

"Assumed Liabilities" has the meaning set forth in the Purchase Agreement.

"Assumption and Assignment Procedures" has the meaning assigned to it in the Bidding Procedures Order.

"Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as may be amended from time to time to the extent applicable to the Chapter 11 Cases.

"Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Florida.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each as it may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

"Bidding Procedures" means, the sale procedures attached to the Bidding Procedures Order as Exhibit 1.

"Bidding Procedures Motion" means that certain *Motion of the Debtors for Entry of Order (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter into Stalking Horse Agreement and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [ECF No. 49].

"Bidding Procedures Order" means that certain *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Enter into Stalking Horse Agreement and to Provide Bidding Protections Thereunder, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [ECF No. 386].

"Business Day" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"Canadian Proceeding" means that certain ancillary proceeding commenced by RL Management, in its capacity as foreign representative of the Debtors, in Canada recognizing the Chapter 11 Cases pursuant to the Companies' Creditors Arrangement Act (Canada, R.S.C. 1985, c. C-36).

"Cash" means legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

"Cash Management Orders" means (i) that certain *Interim Order Granting Debtors' Emergency Motion for Interim and Final Orders (A) Authorizing the Debtors to (I) Continue to Use Existing Cash Management System, (II) Maintain Bank Accounts and Continue Use of Existing Business Forms and Checks, (III) Honor Certain Related Prepetition and Postpetition Obligations, and (IV) Perform Intercompany Transactions, (B) Granting A Waiver of Certain Investment and Deposit Guidelines, and (C) Granting Related Relief* [ECF No. 126], and (ii) that certain *Final Order Granting Debtors' Emergency Motion for Interim and Final Orders (A) Authorizing the Debtors to (I) Continue to Use Existing Cash Management System, (II) Maintain Bank Accounts and Continue Use of Existing Business Forms and Checks, (III) Honor Certain*

*Related Prepetition and Postpetition Obligations, and (IV) Perform Intercompany Transactions, (B) Granting A Waiver of Certain Investment and Deposit Guidelines, and (C) Granting Related Relief* [ECF No. 394].

"Causes of Action" means, collectively, any and all Claims, interests, damages, remedies, demands, rights, actions, suits, claims, cross-claims, counterclaims, third-party claims, obligations, liabilities, defenses, offsets, powers, privileges, licenses, indemnities, guaranties, franchises, debts, liens, losses, costs (including attorneys' fees and costs of defense and investigation), expenses, controversies, assessments, penalties, fines, charges, promises, commitments, appeals, omissions, contingencies, sums of money, judgments, executions and causes of action of any kind, nature or character whatsoever (whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly, indirectly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise). Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and Claims under contracts or for breaches of duties imposed by applicable law; (b) the right to object to or otherwise contest Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Claim under any state, federal or foreign law, including any fraudulent transfer or similar Claim or claim.

"Chapter 11 Case(s)" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all of the Debtors, the jointly administered cases pending for the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

"Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code, to the extent not paid during the course of the Chapter 11 Cases.

"Claims, Noticing, and Solicitation Agent" means Epiq Corporate Restructuring, LLC, as the noticing, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

"Claims Register" means the official register of Claims maintained by the Claims, Noticing, and Solicitation Agent.

"Class" means a category of Claims or Interests established for the purposes of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

"Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code by the United States Trustee, as the membership of such committee is from time to time constituted and reconstituted.

"Confirmation" means entry of a Confirmation Order on the docket of the Chapter 11 Cases of the Debtors within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Date" means a date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases of the Debtors.

"<u>Confirmation Hearing</u>" means a hearing before the Bankruptcy Court at which the Debtors seek entry of the Confirmation Order and final approval of the Disclosure Statement.

"<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents, which shall be in form and substance reasonably acceptable to the Debtors, the Committee, and the Prepetition Term Loan Parties, and, absent repayment in full in Cash of the DIP Facility prior to the entry by of the Confirmation Order, the DIP Secured Parties.

"<u>Consummation</u>" means the occurrence of the Plan Effective Date.

"<u>Control</u>" (including, with its correlative meanings, "controlling," "controlled by," and "under common control with") means, with respect to any Person, the possession, directly or indirectly, of the power to direct the management and policies of such Person whether through the ownership of voting securities, by contract or otherwise.

"<u>Cure Amount</u>" means the amount, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties to such Executory Contract or Unexpired Lease) that is to be assumed by the Debtors (and, in the event of a 363 Asset Sale, potentially assigned to the Purchaser(s)) pursuant to sections 365 or 1123 of the Bankruptcy Code.

"<u>Debtor</u>" or "<u>Debtors</u>" has the meaning set forth in the Introduction.

"<u>Debtor ABL Loan Parties</u>" means RL Management, as the borrower, and the other Debtors party to that certain Prepetition ABL Credit Agreement.

"<u>Definitive Documents</u>" means all documents implementing the Plan and shall include, as applicable and dependent upon the Restructuring Transactions actually implemented: (a) all pleadings Filed by any Debtor in the Chapter 11 Cases (and related orders), including the First Day Pleadings and all proposed orders sought pursuant thereto; (b) the DIP Documents, the DIP Motion, and the DIP Orders; (c) the Plan; (d) the Disclosure Statement; (e) the Solicitation Materials as they relate to the Plan and any motion seeking approval thereof; (f) the memorandum of law in support of approval of the Disclosure Statement and Confirmation of the Plan; (g) the Confirmation Order; (h) each of the documents comprising the Plan Supplement; (i) the Bidding Procedures, the Bidding Procedures Motion and Bidding Procedures Order; (j) to the extent applicable, the Stalking Horse Asset Purchase Agreement and/or any other Purchase Agreement(s) and the order or orders approving the sale or sales contemplated thereby; (k) the Plan Administrator Agreement(s); (l) the New Organizational Documents; (m) the GUC Trust Agreement; (n) any and all filings with or notices to any governmental or regulatory authority, in each case, as may be required under applicable law in connection with the Chapter 11 Cases, the Restructuring Transactions, or the occurrence of the Plan Effective Date; and (o) any and all other Sale Transaction Documents, deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, or instruments or other documents relating to the Sale Transaction or other Restructuring Transactions or reasonably desirable or necessary to consummate and document the Sale Transaction or other Restructuring Transactions, including any agreements, instruments,

pleadings, orders, and/or other documentation Filed in the Chapter 11 Cases (including any exhibits, annexes, schedules, amendments, modifications, or supplements made from time to time thereto in accordance with their terms).

"DIP Agent" has the meaning set forth in the Final DIP Order.

"DIP Claims" means all Claims of the DIP Lenders and the DIP Agent derived from, based upon, relating to, or arising under the DIP Facility and Final DIP Order.

"DIP Documents" has the meaning set forth in the Final DIP Order.

"DIP Facility" has the meaning set forth in the Final DIP Order.

"DIP Lenders" has the meaning set forth in the Final DIP Order.

"DIP Motion" means that certain *Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [ECF No. 43].

"DIP Orders" means the Interim DIP Order and the Final DIP Order.

"DIP Secured Parties" has the meaning set forth in the Final DIP Order.

"Disallowed" means, with respect to a Claim, a Claim (or portion thereof) that has been denied, dismissed, or overruled pursuant to the Plan or a Final Order.

"Disclosure Statement" means the disclosure statement for the Plan, including all exhibits and schedules thereto.

"Disputed" means, with respect to a Claim, (a) any such Claim to the extent neither Allowed nor Disallowed under the Plan or a Final Order or deemed Allowed under sections 502, 503 or 1111 of the Bankruptcy Code, or (b) any such Claim to the extent the applicable Debtors, the Plan Administrator, the GUC Trustee, or any party in interest have interposed a timely objection to such Claim before the deadlines imposed by the Confirmation Order, which objection has not been withdrawn or determined by a Final Order. To the extent only the Allowed amount of a Claim is disputed, such Claim shall be deemed Allowed in the amount not disputed, if any, and Disputed as to the balance of such Claim.

"Distribution" means any distribution by the Debtors, the Plan Administrator or GUC Trustee to a holder of an Allowed Claim, as applicable.

"Distribution Date" means (a) for all Allowed Claims other than General Unsecured Claims, the Initial Distribution Date, and the first Business Day after the end of the months of June and December, commencing with the first such date to occur more than ninety (90) days after the Initial Distribution Date and continuing until the Final Distribution Date and (b) for Allowed General Unsecured Claims, such date as the GUC Trustee determines in its sole discretion to effectuate a distribution; provided, however, that a Distribution Date (other than the

Initial Distribution Date and the Final Distribution Date) shall not occur if the aggregate value of the consideration to be distributed on account of all Allowed Claims on such Distribution Date is less than $50.00, in which case the amount to be distributed shall be retained and added to the amount to be distributed on the next Distribution Date.

"Distribution Record Date" means (i) seven (7) days prior to the Plan Effective Date; or (ii) such other date as agreed upon among the Debtors and the Prepetition Term Loan Agent.

"Equityholder Litigation Claims" means claims or causes of action, if any, against (i) direct and indirect equityholders of the Debtors and (ii) former officers and directors of the Debtors (other than the officers and directors of the Debtors as of the Petition Date), which shall in each case be vested in the GUC Trust on the Plan Effective Date.

"Estate" or "Estates" means the estate(s) of a Debtor(s) created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Chapter 11 Case.

"Exculpated Parties" means (a) the directors and officers of each of the Debtors and the members of any board of managers or directors of each Debtor, and in each case, who served the Debtors in such capacities at any time between the Petition Date and the Plan Effective Date; (b) all Professionals and agents retained by the Debtors in the Debtors' Chapter 11 Cases; (c) the Committee and those individual members of the Committee who vote to accept the Plan; (d) all Professionals and agents retained by the Committee in the Debtors' Chapter 11 Cases; (e) the Plan Administrator and GUC Trustee; and (f) with respect to each Person described in clauses (a) through (e) of this definition, each of such Person's employees, directors, managers, partners, committee members, attorneys, representatives, successors, assigns, heirs, executors, estates, and nominees, solely in their capacity as such.

"Executory Contract" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"File," "Filed," or "Filing" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court (including requests for allowance of an Administrative Expense Claim) or, with respect to the filing of a Proof of Claim, the Claims, Noticing, and Solicitation Agent.

"Final DIP Order" means that certain *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral on a Limited Basis, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [ECF No. 393].

"Final Distribution Date" means the Distribution by the Plan Administrator and GUC Trustee, as applicable, that satisfies all Claims to the extent provided in accordance with this Plan.

"Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, stayed, modified, or amended, and as to which the time to appeal, seek leave

to appeal, or seek certiorari has expired and no appeal or petition for certiorari or motion for leave to appeal has been timely taken, or as to which any appeal that has been taken or any petition for certiorari or motion for leave to appeal that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari or leave to appeal could be sought or the new trial, reargument, leave to appeal, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice, underlined provided, underlined however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

"First Day Pleadings" means those certain motions, applications, and related pleadings Filed by the Debtors on or about the Petition Date.

"General Unsecured Claim" means, collectively, any Claim against one or more of the Debtors that is not a/an Assumed Liability, Administrative Expense Claim, Priority Tax Claim or Other Priority Claim, Professional Fee Claim, Intercompany Claim, Prepetition Term Loan Claim, or Miscellaneous Secured Claim. For the avoidance of doubt, Rejection Claims are General Unsecured Claims and any deficiency Claim of a holder of Prepetition Term Loan Claims are General Unsecured Claims. To the extent applicable, the limitations imposed by section 502 of the Bankruptcy Code shall apply to the relevant General Unsecured Claim, including subsection 502(b)(6) and subsection 502(b)(7) thereof.

"Governance Documents" means, with respect to any Person that is an entity, such entity's organizational and governance documents, including its certificate or articles of incorporation, certificate of formation or certificate of limited partnership, its bylaws, limited liability company agreement, operating agreement, or limited partnership agreement, and any indemnification agreements, stockholders agreements, or registration rights agreements (or equivalent governing documents of any of the foregoing).

"Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"GUC Fund" means an amount equal to the Plan Funding Amount *less* the amounts needed to satisfy all Allowed Priority Tax Claims and Allowed Other Priority Claims *less* the amount of Allowed Administrative Expense Claims to the extent they are not Assumed Liabilities (except for DIP Claims and Allowed Professional Fee Claims). The GUC Fund will be funded through either Excluded Cash (as defined in the Stalking Horse Asset Purchase Agreement), DIP Loans (as defined in the DIP Motion), or, in the event a party other than the Stalking Horse Purchaser is the Purchaser, Cash proceeds from the Sale Transaction.

"GUC Litigation Proceeds" means forty percent (40%) of the net proceeds recovered by the GUC Trust from the Equityholder Litigation Claims.

"GUC Trust" the trust established in accordance with Article IV.C.11 of the Plan.

"GUC Trust Agreement" means the agreement to be executed between the GUC Trustee and the Debtors establishing the GUC Trust, which will be prepared by the Committee, filed with the Plan Supplement, and reasonably acceptable to the Committee, the Debtors and the Prepetition Term Loan Agent.

"GUC Trust Assets" means the GUC Fund, the Equityholder Litigation Claims, and the resulting GUC Litigation Proceeds, if any.

"GUC Trust Documents" means the GUC Trust Agreement and any ancillary documents relating thereto.

"GUC Trustee" means the Person to be chosen by the Committee to serve as trustee of the GUC Trust, which Person shall be identified in the Plan Supplement and be reasonably acceptable to the Prepetition Term Loan Agent and the Debtors, or any successor trustee of the GUC Trust.

"Impaired" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Initial Distribution Date" means, except with respect to the GUC Trust, the Plan Effective Date or as soon as reasonably practical thereafter; provided, however, that in no event shall the Initial Distribution Date be more than thirty (30) days after the Plan Effective Date unless otherwise ordered by the Bankruptcy Court; provided, further, that, for the avoidance of doubt, the Initial Distribution Date for Distributions made by the GUC Trust shall not occur until the GUC Trustee, in its discretion, determines that it is cost-effective to make such Distribution.

"Intercompany Claim" means any Claim against a Debtor held by another Debtor.

"Interest" means the rights of the holders of the common stock, membership interests or other equity interests issued by a Debtor and outstanding immediately prior to the Petition Date, including any options, warrants or other rights with respect thereto, or any other instruments evidencing an ownership interest in the applicable Debtor and the rights of any Person to purchase or demand the issuance of any of the foregoing.

"Interim DIP Order" means that certain *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral on a Limited Basis, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [ECF No. 127].

"Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"Miscellaneous Secured Claim" means any Secured Claim against any applicable Debtor, other than the DIP Claims and the Prepetition Term Loan Lender Claims.

"Miscellaneous Secured Claims Collateral" means any property subject to a Lien securing a Miscellaneous Secured Claim, which Lien is senior in priority to the Liens of the Prepetition Term Loan Parties under applicable law and the DIP Orders.

"Miscellaneous Secured Claim Sale Proceeds" means the net proceeds, if any, attributable to a sale of any Miscellaneous Secured Claims Collateral.

"New Board" means, in the event of a Reorganized Equity Sale, the respective board of managers or member managers (or other applicable governing body), as applicable, of the Reorganized Debtors immediately following the occurrence of the Plan Effective Date, to be appointed in accordance with the Plan and the New Organizational Documents.

"New Organizational Documents" means, collectively, the Governance Documents of the Reorganized Debtors, which shall be determined by and be acceptable in form and substance solely to the Purchaser.

"New Reorganized Debtor Equity" means the equity interests in the Reorganized Debtors to be issued on the Plan Effective Date.

"Other Priority Claim" means any unsecured Claim other than an Administrative Expense Claim, Intercompany Claim or Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

"Petition Date" means May 19, 2024.

"Plan" means this joint plan of reorganization or liquidation, as applicable, as it pertains to the Debtors, including any supplements and exhibits hereto, as it and they may be altered, amended, modified, or supplemented from time to time in accordance with their terms.

"Plan Administrator" means the Person, or any successor thereto, selected by the Debtors, with the consent of the Purchaser and the Prepetition Term Loan Agent and in consultation with the Committee, to administer RL Management and the Wind-Down Debtor(s), which will have all powers and authority set forth in Article IV.C.8 of the Plan. Subject to the approval of the Debtors, the Purchaser, and the Prepetition Term Loan Agent, the GUC Trustee may also be the Plan Administrator.

"Plan Administrator Agreement" means the agreement between the Plan Administrator and the Debtors, in form and substance reasonably acceptable to the Plan Administrator, the Debtors, the Committee, the Purchaser, and the Prepetition Term Loan Agent regarding the administration of RL Management and such Wind-Down Debtor(s)' assets and other matters related to their applicable Estate(s), which shall be Filed as part of the Plan Supplement.

"Plan Administrator Documents" means the Plan Administrator Agreement and related ancillary documents.

"Plan Effective Date" means the date that is the first Business Day after the Confirmation Date on which (i) no stay of the Confirmation Order is in effect and (ii) all conditions precedent to the occurrence of the Plan Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan. The Debtors shall File a notice of the occurrence of the Plan Effective Date on the docket of these Chapter 11 Cases.

"Plan Funding Amount" means an amount equal to (i) the sum of (a) $2,600,000, (b) any unused amounts in the Professional Fee Reserve (as defined in the Final DIP Order) allocated to payment of the fees and expenses of the Committee's professionals, and (c) any unused amounts in the Professional Fee Reserve allocated to payment of the fees and expenses of the Debtors' Professionals, provided that such amount shall not exceed $250,000, *less* (ii) the Wind-Down Amount. The "Plan Funding Amount" shall be funded through Excluded Cash (as defined in the Stalking Horse Asset Purchase Agreement), DIP Loans (as defined in the DIP Motion) or, in the event a party other than the Stalking Horse Bidder is named as Purchaser, the Cash proceeds from the Sale Transaction.

"Plan Supplement" means the compilation of documents and forms of documents, schedules and exhibits (or substantially final forms thereof), in each case as applicable and dependent upon the Restructuring Transactions actually implemented, including the following documents: (a) the Purchase Agreement; (b) the New Organizational Documents; (c) to the extent known, the identities of the members (as applicable) of the New Board; (d) the Schedule of Retained Causes of Action; (e) the Assumed Executory Contracts and Unexpired Leases List; (f) the form of the Plan Administrator Agreement; (g) the form of the GUC Trust Agreement; and (h) any and all other documentation that is contemplated by this Plan.

"Prepetition ABL Agent" shall have the meaning set forth in the Final DIP Order.

"Prepetition ABL Credit Agreement" shall have the meaning set forth in the Final DIP Order.

"Prepetition Term Loan Agent" shall have the meaning set forth in the Final DIP Order.

"Prepetition Term Loan Claims" shall mean all Claims arising in connection with the Prepetition Term Loan Facility (as defined in DIP Motion) which shall be Allowed in the principal amount of $264,720,000 *less* the Roll-Up Amount (as defined in the Final DIP Order) *plus* accrued interest, costs and expenses (including professional fees), that are payable in accordance with the Final DIP Order.

"Prepetition Term Loan Parties" shall have the meaning set forth in the Final DIP Order.

"Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

"Professional" means any Person: (a) retained pursuant to a Final Order of the Bankruptcy Court in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code. For the avoidance of doubt, the "Professionals" shall include (i) King & Spalding LLP, co-counsel to the Debtors, (ii) Berger Singerman LLP, co-counsel to the Debtors, (iii) Blake, Cassels & Graydon LLP, special Canadian counsel to the Debtors, (iv) Keen-Summit Capital Partners LLC, the Debtors' real estate advisor, (v) Epiq Corporate Restructuring, LLC, the Debtors' claims agent, and (vi) Hilco Corporate Finance, LLC, the Debtors' investment banker.

"Professional Fee Claims" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

"Professional Fee Escrow Account" means the Professional Fee Reserve funded by the Debtors in accordance with the Final DIP Order as well as any portion of the Cash proceeds of the Sale Transaction remitted to the Professional Fee Escrow Account on or prior to the Plan Effective Date in accordance with Article II.B of the Plan and the DIP Orders, which shall be allocated to the Debtors' Estates.

"Professional Fee Escrow Amount" means the aggregate amount of Professional Fee Claims and other fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Plan Effective Date and in accordance with the Final DIP Order, which estimates shall be delivered by the Professionals to the Debtors, the Committee, and the Prepetition Term Loan Parties as set forth in Article II.B.1 of the Plan, and which shall be allocated to the Debtors' Estates for the exclusive benefit of the Professionals (subject to the terms of the Final DIP Order).

"Proof of Claim" means a written proof of Claim Filed against a Debtor in the Chapter 11 Cases.

"Purchase Agreement" means: (a) the asset purchase agreement or equity purchase agreement executed by the Successful Bidder as approved by the Bankruptcy Court (including the Stalking Horse Purchase Agreement), or (b) any agreements, contracts, certificates or other documents executed in furtherance of the Restructuring Transactions, including a Reorganized Equity Sale. Any Purchase Agreement shall include language that any Avoidance Actions against non-insiders of the Debtors purchased thereunder (other than the Equityholder Litigation Claims) shall be waived and extinguished. For the avoidance of doubt, such waived Avoidance Claims shall not include any claims or causes of action against current or former equityholders of the Debtors or their Affiliates or any other Person that is the subject of the Equityholder Litigation Claims.

"Purchaser(s)" means, one or more Persons that, pursuant to the Bidding Procedures Order, either (i) purchases all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code (including, to the extent applicable, pursuant to the Purchase Agreement)

or (ii) pursuant to this Plan, purchases (a) all or substantially all of the assets of RL Management, RLSV, and RL International and (b) except with respect to RL Management, the New Reorganized Debtor Equity.

"Qualified Bid" has the meaning set forth in the Bidding Procedures Order.

"Qualified Bidder" has the meaning set forth in the Bidding Procedures Order.

"Quarterly Fees" has the meaning set forth in Article XII.C.

"Reinstated" means, with respect to a Claim or an Interest, that such Claim or Interest shall be rendered Unimpaired under the Plan in accordance with section 1124(2) of the Bankruptcy Code.

"Rejection Claim" means claims of any non-Debtor counterparty to any unexpired lease or any executory contract arising on account of the rejection of such lease or contract during the administration of these Chapter 11 Cases under section 365 of the Bankruptcy Code or pursuant to the Plan.

"Related Party" means, each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such equity interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of any Person), accountants, investment bankers, representatives, and other professionals and advisors, and any such Person's respective successors, assigns, heirs, executors, estates, and nominees.

"Released Party" means, in its capacity as such, each of: (a) the Debtors' Professionals; (b) the current officers of each of the Debtors and the Debtors' current manager and/or director, Mr. Lawrence Hirsch; (c) the DIP Lenders and the DIP Agent and their respective Related Parties; (d) the Prepetition Term Loan Parties and their respective Related Parties; (e) the Purchaser; (f) the Committee and those individual members of the Committee, solely in their capacities as such, who vote to accept the Plan; (g) the Committee's Professionals; (h) the Plan Administrator and GUC Trustee; and (i) in each case, the respective Related Party of each of the foregoing Persons.

"Releasing Party" means, in its capacity as such, each of: (a) the DIP Lenders and the DIP Agent; (b) the Prepetition Term Loan Parties; (c) all holders of Claims eligible to vote on the Plan that vote to accept the Plan; (d) the Purchaser; (e) the Committee and those individual members of the Committee, solely in their capacities as such, who vote to accept the Plan; and (f) the Plan Administrator and GUC Trustee.

"Reorganized Debtor" means except for any Wind-Down Debtors, the Debtors on and after the Plan Effective Date, together with any successor or assign thereto, by merger,

consolidation, reorganization, or otherwise, whether in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Plan Effective Date. For the avoidance of doubt, Reorganized Debtors shall include RL Management, but shall not include RL International or RLSV.

"Reorganized Equity Sale" means the sale to Purchaser of (i) all or substantially all of the assets of Debtor RL Management, RLSV, and RL International and (ii) all or substantially all of the equity interests in the Reorganized Debtors (excluding RL Management), pursuant to section 1129 of the Bankruptcy Code and the Purchase Agreement.

"Restructuring Transactions" means any transactions described in, approved by, contemplated by, or necessary to effectuate the Plan.

"RL International" means Red Lobster International Holdings LLC, a Delaware limited liability company.

"RL Management" means Red Lobster Management LLC, a Delaware limited liability company.

"RLSV" means RLSV, Inc., a Florida corporation.

"Sale Proceeds" means, with respect to any Sale Transaction, the net Cash proceeds and/or other proceeds or consideration received by the Debtors or the Reorganized Debtors (whether directly or on account of the purchase of their interests in the Debtors) in connection with such Sale Transaction(s).

"Sale Transaction" means either the 363 Asset Sale or Reorganized Equity Sale.

"Sale Transaction Documents" means all documents executed and delivered by the Debtors and, as applicable, the Purchaser, in connection with the Sale Transaction or other Restructuring Transaction, which shall be reasonably acceptable to the Debtors.

"Schedule of Retained Causes of Action" means the schedule of the Causes of Action of the Debtors or the Debtors' Estates that are not released, waived, or transferred pursuant to the Plan, to be Filed as part of the Plan Supplement, as the same may be amended, modified, or supplemented from time to time by the Debtors, with the consent of the Prepetition Term Loan Parties.

"Schedules" means, the schedules of assets and liabilities and the statement of financial affairs Filed by each Debtor with the Bankruptcy Court pursuant to sections 521 and 1106(a)(2) of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement may be amended or supplemented by such Debtor at any point prior to the Plan Effective Date.

"Secured Claim" means a Claim (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined

pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a Secured Claim.

"Securities Act" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa.

"Security" means a security, as defined in Section 2(a)(1) of the Securities Act.

"Sold Equity Interest" shall mean any Interests purchased by the Purchaser in any 363 Asset Sale.

"Solicitation Materials" means the materials to be distributed together with the Plan and Disclosure Statement to holders of Claims entitled to vote on the Plan, which shall be in form and substance reasonably acceptable to the Debtors and the Prepetition Term Loan Parties.

"Successful Bidder" has the meaning set forth in the Bidding Procedures Order.

"Surviving DIP Provisions" means any provisions of the DIP Documents governing the DIP Facility that by their terms survive the payoff and termination of the DIP Documents.

"Stalking Horse Purchase Agreement" means that certain Asset Purchase Agreement, dated as of May 19, 2024, by and between RL Management and RL Purchaser as it may be amended or modified.

"Stalking Horse Purchaser" means RL Purchaser, and (or as applicable, together with) any Affiliate (as defined in the Stalking Horse Purchase Agreement) thereof to which RL Purchaser assigns any of its rights, interests and obligations under any Purchase Agreement (including the Stalking Horse Purchase Agreement).

"Takeback Loans" means term loans in the original principal sum of $175,000,000 issued to or guaranteed by the Purchaser (or one or more of its Affiliates, as designated by Purchaser) and Reorganized Debtors (excluding RL Management) upon the Plan Effective Date in connection with a Reorganized Equity Sale or other Restructuring Transactions.

"U.S. Trustee" means the Office of the United States Trustee for the Middle District of Florida.

"Unexpired Lease" means a lease to which one or more Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"Unimpaired" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

"WARN Actions" means causes of actions commenced pursuant the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. or the state law equivalent, including those certain adversary proceedings styled as (i) *Kyle Zakowicz v. Red Lobster Management LLC, et al.*, No. 24-02486, Adv. Pro. No. 24-00048 (Bankr. M.D. Fla. 2024); (ii) *Donna Lowe v. Red Lobster Hospitality LLC, Red Lobster Restaurants LLC and Red Lobster Seafood Co*., No. 24-02486, Adv. Pro. No. 24-00049 (Bankr. M.D. Fla. 2024); and (iii) *George Parker v. Red*

*Lobster Hospitality LLC, Red Lobster Restaurants LLC and Red Lobster Seafood Co., LLC*, No. 24-02486, Adv. Pro. No. 24-00050 (Bankr. M.D. Fla. 2024).

"WARN Action Settlement Funds" means an amount up to $250,000 to be used by the Wind-Down Debtors or Reorganized Debtors, as applicable, to satisfy all, or a portion of, the Allowed Other Priority Claims resulting from WARN Actions commenced against the Debtors. For the avoidance of doubt, the "WARN Action Settlement Funds" shall be included in the Plan Funding Amount.

"Wind Down" means, following the closing of the Sale Transaction, the process to wind down, dissolve and liquidate the applicable Debtors' Estates and distribute the Wind-Down Assets in accordance with Article IV.C of the Plan.  With respect to Wind-Down Debtors only, a Wind Down may include conversion or dismissal of such Chapter 11 Cases.

"Wind-Down Amount" means, (i) if a 363 Asset Sale is consummated, an aggregate amount of $900,000 and (ii) if a Reorganized Equity Sale is consummated, an aggregate amount of $600,000, in each case for the reasonable activities and expenses necessary to effectuate the Wind Down of the Debtors' Estates, which budget, activities, and reasonable expenses shall be subject to the consent of the Purchaser, the Committee, and, absent repayment in full in Cash of the DIP Facility prior to the Plan Effective Date, the DIP Lenders.

"Wind-Down Assets" means, the assets of the Debtors' Estates to vest in the Wind-Down Debtors on the Plan Effective Date, which shall be administered by the Plan Administrator, including but not limited to, (i) if applicable, the Sale Proceeds to the extent not distributed on the Plan Effective Date; (ii) any Causes of Action retained by the Debtors (excluding the Equityholder Litigation Claims and the resulting GUC Litigation Proceeds, if any); and (iii) the Wind-Down Amount.

"Wind-Down Budget" means the agreed upon budget for the Wind-Down Amount, which shall be in form and substance reasonably acceptable to the Prepetition Term Loan Agent and the Committee.

"Wind-Down Debtor(s)" means RL International and RLSV.

"Wind-Down Reversionary Assets" means, any Wind-Down Assets that remain after the Plan Administrator has implemented and completed the Wind Down, including the payment or reserving of fees incurred and unpaid in connection with the Wind Down, and subject to the Final DIP Order, any remaining funds held in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more of the Final Orders (except any remaining amounts used to fund the GUC Trust Assets as set forth in this Plan).

## B.    Rules of Interpretation

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument,

release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (4) any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (14) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (15) any immaterial effectuating provisions may be interpreted in a manner that is consistent with the overall purpose and intent of the Plan; (16) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (17) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (18) any term used in capitalized form herein that is not otherwise defined herein but that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

## C.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Subject to the

requirements of any Definitive Document, any action to be taken on the Plan Effective Date may be taken on or as soon as reasonably practicable after the Plan Effective Date.

### D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the applicable Debtor or the Reorganized Debtors, as applicable.

### E.    Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

### F.    Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement with respect to the Plan, the terms of the relevant document in the Plan Supplement with respect to the Plan shall control unless otherwise specified in such Plan Supplement document with respect to the Plan. In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; provided, however, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of the Plan.

### G.    Consent Rights of the Consenting Lenders

Notwithstanding anything in the Plan to the contrary, any and all information and consultation rights, with respect to the form and substance of the Plan, all exhibits to the Plan, and the Plan Supplement, and any other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by reference and fully enforceable as if stated in full herein. Failure to reference the rights referred to in the immediately preceding sentence in the Plan shall not impair such rights.

The signing of the applicable Definitive Documents will be subject to, among other things, the negotiation by the Debtors, the DIP Agent, Prepetition Term Loan Agent, and, to the extent applicable, the Successful Bidder and the Plan Administrator, of acceptable terms and

conditions for the Definitive Documents as well as additional legal, accounting, financial, tax, business and regulatory due diligence. The Plan, the Confirmation Order, GUC Trust Agreement, GUC Trust Documents and Plan Administrator Agreement shall be in form and substance acceptable to the Committee.

## II.    UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, DIP Claims and Priority Tax Claims have not been classified against the Debtors.

### A.    Administrative Expense Claims

Requests for payment of Administrative Expense Claims (except for DIP Claims and Professional Fee Claims) must be Filed and served no later than the applicable Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order. Holders of Administrative Expense Claims that are required to File and serve a request for payment of such Claims that fail to do so shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, Wind-Down Debtor(s), or the GUC Trustee, as applicable, or their respective property, and such Administrative Expense Claims shall be deemed discharged as of the Plan Effective Date without the need for any objection or any notice to any Person or an order of the Bankruptcy Court.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, to the extent an Allowed Administrative Expense Claim has not been paid in full or otherwise satisfied during the Chapter 11 Cases, each holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims and DIP Claims) shall receive from the Debtors, in full and final satisfaction of its Allowed Administrative Expense Claim, payment in full in Cash in accordance with the following: (1) if such Administrative Expense Claim is Allowed on or prior to the Plan Effective Date, on the Plan Effective Date; (2) if such Administrative Expense Claim is not Allowed as of the Plan Effective Date, no later than thirty (30) days after the date on which such Administrative Expense Claim is Allowed; (3) if such Allowed Administrative Expense Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Expense Claim; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

### B.    Professional Fee Claims

#### 1.    Final Fee Applications and Payment of Professional Fee Claims

In accordance with Local Rule 2016-1(c)(2)(C), all final requests for payment of Professional Fee Claims must be Filed no later than fourteen (14) days prior to the Confirmation Hearing unless ordered otherwise. The final request for payment may include an estimate of the amount of additional fees and costs to be incurred by each Professional through the Confirmation

Hearing. If the actual fees for services rendered and costs incurred during the estimated period for each Professional exceed the estimate, the final application may be supplemented up to fourteen (14) days after entry of the Confirmation Order. If the actual fees for services rendered and costs incurred during the estimated period are less than the estimated amount, approval of such application authorizes payment of the actual fees and costs not to exceed the estimated amounts. The Bankruptcy Court shall determine the Allowed amounts of all Professional Fee Claims in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, Local Rules and prior Bankruptcy Court orders.

2.      Professional Fee Escrow Accounts

The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals in respect of Allowed Professional Fee Claims until all Allowed Professional Fee Claims have been paid in full, and the funds held in the Professional Fee Escrow Account shall not be considered property of the Debtors' Estates; provided, that when all Allowed Professional Fee Claims have been paid in full any funds remaining in the Professional Fee Reserve shall (i) in the event the Stalking Horse Bidder is the Purchaser, be disbursed to the Purchaser and (ii) in the event a party other than the Stalking Horse bidder is Purchaser, shall be returned to the DIP Agent (excluding the Plan Funding Amount and any remaining amounts used to fund the GUC Trust Assets as set forth in this Plan). No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held therein.

3.      Post-Confirmation/Pre-Effective Date

From and after the Confirmation Date until the Effective Date, the Debtors, without the necessity for any approval by the Bankruptcy Court, shall pay the reasonable fees and necessary and documented expenses of the Professionals during such period, up to the amount in the Professional Fee Escrow Amount.

4.      Post-Effective Date Fees and Expenses

Upon the Plan Effective Date, any requirement that the Reorganized Debtors', Wind-Down Debtors', or GUC Trust's Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Reorganized Debtors, the Plan Administrator, and the GUC Trustee, as applicable, may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**C.      DIP Claims**

The DIP Claims shall be Allowed in the amount outstanding under the DIP Facility (determined as of consummation of the Sale Transaction or other Restructuring Transaction). If a Sale Transaction is consummated pursuant to the Stalking Horse Asset Purchase Agreement, on the Closing Date (as defined in the Stalking Horse Asset Purchase Agreement), in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim shall be satisfied in full through a credit bid by the Stalking Horse Bidder of all its claim for the Purchased Assets (as defined in the Stalking Horse Asset Purchase Agreement) pursuant to the Stalking Horse Asset Purchase Agreement and in accordance with section 363(k) of the Bankruptcy Code.

If the Sale Transaction is consummated pursuant to a Purchase Agreement executed by a Bidder other than the Stalking Horse Bidder, upon closing of such Sale Transaction, except to the extent that a holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, each Allowed DIP Claim shall be indefeasibly paid in full, in Cash.

If the Sale Transaction is a Reorganized Equity Sale conducted hereunder, then on the Plan Effective Date, in full and final satisfaction, settlement, release and discharge of, and in exchange for, each Allowed DIP Claim shall be satisfied through the transfer of specified assets, assumption and assignment of specified contracts and leases, assumption of specified liabilities, issuance of equity in the Reorganized Debtors and issuance of Takeback Loans ($175 million), all in accordance with the Purchase Agreement.

Contemporaneously with the foregoing treatment, the DIP Facility and the DIP Documents shall be deemed cancelled, all commitments under the DIP Documents shall be deemed terminated, all DIP Liens shall automatically terminate, and all collateral subject to such DIP Liens shall be automatically released, in each case without further action by the DIP Agent or the DIP Lenders. The DIP Agent and the DIP Lenders shall take all actions to effectuate and confirm such termination, release and discharge as reasonably requested by the Debtors or the Purchaser; provided that the Surviving DIP Provisions shall survive in accordance with the terms of such DIP Documents.

From and after the consummation of a Reorganized Equity Sale, the Reorganized Debtors shall, without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the legal, professional, and other fees and expenses of the DIP Agent and Prepetition Term Loan Agent within three (3) business days of such parties' delivery of an invoice to the Reorganized Debtors, and such parties shall not be required to comply with the procedures set forth in paragraph 41 of the Final DIP Order with respect to such fees.

### D.    Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the Allowed Priority Tax Claims, each holder of an Allowed Priority Tax Claim shall receive treatment consistent with section 1129(a)(9) of the Bankruptcy Code by the applicable Debtor against which such Allowed Priority Tax Claims are validly asserted.

### III.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

#### A.     Classification of Claims and Interests

The Classes of Claims and Interests listed below classify Claims and Interests for all purposes, including voting on, and distributions pursuant to, the Plan in accordance with sections 1122 and 1123(a) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that (i) the Claim or Interest is an Allowed Claim or Interest and qualifies within the description of that Class and it shall be deemed classified in a different Class to the extent that it qualifies within the description of such different Class and (ii) such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Plan Effective Date. Holders of Allowed Claims against more than one Debtor shall be treated as having a single Allowed Claim solely for purposes of any Distribution.

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are (i) Impaired and Unimpaired under the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) presumed to accept or deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, DIP Claims and Priority Tax Claims have not been classified. The classification of Claims and Interests set forth herein shall apply separately to each Debtor. Certain of the Debtors may not have Claims or Interests in a particular Class, and any such Classes shall be treated as set forth in Article III.B of the Plan.

1.     Class Identification

| Class | Designation | Impairment | Voting Rights |
|---|---|---|---|
| Class 1 | Miscellaneous Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

#### B.     Treatment of Claims and Interests

The holders of the following Claims and Interests against the Debtors shall receive the treatment described below in full and final satisfaction of such Claim or Interest.

1.     Class 1 – Miscellaneous Secured Claims

    (a)    *Classification*: Class 1 consists of all Miscellaneous Secured Claims against the Debtors.

            *Treatment*: The Plan will not alter any of the legal, equitable and contractual rights of the holders of Allowed Miscellaneous Secured Claims. Each holder of an Allowed Class 1 Claim shall receive from the Debtors, subject to DIP Agent consent but otherwise in the sole discretion of the Debtors in full satisfaction, settlement, release, and extinguishment of such Claim: (a) Cash equal to the amount of such Allowed Miscellaneous Secured Claim solely from the Miscellaneous Secured Claim Sale Proceeds on or as soon as practicable after the latest of (i) the Effective Date, (ii) the date that such Miscellaneous Secured Claim becomes Allowed, and (iii) a date agreed to by the Debtors and the holder of such Class 1 Claim; (b) the property securing such Miscellaneous Secured Claim without representation or warranty by or recourse against the Debtors; (c) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code; or (d) such other less favorable treatment on such other terms and conditions as may be agreed upon in writing by the holder of such Claim and the Debtors; <u>provided</u>, however, that any Allowed Class 1 Claim that constitutes an Assumed Liability under the Purchase Agreement that remains unpaid as of the Closing Date shall be paid in full in Cash by the Purchaser in accordance with the terms of the documents or agreements memorializing the Allowed Class 1 Claim.

    (b)    *Voting*: Class 1 is Unimpaired under the Plan, and the holders of Allowed Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Allowed Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.     Class 2 – Other Priority Claims

    (a)    *Classification*: Class 2 consists of all Other Priority Claims.

    (b)    *Treatment*: On the Plan Effective Date, except to the extent that a holder of an Allowed Other Priority Claim has agreed to a less favorable treatment, each holder of an Allowed Other Priority Claim shall receive from the Debtors, at the option of the Debtors with the consent of the Prepetition Term Loan Agent, (a) payment in full in Cash or such other treatment that would render its Allowed Other Priority Claim Unimpaired or (b) such other less favorable treatment on such other terms and conditions as may be

agreed upon in writing by the holder of such Claim and the Debtors. The WARN Action Settlement Funds shall be used by the Debtors to satisfy all, or a portion of, Allowed Other Priority Claims resulting from WARN Actions commenced against the Debtors. Allowed Other Priority Claims shall be satisfied exclusively from the Plan Funding Amount. The treatment set forth herein with respect to the holders of Allowed Class 2 Claims shall be in full and final satisfaction of the Allowed Class 2 Claims.

(c)     *Voting*: Class 2 is Unimpaired under the Plan and the holders of Allowed Class 2 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Allowed Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3.     Class 3 – Prepetition Term Loan Claims

(a)     *Classification*: Class 3 consists of all Prepetition Term Loan Claims against the Debtors.

(b)     *Treatment*: On the Plan Effective Date and each Distribution Date thereafter, as applicable, except to the extent that a holder of any Prepetition Term Loan Claims has agreed to a less favorable treatment, each holder of a Prepetition Term Loan Claim shall (i) in the event of a Reorganized Equity Sale, receive its Pro Rata share of (a) sixty percent (60%) of all net proceeds of the Equityholder Litigation Claims from the GUC Trust and (b) the net Cash proceeds of the Sale Transaction from the Debtors (except for the Professional Fee Escrow Amount, Wind-Down Amount, and the Plan Funding Amount), and (ii) in the event of a 363 Asset Sale, receive its Pro Rata share of (y) the net Cash proceeds of the Sale Transaction from the Debtors (except for the Professional Fee Escrow Amount, Wind-Down Amount and the Plan Funding Amount) and the sale of any Wind-Down Reversionary Assets and (z) sixty percent (60%) of all net proceeds of the Equityholder Litigation Claims from the GUC Trust.

(c)     *Voting*: Class 3 is Impaired under the Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.     Class 4 – General Unsecured Claims

(a)     *Classification*: Class 4 consists of all General Unsecured Claims.

(b)     *Treatment*: On the Plan Effective Date, each holder of an Allowed Class 4 General Unsecured Claim (except for deficiency Claims held by a holder of a Prepetition Term Loan Claim) shall receive, in accordance with the GUC Trust Documents, its Pro Rata Share

24

of the beneficial interests in the GUC Trust and the right to receive its respective Pro Rata Share of any available GUC Litigation Proceeds or other GUC Trust Assets, if any. Holders of Allowed General Unsecured Claims against more than one Debtor shall be treated as having a single Allowed General Unsecured Claim solely for purposes of any Distribution.  The treatment set forth herein with respect to the holders of Allowed Class 4 Claims (except for deficiency Claims held by a holder of a Prepetition Term Loan Claim) shall be in full and final satisfaction of the Allowed Class 4 Claims. Notwithstanding anything to the contrary contained in this Plan, no Distribution shall be made to Prepetition Term Loan Lenders on account of Allowed Class 4 Claims and the Prepetition Term Loan Lenders shall not be beneficiaries of the GUC Trust.

(c)　*Voting*: Class 4 is Impaired under the Plan. Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.　Class 5 – Intercompany Claims

(a)　*Classification*: Class 5 consists of all Intercompany Claims.

(b)　*Treatment*: On the Plan Effective Date, all Intercompany Claims shall be cancelled, released, and extinguished without distribution, and will be of no further force or effect.

(c)　*Voting*: Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

6.　Class 6 – Interests in Debtors

(a)　*Classification*: Class 6 consists of all Interests in the Debtors.

(b)　*Treatment*: On the Plan Effective Date, all Interests (excluding any Sold Equity Interests) in the Debtors shall be cancelled, released and extinguished without distribution, and will be of no further force or effect.

(c)　*Voting*: Class 6 is Impaired under the Plan. Holders of Interests in Class 6 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

Except as set forth in Article VIII of this Plan, nothing contained in this Plan, the Confirmation Order or Definitive Documents shall compromise, modify or affect the rights of the Prepetition Term Loan Agent and Prepetition Term Loan Lenders to pursue additional

recoveries from any Person or entity that is not a Debtor in these Chapter 11 Cases.

### C.    Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims entitled to vote against the Debtors. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

### D.    Subordinated Claims

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective treatment thereof under the Plan take into account the relative priority of the Claims in each Class, whether arising under a contract, principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### E.    Elimination of Vacant Classes

Any Class that does not have a Claim or Interest in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for all purposes.

## IV.    MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    General

#### 1.    General Settlement of Claims and Interests

After the Plan Effective Date, the Plan Administrator, Reorganized Debtors, the Wind-Down Debtor(s), and/or the GUC Trustee, as applicable, may compromise and settle any Claim and/or Cause of Action against the Debtors' Estate(s) without any further notice to or action, order, or approval of the Bankruptcy Court.

#### 2.    Restructuring Transactions

On or about the Plan Effective Date, the Debtors, the Reorganized Debtors, the Wind-Down Debtor(s), the Plan Administrator, and the GUC Trustee, as applicable, may take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including: (a) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Persons may agree, including the documents comprising the Plan Supplement; (b) the

execution and delivery of Definitive Documents, including appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Persons agree; (c) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, amalgamation, consolidation, conversion, arrangement, continuance, or dissolution pursuant to applicable law; (d) the Sale Transaction; (e) such other transactions that are required to effectuate the Restructuring Transactions in the most efficient manner for the Debtors and the Prepetition Term Loan Agent, including in regard to tax matters and any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; (f) the selection of the New Board (if applicable); (g) the authorization, issuance, and distribution of the New Reorganized Debtor Equity and Takeback Loans; (h) the appointment of the Plan Administrator; (i) the creation of the GUC Trust and appointment of the GUC Trustee, (j) the execution, delivery, and adoption of the New Organizational Documents; and (k) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions, including making filings or recordings that may be required by applicable law.

　　　　3.　　　Insurance Policies

　　　　Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. On the Plan Effective Date, unless an insurance policy (i) was specifically designated for assignment by the Purchaser, (ii) was rejected by the Debtors pursuant to a Bankruptcy Court order, or (iii) is the subject of a motion to reject Filed by the Debtors that remains pending on the date of the Confirmation Hearing with respect to the Plan, (a) in the event of a Reorganized Equity Sale, the Reorganized Debtors (excluding RL Management) shall be deemed to have assumed each such insurance policy and any agreements, documents, and instruments relating to coverage of all insured Claims and such insurance policy and any agreements, documents, or instruments relating thereto shall vest in the Reorganized Debtors (excluding RL Management) and (b) in the event of a 363 Asset Sale, each such insurance policy and any agreements, documents, and instruments related to coverage of all insured Claims shall be either (A) rejected or (B) assumed and assigned by the Debtors to the Purchaser at the Purchaser's election.

　　　　Notwithstanding anything to the contrary in the Disclosure Statement, this Plan, Plan Supplement, the Confirmation Order, **any other Definitive Document**, any agreement or order related to post-petition or exit financing, any bar date notice or claim objection, any notice of any cure amount or claim, any document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, confers Bankruptcy Court jurisdiction, grants an injunction, ~~or~~ discharge or release)**, and without altering or modifying the terms of paragraph 47 of the Confirmation Order and/or the Zurich Agreement (as defined in the Confirmation Order)**:

　　　　　　　　(a)　　nothing alters, modifies or otherwise amends the terms and conditions of the Zurich Insurance Program (including any agreement to arbitrate disputes and any provisions regarding the provision, maintenance, use, nature and priority of the Zurich Collateral), except that on ~~and after~~ the Plan Effective Date, the

Reorganized Debtors ~~(excluding RL Management)~~**shall be deemed to have** jointly and severally ~~shall assume~~**assumed** the Zurich Insurance Program in its entirety pursuant to sections 105 and 365 of the Bankruptcy Code;

(b)      nothing therein releases or discharges Zurich's security interests and liens on the Zurich Collateral;

(c)      nothing therein releases or discharges the Zurich Claims and further, the Zurich Claims are actual and necessary expenses of the Debtors' estates (or the Reorganized Debtors ~~(excluding RL Management)~~, as applicable) and shall be paid in full in the ordinary course of business, whether as an Allowed Administrative Expense Claim under section 503(b)(1)(A) of the Bankruptcy Code or otherwise, regardless of when such amounts are or shall become liquidated, due or paid, without the need or requirement for Zurich to file or serve a request, motion, or application for payment of or proof of any proof of claim, cure claim (or any objection to cure amounts/notices), or Administrative Expense Claim (and further and for the avoidance of doubt, any claim bar date shall not be applicable to Zurich);

(d)      the Debtors or the Reorganized Debtors, as applicable, shall not sell, assign, or otherwise transfer the Zurich Insurance Program and/or any of the rights, benefits, interests, and proceeds thereunder except with the express written permission of Zurich; and

(e)      the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII.A of the Plan **and the corresponding provisions in the Confirmation Order**, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against Zurich under applicable non-bankruptcy law to proceed with their claims; (II) Zurich to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) all workers' compensation or direct action claims covered by the Zurich Insurance Program, (B) all claims where an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII.A of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; (III) Zurich to draw against any or all of the Zurich Collateral and to hold the proceeds thereof as security for the obligations of the Debtors (or the Reorganized Debtors, as applicable) to Zurich and/or apply such proceeds to the obligations of the Debtors (or the

Reorganized Debtors, as applicable) under the Zurich Insurance Program, in such order as Zurich may determine; and (IV) subject to the terms of the Zurich Insurance Program and/or applicable non-bankruptcy law, Zurich to (i) cancel any policies under the Zurich Insurance Program, and (ii) take other actions relating to the Zurich Insurance Program (including setoff).

Terms used in this paragraph but not defined in the Plan shall have the meaning attributed to them in that certain *Order (I) Authorizing the Debtors to Enter into the New Insurance Program, (II) Authorizing Assumption of the Existing Insurance Program, and (III) Granting Related Relief* entered by the Bankruptcy Court on May 22, 2024 [ECF No. 154].

4.      Section 1146 Exemption

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfer of property (whether from a Debtor to a Reorganized Debtor, the GUC Trust, the Plan Administrator, or to any other Person or entity) under, in furtherance of, or in connection with the Plan, including pursuant to any Sale Transaction or (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors, the Reorganized Debtors, or the GUC Trust, including the New Reorganized Debtor Equity and Takeback Loans, if applicable, (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any tax or governmental assessment under any law imposing a document recording tax, stamp tax, conveyance tax, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee regulatory filing or recording fee, sales and use tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment against the Debtors and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax, recordation fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

5.      Cancellation of Securities and Agreements

On the Plan Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under any certificate, Security, share, note, bond, credit agreement, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan, if any) shall be cancelled solely as to the Debtors, and the Reorganized Debtors, the Wind-Down Debtors, and the GUC Trustee, as applicable, shall not have any continuing obligations thereunder or relating to the cancellation thereof; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in such Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in such Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged.

6.      Effectuating Documents; Further Transactions

On and after the Plan Effective Date, the Reorganized Debtors or Wind-Down Debtors, as applicable, the officers and members of the New Board, the Plan Administrator or GUC Trustee, as applicable, are authorized to and may issue, execute, deliver, file, or record Definitive Documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the New Organizational Documents, the GUC Trust Documents, and the Securities issued pursuant to the Plan in the name of and on behalf of the applicable Reorganized Debtors, the Wind-Down Debtors, or the GUC Trustee, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

7.      Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, unless expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or assigned to the Purchaser in the Sale Transaction, the Reorganized Debtors, the Wind-Down Debtors, or the GUC Trust, as applicable, shall retain and may enforce all rights to commence or pursue any and all Causes of Action of the applicable Debtors' Estates, not otherwise so waived, relinquished, exculpated, released, compromised, settled or assigned (as the case may be), whether arising before or after the Petition Date, including, but not limited to, any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors', the Wind-Down Debtor(s)', or the GUC Trustee's rights to commence, prosecute, compromise, settle or release such Causes of Action shall be preserved notwithstanding the occurrence of the Plan Effective Date, other than the Claims and Causes of Action released pursuant to the releases and exculpations contained in Article VIII hereof. Unless any Cause of Action is expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or a Final Order, pursuant to section 1123(b) of the Bankruptcy Code, such Cause of Action is preserved for later adjudication, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or

otherwise), or laches, shall apply to any such Cause of Action upon, after, or as a consequence of the Confirmation of the Plan or the occurrence of the Plan Effective Date. For the avoidance of doubt, any Equityholder Litigation Claims shall be contributed to the GUC Trust by the Debtors in accordance with the Plan.

**No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Reorganized Debtors or the Wind-Down Debtor(s), as applicable, will not pursue any and all available Causes of Action against it. The Debtors, the Reorganized Debtors, the Wind-Down Debtor(s), and the GUC Trustee, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.**

The Reorganized Debtors, the Wind-Down Debtor(s), and the GUC Trustee, as applicable, (i) reserve and shall retain all Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan and (ii) shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## B. Restructuring of the Debtors Effectuated Through a Sale Transaction

The Confirmation Order with respect to the Plan shall authorize, pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code, as applicable, all actions necessary or appropriate to effectuate the Sale Transaction, including, (i) the execution and delivery of Definitive Documents, (ii) the transfer of Purchased Assets (as defined in the Purchase Agreement) and/or New Reorganized Debtor Equity, as applicable, free and clear of all Liens, Claims, Causes of Action, charges, or other encumbrances, to the applicable Purchaser (or one or more of Purchaser's designee(s)) or Plan Administrator (or one or more of the Plan Administrator's designee(s)), (iii) all transactions contemplated by the Purchase Agreement, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code, as applicable, (iv) the appointment of the Plan Administrator, (v) the execution and delivery of the Plan Administrator Agreement, and (vi) creation of the GUC Trust and appointment of the GUC Trustee.

At the Purchaser's election, the Debtors shall file an amendment to the Plan which removes RLSV as a Debtor under this Plan.

1. <u>Closing of any Sale Transaction or Restructuring Transaction</u>

At the election of the Purchaser, the Debtors shall be authorized to and shall consummate either the 363 Asset Sale, Reorganized Equity Sale or other Restructuring Transaction and in connection therewith, among other things, (a) the Purchased Assets (including any Executory Contracts and Unexpired Leases the applicable Purchaser wishes to assume) or (b) the New Reorganized Debtor Equity together with specified assets of RL Management and RL International, as applicable, shall be transferred to and vest in the Purchaser (or one or more designees of Purchaser) or the Plan Administrator (or one or more of the Plan Administrator's designee(s)), as applicable, free and clear of all Liens, Claims, Interests, Causes of Action, charges or other encumbrances, purchase rights, options or rights of first refusal, pursuant to the terms of the Purchase Agreement, applicable Sale Transaction Documents and order(s) of the Bankruptcy Court approving the Sale Transaction or other Restructuring Transactions contemplated thereby, which may be the Confirmation Order.  Following the Plan Effective Date, (i) the Purchaser (or one or more designees of Purchaser) will own and may operate the Purchased Assets, and (ii) the Plan Administrator will, in accordance with the Definitive Documents, control, operate, administer, dispose, liquidate, and/or wind-down, as the case may be, RL Management, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**C.    Reorganized Equity Sale Provisions**

The provisions in this Article IV.C shall only apply if the Purchaser elects to consummate a Reorganized Equity Sale pursuant to the Purchase Agreement.

1.    Issuance of Reorganized Debtor Equity; Section 1145 Exemption

On the Plan Effective Date, the Reorganized Debtors (excluding RL Management) shall issue the New Reorganized Debtor Equity to the Purchaser without the need for any further corporate action or further notice to, action or order of the Bankruptcy Court. On the Plan Effective Date, RL Management shall issue its respective New Reorganized Debtor Equity to the Plan Administrator or an entity designated by the Plan Administrator without need for any further corporate action or further notice to, action or order of the Bankruptcy Court.The shares of the New Reorganized Debtor Equity issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of the New Reorganized Debtor Equity under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person receiving such distribution or issuance. The issuance of the New Reorganized Debtor Equity by the Reorganized Debtors shall be authorized without the need for any further corporate action or without any further action by the Debtors or Reorganized Debtors or by holders of any Claims or Interests against the Debtors, as applicable. As a condition to receiving the New Reorganized Debtor Equity, each holder entitled to a distribution of New Reorganized Debtor Equity, will be required to execute and deliver the New Organizational Documents, as applicable; provided, however, that, notwithstanding any failure to execute the New Organizational Documents, as applicable, any Person that is entitled to and accepts a distribution of New Reorganized Debtor Equity under the Plan, by accepting such distribution, will be deemed to have accepted and consented to the terms of the New Organizational Documents, without the need for execution by any party thereto. The New Reorganized Debtor Equity will not be registered under the Securities Act or listed on any exchange as of the Plan Effective Date.

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Reorganized Debtor Equity after the Petition Date shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act or any similar federal, state, or local law in reliance on section 1145 of the Bankruptcy Code or, only to the extent such exemption under section 1145 of the Bankruptcy Code is not available, any other available exemption from registration under the Securities Act. Pursuant to section 1145 of the Bankruptcy Code, such New Reorganized Debtor Equity will be freely tradable in the United States without registration under the Securities Act by the recipients thereof, subject to the provisions of (1) section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments, (2) any other applicable regulatory approvals, and (3) any restrictions in the New Organizational Documents.

Any Securities distributed pursuant to Section 4(a)(2) of the Securities Act will be considered "restricted securities" as defined by Rule 144 of the Securities Act and may not be resold under the Securities Act or applicable state securities laws absent an effective registration statement, or pursuant to an applicable exemption from registration, under the Securities Act and applicable state securities laws and subject to any restrictions in the New Organizational Documents.

Notwithstanding anything to the contrary in the Plan, no Person shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the issuance of the New Reorganized Debtor Equity is exempt from the registration requirements of Section 5 of the Securities Act.

2.      Corporate Existence

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on and after the Plan Effective Date, each Reorganized Debtor, as applicable, shall continue to exist as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which the particular Debtor is incorporated or formed and pursuant to their respective certificate of incorporation and bylaws (or other similar Governance Documents) in effect prior to the Plan Effective Date, except to the extent such certificate of incorporation and bylaws (or other similar Governance Documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

After the Plan Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized Debtors may be amended or modified in accordance with their terms without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. On or after the Plan Effective Date, one or more of the Reorganized Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  In furtherance of the foregoing, from and after the Plan Effective Date, RL Management (as reorganized) may continue to conduct business in the ordinary course, including, without limitation, facilitating the transition of applicable licenses and permits, providing transition services to the Purchaser and the Reorganized Debtors in accordance with the Definitive Documents, and maintain and perform such other operational responsibilities as deemed necessary or advisable by the Plan Administrator.

3.      New Organizational Documents

On or immediately prior to the Plan Effective Date, the New Organizational Documents shall be adopted automatically by the Reorganized Debtors. To the extent required under the Plan or applicable non-bankruptcy law, the Reorganized Debtors shall file their respective New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation. The New Organizational Documents shall, among other things: (1) authorize the issuance of the New Reorganized Debtor Equity and (2) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting equity securities of the Debtors. After the Plan Effective Date, each Reorganized Debtor may amend and restate its limited liability company agreement, certificate of incorporation and other

formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of the New Organizational Documents.

### 4.    Discharge

On the Plan Effective Date, except as otherwise provided for hereunder or in the Confirmation Order, each Reorganized Debtor will receive a discharge of all Claims in accordance with section 1141(d)(1) of the Bankruptcy Code.

### 5.    Vesting of Assets in the Reorganized Debtors and the GUC Trust

Except as otherwise provided for hereunder, under the Purchase Agreement, the Confirmation Order  or in any agreement, instrument or other document incorporated in the Plan, on the Plan Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of each Debtor's Estate, including all Causes of Action of the Debtors' Estates (other than any Causes of Action that are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan) shall vest in the Purchaser, Reorganized Debtor, or the GUC Trust, free and clear of all Liens, Claims, Causes of Action, charges and/or other encumbrances, purchase rights, options or rights of first refusal.  On and after the Plan Effective Date, except as otherwise provided herein, each Reorganized Debtor, the Purchaser (and, to the extent applicable, Purchaser's designees), and the GUC Trustee may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action with respect to the Debtors without further notice to, action, or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### 6.    Directors, Managers, and Officers

As of the Plan Effective Date, the term of each current officer, members of the boards of directors or managers or any managing member of each Debtor shall expire, and except for RL Management, the New Board and the officers or managers of each of the Reorganized Debtors shall be appointed in accordance with the respective New Organizational Documents. With respect to RL Management, the Plan Administrator shall serve as the sole director and officer of RL Management (as reorganized).

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors shall disclose, in advance of the Confirmation Hearing, the identity and affiliations of any Person proposed to serve on the New Board or be an officer of any of the Reorganized Debtors. To the extent any such director, manager or officer is an "insider" (as defined in the Bankruptcy Code), the Debtors also shall disclose the nature of any compensation to be paid to such director, manager or officer. Each such director, manager and officer shall serve from and after the Plan Effective Date pursuant to the terms of the New Organizational Documents.

### 7.    Wind-Down and Dissolution of the Debtors

To the extent there is at least one Wind-Down Debtor on the Plan Effective Date, then such Wind-Down Debtor(s) shall continue in existence after the Plan Effective Date for purposes of: (a) winding down such Debtor's businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtor(s) after the Plan Effective

Date; (b) performing the Debtors' remaining obligations under any Sale Transaction Documents (except to the extent that such obligations are performed by RL Management), if any; (c) resolving any Disputed Claims (except General Unsecured Claims); (d) making distributions on account of Allowed Claims against the Debtors (except Allowed General Unsecured Claims) in accordance with the Plan to the extent not made on the Plan Effective Date; (e) filing appropriate tax returns, if any; and (f) administering the Plan in an efficient manner. The Wind-Down Debtor(s) shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters relating to the Wind-Down Assets, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

On the Plan Effective Date, any assets of the Debtors' Estates remaining after the closing of the Sale Transaction or other Restructuring Transaction shall vest in RL Management or the Wind-Down Debtor(s), as applicable, for the purpose of liquidating the Debtors' Estates, facilitating transition services related to the Sale Transaction, maintaining necessary operations, and Consummation of the Plan (except for the GUC Trust Assets). Such Wind-Down Assets and any assets remaining in RL Management after the Plan Effective Date shall be held free and clear of all Liens, Claims, Interests, Causes of Action, charges or other encumbrances, purchase rights, options or rights of first refusal, except as otherwise provided in the Plan. Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator or its designee. The Wind-Down Debtor(s), RL Management, and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

Any contrary provision hereof notwithstanding, following the occurrence of the Plan Effective Date and the making of distributions on the Plan Effective Date pursuant hereto, (i) any of the Debtors' Cash held by RL Management or the Wind-Down Debtor(s) in excess of the Wind-Down Amount  and (ii) the proceeds of any non-Cash assets of the Debtors' Estates vested in the Wind-Down Debtor(s), shall be payable in accordance with the provisions in this Plan, including Article III hereof. The Plan Administrator shall make such distributions in Cash in accordance with Article III hereof.

8.     The Plan Administrator

On and after the Plan Effective Date, the Plan Administrator, shall be appointed by the Debtors with the consent of the Prepetition Term Loan Agent and Purchaser and in consultation with the Committee.

The Plan Administrator shall not be required to post any bond or surety or other security for the performance of its duties hereunder unless otherwise ordered by the Bankruptcy Court. In the event that the Plan Administrator is so ordered, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Assets and/or RL Management.

The Plan Administrator may resign at any time upon thirty (30) days' written notice to the Bankruptcy Court; provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator by the Court. Upon its

appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind-Down Debtor(s) shall be terminated.

(a) The Plan Administrator's Rights and Powers

The powers of the Plan Administrator shall include any and all powers and authority necessary or helpful to implement and carry out the provisions of the Plan and any applicable orders of the Bankruptcy Court relating to the Wind-Down Debtors. The Plan Administrator shall be the representative of the Debtors' Estates with respect to the Wind-Down Assets appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

Without limiting the foregoing, the Plan Administrator shall (a) hold, liquidate, invest, supervise, and protect the Wind-Down Assets; (b) effectuate the distributions contemplated by the Plan Administrator under the Plan; (c) object to or settle Disputed Claims against the Debtors (except General Unsecured Claims); (d) prosecute any or all of the Causes of Action retained by the Wind-Down Debtors; (e) pay all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtor(s); (f) file tax returns for, pay taxes of, and represent the interests of the Wind-Down Debtor(s) or the Debtors' Estates, as applicable, before any taxing authority in all matters, including any action, suit, proceeding, or audit; (g) File the operating report for the Debtors' Estates for the month in which the Plan Effective Date occurs and all subsequent quarterly reports; (h) take any action necessary to wind down the business and affairs of the Wind-Down Debtor(s); (i) file appropriate certificates of dissolution of the Wind-Down Debtor(s) pursuant to applicable state or provincial law; and (j) manage the business operations and affairs of RL Management for as long as is necessary and advisable to effectuate the provisions of the Plan and the Sale Transaction.

As soon as practicable after the Plan Effective Date, the Plan Administrator shall cause the Wind-Down Debtor(s) and RL Management to comply with, and abide by, the terms of the Plan and take any actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. Except to the extent necessary to complete the Wind-Down of any of the Debtors' remaining assets or operations from and after the Plan Effective Date, the Debtors (1) shall be deemed to have canceled pursuant to the Plan all Interests in the Debtors (except RL Management as provided for herein) and (2) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Plan Effective Date. The Filing of the final monthly operating report for the Debtors' Estates (for the month in which the Plan Effective Date occurs) and all subsequent quarterly post-Confirmation reports shall be the responsibility of the Plan Administrator.

The Plan Administrator shall act for the Wind-Down Debtor(s) and RL Management in the same fiduciary capacity as applicable to a board of directors, board of managers, member/manager and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Plan Effective Date, the persons acting as members, managers, officers or directors of the Debtor(s) shall be deemed to have resigned and the Plan Administrator shall be appointed as the sole manager, sole director, sole member and sole officer

37

of RL Management and the Wind-Down Debtor(s) and shall succeed to the powers of the Debtors' directors, managers, members and officers. From and after the Plan Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtor(s) and RL Management.  For the avoidance of doubt, the foregoing shall not limit the authority of RL Management, the Wind-Down Debtor(s), or the Plan Administrator, as applicable, to continue the employment of any former member, manager, director or officer, including pursuant to any transition services or other agreement, in each case, to the extent permitted by applicable law.

(b)     Retention of the Plan Administrators' Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of its duties. The reasonable fees and expenses of such professionals shall be paid pursuant to any transition services agreement with RL Management or from the Wind-Down Assets, as applicable, upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business in accordance with the Wind-Down Budget and shall not be subject to the approval of the Bankruptcy Court.

(c)     Compensation of the Plan Administrator

All reasonable costs, expenses, and obligations incurred by the Plan Administrator in administering the Plan, operating RL Management for the benefit of or in connection with the Sale Transaction, administering the Wind-Down Debtor(s)' Estates, or in any manner connected, incidental, or related thereto, shall be paid from the Wind-Down Assets or pursuant to a transition services agreement with RL Management, as applicable, in accordance with the Wind-Down Budget and on the terms set forth in the Plan Administrator Agreement. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Plan Effective Date (including taxes imposed on the Wind-Down Debtors or RL Management) in connection with its duties hereunder and the Plan Administrator Agreement shall be, subject to the Wind-Down Budget, paid without any further notice to, or action, order, or approval of, the Bankruptcy Court.

(d)     Indemnification, Insurance, and Liability Limitation

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be indemnified by the Wind-Down Debtor(s) and RL Management to the fullest extent permitted by applicable law from any claims or Causes of Action relating to or arising in connection with the performance of its duties hereunder or under the Plan Administrator Agreement, except for claims and Causes of Action related to any act or omission that is determined by Final Order of a court of competent jurisdiction to have constituted fraud, willful misconduct, or gross negligence. The Plan Administrator may obtain, at the expense of the Wind- Down Debtor(s) and RL Management and in accordance with the Plan Administrator Agreement, commercially reasonable liability or other appropriate insurance with respect to the foregoing indemnification obligations. Any such insurance shall be paid solely from the

Wind-Down Assets in accordance with the Wind-Down Budget. The Plan Administrator may rely upon all written information previously generated by the Debtors.

Notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Wind- Down Debtor(s) or RL Management.

(e)     Tax Returns

The Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Wind-Down Debtor(s) and RL Management and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of any Wind-Down Debtor, RL Management, or the Estate of its predecessor Debtor, as determined under applicable tax laws.

9.     Vesting of Wind-Down Assets in the Wind-Down Debtor(s) or Purchaser(s)

Except as otherwise provided herein, on the Plan Effective Date, all Wind-Down Assets shall vest in the Wind-Down Debtor(s), free and clear of all Liens, Claims, Interests, Causes of Action, charges, or other encumbrances, purchase rights, options or rights of first refusal, unless expressly provided otherwise by the Plan or the Confirmation Order. On and after the Plan Effective Date, the Wind-Down Debtor(s) may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action that constitute Wind-Down Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

10.     Cash Collateral Held by the Prepetition ABL Agent

Any contrary provision hereof notwithstanding, nothing contained herein shall affect the rights and responsibilities of the parties, including the Debtor ABL Loan Parties and Prepetition ABL Agent under that certain Payoff Letter (as defined in the DIP Orders) dated as of May 17, 2024, as approved by the Court in the DIP Orders and the Cash Management Orders. From and after the Plan Effective Date, at such time as Prepetition ABL Agent is obligated to return the cash collateral held by Prepetition ABL Agent in accordance with the Payoff Letter, the Purchaser shall be entitled to receive the return of all cash collateral held by the Prepetition ABL Agent under or in connection with the Payoff Letter. Upon payment of such cash collateral to the Purchaser, the obligations of the Prepetition ABL Agent shall be deemed satisfied.

11.     GUC Trust.

(a)     Establishment of GUC Trust

On the Plan Effective Date, the GUC Trust shall be established to receive (i) after adequate reserve for the payment (as reasonably determined by the Debtors in consultation with the Committee) of all Allowed Priority Tax Claims, Allowed Other Priority Claims and Allowed Administrative Expense Claims that are not Assumed Liabilities (except for DIP Claims and

Allowed Professional Fee Claims), the GUC Fund and (ii) the Equityholder Litigation Claims, the proceeds of which shall be distributed in accordance with the Plan. On the Plan Effective Date, the Debtors shall contribute the GUC Fund and Equityholder Litigation Claims to the GUC Trust.  In no event shall any GUC Trust Assets of any kind be returned by, or otherwise transferred from, the GUC Trust to any Debtor.

The GUC Trust shall qualify as a liquidating trust as described in Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, and shall be treated as a grantor trust for United States federal income tax purposes. The GUC Trustee shall have the authority to manage the day-to-day operations of the GUC Trust, including, without limitation, by disposing of the assets of the GUC Trust, appearing as a party in interest, calculating distributions, paying taxes and such other matters as more particularly described in Article IV of the Plan and the GUC Trust Agreement. The reasonable expenses of the GUC Trust, including the reasonable expenses of the GUC Trustee and its representatives and professionals, will be satisfied from the GUC Fund.

On the Effective Date, the GUC Trust Assets shall vest automatically in the GUC Trust. The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief.  The transfer of the GUC Trust Assets to the GUC Trust shall be made for the benefit and on behalf of the holders of Allowed General Unsecured Claims in Class 4.  The assets comprising the GUC Trust Assets will be treated for tax purposes as being transferred by the Debtors to the holders of Class 4 Claims pursuant to the Plan in exchange for their Allowed Claims and then by such holders to the GUC Trust in exchange for the interests in the GUC Trust.  The holders of Allowed General Unsecured Claims shall be treated as the grantors and owners of the GUC Trust.  Upon the transfer of the GUC Trust Assets, the GUC Trust shall succeed to all of the Debtors' rights, title and interest in the GUC Trust Assets, and the Debtors will have no further interest in or with respect to the GUC Trust Assets.  In pursuing the Equityholder Litigation Claims, the GUC Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the time periods in which any of the Equityholder Litigation Claims may be brought under section 546 of the Bankruptcy Code.  The GUC Trust Agreement will require consistent valuation of the GUC Trust Assets by the Reorganized Debtors, the GUC Trustee, and the beneficiaries of the GUC Trust for all U.S. federal income tax and reporting purposes.  The GUC Trust will not be permitted to receive or retain cash in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the GUC Trust Assets.

To effectively investigate, prosecute, compromise, and/or settle the Equityholder Litigation Claims, the GUC Trustee and its counsel and representatives must have access to all documents and information relating to the Equityholder Litigation Claims and be able to exchange such information with the Plan Administrator, Reorganized Debtors and Wind-Down Debtors on a confidential basis and in common interest without being restricted by or waiving any applicable work product, attorney-client, or other privilege. Given the GUC Trust's position as successor to the Equityholder Litigation Claims, sharing such information between the Plan Administrator, Reorganized Debtors, the Wind-Down Debtors and the GUC Trustee and their counsel shall not waive or limit any applicable privilege or exemption from disclosure or discovery related to such information. Accordingly, on the Plan Effective Date, the Plan Administrator, Reorganized Debtors, the Wind-Down Debtors and the GUC Trustee shall enter

into the Confidentiality and Common Interest Agreement providing for, inter alia, the Plan Administrator, Reorganized Debtors and Wind-Down Debtors to provide reasonable access to, and the GUC Trust shall have the right to secure, at the GUC Trust's own expense, copies of, all of the Plan Administrator's, Wind-Down Debtors' and Reorganized Debtors' records and information relating to the Equityholder Litigation Claims including, without limitation, all electronic records or documents. The GUC Trustee shall also have full and complete access to, and the right to copy at the expense of the GUC Trust, all reports, documents, memoranda and other work product of the Debtors and the Creditors' Committee and their respective professionals and advisors related to the Equityholder Litigation Claims. From and after the Plan Effective Date, the Plan Administrator, Reorganized Debtors, Wind-Down Debtors and their officers, employees, agents, and professionals shall provide reasonable cooperation during normal business hours in responding to information requests of the GUC Trustee regarding the Equityholder Litigation Claims.  For a period of five years after the Plan Effective Date, the Plan Administrator, Reorganized Debtors and Wind-Down Debtors shall preserve all records and documents (including all electronic records or documents) related to the Equityholder Litigation Claims or, if any Equityholder Litigation Claims have been asserted in a pending action, then until such later time as the GUC Trustee notifies the Plan Administrator, Reorganized Debtors and Wind-Down Debtors in writing that such records are no longer required to be preserved. Notwithstanding anything in the foregoing, neither the Debtors, the Plan Administrator, the Wind-Down Debtors, nor the Reorganized Debtors shall be required to take any action under this paragraph that requires out-of-pocket expenditure by such entity of more than $500.00, absent reimbursement by the GUC Trust.

Except as otherwise ordered by the Bankruptcy Court, the expenses of the GUC Trust on or after the Plan Effective Date shall be paid in accordance with the GUC Trust Agreement without further order of the Bankruptcy Court.

The GUC Trust shall file annual reports regarding the liquidation or other administration of property comprising the GUC Trust Assets, the distributions made by it and other matters required to be included in such report in accordance with the GUC Trust Agreement.  In addition, the GUC Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

The interests in the GUC Trust are not intended to constitute "securities."  To the extent such interests are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act.  If the GUC Trustee determines, with the advice of counsel, that the GUC Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act or other applicable law, then the GUC Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and to file reports with the SEC to the extent required by applicable law.

The GUC Trust shall be dissolved as soon as practicable after the date that is the earlier to occur of: (a) the distribution of all proceeds from the GUC Trust Assets available for distribution pursuant to the Plan, or (b) the determination of the GUC Trustee that the continued prosecution of the Equityholder Litigation Claims is not likely to yield sufficient additional

proceeds to justify further pursuit.

To the extent that the terms of the Plan with respect to the GUC Trust are inconsistent with the terms set forth in the GUC Trust Agreement, then the terms of the GUC Trust Agreement shall govern.

(b)     Powers and Duties of GUC Trustee

The GUC Trustee shall administer the GUC Trust and its assets in accordance with this Plan, the GUC Trust Agreement, and the other GUC Trust Documents and shall be responsible for, among other things, making certain Distributions required under this Plan. From and after the Plan Effective Date and continuing through the date of entry of a Final Decree, the GUC Trustee shall: (a) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Cases and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Bankruptcy Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Bankruptcy Court and (b) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate in accordance with the Plan, all without prior notice to or approval of the Bankruptcy Court. Professionals and personnel retained or employed by the GUC Trust or the GUC Trustee need not be disinterested as that term is defined in the Bankruptcy Code, and may include Professionals who had been employed by the Committee or the Debtors.

The powers of the GUC Trustee shall include any and all powers and authority necessary or helpful to implement and carry out the provisions of the Plan and any applicable orders of the Bankruptcy Court relating to the GUC Trust Assets. The GUC Trustee shall be the representative of the Debtors' Estates with respect to the GUC Trust Assets appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

Without limiting the foregoing, the GUC Trustee shall (a) hold, liquidate, invest, supervise, and protect the GUC Trust Assets; (b) effectuate the distributions contemplated by the GUC Trustee under the Plan; (c) object to or settle Disputed General Unsecured Claims against the Debtors; (d) investigate, prosecute, or resolve the Equityholder Litigation Claims, as appropriate; (e) pay all reasonable fees, expenses, debts, charges, and liabilities of the GUC Trust; (f) file tax returns for, pay taxes of (if any), and represent the interests of the GUC Trust before any taxing authority in all matters, including any action, suit, proceeding, or audit; (g) take any action necessary to administer the GUC Trust; and (h) file appropriate certificates of dissolution of the GUC Trust, if any, pursuant to applicable state or provincial law.

(c)     Retention of GUC Trust Professionals

The GUC Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the GUC Trustee, are necessary to assist the GUC Trustee in the performance of its duties and prosecution of the Equityholder Litigation Claims

and administration of the other GUC Trust Assets; provided, however, that (i) the payment of such professionals shall be made solely using the funds in the GUC Fund and (ii) the Prepetition Term Loan Agent shall have consented to the retention of any attorney retained by the GUC Trustee to prosecute the Equityholder Litigation Claims. The reasonable fees and expenses of such professionals shall be paid only from the GUC Funds upon the monthly submission of statements to the GUC Trustee. The payment of the reasonable fees and expenses of the GUC Trustee's retained professionals shall not be subject to the approval of the Bankruptcy Court.

(d)     Indemnification, Insurance, and Liability Limitation

The GUC Trustee and all professionals retained by the GUC Trustee, each in their capacities as such, shall be indemnified by the GUC Trust to the fullest extent permitted by applicable law from any claims or Causes of Action relating to or arising in connection with the performance of its duties hereunder or under the GUC Trust Agreement, except for claims and Causes of Action related to any act or omission that is determined by Final Order of a court of competent jurisdiction to have constituted fraud, willful misconduct, or gross negligence. The GUC Trustee may obtain, at the expense of the GUC Trust and in accordance with the GUC Trust Agreement, commercially reasonable liability or other appropriate insurance with respect to the foregoing indemnification obligations. Any such insurance shall be paid solely from the GUC Trust Assets. The GUC Trustee may rely upon all written information previously generated by the Debtors.

Notwithstanding anything to the contrary contained herein, the GUC Trustee in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the GUC Trust.

12.     Sources of Consideration for Plan Distributions.

The Plan Administrator shall fund distributions under the Plan, to the extent not made on the Plan Effective Date, with the Plan Funding Amount, Sale Proceeds (if any), and proceeds of retained Causes of Action not settled, released, assigned, discharged, enjoined, or exculpated on or prior to the Plan Effective Date. The Plan Administrator shall fund payment of all Allowed Administrative Expense Claims, Priority Tax Claims and Other Priority Claims.  Professional Fee Claims shall be funded from the Professional Fee Escrow Account.  The GUC Trustee shall make all distributions of proceeds of the Equityholder Litigation Claims and other GUC Trust Assets in accordance with the Plan and the GUC Trust Agreement.  Except for Assumed Liabilities arising under the Purchase Agreement, neither the Purchaser nor the Reorganized Debtors shall have any responsibility to make or liability for Distributions required under the Plan.

## V.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption and Rejection of Executory Contracts and Unexpired Leases

1.     363 Asset Sale

In the event a 363 Asset Sale is consummated, upon closing of the 363 Asset Sale, (i)

each Executory Contract and Unexpired Lease designated for assumption and assignment to Purchaser (or one or more of the designees of Purchaser) in accordance with the Bidding Procedures Order and the Purchase Agreement shall be assumed by the applicable Debtor and assigned to the Purchaser (or one or more of the designees of Purchaser) pursuant to the terms of the applicable Purchase Agreement and applicable orders of the Bankruptcy Court, and (ii) all Executory Contracts and Unexpired Leases not designated for assumption and assignment to the Purchaser (or one or more of the designees of Purchaser) in any Purchase Agreement, to the extent not previously rejected or terminated, shall be automatically rejected.

Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A.1 and assigned to Purchaser (or one or more of the designees of Purchaser) shall vest in, and be fully enforceable by, the Purchaser (or one or more of the designees of Purchaser) in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court.

2.      Reorganized Equity Sale

In the event a Reorganized Equity Sale or other Restructuring Transaction is consummated, on the Plan Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan (including, to the extent applicable, a Purchase Agreement related thereto), all Executory Contracts and Unexpired Leases, to the extent not previously rejected or terminated, shall be deemed rejected under section 365 of the Bankruptcy Code without the need for any further notice to or action, order, or approval of the Bankruptcy Court, under section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) was previously assumed by a Debtor; (2) expired or was terminated pursuant to its own terms or by agreement of the parties thereto; (3) is the subject of a motion to assume Filed by the Debtors on or before the date of entry of the applicable Confirmation Order; or (4) is listed on the Assumed Executory Contracts and Unexpired Leases List; provided, that that rejections of Unexpired Leases of non-residential real property pursuant to this Plan shall be effective as of the later of (a) the Plan Effective Date and (b) the date on which the leased premises are unconditionally surrendered to the landlord under such rejected Unexpired Lease.

Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A.2 of the Plan, shall re-vest in, and be fully enforceable by, the Purchaser or Reorganized Debtor (as applicable) in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court.

**B.      Approval of Assumption, Assignment and Rejection**

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Plan Effective Date, constitute the Bankruptcy Court's approval of the assumptions, assignments or rejections, as applicable, of the Executory Contracts and Unexpired Leases under the Plan. Any motion of the Debtors to assume an Executory Contract or Unexpired Lease pending on the Plan Effective Date shall be subject to approval by the Bankruptcy Court by a Final Order.

Notwithstanding anything to the contrary in the Plan, the Debtors and the Reorganized Debtors, as applicable, reserve the right to amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases List to add or remove any Executory Contract or Unexpired Lease to such list at any time prior to the Plan Effective Date (or prior to such later date as may be designated in any Purchase Agreement, as applicable), subject to the consent of the Purchaser. The Debtors or the Reorganized Debtors shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases List to their counterparties affected thereby.

### C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

Unless otherwise provided by a Final Order, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Plan Effective Date. All Allowed Claims arising from the rejection of a Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against such Debtor. No non-Debtor party to a rejected Executory Contract or Unexpired Lease shall be permitted to setoff or recoup any amounts owed to the Debtors under such rejected Executory Contract or Unexpired Lease against any Allowed rejection damages.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time shall be automatically Disallowed, released, and discharged, and forever barred from assertion without the need for any objection or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Person, any such Claim shall be released, and discharged, notwithstanding anything in the Schedules or any Proof of Claim to the contrary, and such Claim shall not be enforceable against the Debtors, the Reorganized Debtors, the Debtors' Estates, the Wind- Down Debtor(s), or the GUC Trustee, as applicable, or their respective properties.**

### D.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied by the applicable Debtor(s) party to such Executory Contract or Unexpired Lease or the Purchaser as required by any Purchase Agreement, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the earlier of (i) the Plan Effective Date or (ii) the consummation of a 363 Asset Sale, if applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases, with the consent of the Purchaser. In the event of an unresolved dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or Purchaser(s) (as applicable) or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or (3) any other matter pertaining to assumption, the payment of the Cure Amount required by section 365(b)(1) of the Bankruptcy Code shall be resolved by a Final Order.

The Debtors served on the applicable counterparties notices of proposed assumption and proposed Cure Amounts pursuant to the terms of the Bidding Procedures. **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption or Cure Amount must be Filed and served to be actually received by no later than the applicable objection deadline set forth in the Bidding Procedures Order.** Any counterparty to an Executory Contract or Unexpired Lease designated for assumption that fails to object timely to the proposed assumption, Cure Amount or adequate assurance of future performance shall be deemed to have consented to all of the foregoing.

Assumption (or assumption and assignment, as applicable) of an Executory Contract or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under such Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

### E.    Preexisting Obligations under Executory Contracts and Unexpired Leases.

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the applicable Debtor(s) thereunder. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, outstanding Cash payments, warranties or continued maintenance obligations on any goods previously purchased by the Debtors from a non-Debtor counterparty to a rejected Executory Contract or Unexpired Lease.

### F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan or Confirmation Order, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to the Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Debtors' Chapter 11 Cases shall not be deemed to alter the prepetition nature of the applicable Executory Contracts or Unexpired Leases, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### G.    Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the

Assumed Executory Contracts and Unexpired Leases List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

### H.    Nonoccurrence of the Plan Effective Date

In the event that the Plan Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases of nonresidential property pursuant to section 365(d)(4) of the Bankruptcy Code.

## VI.    PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided in the Plan, on the Plan Effective Date (or if a Claim is not an Allowed Claim on the Plan Effective Date, on the date that such Claim becomes an Allowed Claim), each holder of an Allowed Claim shall receive, subject to the provisions of this Article VI hereof, the full amount of the distribution that the Plan provides on account of Allowed Claims in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Except as otherwise provided in the Plan, holders of Allowed Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or after the Plan Effective Date.

### B.    Delivery of Distributions

####     1.      Persons Responsible

Distributions under the Plan shall be made by (i) with respect to a Distribution of proceeds of the Equityholder Litigation Claims or other GUC Trust Assets, the GUC Trustee and (ii) with respect to all remaining Distributions, the Plan Administrator.  Except for Assumed Liabilities arising under the Purchase Agreement, the Purchaser (or any Affiliates or designees thereof) shall have no responsibility to make or liability for Distributions required under the Plan.

Except as otherwise provided herein, all distributions shall be made to the holders of Allowed Claims at the address for each such holder as indicated in the applicable Debtor's schedules as of the date of the relevant distribution; provided, however, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that holder; provided further, however, that the manner of distributions shall be determined at the discretion of the Reorganized Debtors, the Plan Administrator, or GUC

Trustee, as applicable.

2.    <u>Record Date for Distribution</u>

On the Distribution Record Date, the Claims Register shall be closed with respect to Claims held against the Debtors and any party responsible for making distributions under the Plan shall be authorized and entitled to recognize only those record holders of such Claims that are listed on the Claims Register as of the close of business on the Distribution Record Date.

3.    <u>Minimum Distributions</u>

Notwithstanding any other provision of the Plan, the Reorganized Debtors, the Wind-Down Debtor(s), the Plan Administrator, or the GUC Trustee, as applicable, shall not be required to make distributions of less than $50.00 in value (whether Cash or otherwise), and each Claim to which this limitation applies shall be discharged, and its holder shall be forever barred pursuant to Article VIII of the Plan from asserting such Claim against the Debtors, their applicable Estates, the Reorganized Debtors, the Wind-Down Debtors, the GUC Trustee, as applicable, or their respective property, as applicable.  If any assets remain where distributions would not be feasible, the Reorganized Debtors, the Wind-Down Debtors, or the GUC Trustee, as applicable, shall donate such sums to Red Lobster Cares.

### C.    Distributions and Undeliverable or Unclaimed Distributions

In the event that a distribution to any holder of an Allowed Claim is returned as undeliverable, no distribution to such holder shall be made unless and until the Reorganized Debtors, the Plan Administrator, or the GUC Trustee, as applicable, has determined the then-current address of such holder, at which time the distribution shall be made to such holder without interest; <u>provided</u>, <u>however</u>, that, at the expiration of ninety (90) days from the date a distribution is attempted, any such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code. After such date, all unclaimed property shall automatically revert to the Reorganized Debtors, the Wind-Down Debtors, or the GUC Trust, as applicable, without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder to such property shall be discharged and forever barred.

### D.    Surrender of Cancelled Instruments or Securities

On the Plan Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Article IV.A.5 hereof shall be deemed to have surrendered such certificate or instrument.  Such surrendered certificate or instrument shall be cancelled solely with respect to the applicable Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis à vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the holder of a Claim or Interest, which shall continue in effect for purposes of allowing holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or

48

instruments evidencing Claims that are Unimpaired under the Plan.

### E.    Compliance with Tax Requirements

The Debtors, Reorganized Debtors, Wind-Down Debtors, or the GUC Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, with respect to the distributions pursuant to the Plan, and all such distributions shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors, the Plan Administrator, or the GUC Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such compliance, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors, the Plan Administrator, and the GUC Trustee, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

### F.    Allocations

Distributions on account of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to accrued but unpaid prepetition interest.

### G.    No Postpetition Interest on Claims

Unless otherwise specifically provided for in the Plan, Confirmation Order or DIP Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

### H.    Foreign Currency Exchange Rate

Except as otherwise provided in a Bankruptcy Court order, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency published in *The Wall Street Journal*, National Edition, on the Petition Date.

### I.    Setoffs and Recoupment

Except as expressly provided in the Plan, each Reorganized Debtor, Wind-Down Debtor, or the GUC Trustee, as applicable, may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of an Allowed Claim any and all Claims, rights, and Causes of Action that such Reorganized Debtor, Wind-Down Debtor, or the GUC Trustee may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim shall constitute a waiver or release by a Reorganized Debtor, a Wind-Down Debtor, the GUC Trustee,

or its successor of any and all Claims, rights, and Causes of Action that such Reorganized Debtor, Wind-Down Debtor, or the GUC Trustee may have against the applicable claimholder. In no event shall any holder of a Claim, notwithstanding any indication in such holder's Proof of Claim that such holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise, be entitled to set off or recoup its Claim against any claim, right, or Cause of Action of the Debtor, Reorganized Debtor, Wind-Down Debtor(s), or the GUC Trustee, as applicable.

**J.      Claims Paid or Payable by Third Parties**

1.      Claims Paid by Third Parties

To the extent the holder of a Claim receives payment in full on account of such Claim from a third party, such Claim shall be Disallowed and expunged from the Claims Register without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent a holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a third party on account of such Claim, such holder shall, within two weeks of receipt of the latter, repay or return to the applicable Reorganized Debtor, Wind-Down Debtors, or the GUC Trustee, as applicable, the portion of the received Plan distribution, if any, by which its total recovery on account of the Claim exceeds the Allowed amount of such Claim.

2.      Claims Payable by Third Parties

The availability, if any, of any insurance policy for the satisfaction of an Allowed Claim shall be determined by the terms of the applicable Debtor(s)'s insurance policies. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part any Allowed Claim (if and to the extent adjudicated by a court of competent jurisdiction), then, immediately upon such insurers' agreement, the applicable portion of such Claim may be Disallowed and expunged from the Claims Register without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

Nothing contained in the Plan shall constitute or be deemed a waiver of any Claim or Cause of Action that any Debtor or any Person may hold against any insurer under any insurance policies, nor shall anything contained herein constitute a waiver by any insurer of any defenses, including coverage defenses.

**VII.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS**

**A.      Allowance of Claims**

After the Plan Effective Date, the Reorganized Debtors, Wind-Down Debtors, and the GUC Trustee, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had immediately before the Plan Effective Date. No Claim shall be deemed an Allowed Claim unless and until such Claim is Allowed under the Plan or under any order entered in the Chapter 11 Cases before the Plan Effective Date (including the Confirmation Order), when such

order becomes a Final Order.

**B.      No Distributions Pending Allowance**

If an objection to a Claim or a portion thereof is Filed, no distribution shall be made on account of such Claim or the applicable portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

**C.      Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Plan Effective Date, the Reorganized Debtors, the Plan Administrator, and the GUC Trustee, as applicable, shall have the authority to:  (1) File, withdraw, or litigate to judgment objections to Claims against the applicable Estate; (2) settle, compromise, or otherwise resolve Disputed Claims against the applicable Estate without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the applicable Claims Register to reflect any settlements, compromises or Final Orders resolving Disputed Claims or the fact that any Claim has been paid or satisfied, or that any Proof of Claim that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), in each case without any further notice to or action, order, or approval by the Bankruptcy Court. The GUC Trustee shall be primarily responsible for reconciling and objecting to General Unsecured Claims in accordance with the provisions of this Plan.

**D.      Estimation of Claims**

Before or after the Plan Effective Date, the Debtors, Reorganized Debtors, Wind-Down Debtor(s), or the GUC Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to such Claim or during the appeal relating to such objection. Notwithstanding any provision in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or that otherwise has not yet been resolved by a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Debtor, Reorganized Debtor or Wind-Down Debtor, or the GUC Trustee, as applicable, may elect to pursue a supplemental proceeding to object to any ultimate allowance of such Claim.

**E.      Time to File Objections to Claims**

Any objections to Claims shall be Filed on or before the later of (1) 180 days after the entry of the Confirmation Order and (2) such other period of limitation as may be fixed by the Bankruptcy Court.  A motion to extend such deadline may be filed with the Bankruptcy Court by the Reorganized Debtors, the Wind-Down Debtors, or the GUC Trustee, as applicable, on an ex

parte or expedited basis.

### F.    Disallowance of Claims

Any Claims held by Persons from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Person have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, from that Person have been turned over or paid to the Reorganized Debtors, Wind-Down Debtors, or the GUC Trustee, as applicable.

All Claims against any Debtor, whether Filed or listed in any of the Debtor's Schedules, on account of an indemnification, surety and/or contribution obligation to any of the following Persons or entities shall be deemed satisfied and expunged from the Claims Register as of the Plan Effective Date, without any further notice to or action, order, or approval of the Bankruptcy Court:  (i) current or former director of any Debtor, (ii) current or former officer of any Debtor; (iii) current or former employee of any Debtor; (iv) current or former insider of any Debtor; (v) holder, whether directly or indirectly, of an Interest in any Debtor; (vi) current or former operator of any Debtor; (vii) current or former project manager of any Debtor; and (viii) any Affiliate of the Persons or entities set forth in the foregoing clauses (i) through (vii); provided, further, that the holder of any such Claim shall not be entitled to any distributions under the Plan on account of such Claims.

### G.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order allowing a Disputed Claim becomes a Final Order, the Reorganized Debtors, the Wind-Down Debtor(s), Plan Administrator, or the GUC Trustee, as applicable, shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled, without interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

## VIII.   RELEASES, INJUNCTION AND RELATED PROVISIONS

### A.    Plan Releases, Injunction and Related Provisions

#### 1.    Discharge of Claims and Termination of Interests in the Debtors

In the event a Reorganized Equity Sale is consummated, upon the Plan Effective Date, and except as otherwise provided in the Plan, the Debtors (excluding the Wind-Down Debtors) shall be discharged to the fullest extent permitted by section 1141(d) of the Bankruptcy Code; provided, however, that such discharge shall exclude any Assumed Liabilities. The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than Assumed Liabilities) against, and Interests in, the Debtors (excluding the Wind-Down Debtors) subject to

the occurrence of the Plan Effective Date.

In the event a 363 Asset Sale is consummated, pursuant to the provisions of section 1141(d)(3) of the Bankruptcy Code, the Debtors shall not be entitled to a discharge and shall be wound down as set forth in the Plan and the Plan Administrator Agreement.

2.    Releases by the Debtors

**Notwithstanding anything in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Plan Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released by each of the Debtors, their respective Estates, and any Person seeking to exercise the rights of any of the Debtors or their Estates (including any successors to any of the Debtors or their Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code), in each case, on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons who may purport to assert any Cause of Action, derivatively, by, through, for, or because of any of the foregoing Persons, from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in law, equity, contract, tort or otherwise, that any of the Debtors, their Estates, the Reorganized Debtors or Wind-Down Debtor(s), as applicable, or any successors to or representatives of the foregoing appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether individually or collectively) or that any holder of any Claim against or any Interests in, any of the Debtors could have asserted on behalf of any of the Debtors or their Estates, based on, relating to, or in any manner arising from, in whole or in part: any of the Debtors (including the capital structure, management, ownership, or operations thereof); any Security of any of the Debtors; the subject matter of, or the transactions or events giving rise to, any Claim, Cause of Action or Interest; the business or contractual arrangements between any Debtor and a Released Party; any of the Debtors' restructuring efforts; any Avoidance Actions held by any of the Debtors or their Estates; any intercompany transactions performed by any of the Debtors; the Debtors' Chapter 11 Cases (including the Filing thereof and any relief obtained by the Debtors therein); the formulation, preparation, dissemination, negotiation, or Filing of the Plan, the Plan Supplement, the DIP Facility, the Disclosure Statement, or the Bidding Procedures Order (and the procedures approved thereby); any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Person regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order with respect to the Plan in lieu of such legal opinion) created or entered into in connection with the Plan or the Bidding Procedures Order; the solicitation of votes on the Plan, the pursuit of Confirmation of the Plan, the pursuit of Consummation of the Plan, the implementation of the Plan, including the issuance or distribution of Securities or any other property pursuant to the Plan; or any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Plan Effective Date other than Claims and**

**liabilities resulting therefrom arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, in each case, solely to the extent determined by a Final Order of a court of competent jurisdiction.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Plan Effective Date Claims or obligations of any Person under the Plan, the Confirmation Order with respect to the Plan, any Restructuring Transaction, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (ii) the Equityholder Litigation Claims.**

3.    Releases by Holders of Claims Against the Debtors

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Plan Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part: any of the Debtors (including the capital structure, management, ownership, or operation thereof); any security of any of the Debtors or any of the Reorganized Debtors; the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan; the business or contractual arrangements between any Debtor and any Released Party; the assertion or enforcement of rights and remedies against any of the Debtors; the Debtors' in- or out-of- court restructuring efforts; any Avoidance Actions held by any of the Debtor(s) or their Estates; intercompany transactions between or among a Debtor and another Debtor; the Chapter 11 Cases; the Canadian Proceeding; the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Bidding Procedures Order, the Plan, or the Plan Supplement; any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the DIP Facility, the Disclosure Statement, the Bidding Procedures Order, the Plan, or the Plan Supplement; the Filing of the Debtors' Chapter 11 Cases; the Filing of the Canadian Proceeding; the Disclosure Statement, the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation of the Plan, the pursuit of Consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, the distribution of property under the Plan or any other related agreement, or any cancellation of debt income realized in connection with the Plan; or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Plan Effective Date, other than Claims and liabilities resulting therefrom arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction. Notwithstanding anything to the contrary in the foregoing, the releases set**

forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan or any other financing document under and as defined therein), (ii) the Equityholder Litigation Claims, or (iii) any post-Plan Effective Date obligations of any Person under the Plan, the Confirmation Order, any Stand-Alone Restructuring Transaction, any Definitive Document or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Purchase Agreement or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third party release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further shall constitute the Bankruptcy Court's finding that the third party release by those creditors or interest holders who vote to accept the Plan is: (I) the good and valuable consideration and substantial contributions provided by the Released Parties; (II) a good faith settlement and compromise of the Claims released by the third party release; (III) in the best interests of the Debtors and all holders of Claims and Interests; (IV) fair, equitable and reasonable; (V) given and made after due notice and opportunity for a hearing; and (IV) a bar to any of the Releasing Parties asserting any Claim released pursuant to the third party release.

4.    Exculpation from Claims Relating to the Plan

Except as otherwise specifically provided in the Plan or the Confirmation Order with respect to the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any Claims and Causes of Action related to any act or omission occurring between and including the Petition Date and the Plan Effective Date in connection with, relating to, or arising out of: the Debtors' Chapter 11 Cases (including the Filing thereof); the Canadian Proceeding (including the Filing thereof); the formulation, preparation, dissemination, negotiation, Filing, or termination of the Plan, the Disclosure Statement, the Bidding Procedures Order, the DIP Facility, or any contract, instrument, release or other agreement or document created or entered into in connection with the Debtors' Chapter 11 Cases or Canadian Proceeding, whether or not included in the Plan Supplement or constituting a Definitive Document; the Restructuring Transactions contemplated by the Plan and any prepetition transactions relating to any of the foregoing; the pursuit of Confirmation of the Plan, the pursuit of Consummation of the Plan, the administration and implementation of the Plan, including the issuance and distribution of Securities pursuant to the Plan, or the distribution of property under the Plan; the Purchase Agreement; or any other related act or omission, transaction, event, or other occurrence taking place on or before or in connection with the Plan Effective Date, except for Claims and liabilities resulting therefrom related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by an Exculpated Party.

The Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan in all respects.

5.      Injunction

**Except as otherwise expressly provided in the Plan or the Confirmation Order with respect to the Plan, all Persons who have held, hold, or may hold any Claims or Causes of Action against, or Interests in, any of the Debtors that have been released, discharged, or are subject to release or exculpation hereunder are permanently enjoined, from and after the Plan Effective Date, from taking any of the following actions against any of the Debtors, the Reorganized Debtors, the Wind-Down Debtor(s), the GUC Trustee, as applicable, or any of the other Exculpated Parties or any of the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with any such Claim, Cause of Action or Interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any of the Exculpated Parties or Released Parties on account of or in connection with any such Claim, Cause of Action or Interest; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against any of the Exculpated Parties, Released Parties or their property on account of or in connection with or with respect to any such Claim, Cause of Action or Interest; and (4) asserting any right of setoff or subrogation against any obligation due from any of the Exculpated Parties, Released Parties or against their property on account of or in connection with any such Claim, Cause of Action or Interest unless, with respect to setoff, such holder has Filed a motion requesting the right to perform such setoff on or before the Plan Effective Date or Filed a Proof of Claim that asserts or preserves any such right, and until such motion has been granted or the Filed Proof of Claim is Allowed.**

**Upon entry of the Confirmation Order with respect to the Plan, all holders of Claims and Causes of Action against, and Interests in, any of the Debtors and their respective Related Parties shall be enjoined from taking any actions to interfere with the implementation of the Plan or the Sale Transaction.**

B.      **Protections Against Discriminatory Treatment**

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Persons, including all Governmental Units, shall not discriminate against the Reorganized Debtors, Wind-Down Debtor(s), GUC Trustee, as applicable, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, Wind-Down Debtor(s), or GUC Trustee, as applicable, or another Person with whom the Reorganized Debtors, Wind-Down Debtor(s), or GUC Trustee, as applicable, have been associated, solely because the relevant Debtor has been a debtor under chapter 11 of the Bankruptcy Code, was insolvent before the commencement of or during the Debtors' Chapter 11 Cases, or did not pay a debt that is discharged hereunder.

C.      **Document Retention**

On and after the Plan Effective Date, the Reorganized Debtors, the Wind-Down Debtor(s), and the GUC Trustee, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or

supplemented.

### D. Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court in effect on the applicable Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Plan Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### E. Unknown Claims

The waivers and releases provided in this Plan are intended to include both known and unknown Claims and Causes of Action. The Debtors and the other Releasing Parties understand that they may later discover Claims, Causes of Action or facts that may be different than, or in addition to, those which the Debtors or any other Releasing Party now knows or believes to exist with respect to the Debtors, and which, if known at the Plan Effective Date may have materially affected the decision of the Debtors and any other Releasing Party to enter into it. Nevertheless, the Debtors and the Releasing Parties hereby waive any right, Causes of Action or Claim that might arise as a result of such different or additional Claims, Causes of Action or facts. The Debtors and the Releasing Parties are aware of, read, understand and have been fully advised by their attorneys as to the contents of the provisions of California Civil Code section 1542 and any other similar state, federal or foreign law and hereby expressly waive any and all rights, benefits and protections of such section 1542 and each such other similar law, which provides:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

## IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A. Conditions Precedent to the Effective Date for the Plan

It shall be a condition to the occurrence of the Plan Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.      The Bankruptcy Court shall have approved the Disclosure Statement, which may be approved by the Confirmation Order, with respect to the Plan;

2.      The Confirmation Order approving the Plan is in form and substance reasonably acceptable to the Purchaser and Prepetition Term Loan Agent, the Debtors and the Committee and shall be a Final Order (unless otherwise waived by the Prepetition Term Loan Agent and the Committee) and shall:

(a)     Authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)     Decree the provisions in the Confirmation Order with respect to the Plan and the Plan to be non-severable and mutually dependent;

(c)     Authorize the Reorganized Debtors, Wind-Down Debtor(s), Plan Administrator and GUC Trustee, as applicable, to: (i) implement the Sale and Restructuring Transactions; (ii) make all distributions required under the Plan, including any Cash, the New Reorganized Debtor Equity, and the GUC Trust Agreement, in each case, as applicable; and (iii) enter into any applicable agreements, transactions, and sales of property as set forth in the Plan Supplement as applicable to the Debtors and the Plan;

(d)     Provide for the Bankruptcy Court's retention of jurisdiction over implementation of the Plan and the issues set forth in Article XI of the Plan; and

(e)     Authorize the implementation of the Plan in accordance with its terms;

3.      The final version of each Definitive Document, including each document contained in the Plan Supplement, to the extent applicable to the Plan (including any exhibits, amendments, modifications, or supplements thereto) shall have been executed or deemed executed and delivered by each party thereto and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties, if applicable;

4.      Any and all authorizations, certifications, consents, regulatory approvals, rulings, actions, documents and agreements necessary to implement, consummate and effectuate the applicable Restructuring Transactions shall have been obtained, effected and executed;

5.      In the event of a Reorganized Equity Sale, the New Reorganized Debtor Equity shall have been issued on or immediately before the Plan Effective Date;

6.      The Professional Fee Escrow Account shall have been established and funded in accordance with Article II.B hereof;

7.      Any Administrative Expense Claims that are not Assumed Liabilities (except for DIP Claims and Allowed Professional Fee Claims) and are known to the Debtors immediately prior to the Effective Date are paid or otherwise satisfied;

8.      The Debtors, with the consent of the Prepetition Term Loan Agent and the Committee, shall have appointed the Plan Administrator, and the Plan Administrator Agreement and other Plan Administrator Documents shall have been executed and delivered;

9.     The Debtors and the GUC Trustee selected by the Committee shall have executed and delivered the GUC Trust Agreement; and

10.     The Confirmation Order shall have been recognized in the Canadian Proceeding pursuant to Part IV of the *Companies' Creditors Arrangement Act* (Canada) thereby giving full force and recognition to the Confirmation Order in Canada.

### B.     Waiver of Conditions

The conditions to the occurrence of the Plan Effective Date set forth in this Article IX may be waived by the Debtors, with the prior written consent of the Prepetition Term Loan Agent and the Committee, without notice to, action, or approval of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

### C.     Substantial Consummation

Substantial Consummation of the Plan shall be deemed to occur on the Plan Effective Date.

### D.     Effect of Failure of Conditions

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by the applicable Debtor or any other Person, or any Claims or Interests by any holders thereof; (2) prejudice in any manner the rights of each applicable Debtor, any holder of Claims or Interests, or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the applicable Debtors, any holder of Claims or Interests, or any other Person in any respect.

## X.     MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### A.     Modification and Amendments

Except as otherwise specifically provided in the Plan, the Debtors reserve the right, with the prior written consent of the Prepetition Term Loan Agent and the Committee, to (1) modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and (2) subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), to alter, amend or modify the Plan with respect to any Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. In accordance with, and to the extent provided by, section 1127 of the Bankruptcy Code, a holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

B.     **Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation of votes thereon are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation.

C.     **Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to File other plan(s) of reorganization. If the Debtors revoke or withdraw the Plan or if Confirmation or Consummation of the Plan does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, the assumption or rejection of any Executory Contracts or Unexpired Leases under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any claims by the applicable Debtor or any other Person, or any Claims or Interests by any holders thereof; (b) prejudice in any manner the rights of each applicable Debtor, any holder of Claims or Interests, or any other Person; or (c) constitute an admission, acknowledgment, offer or undertaking by the applicable Debtors, any holder of Claims or Interests, or any other Person in any respect.

## XI.     RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Plan Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction after the Plan Effective Date over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of, any Claim, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2.     Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.     Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease, the determination of any Claim arising therefrom, including the Cure Amounts, or any other matter related to Executory Contracts and Unexpired Leases; (b) the amending, modifying, or supplementing, after the Plan Effective Date, of the Assumed Executory Contracts and Unexpired Leases List; and (c) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or any other matters, and grant or deny any applications pending on the Plan Effective Date or filed thereafter, including any Equityholder Litigation Claims commenced in the Bankruptcy Court;

6.      Adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code;

7.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and of all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, including the documents comprising the Plan Supplement;

8.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation or otherwise, including interpretation or enforcement of the Plan, any Person's obligations incurred in connection with the Plan, or, as applicable, the Purchase Agreement;

9.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with Consummation or enforcement of the Plan;

10.     Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan, and enter such orders as may be necessary or appropriate to enforce or implement such releases, injunctions, exculpations, and other provisions;

11.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

13.     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

14.     Consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in the Confirmation Order;

15.     Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

16.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or the Restructuring, including disputes arising under agreements, documents, or instruments executed in connection with the Plan or the Restructuring, whether they arise before, on or after the Plan Effective Date;

17.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

18.     Enforce and interpret all orders entered by the Bankruptcy Court in the Chapter 11 Cases;

19.     Hear any other matter not inconsistent with the Bankruptcy Code; and

20.     Enter an order or final decree closing any of the Chapter 11 Cases.

## XII.    MISCELLANEOUS PROVISIONS

### A.     Immediate Binding Effect

Subject to Article IX and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Plan Effective Date, the terms of the Plan and the documents contained in the Plan Supplement, shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, the Wind-Down Debtor(s), and the GUC Trustee, as applicable, and any and all holders of Claims against and Interests in the Debtors (irrespective of whether their Claims or Interests are Allowed or whether they have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan and any and all non-Debtor counterparties to the Executory Contracts and Unexpired Leases.

### B.     Additional Documents

On or before the Plan Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Reorganized Debtors, the Wind-Down Debtor(s), or the GUC Trustee, as applicable, all holders of Allowed Claims receiving distributions under the Plan, and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.     Payment of Statutory Fees

All fees due and payable by the Debtors' Estates pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") prior to the Plan Effective Date shall be paid by the Debtors on the Plan Effective Date. After the Plan Effective Date, the Debtors and the Reorganized Debtors shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable. After the Plan Effective Date, each of the Reorganized Debtors shall File with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors and the Reorganized Debtors shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to File any Administrative Expense Claim in the case, and shall not be treated as

providing any release under the Plan. For the avoidance of doubt, neither the GUC Trust nor GUC Trustee is responsible for the payment of any Quarterly Fees.

### D.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order confirming the Plan and the Confirmation Order shall have no force or effect if the Plan Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or any holder of a Claim or Interest unless and until the Plan Effective Date has occurred.

### E.    Successors and Assigns

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of any such Person.

### F.    Notices

To be effective, all notices, requests and demands shall be in writing (including by e-mail or facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by fascimile transmission, when received and telephonically confirmed, addressed to the following:

1.    <u>If to the Debtors, to:</u>

Red Lobster Management LLC
450 S. Orange Avenue, Suite 800
Orlando, Florida 32801

with copies to:

King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Attention:
W. Austin Jowers, Esq.
Jeffrey R. Dutson, Esq.
E-mail:
ajowers@kslaw.com
jdutson@kslaw.com

- and -

King & Spalding LLP
1100 Louisiana Street, Suite 4100

Houston, Texas 77002
Attention: Michael Fishel, Esq.
E-mail:          mfishel@kslaw.com

- and -

Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Attention: Paul Steven Singerman, Esq.
E-mail:          singerman@bergersingerman.com

2.      If to the DIP Secured Parties or Prepetition Term Loan Agent, to:

Proskauer Rose LLP
One International Place
Boston, Massachusetts 02110
Attention: Charles A. Dale, Esq.
Email: cdale@proskauer.com

- and -

Proskauer Rose, LLP
Eleven Times Square
New York, New York 10036
Attention:
Megan Volin, Esq.
Dylan J. Marker, Esq.
Email:
mvolin@proskauer.com
dmarker@proskauer.com

- and -

Trenam, Kemker, Scharf, Barkin, Frye, O'Neill and Mullis, P.A.
101 E Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Attention: Lara Roeske Fernandez, Esq.
Email: lfernandez@trenam.com

3.      If to the Committee or the GUC Trustee:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
Attention:
Bradford J. Sandler, Esq.

Email: bsandler@pszjlaw.com

If a Person wishes to continue to receive notices or documents after the Plan Effective Date, such Person must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Plan Effective Date, the Reorganized Debtors, the Wind-Down Debtor(s), or the GUC Trustee, as applicable, are authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to those Persons who have Filed such renewed requests in the applicable Chapter 11 Cases.

### G.      Entire Agreement

Except as otherwise indicated, the Plan, the Plan Supplement, the Definitive Documents (in their final forms) and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on the subjects covered thereby, all of which have become merged and integrated into the Plan and the Confirmation Order.

### H.      Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan, as applicable, as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Debtors' notice, claims, and balloting agent at https://dm.epiq11.com/redlobster or the Bankruptcy Court's website at http://www.flmb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

### I.      Non-Severability of Plan Provisions

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non- severable, other than as described below. The Confirmation Order shall constitute a judicial determination, and shall provide, that each term and provision of the applicable Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

### J.      Closing of Chapter 11 Cases

The Reorganized Debtors or the Plan Administrator, as applicable, shall, promptly after the full administration of the Chapter 11 Cases, and with the consent of the GUC Trustee, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

### K.      Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

**L.    Rates**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Plan Effective Date.

*[Remainder of Page Left Intentionally Blank]*

66

Dated this ~~August 22~~**September 4**, 2024    */s/ Nicholas Haughey*
                                                   Nicholas Haughey
                                                   Chief Restructuring Officer

| Summary report:<br>**Litera Compare for Word 11.7.0.54 Document comparison done on<br>9/4/2024 5:14:53 PM** | |
|---|---|
| **Style name:** K&S Show Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** RL - Modified Plan [File Version].docx | |
| **Modified DMS:** iw://cloudimanage.com/WORKAMER/49445792/1 | |
| **Changes:** | |
| **Add** | 8 |
| Delete | 7 |
| Move From | 0 |
| Move To | 0 |
| **Table Insert** | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 15 |

**<u>EXHIBIT 2</u>**

**(Clean Version of Second Amended Joint Chapter 11 Plan for
Red Lobster Management LLC and Its Debtor Affiliates)**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| RED LOBSTER MANAGEMENT LLC,[1] | Case No. 6:24-bk-02486-GER |
| | Jointly Administered with |

| | |
|---|---|
| RED LOBSTER RESTAURANTS LLC, | Case No. 6:24-bk-02487-GER |
| RLSV, INC. | Case No. 6:24-bk-02488-GER |
| RED LOBSTER CANADA, INC., | Case No. 6:24-bk-02489-GER |
| RED LOBSTER HOSPITALITY LLC, | Case No. 6:24-bk-02490-GER |
| RL KANSAS LLC, | Case No. 6:24-bk-02491-GER |
| RED LOBSTER SOURCING LLC, | Case No. 6:24-bk-02492-GER |
| RED LOBSTER SUPPLY LLC, | Case No. 6:24-bk-02493-GER |
| RL COLUMBIA LLC, | Case No. 6:24-bk-02494-GER |
| RL OF FREDERICK, INC., | Case No. 6:24-bk-02495-GER |
| RED LOBSTER OF TEXAS, INC., | Case No. 6:24-bk-02496-GER |
| RL MARYLAND, INC., | Case No. 6:24-bk-02497-GER |
| RED LOBSTER OF BEL AIR, INC., | Case No. 6:24-bk-02498-GER |
| RL SALISBURY, LLC, | Case No. 6:24-bk-02499-GER |
| RED LOBSTER INTERNATIONAL HOLDINGS LLC, | Case No. 6:24-bk-02500-GER |

Debtors.

_____/

## SECOND AMENDED JOINT CHAPTER 11 PLAN FOR
## RED LOBSTER MANAGEMENT LLC AND ITS DEBTOR AFFILIATES

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are Red Lobster Management LLC (6889); Red Lobster Sourcing LLC (3075); Red Lobster Supply LLC (9187); RL Kansas LLC (2396); Red Lobster Hospitality LLC (5297); Red Lobster Restaurants LLC (4308); RL Columbia LLC (7825); RL of Frederick, Inc. (9184); RL Salisbury, LLC (7836); RL Maryland, Inc. (7185); Red Lobster of Texas, Inc. (1424); Red Lobster of Bel Air, Inc. (2240); RLSV, Inc. (6180); Red Lobster Canada, Inc. (4569); and Red Lobster International Holdings LLC (4661). The Debtors' principal offices are located at 450 S. Orange Avenue, Suite 800, Orlando, FL 32801.

Dated:    September 4, 2024

Respectfully submitted,

/s/ Paul Steven Singerman
Paul Steven Singerman
Florida Bar No. 378860
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:    (305) 755-9500
Email:    singerman@bergersingerman.com

W. Austin Jowers (*pro hac vice* admitted)
Jeffrey R. Dutson (*pro hac vice* admitted)
Sarah L. Primrose (FL Bar No. 98742)
Christopher K. Coleman (*pro hac vice* admitted)
Brooke L. Bean (*pro hac vice* admitted)
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone:    (404) 572-4600
Email:    ajowers@kslaw.com
        jdutson@kslaw.com
        sprimrose@kslaw.com
        christopher.coleman@kslaw.com
        bbean@kslaw.com

- and –

Nicolette C. Vilmos
Florida Bar No. 469051
**BERGER SINGERMAN LLP**
111 North Magnolia Avenue
Suite 1450 Orlando, FL 32801
Telephone: (407) 749-7900
Email: nvilmos@bergersingerman.com

– and –
Michael Fishel (*pro hac vice* admitted)
**KING & SPALDING LLP**
1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone:    (713) 751-3200
Email:    mfishel@kslaw.com

*Filer's Attestation: Pursuant to Local Rule 1001-2(g)(3) regarding signatures, Paul Steven Singerman attests that concurrence in the filing of this paper has been obtained.*

*[Counsel for Debtors and Debtors-in-Possession]*

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

I.  DEFINED TERMS AND RULES OF INTERPRETATION............................................ 1
    A.  Defined Terms ................................................................................................... 1
    B.  Rules of Interpretation .................................................................................... 16
    C.  Computation of Time....................................................................................... 17
    D.  Governing Law ................................................................................................ 17
    E.  Reference to Monetary Figures........................................................................ 18
    F.  Controlling Document ..................................................................................... 18
    G.  Consent Rights of the Consenting Lenders..................................................... 18

II.  UNCLASSIFIED CLAIMS ......................................................................................... 18
    A.  Administrative Expense Claims ...................................................................... 19
    B.  Professional Fee Claims.................................................................................. 19
        1.  Final Fee Applications and Payment of Professional Fee Claims .......... 19
        2.  Professional Fee Escrow Accounts ........................................................ 20
        3.  Post-Confirmation/Pre-Effective Date.................................................... 20
        4.  Post-Effective Date Fees and Expenses .................................................. 20
    C.  DIP Claims...................................................................................................... 20
    D.  Priority Tax Claims ......................................................................................... 21

III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ............... 21
    A.  Classification of Claims and Interests............................................................. 21
        1.  Class Identification ................................................................................ 22
    B.  Treatment of Claims and Interests .................................................................. 22
        1.  Class 1 – Miscellaneous Secured Claims................................................ 22
        2.  Class 2 – Other Priority Claims ............................................................. 23
        3.  Class 3 – Prepetition Term Loan Claims ................................................ 24
        4.  Class 4 – General Unsecured Claims ...................................................... 24
        5.  Class 5 – Intercompany Claims .............................................................. 25
        6.  Class 6 – Interests in Debtors................................................................. 25
    C.  Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ............................ 25
    D.  Subordinated Claims ....................................................................................... 25
    E.  Elimination of Vacant Classes ........................................................................ 26

IV.  MEANS FOR IMPLEMENTATION OF THE PLAN.................................................. 26
    A.  General............................................................................................................ 26
        1.  General Settlement of Claims and Interests............................................ 26
        2.  Restructuring Transactions ..................................................................... 26
        3.  Insurance Policies .................................................................................. 27
        4.  Section 1146 Exemption ........................................................................ 28
        5.  Cancellation of Securities and Agreements ............................................ 29
        6.  Effectuating Documents; Further Transactions ...................................... 30
        7.  Preservation of Causes of Action............................................................ 30
    B.  Restructuring of the Debtors Effectuated Through a Sale Transaction ............. 31

i

|   |   | 1. | Closing of any Sale Transaction or Restructuring Transaction | 31 |
|   | C. | | Reorganized Equity Sale Provisions | 31 |
|   |   | 1. | Issuance of Reorganized Debtor Equity; Section 1145 Exemption | 32 |
|   |   | 2. | Corporate Existence | 33 |
|   |   | 3. | New Organizational Documents | 33 |
|   |   | 4. | Discharge | 34 |
|   |   | 5. | Vesting of Assets in the Reorganized Debtors and the GUC Trust | 34 |
|   |   | 6. | Directors, Managers, and Officers | 34 |
|   |   | 7. | Wind-Down and Dissolution of the Debtors | 34 |
|   |   | 8. | The Plan Administrator | 35 |
|   |   | 9. | Vesting of Wind-Down Assets in the Wind-Down Debtor(s) or Purchaser(s) | 38 |
|   |   | 10. | Cash Collateral Held by the Prepetition ABL Agent | 38 |
|   |   | 11. | GUC Trust | 38 |
|   |   | 12. | Sources of Consideration for Plan Distributions. | 42 |
| V. | | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 42 |
|   | A. | | Assumption and Rejection of Executory Contracts and Unexpired Leases | 42 |
|   |   | 1. | 363 Asset Sale | 42 |
|   |   | 2. | Reorganized Equity Sale | 43 |
|   | B. | | Approval of Assumption, Assignment and Rejection | 43 |
|   | C. | | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 44 |
|   | D. | | Cure of Defaults for Executory Contracts and Unexpired Leases Assumed | 44 |
|   | E. | | Preexisting Obligations under Executory Contracts and Unexpired Leases. | 45 |
|   | F. | | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 45 |
|   | G. | | Reservation of Rights | 45 |
|   | H. | | Nonoccurrence of the Plan Effective Date | 46 |
| VI. | | | PROVISIONS GOVERNING DISTRIBUTIONS | 46 |
|   | A. | | Timing and Calculation of Amounts to Be Distributed | 46 |
|   | B. | | Delivery of Distributions | 46 |
|   |   | 1. | Persons Responsible | 46 |
|   |   | 2. | Record Date for Distribution | 46 |
|   |   | 3. | Minimum Distributions | 47 |
|   | C. | | Distributions and Undeliverable or Unclaimed Distributions | 47 |
|   | D. | | Surrender of Cancelled Instruments or Securities | 47 |
|   | E. | | Compliance with Tax Requirements | 47 |
|   | F. | | Allocations | 48 |
|   | G. | | No Postpetition Interest on Claims | 48 |
|   | H. | | Foreign Currency Exchange Rate | 48 |
|   | I. | | Setoffs and Recoupment | 48 |
|   | J. | | Claims Paid or Payable by Third Parties | 49 |
|   |   | 1. | Claims Paid by Third Parties | 49 |
|   |   | 2. | Claims Payable by Third Parties | 49 |
| VII. | | | PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND | |

DISPUTED CLAIMS ................................................................................................ 49
    A.    Allowance of Claims ................................................................................ 49
    B.    No Distributions Pending Allowance ...................................................... 49
    C.    Claims Administration Responsibilities ................................................. 50
    D.    Estimation of Claims................................................................................ 50
    E.    Time to File Objections to Claims .......................................................... 50
    F.    Disallowance of Claims ........................................................................... 50
    G.    Distributions After Allowance ................................................................ 51

VIII.   RELEASES, INJUNCTION AND RELATED PROVISIONS ................................... 51
    A.    Plan Releases, Injunction and Related Provisions ................................. 51
        1.    Discharge of Claims and Termination of Interests in the Debtors.......... 51
        2.    Releases by the Debtors ................................................................... 51
        3.    Releases by Holders of Claims Against the Debtors ............................. 53
        4.    Exculpation from Claims Relating to the Plan ....................................... 54
        5.    Injunction ....................................................................................... 54
    B.    Protections Against Discriminatory Treatment ...................................... 55
    C.    Document Retention ................................................................................ 55
    D.    Term of Injunctions or Stays................................................................... 55
    E.    Unknown Claims ..................................................................................... 55

IX.    CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ..................... 56
    A.    Conditions Precedent to the Effective Date for the Plan ........................ 56
    B.    Waiver of Conditions .............................................................................. 57
    C.    Substantial Consummation ...................................................................... 58
    D.    Effect of Failure of Conditions ............................................................... 58

X.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ................ 58
    A.    Modification and Amendments................................................................ 58
    B.    Effect of Confirmation on Modifications ............................................... 58
    C.    Revocation or Withdrawal of Plan.......................................................... 58

XI.    RETENTION OF JURISDICTION ..................................................................... 59

XII.   MISCELLANEOUS PROVISIONS .................................................................... 60
    A.    Immediate Binding Effect........................................................................ 60
    B.    Additional Documents ............................................................................. 61
    C.    Payment of Statutory Fees ....................................................................... 61
    D.    Reservation of Rights............................................................................... 61
    E.    Successors and Assigns............................................................................ 61
    F.    Notices ..................................................................................................... 62
    G.    Entire Agreement ..................................................................................... 63
    H.    Exhibits ................................................................................................... 63
    I.    Non-Severability of Plan Provisions....................................................... 64
    J.    Closing of Chapter 11 Cases.................................................................... 64
    K.    Conflicts .................................................................................................. 64
    L.    Rates........................................................................................................ 64

**<u>INTRODUCTION</u>**

Red Lobster Management LLC and the other debtors and debtors in possession in the above captioned cases (collectively, the "<u>Debtors</u>"), propose this joint Plan for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in Article I.A of the Plan.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, and projections, as well as a summary and description of the Plan and certain related matters. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Debtors shall pursue Confirmation of the Plan and a Sale Transaction that will be structured as either, at the election of the Purchaser, (i) a sale of all or substantially all of the assets of the Debtors or (ii) a sale of (a) all or substantially all of the assets of RL Management, RL International, and RLSV and (b) all or substantially all of the equity interests in the Reorganized Debtors (excluding RL Management), pursuant to section 1129 of the Bankruptcy Code and one or more Purchase Agreements.

**All holders of Claims entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entireties before voting to accept or reject the Plan.**

## I.    DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms

As used in the Plan, capitalized terms have the meanings set forth below.

"<u>363 Asset Sale</u>" means the sale to Purchaser of all or substantially all of the assets of the Debtors pursuant to section 363 of the Bankruptcy Code and the Purchase Agreement.

"<u>510(b) Claim</u>" means any Claim against the applicable Debtor that is subordinated pursuant to section 510(b) of the Bankruptcy Code.

"<u>Administrative Expense Claim</u>" means a Claim entitled to priority for costs and expenses of administration of the Debtors' Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the applicable Estate and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the applicable Chapter 11 Cases; and (c) all fees and charges assessed against the Debtors' Estates under chapter 11 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

"<u>Administrative Expense Claims Bar Date</u>" means the deadline for Filing requests for payment of Administrative Expense Claims (other than DIP Claims and the Professional Fee Claims, which shall be paid in accordance with the DIP Orders and the Plan, as applicable), which shall be thirty (30) days after the Plan Effective Date, except as specifically set forth to the contrary in the Plan or a Final Order.

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"Allowed" means with respect to a Claim, except as otherwise provided herein: (a) a Claim in a liquidated amount as to which no objection has been Filed prior to or on the applicable objection deadline and that is either evidenced by a timely Filed Proof of Claim or that is not required to be evidenced by a Proof of Claim under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim that is scheduled by the Debtors on their Schedules as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been Filed in an unliquidated or different amount; or (c) a Claim that is deemed "Allowed" (i) pursuant to the Plan, (ii) in any stipulation approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or (iv) by Final Order (including any Claim to which the Debtors had objected or which the Bankruptcy Court had allowed prior to such Final Order); provided, that with respect to a Claim described in clauses (a) through (c) above, such Claim shall be considered Allowed only if and to the extent no objection to the allowance of such Claim has been Filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection had been Filed, it was overruled and such Claim was Allowed by a Final Order; provided, further, that no Claim of any Person subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Person pays in full the amount that it owes to the applicable Debtor, Reorganized Debtor, or Wind-Down Debtor, as applicable.

"Assumed Executory Contracts and Unexpired Leases List" means the list compiled by the Debtors, with the consent of the Purchaser, of Executory Contracts and Unexpired Leases that will (i) in the event of a Reorganized Equity Sale, be assumed by the Debtors (and, in some cases, assigned to the Purchaser) pursuant to the Plan or (ii) in the event of a 363 Asset Sale, be assumed by the Debtors and assigned to the Purchaser, in each case which list may be amended from time to time with the consent of the Purchaser.

"Assumed Liabilities" has the meaning set forth in the Purchase Agreement.

"Assumption and Assignment Procedures" has the meaning assigned to it in the Bidding Procedures Order.

"Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as may be amended from time to time to the extent applicable to the Chapter 11 Cases.

"Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Florida.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the Judicial Code and the general, local, and chambers rules of the

2

Bankruptcy Court, each as it may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

"<u>Bidding Procedures</u>" means, the sale procedures attached to the Bidding Procedures Order as Exhibit 1.

"<u>Bidding Procedures Motion</u>" means that certain *Motion of the Debtors for Entry of Order (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter into Stalking Horse Agreement and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [ECF No. 49].

"<u>Bidding Procedures Order</u>" means that certain *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Enter into Stalking Horse Agreement and to Provide Bidding Protections Thereunder, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [ECF No. 386].

"<u>Business Day</u>" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"<u>Canadian Proceeding</u>" means that certain ancillary proceeding commenced by RL Management, in its capacity as foreign representative of the Debtors, in Canada recognizing the Chapter 11 Cases pursuant to the Companies' Creditors Arrangement Act (Canada, R.S.C. 1985, c. C-36).

"<u>Cash</u>" means legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

"<u>Cash Management Orders</u>" means (i) that certain *Interim Order Granting Debtors' Emergency Motion for Interim and Final Orders (A) Authorizing the Debtors to (I) Continue to Use Existing Cash Management System, (II) Maintain Bank Accounts and Continue Use of Existing Business Forms and Checks, (III) Honor Certain Related Prepetition and Postpetition Obligations, and (IV) Perform Intercompany Transactions, (B) Granting A Waiver of Certain Investment and Deposit Guidelines, and (C) Granting Related Relief* [ECF No. 126], and (ii) that certain *Final Order Granting Debtors' Emergency Motion for Interim and Final Orders (A) Authorizing the Debtors to (I) Continue to Use Existing Cash Management System, (II) Maintain Bank Accounts and Continue Use of Existing Business Forms and Checks, (III) Honor Certain Related Prepetition and Postpetition Obligations, and (IV) Perform Intercompany Transactions, (B) Granting A Waiver of Certain Investment and Deposit Guidelines, and (C) Granting Related Relief* [ECF No. 394].

"Causes of Action" means, collectively, any and all Claims, interests, damages, remedies, demands, rights, actions, suits, claims, cross-claims, counterclaims, third-party claims, obligations, liabilities, defenses, offsets, powers, privileges, licenses, indemnities, guaranties, franchises, debts, liens, losses, costs (including attorneys' fees and costs of defense and investigation), expenses, controversies, assessments, penalties, fines, charges, promises, commitments, appeals, omissions, contingencies, sums of money, judgments, executions and causes of action of any kind, nature or character whatsoever (whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly, indirectly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise). Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and Claims under contracts or for breaches of duties imposed by applicable law; (b) the right to object to or otherwise contest Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Claim under any state, federal or foreign law, including any fraudulent transfer or similar Claim or claim.

"Chapter 11 Case(s)" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all of the Debtors, the jointly administered cases pending for the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

"Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code, to the extent not paid during the course of the Chapter 11 Cases.

"Claims, Noticing, and Solicitation Agent" means Epiq Corporate Restructuring, LLC, as the noticing, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

"Claims Register" means the official register of Claims maintained by the Claims, Noticing, and Solicitation Agent.

"Class" means a category of Claims or Interests established for the purposes of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

"Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code by the United States Trustee, as the membership of such committee is from time to time constituted and reconstituted.

"Confirmation" means entry of a Confirmation Order on the docket of the Chapter 11 Cases of the Debtors within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Date" means a date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases of the Debtors.

"Confirmation Hearing" means a hearing before the Bankruptcy Court at which the Debtors seek entry of the Confirmation Order and final approval of the Disclosure Statement.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents, which shall be in form and substance reasonably acceptable to the Debtors, the Committee, and the Prepetition Term Loan Parties, and, absent repayment in full in Cash of the DIP Facility prior to the entry by of the Confirmation Order, the DIP Secured Parties.

"Consummation" means the occurrence of the Plan Effective Date.

"Control" (including, with its correlative meanings, "controlling," "controlled by," and "under common control with") means, with respect to any Person, the possession, directly or indirectly, of the power to direct the management and policies of such Person whether through the ownership of voting securities, by contract or otherwise.

"Cure Amount" means the amount, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties to such Executory Contract or Unexpired Lease) that is to be assumed by the Debtors (and, in the event of a 363 Asset Sale, potentially assigned to the Purchaser(s)) pursuant to sections 365 or 1123 of the Bankruptcy Code.

"Debtor" or "Debtors" has the meaning set forth in the Introduction.

"Debtor ABL Loan Parties" means RL Management, as the borrower, and the other Debtors party to that certain Prepetition ABL Credit Agreement.

"Definitive Documents" means all documents implementing the Plan and shall include, as applicable and dependent upon the Restructuring Transactions actually implemented: (a) all pleadings Filed by any Debtor in the Chapter 11 Cases (and related orders), including the First Day Pleadings and all proposed orders sought pursuant thereto; (b) the DIP Documents, the DIP Motion, and the DIP Orders; (c) the Plan; (d) the Disclosure Statement; (e) the Solicitation Materials as they relate to the Plan and any motion seeking approval thereof; (f) the memorandum of law in support of approval of the Disclosure Statement and Confirmation of the Plan; (g) the Confirmation Order; (h) each of the documents comprising the Plan Supplement; (i) the Bidding Procedures, the Bidding Procedures Motion and Bidding Procedures Order; (j) to the extent applicable, the Stalking Horse Asset Purchase Agreement and/or any other Purchase Agreement(s) and the order or orders approving the sale or sales contemplated thereby; (k) the Plan Administrator Agreement(s); (l) the New Organizational Documents; (m) the GUC Trust Agreement; (n) any and all filings with or notices to any governmental or regulatory authority, in each case, as may be required under applicable law in connection with the Chapter 11 Cases, the Restructuring Transactions, or the occurrence of the Plan Effective Date; and (o) any and all other Sale Transaction Documents, deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, or instruments or other documents relating to the Sale Transaction or other Restructuring Transactions or reasonably desirable or necessary to consummate and document the Sale Transaction or other Restructuring Transactions, including any agreements, instruments, pleadings, orders, and/or other documentation Filed in the Chapter 11 Cases (including any exhibits, annexes, schedules, amendments, modifications, or supplements made from time to time thereto in accordance with their terms).

"DIP Agent" has the meaning set forth in the Final DIP Order.

"DIP Claims" means all Claims of the DIP Lenders and the DIP Agent derived from, based upon, relating to, or arising under the DIP Facility and Final DIP Order.

"DIP Documents" has the meaning set forth in the Final DIP Order.

"DIP Facility" has the meaning set forth in the Final DIP Order.

"DIP Lenders" has the meaning set forth in the Final DIP Order.

"DIP Motion" means that certain *Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [ECF No. 43].

"DIP Orders" means the Interim DIP Order and the Final DIP Order.

"DIP Secured Parties" has the meaning set forth in the Final DIP Order.

"Disallowed" means, with respect to a Claim, a Claim (or portion thereof) that has been denied, dismissed, or overruled pursuant to the Plan or a Final Order.

"Disclosure Statement" means the disclosure statement for the Plan, including all exhibits and schedules thereto.

"Disputed" means, with respect to a Claim, (a) any such Claim to the extent neither Allowed nor Disallowed under the Plan or a Final Order or deemed Allowed under sections 502, 503 or 1111 of the Bankruptcy Code, or (b) any such Claim to the extent the applicable Debtors, the Plan Administrator, the GUC Trustee, or any party in interest have interposed a timely objection to such Claim before the deadlines imposed by the Confirmation Order, which objection has not been withdrawn or determined by a Final Order. To the extent only the Allowed amount of a Claim is disputed, such Claim shall be deemed Allowed in the amount not disputed, if any, and Disputed as to the balance of such Claim.

"Distribution" means any distribution by the Debtors, the Plan Administrator or GUC Trustee to a holder of an Allowed Claim, as applicable.

"Distribution Date" means (a) for all Allowed Claims other than General Unsecured Claims, the Initial Distribution Date, and the first Business Day after the end of the months of June and December, commencing with the first such date to occur more than ninety (90) days after the Initial Distribution Date and continuing until the Final Distribution Date and (b) for Allowed General Unsecured Claims, such date as the GUC Trustee determines in its sole discretion to effectuate a distribution; provided, however, that a Distribution Date (other than the Initial Distribution Date and the Final Distribution Date) shall not occur if the aggregate value of the consideration to be distributed on account of all Allowed Claims on such Distribution Date is less than $50.00, in which case the amount to be distributed shall be retained and added to the amount to be distributed on the next Distribution Date.

"Distribution Record Date" means (i) seven (7) days prior to the Plan Effective Date; or (ii) such other date as agreed upon among the Debtors and the Prepetition Term Loan Agent.

"Equityholder Litigation Claims" means claims or causes of action, if any, against (i) direct and indirect equityholders of the Debtors and (ii) former officers and directors of the Debtors (other than the officers and directors of the Debtors as of the Petition Date), which shall in each case be vested in the GUC Trust on the Plan Effective Date.

"Estate" or "Estates" means the estate(s) of a Debtor(s) created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Chapter 11 Case.

"Exculpated Parties" means (a) the directors and officers of each of the Debtors and the members of any board of managers or directors of each Debtor, and in each case, who served the Debtors in such capacities at any time between the Petition Date and the Plan Effective Date; (b) all Professionals and agents retained by the Debtors in the Debtors' Chapter 11 Cases; (c) the Committee and those individual members of the Committee who vote to accept the Plan; (d) all Professionals and agents retained by the Committee in the Debtors' Chapter 11 Cases; (e) the Plan Administrator and GUC Trustee; and (f) with respect to each Person described in clauses (a) through (e) of this definition, each of such Person's employees, directors, managers, partners, committee members, attorneys, representatives, successors, assigns, heirs, executors, estates, and nominees, solely in their capacity as such.

"Executory Contract" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"File," "Filed," or "Filing" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court (including requests for allowance of an Administrative Expense Claim) or, with respect to the filing of a Proof of Claim, the Claims, Noticing, and Solicitation Agent.

"Final DIP Order" means that certain *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral on a Limited Basis, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [ECF No. 393].

"Final Distribution Date" means the Distribution by the Plan Administrator and GUC Trustee, as applicable, that satisfies all Claims to the extent provided in accordance with this Plan.

"Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, stayed, modified, or amended, and as to which the time to appeal, seek leave to appeal, or seek certiorari has expired and no appeal or petition for certiorari or motion for leave to appeal has been timely taken, or as to which any appeal that has been taken or any petition for certiorari or motion for leave to appeal that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari or leave to appeal could be sought or the new trial, reargument, leave to appeal, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice, provided, however, that no order or judgment shall fail to be a "Final Order" solely

because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

"First Day Pleadings" means those certain motions, applications, and related pleadings Filed by the Debtors on or about the Petition Date.

"General Unsecured Claim" means, collectively, any Claim against one or more of the Debtors that is not a/an Assumed Liability, Administrative Expense Claim, Priority Tax Claim or Other Priority Claim, Professional Fee Claim, Intercompany Claim, Prepetition Term Loan Claim, or Miscellaneous Secured Claim. For the avoidance of doubt, Rejection Claims are General Unsecured Claims and any deficiency Claim of a holder of Prepetition Term Loan Claims are General Unsecured Claims. To the extent applicable, the limitations imposed by section 502 of the Bankruptcy Code shall apply to the relevant General Unsecured Claim, including subsection 502(b)(6) and subsection 502(b)(7) thereof.

"Governance Documents" means, with respect to any Person that is an entity, such entity's organizational and governance documents, including its certificate or articles of incorporation, certificate of formation or certificate of limited partnership, its bylaws, limited liability company agreement, operating agreement, or limited partnership agreement, and any indemnification agreements, stockholders agreements, or registration rights agreements (or equivalent governing documents of any of the foregoing).

"Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"GUC Fund" means an amount equal to the Plan Funding Amount *less* the amounts needed to satisfy all Allowed Priority Tax Claims and Allowed Other Priority Claims *less* the amount of Allowed Administrative Expense Claims to the extent they are not Assumed Liabilities (except for DIP Claims and Allowed Professional Fee Claims). The GUC Fund will be funded through either Excluded Cash (as defined in the Stalking Horse Asset Purchase Agreement), DIP Loans (as defined in the DIP Motion), or, in the event a party other than the Stalking Horse Purchaser is the Purchaser, Cash proceeds from the Sale Transaction.

"GUC Litigation Proceeds" means forty percent (40%) of the net proceeds recovered by the GUC Trust from the Equityholder Litigation Claims.

"GUC Trust" the trust established in accordance with Article IV.C.11 of the Plan.

"GUC Trust Agreement" means the agreement to be executed between the GUC Trustee and the Debtors establishing the GUC Trust, which will be prepared by the Committee, filed with the Plan Supplement, and reasonably acceptable to the Committee, the Debtors and the Prepetition Term Loan Agent.

"GUC Trust Assets" means the GUC Fund, the Equityholder Litigation Claims, and the resulting GUC Litigation Proceeds, if any.

"GUC Trust Documents" means the GUC Trust Agreement and any ancillary documents relating thereto.

"GUC Trustee" means the Person to be chosen by the Committee to serve as trustee of the GUC Trust, which Person shall be identified in the Plan Supplement and be reasonably acceptable to the Prepetition Term Loan Agent and the Debtors, or any successor trustee of the GUC Trust.

"Impaired" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Initial Distribution Date" means, except with respect to the GUC Trust, the Plan Effective Date or as soon as reasonably practical thereafter; provided, however, that in no event shall the Initial Distribution Date be more than thirty (30) days after the Plan Effective Date unless otherwise ordered by the Bankruptcy Court; provided, further, that, for the avoidance of doubt, the Initial Distribution Date for Distributions made by the GUC Trust shall not occur until the GUC Trustee, in its discretion, determines that it is cost-effective to make such Distribution.

"Intercompany Claim" means any Claim against a Debtor held by another Debtor.

"Interest" means the rights of the holders of the common stock, membership interests or other equity interests issued by a Debtor and outstanding immediately prior to the Petition Date, including any options, warrants or other rights with respect thereto, or any other instruments evidencing an ownership interest in the applicable Debtor and the rights of any Person to purchase or demand the issuance of any of the foregoing.

"Interim DIP Order" means that certain *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral on a Limited Basis, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [ECF No. 127].

"Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"Miscellaneous Secured Claim" means any Secured Claim against any applicable Debtor, other than the DIP Claims and the Prepetition Term Loan Lender Claims.

"Miscellaneous Secured Claims Collateral" means any property subject to a Lien securing a Miscellaneous Secured Claim, which Lien is senior in priority to the Liens of the Prepetition Term Loan Parties under applicable law and the DIP Orders.

"Miscellaneous Secured Claim Sale Proceeds" means the net proceeds, if any, attributable to a sale of any Miscellaneous Secured Claims Collateral.

"New Board" means, in the event of a Reorganized Equity Sale, the respective board of managers or member managers (or other applicable governing body), as applicable, of the Reorganized Debtors immediately following the occurrence of the Plan Effective Date, to be appointed in accordance with the Plan and the New Organizational Documents.

"New Organizational Documents" means, collectively, the Governance Documents of the Reorganized Debtors, which shall be determined by and be acceptable in form and substance solely to the Purchaser.

"New Reorganized Debtor Equity" means the equity interests in the Reorganized Debtors to be issued on the Plan Effective Date.

"Other Priority Claim" means any unsecured Claim other than an Administrative Expense Claim, Intercompany Claim or Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

"Petition Date" means May 19, 2024.

"Plan" means this joint plan of reorganization or liquidation, as applicable, as it pertains to the Debtors, including any supplements and exhibits hereto, as it and they may be altered, amended, modified, or supplemented from time to time in accordance with their terms.

"Plan Administrator" means the Person, or any successor thereto, selected by the Debtors, with the consent of the Purchaser and the Prepetition Term Loan Agent and in consultation with the Committee, to administer RL Management and the Wind-Down Debtor(s), which will have all powers and authority set forth in Article IV.C.8 of the Plan.  Subject to the approval of the Debtors, the Purchaser, and the Prepetition Term Loan Agent, the GUC Trustee may also be the Plan Administrator.

"Plan Administrator Agreement" means the agreement between the Plan Administrator and the Debtors, in form and substance reasonably acceptable to the Plan Administrator, the Debtors, the Committee, the Purchaser, and the Prepetition Term Loan Agent regarding the administration of RL Management and such Wind-Down Debtor(s)' assets and other matters related to their applicable Estate(s), which shall be Filed as part of the Plan Supplement.

"Plan Administrator Documents" means the Plan Administrator Agreement and related ancillary documents.

"Plan Effective Date" means the date that is the first Business Day after the Confirmation Date on which (i) no stay of the Confirmation Order is in effect and (ii) all conditions precedent to the occurrence of the Plan Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan. The Debtors shall File a notice of the occurrence of the Plan Effective Date on the docket of these Chapter 11 Cases.

"Plan Funding Amount" means an amount equal to (i) the sum of (a) $2,600,000, (b) any unused amounts in the Professional Fee Reserve (as defined in the Final DIP Order) allocated to payment of the fees and expenses of the Committee's professionals, and (c) any unused amounts in the Professional Fee Reserve allocated to payment of the fees and expenses of the Debtors' Professionals, provided that such amount shall not exceed $250,000, *less* (ii) the Wind-Down Amount. The "Plan Funding Amount" shall be funded through Excluded Cash (as defined in the Stalking Horse Asset Purchase Agreement), DIP Loans (as defined in the DIP Motion) or, in the

event a party other than the Stalking Horse Bidder is named as Purchaser, the Cash proceeds from the Sale Transaction.

"Plan Supplement" means the compilation of documents and forms of documents, schedules and exhibits (or substantially final forms thereof), in each case as applicable and dependent upon the Restructuring Transactions actually implemented, including the following documents: (a) the Purchase Agreement; (b) the New Organizational Documents; (c) to the extent known, the identities of the members (as applicable) of the New Board; (d) the Schedule of Retained Causes of Action; (e) the Assumed Executory Contracts and Unexpired Leases List; (f) the form of the Plan Administrator Agreement; (g) the form of the GUC Trust Agreement; and (h) any and all other documentation that is contemplated by this Plan.

"Prepetition ABL Agent" shall have the meaning set forth in the Final DIP Order.

"Prepetition ABL Credit Agreement" shall have the meaning set forth in the Final DIP Order.

"Prepetition Term Loan Agent" shall have the meaning set forth in the Final DIP Order.

"Prepetition Term Loan Claims" shall mean all Claims arising in connection with the Prepetition Term Loan Facility (as defined in DIP Motion) which shall be Allowed in the principal amount of $264,720,000 *less* the Roll-Up Amount (as defined in the Final DIP Order) *plus* accrued interest, costs and expenses (including professional fees), that are payable in accordance with the Final DIP Order.

"Prepetition Term Loan Parties" shall have the meaning set forth in the Final DIP Order.

"Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

"Professional" means any Person: (a) retained pursuant to a Final Order of the Bankruptcy Court in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code. For the avoidance of doubt, the "Professionals" shall include (i) King & Spalding LLP, co-counsel to the Debtors, (ii) Berger Singerman LLP, co-counsel to the Debtors, (iii) Blake, Cassels & Graydon LLP, special Canadian counsel to the Debtors, (iv) Keen-Summit Capital Partners LLC, the Debtors' real estate advisor, (v) Epiq Corporate Restructuring, LLC, the Debtors' claims agent, and (vi) Hilco Corporate Finance, LLC, the Debtors' investment banker.

"Professional Fee Claims" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred

through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

"Professional Fee Escrow Account" means the Professional Fee Reserve funded by the Debtors in accordance with the Final DIP Order as well as any portion of the Cash proceeds of the Sale Transaction remitted to the Professional Fee Escrow Account on or prior to the Plan Effective Date in accordance with Article II.B of the Plan and the DIP Orders, which shall be allocated to the Debtors' Estates.

"Professional Fee Escrow Amount" means the aggregate amount of Professional Fee Claims and other fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Plan Effective Date and in accordance with the Final DIP Order, which estimates shall be delivered by the Professionals to the Debtors, the Committee, and the Prepetition Term Loan Parties as set forth in Article II.B.1 of the Plan, and which shall be allocated to the Debtors' Estates for the exclusive benefit of the Professionals (subject to the terms of the Final DIP Order).

"Proof of Claim" means a written proof of Claim Filed against a Debtor in the Chapter 11 Cases.

"Purchase Agreement" means: (a) the asset purchase agreement or equity purchase agreement executed by the Successful Bidder as approved by the Bankruptcy Court (including the Stalking Horse Purchase Agreement), or (b) any agreements, contracts, certificates or other documents executed in furtherance of the Restructuring Transactions, including a Reorganized Equity Sale. Any Purchase Agreement shall include language that any Avoidance Actions against non-insiders of the Debtors purchased thereunder (other than the Equityholder Litigation Claims) shall be waived and extinguished. For the avoidance of doubt, such waived Avoidance Claims shall not include any claims or causes of action against current or former equityholders of the Debtors or their Affiliates or any other Person that is the subject of the Equityholder Litigation Claims.

"Purchaser(s)" means, one or more Persons that, pursuant to the Bidding Procedures Order, either (i) purchases all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code (including, to the extent applicable, pursuant to the Purchase Agreement) or (ii) pursuant to this Plan, purchases (a) all or substantially all of the assets of RL Management, RLSV, and RL International and (b) except with respect to RL Management, the New Reorganized Debtor Equity.

"Qualified Bid" has the meaning set forth in the Bidding Procedures Order.

"Qualified Bidder" has the meaning set forth in the Bidding Procedures Order.

"Quarterly Fees" has the meaning set forth in Article XII.C.

"Reinstated" means, with respect to a Claim or an Interest, that such Claim or Interest shall be rendered Unimpaired under the Plan in accordance with section 1124(2) of the Bankruptcy Code.

"Rejection Claim" means claims of any non-Debtor counterparty to any unexpired lease or any executory contract arising on account of the rejection of such lease or contract during the administration of these Chapter 11 Cases under section 365 of the Bankruptcy Code or pursuant to the Plan.

"Related Party" means, each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such equity interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of any Person), accountants, investment bankers, representatives, and other professionals and advisors, and any such Person's respective successors, assigns, heirs, executors, estates, and nominees.

"Released Party" means, in its capacity as such, each of: (a) the Debtors' Professionals; (b) the current officers of each of the Debtors and the Debtors' current manager and/or director, Mr. Lawrence Hirsch; (c) the DIP Lenders and the DIP Agent and their respective Related Parties; (d) the Prepetition Term Loan Parties and their respective Related Parties; (e) the Purchaser; (f) the Committee and those individual members of the Committee, solely in their capacities as such, who vote to accept the Plan; (g) the Committee's Professionals; (h) the Plan Administrator and GUC Trustee; and (i) in each case, the respective Related Party of each of the foregoing Persons.

"Releasing Party" means, in its capacity as such, each of: (a) the DIP Lenders and the DIP Agent; (b) the Prepetition Term Loan Parties; (c) all holders of Claims eligible to vote on the Plan that vote to accept the Plan; (d) the Purchaser; (e) the Committee and those individual members of the Committee, solely in their capacities as such, who vote to accept the Plan; and (f) the Plan Administrator and GUC Trustee.

"Reorganized Debtors" means except for any Wind-Down Debtors, the Debtors on and after the Plan Effective Date, together with any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, whether in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Plan Effective Date.  For the avoidance of doubt, Reorganized Debtors shall include RL Management, but shall not include RL International or RLSV.

"Reorganized Equity Sale" means the sale to Purchaser of (i) all or substantially all of the assets of Debtor RL Management, RLSV, and RL International and (ii) all or substantially all of the equity interests in the Reorganized Debtors (excluding RL Management), pursuant to section 1129 of the Bankruptcy Code and the Purchase Agreement.

"Restructuring Transactions" means any transactions described in, approved by, contemplated by, or necessary to effectuate the Plan.

"RL International" means Red Lobster International Holdings LLC, a Delaware limited liability company.

"RL Management" means Red Lobster Management LLC, a Delaware limited liability company.

"RLSV" means RLSV, Inc., a Florida corporation.

"Sale Proceeds" means, with respect to any Sale Transaction, the net Cash proceeds and/or other proceeds or consideration received by the Debtors or the Reorganized Debtors (whether directly or on account of the purchase of their interests in the Debtors) in connection with such Sale Transaction(s).

"Sale Transaction" means either the 363 Asset Sale or Reorganized Equity Sale.

"Sale Transaction Documents" means all documents executed and delivered by the Debtors and, as applicable, the Purchaser, in connection with the Sale Transaction or other Restructuring Transaction, which shall be reasonably acceptable to the Debtors.

"Schedule of Retained Causes of Action" means the schedule of the Causes of Action of the Debtors or the Debtors' Estates that are not released, waived, or transferred pursuant to the Plan, to be Filed as part of the Plan Supplement, as the same may be amended, modified, or supplemented from time to time by the Debtors, with the consent of the Prepetition Term Loan Parties.

"Schedules" means, the schedules of assets and liabilities and the statement of financial affairs Filed by each Debtor with the Bankruptcy Court pursuant to sections 521 and 1106(a)(2) of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement may be amended or supplemented by such Debtor at any point prior to the Plan Effective Date.

"Secured Claim" means a Claim (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a Secured Claim.

"Securities Act" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa.

"Security" means a security, as defined in Section 2(a)(1) of the Securities Act.

"Sold Equity Interest" shall mean any Interests purchased by the Purchaser in any 363 Asset Sale.

"Solicitation Materials" means the materials to be distributed together with the Plan and Disclosure Statement to holders of Claims entitled to vote on the Plan, which shall be in form and substance reasonably acceptable to the Debtors and the Prepetition Term Loan Parties.

"Successful Bidder" has the meaning set forth in the Bidding Procedures Order.

"Surviving DIP Provisions" means any provisions of the DIP Documents governing the DIP Facility that by their terms survive the payoff and termination of the DIP Documents.

"Stalking Horse Purchase Agreement" means that certain Asset Purchase Agreement, dated as of May 19, 2024, by and between RL Management and RL Purchaser as it may be amended or modified.

"Stalking Horse Purchaser" means RL Purchaser, and (or as applicable, together with) any Affiliate (as defined in the Stalking Horse Purchase Agreement) thereof to which RL Purchaser assigns any of its rights, interests and obligations under any Purchase Agreement (including the Stalking Horse Purchase Agreement).

"Takeback Loans" means term loans in the original principal sum of $175,000,000 issued to or guaranteed by the Purchaser (or one or more of its Affiliates, as designated by Purchaser) and Reorganized Debtors (excluding RL Management) upon the Plan Effective Date in connection with a Reorganized Equity Sale or other Restructuring Transactions.

"U.S. Trustee" means the Office of the United States Trustee for the Middle District of Florida.

"Unexpired Lease" means a lease to which one or more Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"Unimpaired" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

"WARN Actions" means causes of actions commenced pursuant the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. or the state law equivalent, including those certain adversary proceedings styled as (i) *Kyle Zakowicz v. Red Lobster Management LLC, et al.*, No. 24-02486, Adv. Pro. No. 24-00048 (Bankr. M.D. Fla. 2024); (ii) *Donna Lowe v. Red Lobster Hospitality LLC, Red Lobster Restaurants LLC and Red Lobster Seafood Co*., No. 24-02486, Adv. Pro. No. 24-00049 (Bankr. M.D. Fla. 2024); and (iii) *George Parker v. Red Lobster Hospitality LLC, Red Lobster Restaurants LLC and Red Lobster Seafood Co., LLC*, No. 24-02486, Adv. Pro. No. 24-00050 (Bankr. M.D. Fla. 2024).

"WARN Action Settlement Funds" means an amount up to $250,000 to be used by the Wind-Down Debtors or Reorganized Debtors, as applicable, to satisfy all, or a portion of, the Allowed Other Priority Claims resulting from WARN Actions commenced against the Debtors. For the avoidance of doubt, the "WARN Action Settlement Funds" shall be included in the Plan Funding Amount.

"Wind Down" means, following the closing of the Sale Transaction, the process to wind down, dissolve and liquidate the applicable Debtors' Estates and distribute the Wind-Down Assets in accordance with Article IV.C of the Plan.  With respect to Wind-Down Debtors only, a Wind Down may include conversion or dismissal of such Chapter 11 Cases.

"<u>Wind-Down Amount</u>" means, (i) if a 363 Asset Sale is consummated, an aggregate amount of $900,000 and (ii) if a Reorganized Equity Sale is consummated, an aggregate amount of $600,000, in each case for the reasonable activities and expenses necessary to effectuate the Wind Down of the Debtors' Estates, which budget, activities, and reasonable expenses shall be subject to the consent of the Purchaser, the Committee, and, absent repayment in full in Cash of the DIP Facility prior to the Plan Effective Date, the DIP Lenders.

"<u>Wind-Down Assets</u>" means, the assets of the Debtors' Estates to vest in the Wind-Down Debtors on the Plan Effective Date, which shall be administered by the Plan Administrator, including but not limited to, (i) if applicable, the Sale Proceeds to the extent not distributed on the Plan Effective Date; (ii) any Causes of Action retained by the Debtors (excluding the Equityholder Litigation Claims and the resulting GUC Litigation Proceeds, if any); and (iii) the Wind-Down Amount.

"<u>Wind-Down Budget</u>" means the agreed upon budget for the Wind-Down Amount, which shall be in form and substance reasonably acceptable to the Prepetition Term Loan Agent and the Committee.

"<u>Wind-Down Debtor(s)</u>" means RL International and RLSV.

"<u>Wind-Down Reversionary Assets</u>" means, any Wind-Down Assets that remain after the Plan Administrator has implemented and completed the Wind Down, including the payment or reserving of fees incurred and unpaid in connection with the Wind Down, and subject to the Final DIP Order, any remaining funds held in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more of the Final Orders (except any remaining amounts used to fund the GUC Trust Assets as set forth in this Plan).

## B.     Rules of Interpretation

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (4) any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the

Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (14) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (15) any immaterial effectuating provisions may be interpreted in a manner that is consistent with the overall purpose and intent of the Plan; (16) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (17) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (18) any term used in capitalized form herein that is not otherwise defined herein but that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Subject to the requirements of any Definitive Document, any action to be taken on the Plan Effective Date may be taken on or as soon as reasonably practicable after the Plan Effective Date.

### D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate or limited liability company governance matters relating to the Debtors or

the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the applicable Debtor or the Reorganized Debtors, as applicable.

**E.      Reference to Monetary Figures**

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

**F.      Controlling Document**

In the event of an inconsistency between the Plan and the Plan Supplement with respect to the Plan, the terms of the relevant document in the Plan Supplement with respect to the Plan shall control unless otherwise specified in such Plan Supplement document with respect to the Plan. In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; provided, however, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of the Plan.

**G.      Consent Rights of the Consenting Lenders**

Notwithstanding anything in the Plan to the contrary, any and all information and consultation rights, with respect to the form and substance of the Plan, all exhibits to the Plan, and the Plan Supplement, and any other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by reference and fully enforceable as if stated in full herein. Failure to reference the rights referred to in the immediately preceding sentence in the Plan shall not impair such rights.

The signing of the applicable Definitive Documents will be subject to, among other things, the negotiation by the Debtors, the DIP Agent, Prepetition Term Loan Agent, and, to the extent applicable, the Successful Bidder and the Plan Administrator, of acceptable terms and conditions for the Definitive Documents as well as additional legal, accounting, financial, tax, business and regulatory due diligence. The Plan, the Confirmation Order, GUC Trust Agreement, GUC Trust Documents and Plan Administrator Agreement shall be in form and substance acceptable to the Committee.

**II.      UNCLASSIFIED CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, DIP Claims and Priority Tax Claims have not been classified against the Debtors.

### A.    Administrative Expense Claims

Requests for payment of Administrative Expense Claims (except for DIP Claims and Professional Fee Claims) must be Filed and served no later than the applicable Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order. Holders of Administrative Expense Claims that are required to File and serve a request for payment of such Claims that fail to do so shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, Wind-Down Debtor(s), or the GUC Trustee, as applicable, or their respective property, and such Administrative Expense Claims shall be deemed discharged as of the Plan Effective Date without the need for any objection or any notice to any Person or an order of the Bankruptcy Court.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, to the extent an Allowed Administrative Expense Claim has not been paid in full or otherwise satisfied during the Chapter 11 Cases, each holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims and DIP Claims) shall receive from the Debtors, in full and final satisfaction of its Allowed Administrative Expense Claim, payment in full in Cash in accordance with the following: (1) if such Administrative Expense Claim is Allowed on or prior to the Plan Effective Date, on the Plan Effective Date; (2) if such Administrative Expense Claim is not Allowed as of the Plan Effective Date, no later than thirty (30) days after the date on which such Administrative Expense Claim is Allowed; (3) if such Allowed Administrative Expense Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Expense Claim; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

### B.    Professional Fee Claims

#### 1.    Final Fee Applications and Payment of Professional Fee Claims

In accordance with Local Rule 2016-1(c)(2)(C), all final requests for payment of Professional Fee Claims must be Filed no later than fourteen (14) days prior to the Confirmation Hearing unless ordered otherwise. The final request for payment may include an estimate of the amount of additional fees and costs to be incurred by each Professional through the Confirmation Hearing. If the actual fees for services rendered and costs incurred during the estimated period for each Professional exceed the estimate, the final application may be supplemented up to fourteen (14) days after entry of the Confirmation Order. If the actual fees for services rendered and costs incurred during the estimated period are less than the estimated amount, approval of such application authorizes payment of the actual fees and costs not to exceed the estimated amounts. The Bankruptcy Court shall determine the Allowed amounts of all Professional Fee Claims in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, Local Rules and prior Bankruptcy Court orders.

2.      Professional Fee Escrow Accounts

The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals in respect of Allowed Professional Fee Claims until all Allowed Professional Fee Claims have been paid in full, and the funds held in the Professional Fee Escrow Account shall not be considered property of the Debtors' Estates; provided, that when all Allowed Professional Fee Claims have been paid in full any funds remaining in the Professional Fee Reserve shall (i) in the event the Stalking Horse Bidder is the Purchaser, be disbursed to the Purchaser and (ii) in the event a party other than the Stalking Horse bidder is Purchaser, shall be returned to the DIP Agent (excluding the Plan Funding Amount and any remaining amounts used to fund the GUC Trust Assets as set forth in this Plan). No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held therein.

3.      Post-Confirmation/Pre-Effective Date

From and after the Confirmation Date until the Effective Date, the Debtors, without the necessity for any approval by the Bankruptcy Court, shall pay the reasonable fees and necessary and documented expenses of the Professionals during such period, up to the amount in the Professional Fee Escrow Amount.

4.      Post-Effective Date Fees and Expenses

Upon the Plan Effective Date, any requirement that the Reorganized Debtors', Wind-Down Debtors', or GUC Trust's Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Reorganized Debtors, the Plan Administrator, and the GUC Trustee, as applicable, may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## C.      DIP Claims

The DIP Claims shall be Allowed in the amount outstanding under the DIP Facility (determined as of consummation of the Sale Transaction or other Restructuring Transaction). If a Sale Transaction is consummated pursuant to the Stalking Horse Asset Purchase Agreement, on the Closing Date (as defined in the Stalking Horse Asset Purchase Agreement), in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim shall be satisfied in full through a credit bid by the Stalking Horse Bidder of all its claim for the Purchased Assets (as defined in the Stalking Horse Asset Purchase Agreement) pursuant to the Stalking Horse Asset Purchase Agreement and in accordance with section 363(k) of the Bankruptcy Code.

If the Sale Transaction is consummated pursuant to a Purchase Agreement executed by a Bidder other than the Stalking Horse Bidder, upon closing of such Sale Transaction, except to the extent that a holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, each Allowed DIP Claim shall be indefeasibly paid in full, in Cash.

If the Sale Transaction is a Reorganized Equity Sale conducted hereunder, then on the Plan Effective Date, in full and final satisfaction, settlement, release and discharge of, and in exchange for, each Allowed DIP Claim shall be satisfied through the transfer of specified assets, assumption and assignment of specified contracts and leases, assumption of specified liabilities, issuance of equity in the Reorganized Debtors and issuance of Takeback Loans ($175 million), all in accordance with the Purchase Agreement.

Contemporaneously with the foregoing treatment, the DIP Facility and the DIP Documents shall be deemed cancelled, all commitments under the DIP Documents shall be deemed terminated, all DIP Liens shall automatically terminate, and all collateral subject to such DIP Liens shall be automatically released, in each case without further action by the DIP Agent or the DIP Lenders. The DIP Agent and the DIP Lenders shall take all actions to effectuate and confirm such termination, release and discharge as reasonably requested by the Debtors or the Purchaser; provided that the Surviving DIP Provisions shall survive in accordance with the terms of such DIP Documents.

From and after the consummation of a Reorganized Equity Sale, the Reorganized Debtors shall, without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the legal, professional, and other fees and expenses of the DIP Agent and Prepetition Term Loan Agent within three (3) business days of such parties' delivery of an invoice to the Reorganized Debtors, and such parties shall not be required to comply with the procedures set forth in paragraph 41 of the Final DIP Order with respect to such fees.

**D.  Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the Allowed Priority Tax Claims, each holder of an Allowed Priority Tax Claim shall receive treatment consistent with section 1129(a)(9) of the Bankruptcy Code by the applicable Debtor against which such Allowed Priority Tax Claims are validly asserted.

## III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.  Classification of Claims and Interests**

The Classes of Claims and Interests listed below classify Claims and Interests for all purposes, including voting on, and distributions pursuant to, the Plan in accordance with sections 1122 and 1123(a) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that (i) the Claim or Interest is an Allowed Claim or Interest and qualifies within the description of that Class and it shall be deemed classified in a different Class to the extent that it qualifies within the description of such different Class and (ii) such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Plan Effective Date. Holders of Allowed Claims against more than one Debtor shall be treated as having a single Allowed Claim solely for purposes of any Distribution.

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are (i) Impaired and Unimpaired under the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii)

presumed to accept or deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, DIP Claims and Priority Tax Claims have not been classified. The classification of Claims and Interests set forth herein shall apply separately to each Debtor. Certain of the Debtors may not have Claims or Interests in a particular Class, and any such Classes shall be treated as set forth in Article III.B of the Plan.

1.  Class Identification

| Class | Designation | Impairment | Voting Rights |
|---|---|---|---|
| Class 1 | Miscellaneous Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.  Treatment of Claims and Interests**

The holders of the following Claims and Interests against the Debtors shall receive the treatment described below in full and final satisfaction of such Claim or Interest.

1.  Class 1 – Miscellaneous Secured Claims

(a)  *Classification*: Class 1 consists of all Miscellaneous Secured Claims against the Debtors.

*Treatment*: The Plan will not alter any of the legal, equitable and contractual rights of the holders of Allowed Miscellaneous Secured Claims. Each holder of an Allowed Class 1 Claim shall receive from the Debtors, subject to DIP Agent consent but otherwise in the sole discretion of the Debtors in full satisfaction, settlement, release, and extinguishment of such Claim: (a) Cash equal to the amount of such Allowed Miscellaneous Secured Claim solely from the Miscellaneous Secured Claim Sale Proceeds on or as soon as practicable after the latest of (i) the Effective Date, (ii) the date that such Miscellaneous Secured Claim becomes Allowed, and (iii) a date agreed to by the Debtors and the holder of such Class 1 Claim; (b) the property securing such Miscellaneous Secured Claim without

22

representation or warranty by or recourse against the Debtors; (c) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code; or (d) such other less favorable treatment on such other terms and conditions as may be agreed upon in writing by the holder of such Claim and the Debtors; provided, however, that any Allowed Class 1 Claim that constitutes an Assumed Liability under the Purchase Agreement that remains unpaid as of the Closing Date shall be paid in full in Cash by the Purchaser in accordance with the terms of the documents or agreements memorializing the Allowed Class 1 Claim.

(b)     *Voting*: Class 1 is Unimpaired under the Plan, and the holders of Allowed Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Allowed Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.     Class 2 – Other Priority Claims

(a)     *Classification*: Class 2 consists of all Other Priority Claims.

(b)     *Treatment*: On the Plan Effective Date, except to the extent that a holder of an Allowed Other Priority Claim has agreed to a less favorable treatment, each holder of an Allowed Other Priority Claim shall receive from the Debtors, at the option of the Debtors with the consent of the Prepetition Term Loan Agent, (a) payment in full in Cash or such other treatment that would render its Allowed Other Priority Claim Unimpaired or (b) such other less favorable treatment on such other terms and conditions as may be agreed upon in writing by the holder of such Claim and the Debtors. The WARN Action Settlement Funds shall be used by the Debtors to satisfy all, or a portion of, Allowed Other Priority Claims resulting from WARN Actions commenced against the Debtors.  Allowed Other Priority Claims shall be satisfied exclusively from the Plan Funding Amount. The treatment set forth herein with respect to the holders of Allowed Class 2 Claims shall be in full and final satisfaction of the Allowed Class 2 Claims.

(c)     *Voting*: Class 2 is Unimpaired under the Plan and the holders of Allowed Class 2 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Allowed Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3.      Class 3 – Prepetition Term Loan Claims

(a)      *Classification*: Class 3 consists of all Prepetition Term Loan Claims against the Debtors.

(b)      *Treatment*: On the Plan Effective Date and each Distribution Date thereafter, as applicable, except to the extent that a holder of any Prepetition Term Loan Claims has agreed to a less favorable treatment, each holder of a Prepetition Term Loan Claim shall (i) in the event of a Reorganized Equity Sale, receive its Pro Rata share of (a) sixty percent (60%) of all net proceeds of the Equityholder Litigation Claims from the GUC Trust and (b) the net Cash proceeds of the Sale Transaction from the Debtors (except for the Professional Fee Escrow Amount, Wind-Down Amount, and the Plan Funding Amount), and (ii) in the event of a 363 Asset Sale, receive its Pro Rata share of (y) the net Cash proceeds of the Sale Transaction from the Debtors (except for the Professional Fee Escrow Amount, Wind-Down Amount and the Plan Funding Amount) and the sale of any Wind-Down Reversionary Assets and (z) sixty percent (60%) of all net proceeds of the Equityholder Litigation Claims from the GUC Trust.

(c)      *Voting*: Class 3 is Impaired under the Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.      Class 4 – General Unsecured Claims

(a)      *Classification*: Class 4 consists of all General Unsecured Claims.

(b)      *Treatment*: On the Plan Effective Date, each holder of an Allowed Class 4 General Unsecured Claim (except for deficiency Claims held by a holder of a Prepetition Term Loan Claim) shall receive, in accordance with the GUC Trust Documents, its Pro Rata Share of the beneficial interests in the GUC Trust and the right to receive its respective Pro Rata Share of any available GUC Litigation Proceeds or other GUC Trust Assets, if any. Holders of Allowed General Unsecured Claims against more than one Debtor shall be treated as having a single Allowed General Unsecured Claim solely for purposes of any Distribution.  The treatment set forth herein with respect to the holders of Allowed Class 4 Claims (except for deficiency Claims held by a holder of a Prepetition Term Loan Claim) shall be in full and final satisfaction of the Allowed Class 4 Claims. Notwithstanding anything to the contrary contained in this Plan, no Distribution shall be made to Prepetition Term Loan Lenders on account of Allowed Class 4 Claims and the Prepetition Term Loan Lenders shall not be beneficiaries of the GUC Trust.

24

(c)     *Voting*: Class 4 is Impaired under the Plan. Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.     Class 5 – Intercompany Claims

(a)     *Classification*: Class 5 consists of all Intercompany Claims.

(b)     *Treatment*: On the Plan Effective Date, all Intercompany Claims shall be cancelled, released, and extinguished without distribution, and will be of no further force or effect.

(c)     *Voting*: Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

6.     Class 6 – Interests in Debtors

(a)     *Classification*: Class 6 consists of all Interests in the Debtors.

(b)     *Treatment*: On the Plan Effective Date, all Interests (excluding any Sold Equity Interests) in the Debtors shall be cancelled, released and extinguished without distribution, and will be of no further force or effect.

(c)     *Voting*: Class 6 is Impaired under the Plan. Holders of Interests in Class 6 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

Except as set forth in Article VIII of this Plan, nothing contained in this Plan, the Confirmation Order or Definitive Documents shall compromise, modify or affect the rights of the Prepetition Term Loan Agent and Prepetition Term Loan Lenders to pursue additional recoveries from any Person or entity that is not a Debtor in these Chapter 11 Cases.

## C.     Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims entitled to vote against the Debtors. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## D.     Subordinated Claims

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective treatment thereof under the Plan take

into account the relative priority of the Claims in each Class, whether arising under a contract, principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### E.    Elimination of Vacant Classes

Any Class that does not have a Claim or Interest in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for all purposes.

## IV.    MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    General

#### 1.    General Settlement of Claims and Interests

After the Plan Effective Date, the Plan Administrator, Reorganized Debtors, the Wind-Down Debtor(s), and/or the GUC Trustee, as applicable, may compromise and settle any Claim and/or Cause of Action against the Debtors' Estate(s) without any further notice to or action, order, or approval of the Bankruptcy Court.

#### 2.    Restructuring Transactions

On or about the Plan Effective Date, the Debtors, the Reorganized Debtors, the Wind-Down Debtor(s), the Plan Administrator, and the GUC Trustee, as applicable, may take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including: (a) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Persons may agree, including the documents comprising the Plan Supplement; (b) the execution and delivery of Definitive Documents, including appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Persons agree; (c) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, amalgamation, consolidation, conversion, arrangement, continuance, or dissolution pursuant to applicable law; (d) the Sale Transaction; (e) such other transactions that are required to effectuate the Restructuring Transactions in the most efficient manner for the Debtors and the Prepetition Term Loan Agent, including in regard to tax matters and any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; (f) the selection of the New Board (if applicable); (g) the authorization, issuance, and distribution of the New Reorganized Debtor Equity and Takeback Loans; (h) the appointment of the Plan Administrator; (i) the creation of the GUC Trust and appointment of the GUC Trustee, (j) the execution, delivery, and adoption of the New Organizational Documents; and (k) all other acts or actions contemplated or reasonably

necessary or appropriate to promptly consummate the Restructuring Transactions, including making filings or recordings that may be required by applicable law.

3.    Insurance Policies

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. On the Plan Effective Date, unless an insurance policy (i) was specifically designated for assignment by the Purchaser, (ii) was rejected by the Debtors pursuant to a Bankruptcy Court order, or (iii) is the subject of a motion to reject Filed by the Debtors that remains pending on the date of the Confirmation Hearing with respect to the Plan, (a) in the event of a Reorganized Equity Sale, the Reorganized Debtors (excluding RL Management) shall be deemed to have assumed each such insurance policy and any agreements, documents, and instruments relating to coverage of all insured Claims and such insurance policy and any agreements, documents, or instruments relating thereto shall vest in the Reorganized Debtors (excluding RL Management) and (b) in the event of a 363 Asset Sale, each such insurance policy and any agreements, documents, and instruments related to coverage of all insured Claims shall be either (A) rejected or (B) assumed and assigned by the Debtors to the Purchaser at the Purchaser's election.

Notwithstanding anything to the contrary in the Disclosure Statement, this Plan, Plan Supplement, the Confirmation Order, any other Definitive Document, any agreement or order related to post-petition or exit financing, any bar date notice or claim objection, any notice of any cure amount or claim, any document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, confers Bankruptcy Court jurisdiction, grants an injunction, discharge or release), and without altering or modifying the terms of paragraph 47 of the Confirmation Order and/or the Zurich Agreement (as defined in the Confirmation Order):

(a)    nothing alters, modifies or otherwise amends the terms and conditions of the Zurich Insurance Program (including any agreement to arbitrate disputes and any provisions regarding the provision, maintenance, use, nature and priority of the Zurich Collateral), except that on the Plan Effective Date, the Reorganized Debtors shall be deemed to have jointly and severally assumed the Zurich Insurance Program in its entirety pursuant to sections 105 and 365 of the Bankruptcy Code;

(b)    nothing therein releases or discharges Zurich's security interests and liens on the Zurich Collateral;

(c)    nothing therein releases or discharges the Zurich Claims and further, the Zurich Claims are actual and necessary expenses of the Debtors' estates (or the Reorganized Debtors, as applicable) and shall be paid in full in the ordinary course of business, whether as an Allowed Administrative Expense Claim under section 503(b)(1)(A) of the Bankruptcy Code or otherwise, regardless of when such amounts are or shall become liquidated, due or paid, without the need or

27

requirement for Zurich to file or serve a request, motion, or application for payment of or proof of any proof of claim, cure claim (or any objection to cure amounts/notices), or Administrative Expense Claim (and further and for the avoidance of doubt, any claim bar date shall not be applicable to Zurich);

(d)     the Debtors or the Reorganized Debtors, as applicable, shall not sell, assign, or otherwise transfer the Zurich Insurance Program and/or any of the rights, benefits, interests, and proceeds thereunder except with the express written permission of Zurich; and

(e)     the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII.A of the Plan and the corresponding provisions in the Confirmation Order, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against Zurich under applicable non-bankruptcy law to proceed with their claims; (II) Zurich to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) all workers' compensation or direct action claims covered by the Zurich Insurance Program, (B) all claims where an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII.A of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; (III) Zurich to draw against any or all of the Zurich Collateral and to hold the proceeds thereof as security for the obligations of the Debtors (or the Reorganized Debtors, as applicable) to Zurich and/or apply such proceeds to the obligations of the Debtors (or the Reorganized Debtors, as applicable) under the Zurich Insurance Program, in such order as Zurich may determine; and (IV) subject to the terms of the Zurich Insurance Program and/or applicable non-bankruptcy law, Zurich to (i) cancel any policies under the Zurich Insurance Program, and (ii) take other actions relating to the Zurich Insurance Program (including setoff).

Terms used in this paragraph but not defined in the Plan shall have the meaning attributed to them in that certain *Order (I) Authorizing the Debtors to Enter into the New Insurance Program, (II) Authorizing Assumption of the Existing Insurance Program, and (III) Granting Related Relief* entered by the Bankruptcy Court on May 22, 2024 [ECF No. 154].

4.    Section 1146 Exemption

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code,

any transfer of property (whether from a Debtor to a Reorganized Debtor, the GUC Trust, the Plan Administrator, or to any other Person or entity) under, in furtherance of, or in connection with the Plan, including pursuant to any Sale Transaction or (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors, the Reorganized Debtors, or the GUC Trust, including the New Reorganized Debtor Equity and Takeback Loans, if applicable, (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any tax or governmental assessment under any law imposing a document recording tax, stamp tax, conveyance tax, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee regulatory filing or recording fee, sales and use tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment against the Debtors and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax, recordation fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

5.    Cancellation of Securities and Agreements

On the Plan Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under any certificate, Security, share, note, bond, credit agreement, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan, if any) shall be cancelled solely as to the Debtors, and the Reorganized Debtors, the Wind-Down Debtors, and the GUC Trustee, as applicable, shall not have any continuing obligations thereunder or relating to the cancellation thereof; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in such Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in such Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged.

6.    Effectuating Documents; Further Transactions

On and after the Plan Effective Date, the Reorganized Debtors or Wind-Down Debtors, as applicable, the officers and members of the New Board, the Plan Administrator or GUC Trustee, as applicable, are authorized to and may issue, execute, deliver, file, or record Definitive Documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the New Organizational Documents, the GUC Trust Documents, and the Securities issued pursuant to the Plan in the name of and on behalf of the applicable Reorganized Debtors, the Wind-Down Debtors, or the GUC Trustee, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

7.    Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, unless expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or assigned to the Purchaser in the Sale Transaction, the Reorganized Debtors, the Wind-Down Debtors, or the GUC Trust, as applicable, shall retain and may enforce all rights to commence or pursue any and all Causes of Action of the applicable Debtors' Estates, not otherwise so waived, relinquished, exculpated, released, compromised, settled or assigned (as the case may be), whether arising before or after the Petition Date, including, but not limited to, any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors', the Wind-Down Debtor(s)', or the GUC Trustee's rights to commence, prosecute, compromise, settle or release such Causes of Action shall be preserved notwithstanding the occurrence of the Plan Effective Date, other than the Claims and Causes of Action released pursuant to the releases and exculpations contained in Article VIII hereof. Unless any Cause of Action is expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or a Final Order, pursuant to section 1123(b) of the Bankruptcy Code, such Cause of Action is preserved for later adjudication, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to any such Cause of Action upon, after, or as a consequence of the Confirmation of the Plan or the occurrence of the Plan Effective Date. For the avoidance of doubt, any Equityholder Litigation Claims shall be contributed to the GUC Trust by the Debtors in accordance with the Plan.

**No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Reorganized Debtors or the Wind-Down Debtor(s), as applicable, will not pursue any and all available Causes of Action against it. The Debtors, the Reorganized Debtors, the Wind-Down Debtor(s), and the GUC Trustee, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.**

The Reorganized Debtors, the Wind-Down Debtor(s), and the GUC Trustee, as applicable, (i) reserve and shall retain all Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan and (ii) shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes

of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

**B.    Restructuring of the Debtors Effectuated Through a Sale Transaction**

The Confirmation Order with respect to the Plan shall authorize, pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code, as applicable, all actions necessary or appropriate to effectuate the Sale Transaction, including, (i) the execution and delivery of Definitive Documents, (ii) the transfer of Purchased Assets (as defined in the Purchase Agreement) and/or New Reorganized Debtor Equity, as applicable, free and clear of all Liens, Claims, Causes of Action, charges, or other encumbrances, to the applicable Purchaser (or one or more of Purchaser's designee(s)) or Plan Administrator (or one or more of the Plan Administrator's designee(s)), (iii) all transactions contemplated by the Purchase Agreement, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code, as applicable, (iv) the appointment of the Plan Administrator, (v) the execution and delivery of the Plan Administrator Agreement, and (vi) creation of the GUC Trust and appointment of the GUC Trustee.

At the Purchaser's election, the Debtors shall file an amendment to the Plan which removes RLSV as a Debtor under this Plan.

1.    <u>Closing of any Sale Transaction or Restructuring Transaction</u>

At the election of the Purchaser, the Debtors shall be authorized to and shall consummate either the 363 Asset Sale, Reorganized Equity Sale or other Restructuring Transaction and in connection therewith, among other things, (a) the Purchased Assets (including any Executory Contracts and Unexpired Leases the applicable Purchaser wishes to assume) or (b) the New Reorganized Debtor Equity together with specified assets of RL Management and RL International, as applicable, shall be transferred to and vest in the Purchaser (or one or more designees of Purchaser) or the Plan Administrator (or one or more of the Plan Administrator's designee(s)), as applicable, free and clear of all Liens, Claims, Interests, Causes of Action, charges or other encumbrances, purchase rights, options or rights of first refusal, pursuant to the terms of the Purchase Agreement, applicable Sale Transaction Documents and order(s) of the Bankruptcy Court approving the Sale Transaction or other Restructuring Transactions contemplated thereby, which may be the Confirmation Order.  Following the Plan Effective Date, (i) the Purchaser (or one or more designees of Purchaser) will own and may operate the Purchased Assets, and (ii) the Plan Administrator will, in accordance with the Definitive Documents, control, operate, administer, dispose, liquidate, and/or wind-down, as the case may be, RL Management, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**C.    Reorganized Equity Sale Provisions**

The provisions in this Article IV.C shall only apply if the Purchaser elects to consummate a Reorganized Equity Sale pursuant to the Purchase Agreement.

1.      Issuance of Reorganized Debtor Equity; Section 1145 Exemption

On the Plan Effective Date, the Reorganized Debtors (excluding RL Management) shall issue the New Reorganized Debtor Equity to the Purchaser without the need for any further corporate action or further notice to, action or order of the Bankruptcy Court. On the Plan Effective Date, RL Management shall issue its respective New Reorganized Debtor Equity to the Plan Administrator or an entity designated by the Plan Administrator without need for any further corporate action or further notice to, action or order of the Bankruptcy Court.The shares of the New Reorganized Debtor Equity issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of the New Reorganized Debtor Equity under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person receiving such distribution or issuance. The issuance of the New Reorganized Debtor Equity by the Reorganized Debtors shall be authorized without the need for any further corporate action or without any further action by the Debtors or Reorganized Debtors or by holders of any Claims or Interests against the Debtors, as applicable. As a condition to receiving the New Reorganized Debtor Equity, each holder entitled to a distribution of New Reorganized Debtor Equity, will be required to execute and deliver the New Organizational Documents, as applicable; provided, however, that, notwithstanding any failure to execute the New Organizational Documents, as applicable, any Person that is entitled to and accepts a distribution of New Reorganized Debtor Equity under the Plan, by accepting such distribution, will be deemed to have accepted and consented to the terms of the New Organizational Documents, without the need for execution by any party thereto. The New Reorganized Debtor Equity will not be registered under the Securities Act or listed on any exchange as of the Plan Effective Date.

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Reorganized Debtor Equity after the Petition Date shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act or any similar federal, state, or local law in reliance on section 1145 of the Bankruptcy Code or, only to the extent such exemption under section 1145 of the Bankruptcy Code is not available, any other available exemption from registration under the Securities Act. Pursuant to section 1145 of the Bankruptcy Code, such New Reorganized Debtor Equity will be freely tradable in the United States without registration under the Securities Act by the recipients thereof, subject to the provisions of (1) section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments, (2) any other applicable regulatory approvals, and (3) any restrictions in the New Organizational Documents.

Any Securities distributed pursuant to Section 4(a)(2) of the Securities Act will be considered "restricted securities" as defined by Rule 144 of the Securities Act and may not be resold under the Securities Act or applicable state securities laws absent an effective registration statement, or pursuant to an applicable exemption from registration, under the Securities Act and applicable state securities laws and subject to any restrictions in the New Organizational Documents.

Notwithstanding anything to the contrary in the Plan, no Person shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the issuance of the New Reorganized Debtor Equity is exempt from the registration requirements of Section 5 of the Securities Act.

2.      Corporate Existence

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on and after the Plan Effective Date, each Reorganized Debtor, as applicable, shall continue to exist as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which the particular Debtor is incorporated or formed and pursuant to their respective certificate of incorporation and bylaws (or other similar Governance Documents) in effect prior to the Plan Effective Date, except to the extent such certificate of incorporation and bylaws (or other similar Governance Documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

After the Plan Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized Debtors may be amended or modified in accordance with their terms without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. On or after the Plan Effective Date, one or more of the Reorganized Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  In furtherance of the foregoing, from and after the Plan Effective Date, RL Management (as reorganized) may continue to conduct business in the ordinary course, including, without limitation, facilitating the transition of applicable licenses and permits, providing transition services to the Purchaser and the Reorganized Debtors in accordance with the Definitive Documents, and maintain and perform such other operational responsibilities as deemed necessary or advisable by the Plan Administrator.

3.      New Organizational Documents

On or immediately prior to the Plan Effective Date, the New Organizational Documents shall be adopted automatically by the Reorganized Debtors. To the extent required under the Plan or applicable non-bankruptcy law, the Reorganized Debtors shall file their respective New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation. The New Organizational Documents shall, among other things: (1) authorize the issuance of the New Reorganized Debtor Equity and (2) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting equity securities of the Debtors. After the Plan Effective Date, each Reorganized Debtor may amend and restate its limited liability company agreement, certificate of incorporation and other

33

formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of the New Organizational Documents.

4.    <u>Discharge</u>

On the Plan Effective Date, except as otherwise provided for hereunder or in the Confirmation Order, each Reorganized Debtor will receive a discharge of all Claims in accordance with section 1141(d)(1) of the Bankruptcy Code.

5.    <u>Vesting of Assets in the Reorganized Debtors and the GUC Trust</u>

Except as otherwise provided for hereunder, under the Purchase Agreement, the Confirmation Order  or in any agreement, instrument or other document incorporated in the Plan, on the Plan Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of each Debtor's Estate, including all Causes of Action of the Debtors' Estates (other than any Causes of Action that are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan) shall vest in the Purchaser, Reorganized Debtor, or the GUC Trust, free and clear of all Liens, Claims, Causes of Action, charges and/or other encumbrances, purchase rights, options or rights of first refusal.  On and after the Plan Effective Date, except as otherwise provided herein, each Reorganized Debtor, the Purchaser (and, to the extent applicable, Purchaser's designees), and the GUC Trustee may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action with respect to the Debtors without further notice to, action, or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

6.    <u>Directors, Managers, and Officers</u>

As of the Plan Effective Date, the term of each current officer, members of the boards of directors or managers or any managing member of each Debtor shall expire, and except for RL Management, the New Board and the officers or managers of each of the Reorganized Debtors shall be appointed in accordance with the respective New Organizational Documents. With respect to RL Management, the Plan Administrator shall serve as the sole director and officer of RL Management (as reorganized).

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors shall disclose, in advance of the Confirmation Hearing, the identity and affiliations of any Person proposed to serve on the New Board or be an officer of any of the Reorganized Debtors. To the extent any such director, manager or officer is an "insider" (as defined in the Bankruptcy Code), the Debtors also shall disclose the nature of any compensation to be paid to such director, manager or officer. Each such director, manager and officer shall serve from and after the Plan Effective Date pursuant to the terms of the New Organizational Documents.

7.    <u>Wind-Down and Dissolution of the Debtors</u>

To the extent there is at least one Wind-Down Debtor on the Plan Effective Date, then such Wind-Down Debtor(s) shall continue in existence after the Plan Effective Date for purposes of: (a) winding down such Debtor's businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtor(s) after the Plan Effective Date; (b)

performing the Debtors' remaining obligations under any Sale Transaction Documents (except to the extent that such obligations are performed by RL Management), if any; (c) resolving any Disputed Claims (except General Unsecured Claims); (d) making distributions on account of Allowed Claims against the Debtors (except Allowed General Unsecured Claims) in accordance with the Plan to the extent not made on the Plan Effective Date; (e) filing appropriate tax returns, if any; and (f) administering the Plan in an efficient manner. The Wind-Down Debtor(s) shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters relating to the Wind-Down Assets, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

On the Plan Effective Date, any assets of the Debtors' Estates remaining after the closing of the Sale Transaction or other Restructuring Transaction shall vest in RL Management or the Wind-Down Debtor(s), as applicable, for the purpose of liquidating the Debtors' Estates, facilitating transition services related to the Sale Transaction, maintaining necessary operations, and Consummation of the Plan (except for the GUC Trust Assets). Such Wind-Down Assets and any assets remaining in RL Management after the Plan Effective Date shall be held free and clear of all Liens, Claims, Interests, Causes of Action, charges or other encumbrances, purchase rights, options or rights of first refusal, except as otherwise provided in the Plan. Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator or its designee. The Wind-Down Debtor(s), RL Management, and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

Any contrary provision hereof notwithstanding, following the occurrence of the Plan Effective Date and the making of distributions on the Plan Effective Date pursuant hereto, (i) any of the Debtors' Cash held by RL Management or the Wind-Down Debtor(s) in excess of the Wind-Down Amount  and (ii) the proceeds of any non-Cash assets of the Debtors' Estates vested in the Wind-Down Debtor(s), shall be payable in accordance with the provisions in this Plan, including Article III hereof. The Plan Administrator shall make such distributions in Cash in accordance with Article III hereof.

8.      The Plan Administrator

On and after the Plan Effective Date, the Plan Administrator, shall be appointed by the Debtors with the consent of the Prepetition Term Loan Agent and Purchaser and in consultation with the Committee.

The Plan Administrator shall not be required to post any bond or surety or other security for the performance of its duties hereunder unless otherwise ordered by the Bankruptcy Court. In the event that the Plan Administrator is so ordered, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Assets and/or RL Management.

The Plan Administrator may resign at any time upon thirty (30) days' written notice to the Bankruptcy Court; provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator by the Court. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested

with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind-Down Debtor(s) shall be terminated.

(a)      The Plan Administrator's Rights and Powers

The powers of the Plan Administrator shall include any and all powers and authority necessary or helpful to implement and carry out the provisions of the Plan and any applicable orders of the Bankruptcy Court relating to the Wind-Down Debtors. The Plan Administrator shall be the representative of the Debtors' Estates with respect to the Wind-Down Assets appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

Without limiting the foregoing, the Plan Administrator shall (a) hold, liquidate, invest, supervise, and protect the Wind-Down Assets; (b) effectuate the distributions contemplated by the Plan Administrator under the Plan; (c) object to or settle Disputed Claims against the Debtors (except General Unsecured Claims); (d) prosecute any or all of the Causes of Action retained by the Wind-Down Debtors; (e) pay all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtor(s); (f) file tax returns for, pay taxes of, and represent the interests of the Wind-Down Debtor(s) or the Debtors' Estates, as applicable, before any taxing authority in all matters, including any action, suit, proceeding, or audit; (g) File the operating report for the Debtors' Estates for the month in which the Plan Effective Date occurs and all subsequent quarterly reports; (h) take any action necessary to wind down the business and affairs of the Wind-Down Debtor(s); (i) file appropriate certificates of dissolution of the Wind-Down Debtor(s) pursuant to applicable state or provincial law; and (j) manage the business operations and affairs of RL Management for as long as is necessary and advisable to effectuate the provisions of the Plan and the Sale Transaction.

As soon as practicable after the Plan Effective Date, the Plan Administrator shall cause the Wind-Down Debtor(s) and RL Management to comply with, and abide by, the terms of the Plan and take any actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. Except to the extent necessary to complete the Wind-Down of any of the Debtors' remaining assets or operations from and after the Plan Effective Date, the Debtors (1) shall be deemed to have canceled pursuant to the Plan all Interests in the Debtors (except RL Management as provided for herein) and (2) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Plan Effective Date. The Filing of the final monthly operating report for the Debtors' Estates (for the month in which the Plan Effective Date occurs) and all subsequent quarterly post-Confirmation reports shall be the responsibility of the Plan Administrator.

The Plan Administrator shall act for the Wind-Down Debtor(s) and RL Management in the same fiduciary capacity as applicable to a board of directors, board of managers, member/manager and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Plan Effective Date, the persons acting as members, managers, officers or directors of the Debtor(s) shall be deemed to have resigned and the Plan Administrator shall be appointed as the sole manager, sole director, sole member and sole officer of RL Management and the Wind-Down Debtor(s) and shall succeed to the powers of the Debtors' directors, managers, members and officers. From and after the Plan Effective Date, the Plan Administrator shall be the sole

36

representative of, and shall act for, the Wind-Down Debtor(s) and RL Management.  For the avoidance of doubt, the foregoing shall not limit the authority of RL Management, the Wind-Down Debtor(s), or the Plan Administrator, as applicable, to continue the employment of any former member, manager, director or officer, including pursuant to any transition services or other agreement, in each case, to the extent permitted by applicable law.

(b)     Retention of the Plan Administrators' Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of its duties. The reasonable fees and expenses of such professionals shall be paid pursuant to any transition services agreement with RL Management or from the Wind-Down Assets, as applicable, upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business in accordance with the Wind-Down Budget and shall not be subject to the approval of the Bankruptcy Court.

(c)     Compensation of the Plan Administrator

All reasonable costs, expenses, and obligations incurred by the Plan Administrator in administering the Plan, operating RL Management for the benefit of or in connection with the Sale Transaction, administering the Wind-Down Debtor(s)' Estates, or in any manner connected, incidental, or related thereto, shall be paid from the Wind-Down Assets or pursuant to a transition services agreement with RL Management, as applicable, in accordance with the Wind-Down Budget and on the terms set forth in the Plan Administrator Agreement. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Plan Effective Date (including taxes imposed on the Wind-Down Debtors or RL Management) in connection with its duties hereunder and the Plan Administrator Agreement shall be, subject to the Wind-Down Budget, paid without any further notice to, or action, order, or approval of, the Bankruptcy Court.

(d)     Indemnification, Insurance, and Liability Limitation

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be indemnified by the Wind-Down Debtor(s) and RL Management to the fullest extent permitted by applicable law from any claims or Causes of Action relating to or arising in connection with the performance of its duties hereunder or under the Plan Administrator Agreement, except for claims and Causes of Action related to any act or omission that is determined by Final Order of a court of competent jurisdiction to have constituted fraud, willful misconduct, or gross negligence. The Plan Administrator may obtain, at the expense of the Wind- Down Debtor(s) and RL Management and in accordance with the Plan Administrator Agreement, commercially reasonable liability or other appropriate insurance with respect to the foregoing indemnification obligations. Any such insurance shall be paid solely from the Wind-Down Assets in accordance with the Wind-Down Budget. The Plan Administrator may rely upon all written information previously generated by the Debtors.

Notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Wind-Down Debtor(s) or RL Management.

(e)     Tax Returns

The Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Wind-Down Debtor(s) and RL Management and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of any Wind-Down Debtor, RL Management, or the Estate of its predecessor Debtor, as determined under applicable tax laws.

9.     Vesting of Wind-Down Assets in the Wind-Down Debtor(s) or Purchaser(s)

Except as otherwise provided herein, on the Plan Effective Date, all Wind-Down Assets shall vest in the Wind-Down Debtor(s), free and clear of all Liens, Claims, Interests, Causes of Action, charges, or other encumbrances, purchase rights, options or rights of first refusal, unless expressly provided otherwise by the Plan or the Confirmation Order. On and after the Plan Effective Date, the Wind-Down Debtor(s) may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action that constitute Wind-Down Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

10.     Cash Collateral Held by the Prepetition ABL Agent

Any contrary provision hereof notwithstanding, nothing contained herein shall affect the rights and responsibilities of the parties, including the Debtor ABL Loan Parties and Prepetition ABL Agent under that certain Payoff Letter (as defined in the DIP Orders) dated as of May 17, 2024, as approved by the Court in the DIP Orders and the Cash Management Orders. From and after the Plan Effective Date, at such time as Prepetition ABL Agent is obligated to return the cash collateral held by Prepetition ABL Agent in accordance with the Payoff Letter, the Purchaser shall be entitled to receive the return of all cash collateral held by the Prepetition ABL Agent under or in connection with the Payoff Letter. Upon payment of such cash collateral to the Purchaser, the obligations of the Prepetition ABL Agent shall be deemed satisfied.

11.     GUC Trust.

(a)     Establishment of GUC Trust

On the Plan Effective Date, the GUC Trust shall be established to receive (i) after adequate reserve for the payment (as reasonably determined by the Debtors in consultation with the Committee) of all Allowed Priority Tax Claims, Allowed Other Priority Claims and Allowed Administrative Expense Claims that are not Assumed Liabilities (except for DIP Claims and Allowed Professional Fee Claims), the GUC Fund and (ii) the Equityholder Litigation Claims, the proceeds of which shall be distributed in accordance with the Plan. On the Plan Effective Date, the Debtors shall contribute the GUC Fund and Equityholder Litigation Claims to the GUC Trust. In

no event shall any GUC Trust Assets of any kind be returned by, or otherwise transferred from, the GUC Trust to any Debtor.

The GUC Trust shall qualify as a liquidating trust as described in Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, and shall be treated as a grantor trust for United States federal income tax purposes. The GUC Trustee shall have the authority to manage the day-to-day operations of the GUC Trust, including, without limitation, by disposing of the assets of the GUC Trust, appearing as a party in interest, calculating distributions, paying taxes and such other matters as more particularly described in Article IV of the Plan and the GUC Trust Agreement. The reasonable expenses of the GUC Trust, including the reasonable expenses of the GUC Trustee and its representatives and professionals, will be satisfied from the GUC Fund.

On the Effective Date, the GUC Trust Assets shall vest automatically in the GUC Trust. The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief.  The transfer of the GUC Trust Assets to the GUC Trust shall be made for the benefit and on behalf of the holders of Allowed General Unsecured Claims in Class 4.  The assets comprising the GUC Trust Assets will be treated for tax purposes as being transferred by the Debtors to the holders of Class 4 Claims pursuant to the Plan in exchange for their Allowed Claims and then by such holders to the GUC Trust in exchange for the interests in the GUC Trust. The holders of Allowed General Unsecured Claims shall be treated as the grantors and owners of the GUC Trust.  Upon the transfer of the GUC Trust Assets, the GUC Trust shall succeed to all of the Debtors' rights, title and interest in the GUC Trust Assets, and the Debtors will have no further interest in or with respect to the GUC Trust Assets.  In pursuing the Equityholder Litigation Claims, the GUC Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the time periods in which any of the Equityholder Litigation Claims may be brought under section 546 of the Bankruptcy Code.  The GUC Trust Agreement will require consistent valuation of the GUC Trust Assets by the Reorganized Debtors, the GUC Trustee, and the beneficiaries of the GUC Trust for all U.S. federal income tax and reporting purposes.  The GUC Trust will not be permitted to receive or retain cash in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the GUC Trust Assets.

To effectively investigate, prosecute, compromise, and/or settle the Equityholder Litigation Claims, the GUC Trustee and its counsel and representatives must have access to all documents and information relating to the Equityholder Litigation Claims and be able to exchange such information with the Plan Administrator, Reorganized Debtors and Wind-Down Debtors on a confidential basis and in common interest without being restricted by or waiving any applicable work product, attorney-client, or other privilege. Given the GUC Trust's position as successor to the Equityholder Litigation Claims, sharing such information between the Plan Administrator, Reorganized Debtors, the Wind-Down Debtors and the GUC Trustee and their counsel shall not waive or limit any applicable privilege or exemption from disclosure or discovery related to such information. Accordingly, on the Plan Effective Date, the Plan Administrator, Reorganized Debtors, the Wind-Down Debtors and the GUC Trustee shall enter into the Confidentiality and Common Interest Agreement providing for, inter alia, the Plan Administrator, Reorganized Debtors and Wind-Down Debtors to provide reasonable access to, and the GUC Trust shall have the right to secure, at the GUC Trust's own expense, copies of, all of the Plan Administrator's,

Wind-Down Debtors' and Reorganized Debtors' records and information relating to the Equityholder Litigation Claims including, without limitation, all electronic records or documents. The GUC Trustee shall also have full and complete access to, and the right to copy at the expense of the GUC Trust, all reports, documents, memoranda and other work product of the Debtors and the Creditors' Committee and their respective professionals and advisors related to the Equityholder Litigation Claims. From and after the Plan Effective Date, the Plan Administrator, Reorganized Debtors, Wind-Down Debtors and their officers, employees, agents, and professionals shall provide reasonable cooperation during normal business hours in responding to information requests of the GUC Trustee regarding the Equityholder Litigation Claims.  For a period of five years after the Plan Effective Date, the Plan Administrator, Reorganized Debtors and Wind-Down Debtors shall preserve all records and documents (including all electronic records or documents) related to the Equityholder Litigation Claims or, if any Equityholder Litigation Claims have been asserted in a pending action, then until such later time as the GUC Trustee notifies the Plan Administrator, Reorganized Debtors and Wind-Down Debtors in writing that such records are no longer required to be preserved. Notwithstanding anything in the foregoing, neither the Debtors, the Plan Administrator, the Wind-Down Debtors, nor the Reorganized Debtors shall be required to take any action under this paragraph that requires out-of-pocket expenditure by such entity of more than $500.00, absent reimbursement by the GUC Trust.

Except as otherwise ordered by the Bankruptcy Court, the expenses of the GUC Trust on or after the Plan Effective Date shall be paid in accordance with the GUC Trust Agreement without further order of the Bankruptcy Court.

The GUC Trust shall file annual reports regarding the liquidation or other administration of property comprising the GUC Trust Assets, the distributions made by it and other matters required to be included in such report in accordance with the GUC Trust Agreement.  In addition, the GUC Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

The interests in the GUC Trust are not intended to constitute "securities."  To the extent such interests are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act.  If the GUC Trustee determines, with the advice of counsel, that the GUC Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act or other applicable law, then the GUC Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and to file reports with the SEC to the extent required by applicable law.

The GUC Trust shall be dissolved as soon as practicable after the date that is the earlier to occur of: (a) the distribution of all proceeds from the GUC Trust Assets available for distribution pursuant to the Plan, or (b) the determination of the GUC Trustee that the continued prosecution of the Equityholder Litigation Claims is not likely to yield sufficient additional proceeds to justify further pursuit.

To the extent that the terms of the Plan with respect to the GUC Trust are inconsistent with the terms set forth in the GUC Trust Agreement, then the terms of the GUC Trust Agreement shall govern.

(b)    Powers and Duties of GUC Trustee

The GUC Trustee shall administer the GUC Trust and its assets in accordance with this Plan, the GUC Trust Agreement, and the other GUC Trust Documents and shall be responsible for, among other things, making certain Distributions required under this Plan. From and after the Plan Effective Date and continuing through the date of entry of a Final Decree, the GUC Trustee shall: (a) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Cases and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Bankruptcy Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Bankruptcy Court and (b) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate in accordance with the Plan, all without prior notice to or approval of the Bankruptcy Court. Professionals and personnel retained or employed by the GUC Trust or the GUC Trustee need not be disinterested as that term is defined in the Bankruptcy Code, and may include Professionals who had been employed by the Committee or the Debtors.

The powers of the GUC Trustee shall include any and all powers and authority necessary or helpful to implement and carry out the provisions of the Plan and any applicable orders of the Bankruptcy Court relating to the GUC Trust Assets. The GUC Trustee shall be the representative of the Debtors' Estates with respect to the GUC Trust Assets appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

Without limiting the foregoing, the GUC Trustee shall (a) hold, liquidate, invest, supervise, and protect the GUC Trust Assets; (b) effectuate the distributions contemplated by the GUC Trustee under the Plan; (c) object to or settle Disputed General Unsecured Claims against the Debtors; (d) investigate, prosecute, or resolve the Equityholder Litigation Claims, as appropriate; (e) pay all reasonable fees, expenses, debts, charges, and liabilities of the GUC Trust; (f) file tax returns for, pay taxes of (if any), and represent the interests of the GUC Trust before any taxing authority in all matters, including any action, suit, proceeding, or audit; (g) take any action necessary to administer the GUC Trust; and (h) file appropriate certificates of dissolution of the GUC Trust, if any, pursuant to applicable state or provincial law.

(c)    Retention of GUC Trust Professionals

The GUC Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the GUC Trustee, are necessary to assist the GUC Trustee in the performance of its duties and prosecution of the Equityholder Litigation Claims and administration of the other GUC Trust Assets; provided, however, that (i) the payment of such professionals shall be made solely using the funds in the GUC Fund and (ii) the Prepetition Term Loan Agent shall have consented to the retention of any attorney retained by the GUC Trustee to

41

prosecute the Equityholder Litigation Claims. The reasonable fees and expenses of such professionals shall be paid only from the GUC Funds upon the monthly submission of statements to the GUC Trustee. The payment of the reasonable fees and expenses of the GUC Trustee's retained professionals shall not be subject to the approval of the Bankruptcy Court.

(d)     Indemnification, Insurance, and Liability Limitation

The GUC Trustee and all professionals retained by the GUC Trustee, each in their capacities as such, shall be indemnified by the GUC Trust to the fullest extent permitted by applicable law from any claims or Causes of Action relating to or arising in connection with the performance of its duties hereunder or under the GUC Trust Agreement, except for claims and Causes of Action related to any act or omission that is determined by Final Order of a court of competent jurisdiction to have constituted fraud, willful misconduct, or gross negligence. The GUC Trustee may obtain, at the expense of the GUC Trust and in accordance with the GUC Trust Agreement, commercially reasonable liability or other appropriate insurance with respect to the foregoing indemnification obligations. Any such insurance shall be paid solely from the GUC Trust Assets. The GUC Trustee may rely upon all written information previously generated by the Debtors.

Notwithstanding anything to the contrary contained herein, the GUC Trustee in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the GUC Trust.

12.     Sources of Consideration for Plan Distributions.

The Plan Administrator shall fund distributions under the Plan, to the extent not made on the Plan Effective Date, with the Plan Funding Amount, Sale Proceeds (if any), and proceeds of retained Causes of Action not settled, released, assigned, discharged, enjoined, or exculpated on or prior to the Plan Effective Date. The Plan Administrator shall fund payment of all Allowed Administrative Expense Claims, Priority Tax Claims and Other Priority Claims.  Professional Fee Claims shall be funded from the Professional Fee Escrow Account.  The GUC Trustee shall make all distributions of proceeds of the Equityholder Litigation Claims and other GUC Trust Assets in accordance with the Plan and the GUC Trust Agreement.  Except for Assumed Liabilities arising under the Purchase Agreement, neither the Purchaser nor the Reorganized Debtors shall have any responsibility to make or liability for Distributions required under the Plan.

# V.     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.     Assumption and Rejection of Executory Contracts and Unexpired Leases

1.     363 Asset Sale

In the event a 363 Asset Sale is consummated, upon closing of the 363 Asset Sale, (i) each Executory Contract and Unexpired Lease designated for assumption and assignment to Purchaser (or one or more of the designees of Purchaser) in accordance with the Bidding Procedures Order and the Purchase Agreement shall be assumed by the applicable Debtor and assigned to the Purchaser (or one or more of the designees of Purchaser) pursuant to the terms of the applicable Purchase Agreement and applicable orders of the Bankruptcy Court, and (ii) all Executory

Contracts and Unexpired Leases not designated for assumption and assignment to the Purchaser (or one or more of the designees of Purchaser) in any Purchase Agreement, to the extent not previously rejected or terminated, shall be automatically rejected.

Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A.1 and assigned to Purchaser (or one or more of the designees of Purchaser) shall vest in, and be fully enforceable by, the Purchaser (or one or more of the designees of Purchaser) in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court.

2.    Reorganized Equity Sale

In the event a Reorganized Equity Sale or other Restructuring Transaction is consummated, on the Plan Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan (including, to the extent applicable, a Purchase Agreement related thereto), all Executory Contracts and Unexpired Leases, to the extent not previously rejected or terminated, shall be deemed rejected under section 365 of the Bankruptcy Code without the need for any further notice or action, order, or approval of the Bankruptcy Court, under section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) was previously assumed by a Debtor; (2) expired or was terminated pursuant to its own terms or by agreement of the parties thereto; (3) is the subject of a motion to assume Filed by the Debtors on or before the date of entry of the applicable Confirmation Order; or (4) is listed on the Assumed Executory Contracts and Unexpired Leases List; provided, that that rejections of Unexpired Leases of non-residential real property pursuant to this Plan shall be effective as of the later of (a) the Plan Effective Date and (b) the date on which the leased premises are unconditionally surrendered to the landlord under such rejected Unexpired Lease.

Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A.2 of the Plan, shall re-vest in, and be fully enforceable by, the Purchaser or Reorganized Debtor (as applicable) in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court.

**B.    Approval of Assumption, Assignment and Rejection**

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Plan Effective Date, constitute the Bankruptcy Court's approval of the assumptions, assignments or rejections, as applicable, of the Executory Contracts and Unexpired Leases under the Plan. Any motion of the Debtors to assume an Executory Contract or Unexpired Lease pending on the Plan Effective Date shall be subject to approval by the Bankruptcy Court by a Final Order.

Notwithstanding anything to the contrary in the Plan, the Debtors and the Reorganized Debtors, as applicable, reserve the right to amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases List to add or remove any Executory Contract or Unexpired Lease to such list at any time prior to the Plan Effective Date (or prior to such later date as may be designated in any Purchase Agreement, as applicable), subject to the consent of the Purchaser.

The Debtors or the Reorganized Debtors shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases List to their counterparties affected thereby.

### C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

Unless otherwise provided by a Final Order, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Plan Effective Date. All Allowed Claims arising from the rejection of a Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against such Debtor. No non-Debtor party to a rejected Executory Contract or Unexpired Lease shall be permitted to setoff or recoup any amounts owed to the Debtors under such rejected Executory Contract or Unexpired Lease against any Allowed rejection damages.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time shall be automatically Disallowed, released, and discharged, and forever barred from assertion without the need for any objection or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Person, any such Claim shall be released, and discharged, notwithstanding anything in the Schedules or any Proof of Claim to the contrary, and such Claim shall not be enforceable against the Debtors, the Reorganized Debtors, the Debtors' Estates, the Wind-Down Debtor(s), or the GUC Trustee, as applicable, or their respective properties.**

### D.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied by the applicable Debtor(s) party to such Executory Contract or Unexpired Lease or the Purchaser as required by any Purchase Agreement, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the earlier of (i) the Plan Effective Date or (ii) the consummation of a 363 Asset Sale, if applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases, with the consent of the Purchaser. In the event of an unresolved dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or Purchaser(s) (as applicable) or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or (3) any other matter pertaining to assumption, the payment of the Cure Amount required by section 365(b)(1) of the Bankruptcy Code shall be resolved by a Final Order.

The Debtors served on the applicable counterparties notices of proposed assumption and proposed Cure Amounts pursuant to the terms of the Bidding Procedures. **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption or Cure Amount must be Filed and served to be actually received by no later than the applicable objection deadline set forth in the Bidding Procedures Order.** Any counterparty to an Executory Contract or Unexpired Lease designated for assumption that fails to object timely to the

proposed assumption, Cure Amount or adequate assurance of future performance shall be deemed to have consented to all of the foregoing.

Assumption (or assumption and assignment, as applicable) of an Executory Contract or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under such Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

### E.    Preexisting Obligations under Executory Contracts and Unexpired Leases.

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the applicable Debtor(s) thereunder. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, outstanding Cash payments, warranties or continued maintenance obligations on any goods previously purchased by the Debtors from a non-Debtor counterparty to a rejected Executory Contract or Unexpired Lease.

### F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan or Confirmation Order, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to the Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Debtors' Chapter 11 Cases shall not be deemed to alter the prepetition nature of the applicable Executory Contracts or Unexpired Leases, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### G.    Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contracts and Unexpired Leases List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

**H.     Nonoccurrence of the Plan Effective Date**

In the event that the Plan Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases of nonresidential property pursuant to section 365(d)(4) of the Bankruptcy Code.

## VI.     PROVISIONS GOVERNING DISTRIBUTIONS

**A.     Timing and Calculation of Amounts to Be Distributed**

Unless otherwise provided in the Plan, on the Plan Effective Date (or if a Claim is not an Allowed Claim on the Plan Effective Date, on the date that such Claim becomes an Allowed Claim), each holder of an Allowed Claim shall receive, subject to the provisions of this Article VI hereof, the full amount of the distribution that the Plan provides on account of Allowed Claims in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Except as otherwise provided in the Plan, holders of Allowed Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or after the Plan Effective Date.

**B.     Delivery of Distributions**

1.     <u>Persons Responsible</u>

Distributions under the Plan shall be made by (i) with respect to a Distribution of proceeds of the Equityholder Litigation Claims or other GUC Trust Assets, the GUC Trustee and (ii) with respect to all remaining Distributions, the Plan Administrator.  Except for Assumed Liabilities arising under the Purchase Agreement, the Purchaser (or any Affiliates or designees thereof) shall have no responsibility to make or liability for Distributions required under the Plan.

Except as otherwise provided herein, all distributions shall be made to the holders of Allowed Claims at the address for each such holder as indicated in the applicable Debtor's schedules as of the date of the relevant distribution; provided, <u>however,</u> that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that holder; <u>provided</u> <u>further</u>, <u>however</u>, that the manner of distributions shall be determined at the discretion of the Reorganized Debtors, the Plan Administrator, or GUC Trustee, as applicable.

2.     <u>Record Date for Distribution</u>

On the Distribution Record Date, the Claims Register shall be closed with respect to Claims held against the Debtors and any party responsible for making distributions under the Plan shall be authorized and entitled to recognize only those record holders of such Claims that are listed on the Claims Register as of the close of business on the Distribution Record Date.

### 3.    Minimum Distributions

Notwithstanding any other provision of the Plan, the Reorganized Debtors, the Wind-Down Debtor(s), the Plan Administrator, or the GUC Trustee, as applicable, shall not be required to make distributions of less than $50.00 in value (whether Cash or otherwise), and each Claim to which this limitation applies shall be discharged, and its holder shall be forever barred pursuant to Article VIII of the Plan from asserting such Claim against the Debtors, their applicable Estates, the Reorganized Debtors, the Wind-Down Debtors, the GUC Trustee, as applicable, or their respective property, as applicable.  If any assets remain where distributions would not be feasible, the Reorganized Debtors, the Wind-Down Debtors, or the GUC Trustee, as applicable, shall donate such sums to Red Lobster Cares.

### C.    Distributions and Undeliverable or Unclaimed Distributions

In the event that a distribution to any holder of an Allowed Claim is returned as undeliverable, no distribution to such holder shall be made unless and until the Reorganized Debtors, the Plan Administrator, or the GUC Trustee, as applicable, has determined the then-current address of such holder, at which time the distribution shall be made to such holder without interest; provided, however, that, at the expiration of ninety (90) days from the date a distribution is attempted, any such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code. After such date, all unclaimed property shall automatically revert to the Reorganized Debtors, the Wind-Down Debtors, or the GUC Trust, as applicable, without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder to such property shall be discharged and forever barred.

### D.    Surrender of Cancelled Instruments or Securities

On the Plan Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Article IV.A.5 hereof shall be deemed to have surrendered such certificate or instrument. Such surrendered certificate or instrument shall be cancelled solely with respect to the applicable Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis à vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the holder of a Claim or Interest, which shall continue in effect for purposes of allowing holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

### E.    Compliance with Tax Requirements

The Debtors, Reorganized Debtors, Wind-Down Debtors, or the GUC Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, with respect to the distributions pursuant to the Plan, and all such distributions shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors, the Plan Administrator, or the GUC

Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such compliance, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors, the Plan Administrator, and the GUC Trustee, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

### F.    Allocations

Distributions on account of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to accrued but unpaid prepetition interest.

### G.    No Postpetition Interest on Claims

Unless otherwise specifically provided for in the Plan, Confirmation Order or DIP Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

### H.    Foreign Currency Exchange Rate

Except as otherwise provided in a Bankruptcy Court order, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency published in *The Wall Street Journal*, National Edition, on the Petition Date.

### I.    Setoffs and Recoupment

Except as expressly provided in the Plan, each Reorganized Debtor, Wind-Down Debtor, or the GUC Trustee, as applicable, may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of an Allowed Claim any and all Claims, rights, and Causes of Action that such Reorganized Debtor, Wind-Down Debtor, or the GUC Trustee may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim shall constitute a waiver or release by a Reorganized Debtor, a Wind-Down Debtor, the GUC Trustee, or its successor of any and all Claims, rights, and Causes of Action that such Reorganized Debtor, Wind-Down Debtor, or the GUC Trustee may have against the applicable claimholder. In no event shall any holder of a Claim, notwithstanding any indication in such holder's Proof of Claim that such holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise, be entitled to set off or recoup its Claim against any claim, right, or Cause of Action of the Debtor, Reorganized Debtor, Wind- Down Debtor(s), or the GUC Trustee, as applicable.

J.      **Claims Paid or Payable by Third Parties**

1.      Claims Paid by Third Parties

To the extent the holder of a Claim receives payment in full on account of such Claim from a third party, such Claim shall be Disallowed and expunged from the Claims Register without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent a holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a third party on account of such Claim, such holder shall, within two weeks of receipt of the latter, repay or return to the applicable Reorganized Debtor, Wind-Down Debtors, or the GUC Trustee, as applicable, the portion of the received Plan distribution, if any, by which its total recovery on account of the Claim exceeds the Allowed amount of such Claim.

2.      Claims Payable by Third Parties

The availability, if any, of any insurance policy for the satisfaction of an Allowed Claim shall be determined by the terms of the applicable Debtor(s)'s insurance policies. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part any Allowed Claim (if and to the extent adjudicated by a court of competent jurisdiction), then, immediately upon such insurers' agreement, the applicable portion of such Claim may be Disallowed and expunged from the Claims Register without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

Nothing contained in the Plan shall constitute or be deemed a waiver of any Claim or Cause of Action that any Debtor or any Person may hold against any insurer under any insurance policies, nor shall anything contained herein constitute a waiver by any insurer of any defenses, including coverage defenses.

VII.    **PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS**

A.      **Allowance of Claims**

After the Plan Effective Date, the Reorganized Debtors, Wind-Down Debtors, and the GUC Trustee, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had immediately before the Plan Effective Date. No Claim shall be deemed an Allowed Claim unless and until such Claim is Allowed under the Plan or under any order entered in the Chapter 11 Cases before the Plan Effective Date (including the Confirmation Order), when such order becomes a Final Order.

B.      **No Distributions Pending Allowance**

If an objection to a Claim or a portion thereof is Filed, no distribution shall be made on account of such Claim or the applicable portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

### C.    Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Plan Effective Date, the Reorganized Debtors, the Plan Administrator, and the GUC Trustee, as applicable, shall have the authority to:  (1) File, withdraw, or litigate to judgment objections to Claims against the applicable Estate; (2) settle, compromise, or otherwise resolve Disputed Claims against the applicable Estate without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the applicable Claims Register to reflect any settlements, compromises or Final Orders resolving Disputed Claims or the fact that any Claim has been paid or satisfied, or that any Proof of Claim that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), in each case without any further notice to or action, order, or approval by the Bankruptcy Court. The GUC Trustee shall be primarily responsible for reconciling and objecting to General Unsecured Claims in accordance with the provisions of this Plan.

### D.    Estimation of Claims

Before or after the Plan Effective Date, the Debtors, Reorganized Debtors, Wind-Down Debtor(s), or the GUC Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to such Claim or during the appeal relating to such objection. Notwithstanding any provision in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or that otherwise has not yet been resolved by a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Debtor, Reorganized Debtor or Wind-Down Debtor, or the GUC Trustee, as applicable, may elect to pursue a supplemental proceeding to object to any ultimate allowance of such Claim.

### E.    Time to File Objections to Claims

Any objections to Claims shall be Filed on or before the later of (1) 180 days after the entry of the Confirmation Order and (2) such other period of limitation as may be fixed by the Bankruptcy Court.  A motion to extend such deadline may be filed with the Bankruptcy Court by the Reorganized Debtors, the Wind-Down Debtors, or the GUC Trustee, as applicable, on an ex parte or expedited basis.

### F.    Disallowance of Claims

Any Claims held by Persons from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action

against that Person have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, from that Person have been turned over or paid to the Reorganized Debtors, Wind-Down Debtors, or the GUC Trustee, as applicable.

All Claims against any Debtor, whether Filed or listed in any of the Debtor's Schedules, on account of an indemnification, surety and/or contribution obligation to any of the following Persons or entities shall be deemed satisfied and expunged from the Claims Register as of the Plan Effective Date, without any further notice to or action, order, or approval of the Bankruptcy Court: (i) current or former director of any Debtor, (ii) current or former officer of any Debtor; (iii) current or former employee of any Debtor; (iv) current or former insider of any Debtor; (v) holder, whether directly or indirectly, of an Interest in any Debtor; (vi) current or former operator of any Debtor; (vii) current or former project manager of any Debtor; and (viii) any Affiliate of the Persons or entities set forth in the foregoing clauses (i) through (vii); provided, further, that the holder of any such Claim shall not be entitled to any distributions under the Plan on account of such Claims.

### G.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order allowing a Disputed Claim becomes a Final Order, the Reorganized Debtors, the Wind-Down Debtor(s), Plan Administrator, or the GUC Trustee, as applicable, shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled, without interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

## VIII.   RELEASES, INJUNCTION AND RELATED PROVISIONS

### A.    Plan Releases, Injunction and Related Provisions

#### 1.    Discharge of Claims and Termination of Interests in the Debtors

In the event a Reorganized Equity Sale is consummated, upon the Plan Effective Date, and except as otherwise provided in the Plan, the Debtors (excluding the Wind-Down Debtors) shall be discharged to the fullest extent permitted by section 1141(d) of the Bankruptcy Code; provided, however, that such discharge shall exclude any Assumed Liabilities. The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than Assumed Liabilities) against, and Interests in, the Debtors (excluding the Wind-Down Debtors) subject to the occurrence of the Plan Effective Date.

In the event a 363 Asset Sale is consummated, pursuant to the provisions of section 1141(d)(3) of the Bankruptcy Code, the Debtors shall not be entitled to a discharge and shall be wound down as set forth in the Plan and the Plan Administrator Agreement.

#### 2.    Releases by the Debtors

**Notwithstanding anything in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Plan Effective Date, each Released Party is, and**

is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released by each of the Debtors, their respective Estates, and any Person seeking to exercise the rights of any of the Debtors or their Estates (including any successors to any of the Debtors or their Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code), in each case, on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons who may purport to assert any Cause of Action, derivatively, by, through, for, or because of any of the foregoing Persons, from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in law, equity, contract, tort or otherwise, that any of the Debtors, their Estates, the Reorganized Debtors or Wind-Down Debtor(s), as applicable, or any successors to or representatives of the foregoing appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether individually or collectively) or that any holder of any Claim against or any Interests in, any of the Debtors could have asserted on behalf of any of the Debtors or their Estates, based on, relating to, or in any manner arising from, in whole or in part: any of the Debtors (including the capital structure, management, ownership, or operations thereof); any Security of any of the Debtors; the subject matter of, or the transactions or events giving rise to, any Claim, Cause of Action or Interest; the business or contractual arrangements between any Debtor and a Released Party; any of the Debtors' restructuring efforts; any Avoidance Actions held by any of the Debtors or their Estates; any intercompany transactions performed by any of the Debtors; the Debtors' Chapter 11 Cases (including the Filing thereof and any relief obtained by the Debtors therein); the formulation, preparation, dissemination, negotiation, or Filing of the Plan, the Plan Supplement, the DIP Facility, the Disclosure Statement, or the Bidding Procedures Order (and the procedures approved thereby); any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Person regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order with respect to the Plan in lieu of such legal opinion) created or entered into in connection with the Plan or the Bidding Procedures Order; the solicitation of votes on the Plan, the pursuit of Confirmation of the Plan, the pursuit of Consummation of the Plan, the implementation of the Plan, including the issuance or distribution of Securities or any other property pursuant to the Plan; or any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Plan Effective Date other than Claims and liabilities resulting therefrom arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, in each case, solely to the extent determined by a Final Order of a court of competent jurisdiction.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Plan Effective Date Claims or obligations of any Person under the Plan, the Confirmation Order with respect to the Plan, any Restructuring Transaction, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (ii) the Equityholder Litigation Claims.

3.    Releases by Holders of Claims Against the Debtors

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Plan Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part: any of the Debtors (including the capital structure, management, ownership, or operation thereof); any security of any of the Debtors or any of the Reorganized Debtors; the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan; the business or contractual arrangements between any Debtor and any Released Party; the assertion or enforcement of rights and remedies against any of the Debtors; the Debtors' in- or out-of- court restructuring efforts; any Avoidance Actions held by any of the Debtor(s) or their Estates; intercompany transactions between or among a Debtor and another Debtor; the Chapter 11 Cases; the Canadian Proceeding; the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Bidding Procedures Order, the Plan, or the Plan Supplement; any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the DIP Facility, the Disclosure Statement, the Bidding Procedures Order, the Plan, or the Plan Supplement; the Filing of the Debtors' Chapter 11 Cases; the Filing of the Canadian Proceeding; the Disclosure Statement, the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation of the Plan, the pursuit of Consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, the distribution of property under the Plan or any other related agreement, or any cancellation of debt income realized in connection with the Plan; or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Plan Effective Date, other than Claims and liabilities resulting therefrom arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan or any other financing document under and as defined therein), (ii) the Equityholder Litigation Claims, or (iii) any post-Plan Effective Date obligations of any Person under the Plan, the Confirmation Order, any Stand-Alone Restructuring Transaction, any Definitive Document or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Purchase Agreement or any Claim or obligation arising under the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third party release, which includes by reference**

each of the related provisions and definitions contained in the Plan, and, further shall constitute the Bankruptcy Court's finding that the third party release by those creditors or interest holders who vote to accept the Plan is: (I) the good and valuable consideration and substantial contributions provided by the Released Parties; (II) a good faith settlement and compromise of the Claims released by the third party release; (III) in the best interests of the Debtors and all holders of Claims and Interests; (IV) fair, equitable and reasonable; (V) given and made after due notice and opportunity for a hearing; and (IV) a bar to any of the Releasing Parties asserting any Claim released pursuant to the third party release.

4.    Exculpation from Claims Relating to the Plan

Except as otherwise specifically provided in the Plan or the Confirmation Order with respect to the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any Claims and Causes of Action related to any act or omission occurring between and including the Petition Date and the Plan Effective Date in connection with, relating to, or arising out of: the Debtors' Chapter 11 Cases (including the Filing thereof); the Canadian Proceeding (including the Filing thereof); the formulation, preparation, dissemination, negotiation, Filing, or termination of the Plan, the Disclosure Statement, the Bidding Procedures Order, the DIP Facility, or any contract, instrument, release or other agreement or document created or entered into in connection with the Debtors' Chapter 11 Cases or Canadian Proceeding, whether or not included in the Plan Supplement or constituting a Definitive Document; the Restructuring Transactions contemplated by the Plan and any prepetition transactions relating to any of the foregoing; the pursuit of Confirmation of the Plan, the pursuit of Consummation of the Plan, the administration and implementation of the Plan, including the issuance and distribution of Securities pursuant to the Plan, or the distribution of property under the Plan; the Purchase Agreement; or any other related act or omission, transaction, event, or other occurrence taking place on or before or in connection with the Plan Effective Date, except for Claims and liabilities resulting therefrom related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by an Exculpated Party.

The Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan in all respects.

5.    Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order with respect to the Plan, all Persons who have held, hold, or may hold any Claims or Causes of Action against, or Interests in, any of the Debtors that have been released, discharged, or are subject to release or exculpation hereunder are permanently enjoined, from and after the Plan Effective Date, from taking any of the following actions against any of the Debtors, the Reorganized Debtors, the Wind-Down Debtor(s), the GUC Trustee, as applicable, or any of the other Exculpated Parties or any of the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with any such Claim, Cause of Action or Interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any of

**the Exculpated Parties or Released Parties on account of or in connection with any such Claim, Cause of Action or Interest; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against any of the Exculpated Parties, Released Parties or their property on account of or in connection with or with respect to any such Claim, Cause of Action or Interest; and (4) asserting any right of setoff or subrogation against any obligation due from any of the Exculpated Parties, Released Parties or against their property on account of or in connection with any such Claim, Cause of Action or Interest unless, with respect to setoff, such holder has Filed a motion requesting the right to perform such setoff on or before the Plan Effective Date or Filed a Proof of Claim that asserts or preserves any such right, and until such motion has been granted or the Filed Proof of Claim is Allowed.**

**Upon entry of the Confirmation Order with respect to the Plan, all holders of Claims and Causes of Action against, and Interests in, any of the Debtors and their respective Related Parties shall be enjoined from taking any actions to interfere with the implementation of the Plan or the Sale Transaction.**

### B. Protections Against Discriminatory Treatment

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Persons, including all Governmental Units, shall not discriminate against the Reorganized Debtors, Wind-Down Debtor(s), GUC Trustee, as applicable, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, Wind-Down Debtor(s), or GUC Trustee, as applicable, or another Person with whom the Reorganized Debtors, Wind-Down Debtor(s), or GUC Trustee, as applicable, have been associated, solely because the relevant Debtor has been a debtor under chapter 11 of the Bankruptcy Code, was insolvent before the commencement of or during the Debtors' Chapter 11 Cases, or did not pay a debt that is discharged hereunder.

### C. Document Retention

On and after the Plan Effective Date, the Reorganized Debtors, the Wind-Down Debtor(s), and the GUC Trustee, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented.

### D. Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court in effect on the applicable Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Plan Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### E. Unknown Claims

The waivers and releases provided in this Plan are intended to include both known and unknown Claims and Causes of Action. The Debtors and the other Releasing Parties understand

that they may later discover Claims, Causes of Action or facts that may be different than, or in addition to, those which the Debtors or any other Releasing Party now knows or believes to exist with respect to the Debtors, and which, if known at the Plan Effective Date may have materially affected the decision of the Debtors and any other Releasing Party to enter into it. Nevertheless, the Debtors and the Releasing Parties hereby waive any right, Causes of Action or Claim that might arise as a result of such different or additional Claims, Causes of Action or facts. The Debtors and the Releasing Parties are aware of, read, understand and have been fully advised by their attorneys as to the contents of the provisions of California Civil Code section 1542 and any other similar state, federal or foreign law and hereby expressly waive any and all rights, benefits and protections of such section 1542 and each such other similar law, which provides:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

## IX.   CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A.   Conditions Precedent to the Effective Date for the Plan

It shall be a condition to the occurrence of the Plan Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1. The Bankruptcy Court shall have approved the Disclosure Statement, which may be approved by the Confirmation Order, with respect to the Plan;

2. The Confirmation Order approving the Plan is in form and substance reasonably acceptable to the Purchaser and Prepetition Term Loan Agent, the Debtors and the Committee and shall be a Final Order (unless otherwise waived by the Prepetition Term Loan Agent and the Committee) and shall:

> (a)   Authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

> (b)   Decree the provisions in the Confirmation Order with respect to the Plan and the Plan to be non-severable and mutually dependent;

> (c)   Authorize the Reorganized Debtors, Wind-Down Debtor(s), Plan Administrator and GUC Trustee, as applicable, to: (i) implement the Sale and Restructuring Transactions; (ii) make all distributions required under the Plan, including any Cash, the New Reorganized Debtor Equity, and the GUC Trust Agreement, in each case, as applicable; and (iii) enter into any applicable agreements, transactions, and sales of property as set forth in the Plan Supplement as applicable to the Debtors and the Plan;

(d)        Provide for the Bankruptcy Court's retention of jurisdiction over implementation of the Plan and the issues set forth in Article XI of the Plan; and

(e)        Authorize the implementation of the Plan in accordance with its terms;

3.      The final version of each Definitive Document, including each document contained in the Plan Supplement, to the extent applicable to the Plan (including any exhibits, amendments, modifications, or supplements thereto) shall have been executed or deemed executed and delivered by each party thereto and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties, if applicable;

4.      Any and all authorizations, certifications, consents, regulatory approvals, rulings, actions, documents and agreements necessary to implement, consummate and effectuate the applicable Restructuring Transactions shall have been obtained, effected and executed;

5.      In the event of a Reorganized Equity Sale, the New Reorganized Debtor Equity shall have been issued on or immediately before the Plan Effective Date;

6.      The Professional Fee Escrow Account shall have been established and funded in accordance with Article II.B hereof;

7.      Any Administrative Expense Claims that are not Assumed Liabilities (except for DIP Claims and Allowed Professional Fee Claims) and are known to the Debtors immediately prior to the Effective Date are paid or otherwise satisfied;

8.      The Debtors, with the consent of the Prepetition Term Loan Agent and the Committee, shall have appointed the Plan Administrator, and the Plan Administrator Agreement and other Plan Administrator Documents shall have been executed and delivered;

9.      The Debtors and the GUC Trustee selected by the Committee shall have executed and delivered the GUC Trust Agreement; and

10.     The Confirmation Order shall have been recognized in the Canadian Proceeding pursuant to Part IV of the *Companies' Creditors Arrangement Act* (Canada) thereby giving full force and recognition to the Confirmation Order in Canada.

## B.    Waiver of Conditions

The conditions to the occurrence of the Plan Effective Date set forth in this Article IX may be waived by the Debtors, with the prior written consent of the Prepetition Term Loan Agent and the Committee, without notice to, action, or approval of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

### C.    Substantial Consummation

Substantial Consummation of the Plan shall be deemed to occur on the Plan Effective Date.

### D.    Effect of Failure of Conditions

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by the applicable Debtor or any other Person, or any Claims or Interests by any holders thereof; (2) prejudice in any manner the rights of each applicable Debtor, any holder of Claims or Interests, or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the applicable Debtors, any holder of Claims or Interests, or any other Person in any respect.

## X.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### A.    Modification and Amendments

Except as otherwise specifically provided in the Plan, the Debtors reserve the right, with the prior written consent of the Prepetition Term Loan Agent and the Committee, to (1) modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and (2) subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), to alter, amend or modify the Plan with respect to any Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. In accordance with, and to the extent provided by, section 1127 of the Bankruptcy Code, a holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

### B.    Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation of votes thereon are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation.

### C.    Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to File other plan(s) of reorganization. If the Debtors revoke or withdraw the Plan or if Confirmation or Consummation of the Plan does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, the assumption or rejection of any Executory Contracts or Unexpired Leases under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any claims by the

applicable Debtor or any other Person, or any Claims or Interests by any holders thereof; (b) prejudice in any manner the rights of each applicable Debtor, any holder of Claims or Interests, or any other Person; or (c) constitute an admission, acknowledgment, offer or undertaking by the applicable Debtors, any holder of Claims or Interests, or any other Person in any respect.

**XI.     RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Plan Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction after the Plan Effective Date over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of, any Claim, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.      Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease, the determination of any Claim arising therefrom, including the Cure Amounts, or any other matter related to Executory Contracts and Unexpired Leases; (b) the amending, modifying, or supplementing, after the Plan Effective Date, of the Assumed Executory Contracts and Unexpired Leases List; and (c) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or any other matters, and grant or deny any applications pending on the Plan Effective Date or filed thereafter, including any Equityholder Litigation Claims commenced in the Bankruptcy Court;

6.      Adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code;

7.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and of all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, including the documents comprising the Plan Supplement;

8.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation or otherwise, including interpretation or enforcement of the Plan, any Person's obligations incurred in connection with the Plan, or, as applicable, the Purchase Agreement;

9.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with Consummation or enforcement of the Plan;

10.     Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan, and enter such orders as may be necessary or appropriate to enforce or implement such releases, injunctions, exculpations, and other provisions;

11.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

13.     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

14.     Consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in the Confirmation Order;

15.     Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

16.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or the Restructuring, including disputes arising under agreements, documents, or instruments executed in connection with the Plan or the Restructuring, whether they arise before, on or after the Plan Effective Date;

17.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

18.     Enforce and interpret all orders entered by the Bankruptcy Court in the Chapter 11 Cases;

19.     Hear any other matter not inconsistent with the Bankruptcy Code; and

20.     Enter an order or final decree closing any of the Chapter 11 Cases.

## XII.    MISCELLANEOUS PROVISIONS

### A.    Immediate Binding Effect

Subject to Article IX and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Plan Effective Date, the terms of the Plan and the documents contained in the Plan Supplement, shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, the Wind-Down Debtor(s), and the GUC

Trustee, as applicable, and any and all holders of Claims against and Interests in the Debtors (irrespective of whether their Claims or Interests are Allowed or whether they have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan and any and all non-Debtor counterparties to the Executory Contracts and Unexpired Leases.

### B.    Additional Documents

On or before the Plan Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Reorganized Debtors, the Wind-Down Debtor(s), or the GUC Trustee, as applicable, all holders of Allowed Claims receiving distributions under the Plan, and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.    Payment of Statutory Fees

All fees due and payable by the Debtors' Estates pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") prior to the Plan Effective Date shall be paid by the Debtors on the Plan Effective Date. After the Plan Effective Date, the Debtors and the Reorganized Debtors shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable. After the Plan Effective Date, each of the Reorganized Debtors shall File with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors and the Reorganized Debtors shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to File any Administrative Expense Claim in the case, and shall not be treated as providing any release under the Plan. For the avoidance of doubt, neither the GUC Trust nor GUC Trustee is responsible for the payment of any Quarterly Fees.

### D.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order confirming the Plan and the Confirmation Order shall have no force or effect if the Plan Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or any holder of a Claim or Interest unless and until the Plan Effective Date has occurred.

### E.    Successors and Assigns

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of any such Person.

**F.      Notices**

To be effective, all notices, requests and demands shall be in writing (including by e-mail or facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by fascimile transmission, when received and telephonically confirmed, addressed to the following:

1.      <u>If to the Debtors, to</u>:

Red Lobster Management LLC
450 S. Orange Avenue, Suite 800
Orlando, Florida 32801

with copies to:

King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Attention:
W. Austin Jowers, Esq.
Jeffrey R. Dutson, Esq.
E-mail:
<u>ajowers@kslaw.com</u>
<u>jdutson@kslaw.com</u>

- and -

King & Spalding LLP
1100 Louisiana Street, Suite 4100
Houston, Texas 77002
Attention: Michael Fishel, Esq.
E-mail: <u>mfishel@kslaw.com</u>

- and -

Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Attention: Paul Steven Singerman, Esq.
E-mail: <u>singerman@bergersingerman.com</u>

2.      <u>If to the DIP Secured Parties or Prepetition Term Loan Agent, to</u>:

Proskauer Rose LLP
One International Place
Boston, Massachusetts 02110
Attention: Charles A. Dale, Esq.
Email: cdale@proskauer.com

- and -

Proskauer Rose, LLP
Eleven Times Square
New York, New York 10036
Attention:
Megan Volin, Esq.
Dylan J. Marker, Esq.
Email:
mvolin@proskauer.com
dmarker@proskauer.com

- and -

Trenam, Kemker, Scharf, Barkin, Frye, O'Neill and Mullis, P.A.
101 E Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Attention: Lara Roeske Fernandez, Esq.
Email: lfernandez@trenam.com

3.      If to the Committee or the GUC Trustee:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
Attention:
Bradford J. Sandler, Esq.
Email: bsandler@pszjlaw.com

If a Person wishes to continue to receive notices or documents after the Plan Effective Date, such Person must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Plan Effective Date, the Reorganized Debtors, the Wind-Down Debtor(s), or the GUC Trustee, as applicable, are authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to those Persons who have Filed such renewed requests in the applicable Chapter 11 Cases.

G.      **Entire Agreement**

Except as otherwise indicated, the Plan, the Plan Supplement, the Definitive Documents (in their final forms) and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on the subjects covered thereby, all of which have become merged and integrated into the Plan and the Confirmation Order.

H.      **Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan, as applicable, as if set forth in full in the Plan. After the exhibits and documents

are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Debtors' notice, claims, and balloting agent at https://dm.epiq11.com/redlobster or the Bankruptcy Court's website at http://www.flmb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

## I.    Non-Severability of Plan Provisions

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non- severable, other than as described below. The Confirmation Order shall constitute a judicial determination, and shall provide, that each term and provision of the applicable Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

## J.    Closing of Chapter 11 Cases

The Reorganized Debtors or the Plan Administrator, as applicable, shall, promptly after the full administration of the Chapter 11 Cases, and with the consent of the GUC Trustee, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

## K.    Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## L.    Rates

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Plan Effective Date.

*[Remainder of Page Left Intentionally Blank]*

Dated this September 4, 2024          */s/ Nicholas Haughey*
                                      Nicholas Haughey
                                      Chief Restructuring Officer